## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRISTA DOUGHERTY and ANGEL DOUGHERTY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>DREW UNIVERSITY,<br><br>        Defendant. | Civil Action No.: 2:21-cv-00249-KM-ESK<br><br>Hon. Kevin McNulty<br><br>Motion Return Date: April 5, 2021 |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DREW UNIVERSITY'S MOTION TO DISMISS

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (NJ Bar No. 118322014)
888 Seventh Ave., Suite 304
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* app. forthcoming)
Neal J. Deckant (*pro hac vice* app. forthcoming)
Julia K. Venditti (*pro hac vice* app. forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
   ndeckant@bursor.com
   jvenditti@bursor.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ...................................................................................................... 1

II. FACTUAL BACKGROUND ..................................................................................... 4

III. LEGAL STANDARD ................................................................................................ 6

IV. ARGUMENT .............................................................................................................. 7

    A. Plaintiffs State A Claim For Breach Of Contract .................................................. 7

        1. New Jersey Courts Recognize Implied Contracts Based On University Publications ................................................................................. 7

        2. Defendant's "Reservation Of Rights" Provision Lacks The Requisite Specificity And Is Therefore Unenforceable ............................ 10

        3. Plaintiffs Have Sufficiently Pleaded That Defendant Promised An In-Person Experience And Breached That Promise ................................................................................................. 13

        4. Defendant's Obligations Are Not Limited To Providing Students With The Opportunity To Earn Credits ..................................... 17

    B. Plaintiffs State A Claim For Unjust Enrichment .................................................. 19

    C. Plaintiffs State A Claim For Conversion ............................................................... 23

    D. Plaintiffs State A Claim For Money Had And Received ...................................... 24

    E. Plaintiffs Do Not Allege Educational Malpractice ............................................... 25

V. CONCLUSION ........................................................................................................ 30

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ansari v. New York University*,
  1997 WL 257473 (S.D.N.Y. May 16, 1997) ...................................................... 27, 29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 6

*Baskerville v. Society Hill at Droyers Point Condominium Ass'n*,
  2009 WL 3849693 (N.J. Super. Ct. App. Div. Nov. 16, 2009) ................................. 15

*Behne v. Union City College*,
  2018 WL 566207 (D.N.J. Jan. 26, 2018) ................................................................ 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 6

*Bell Container Corp. v. Palagonia Bakery Co. Inc.*,
  2019 WL 8105297 (D.N.J. Dec. 26, 2019) ............................................................. 21

*Bergeron v. Rochester Institute of Technology*,
  2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) ......................................................... 2

*Beukas v. Bd. of Trustees of Farleigh Dickinson Univ.*,
  255 N.J. Super. 552 (Law Div. 1991) ................................................................... 11

*Capital Health Sys. v. Veznedaroglu*,
  2017 WL 751855 (D.N.J. Feb. 27, 2017) ............................................................... 24

*Cavaliere v. Duff's Business Institute*,
  605 A.2d 397 (Pa. Super. Ct. 1992) ................................................................. 28, 29

*Chemo Iberica, S.A. v. Betachem, Inc.*,
  2016 WL 865734 (D.N.J. Mar. 7, 2016) ................................................................ 16

*Chong v. Northeastern Univ.*,
  2020 WL 5847626 (D. Mass. Oct. 1, 2020) ............................................................ 11

*Chong v. Northeastern Univ.*,
  2020 WL 7338499 (D. Mass. Dec. 14, 2020) ...................................................... 2, 11

*Cross v. Univ. of Toledo*,
  2020 Ohio Misc. LEXIS 121 (Ohio Ct. Cl. July 8, 2020) ...................................... 3, 17

*Cross v. Univ. of Toledo*,
  2020 WL 4726814 (Ohio Ct. Cl. Jul. 8, 2020) ..................................................... 26

*Cruz v. Seton Hall Univ.*,
  2012 U.S. Dist. LEXIS 96005 (D.N.J. July 10, 2012) ............................................. 8

*Deen v. New Sch. Univ.*,
  2007 WL 1032295 (S.D.N.Y Mar. 27, 2007)................................................... 10, 11

*Deerhurst Estates v. Meadow Homes, Inc.*,
  64 N.J. Super. 134 (N.J. Super. Ct. App. Div. 1960) ............................................ 18

*Des Lauriers Municipal Solutions, Inc. v. Franklin Tp.*,
  2009 WL 1635455 (D.N.J. June 10, 2009)............................................................ 23

*Ford v. Rensselaer Polytechnic Institute*,
  2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020) ........................................................ 2

*George E. Warren Corporation v. Colonial Pipeline Company*,
  2017 WL 3038251 (D.N.J. July 17, 2017) ............................................................ 24

*Gibson v. Lynn Univ., Inc.*,
  2020 U.S. Dist. LEXIS 222214 (S.D. Fla. Nov. 29, 2020) .............................Passim

*Gociman v. Loyola University of Chicago*,
  2021 WL 243573 (N.D. Ill. Jan. 25, 2021)........................................................... 11

*Gourdine v. Felician College*,
  2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006)............................... 11

*Grudkowski v. Foremost Ins. Co.*,
  556 F. App'x 165 (3d Cir. 2014).......................................................................... 19

*Hassan v. Fordham University*,
  2021 WL 293255 (S.D.N.Y. Jan. 28, 2021) ..................................................... 11, 12

*Haverty v. Andres & Berger, P.C.*,
  2004 WL 2701040 (N.J. Super. Ct. App. Div. Nov. 9, 2004)................................... 9

*Hess Corp. v. ENI Petroleum US, LLC*,
  435 N.J. Super. 39 (N.J. Super. Ct. App. Div. 2014) ........................................... 12

*In re Insurance Brokerage Antitrust Litig.*,
  2017 WL 3642003 (D.N.J. Aug. 23, 2017) ........................................................... 21

*In re K-Dur Antitrust Litigation*,
  338 F. Supp. 2d 517 (D.N.J. 2004)................................................................. 21, 25

iv

*Jannarone v. SunPower Corp.*,
   2020 WL 2085635 (D.N.J. Apr. 30, 2020) ........................................................ 19, 21

*Kel Kim Corp. v. Central Markets, Inc.*,
   70 N.Y.2d 900 (1987) ............................................................................................. 13

*Leitner v. Braen*,
   51 N.J. Super. 31 (1958) ......................................................................................... 16

*Lindner v. Occidental College*,
   2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) ......................................................... 11

*McDermott v. Ohio State Univ.*,
   2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020) ................................. 3, 16

*Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*,
   2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Ind. Aug. 12, 2020) ........................ 3

*Mellowitz v. Ball State Univ.*,
   2020 WL 5524659 (Ind. Super. Ct. Aug. 14, 2020) .......................................... 17, 26

*Mittra v. University of Medicine and Dentistry of N.J.*,
   316 N.J. Super. 83 (App. Div. 1998) ..................................................................... 7, 8

*Moe v. Seton Hall*,
   2010 WL 1609680 (D.N.J. Apr. 20, 2010) ..................................................... 2, 7, 9, 27

*Mucci v. Rutgers*,
   2011 WL 831967 (D.N.J. Mar. 3, 2011) ..................................................................... 7

*Myers v. Medford Lakes Bd. of Educ.*,
   199 N.J. Super. 511 (App. Div. 1985) ..................................................................... 28

*New York Pipeline Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*,
   2012 WL 209349, n.2 (D.N.J. Jan. 24, 2012) ......................................................... 25

*Paladino v. Adelphi Univ.*,
   454 N.Y.S.2d 868 (2d Dep't 1982) ......................................................................... 25

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ...................................................................................... 6

*Regents University of Michigan v. Ewing*,
   474 U.S. 214 (1985) ................................................................................................ 29

*Reynolds v. Palnut Co.*,
   330 N.J. Super. 162 (App. Div. 2000) ...................................................................... 9

*Ricketti v. Barry*,
2015 WL 1013547 (D.N.J. Mar. 9, 2015) ............................................................ 24

*Romeo v. Seton Hall University*,
378 N.J. Super. 384 (App. Div. 2005) ................................................................ 8

*Rosado v. Barry Univ. Inc.*,
2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) ............................................Passim

*Salerno v. Florida Southern College*,
2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) ......................................3, 16, 21, 26

*Saroya v. Univ. of the Pacific*,
2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) ...................................................... 2

*SAT Agiyar, LLC v. 7-Eleven, Inc.*,
2020 WL 3546821 (D.N.J. June 30, 2020) ....................................................... 19

*Sirpal v. Univ. of Miami*,
509 F. App'x 924 (11th Cir. 2013) .................................................................. 7

*Smith v. The Ohio State Univ.*,
2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020) ........................................3, 17, 26

*Stein-O'Brien v. Pennington School*,
2008 WL 160588 (E.D. Pa. Jan. 15, 2008) ....................................................... 29

*Swidryk v. Saint Michael's Medical Center*,
201 N.J. Super. 601 (Law Div. 1985) ........................................................28, 29

*Troy v. Rutgers*,
168 N.J. 354 (2001) ................................................................................... 9

*U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*,
2014 WL 197878 (D.N.J. Jan. 14, 2014) ......................................................... 19

*Waitt v. Kent State Univ.*,
2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020) ......................................3, 17, 26

*Wanaque Borough Sewerage Auth. v. Twp. of West Milford*,
144 N.J. 564, 677 A.2d 747 (1996) ............................................................... 22

*Williams v. Board of Ed. Of Paterson*,
2017 WL 3131974 (D.N.J. July 21, 2017) ....................................................... 25

*Zahn v. Ohio Univ.*,
2020 Ohio Misc. LEXIS 230 (Ohio Ct. Cl. Oct. 19, 2020) ...............................3, 17

**STATUTES**

N.J.S.A. 10:5-12 ......................................................................................................... 8

**RULES**

Fed. R. Civ. P. 8 ............................................................................................ 19, 20, 21

**OTHER AUTHORITIES**

Restatement, Contracts, § 410 ................................................................................. 18

## I.     INTRODUCTION

Defendant Drew University's ("Drew" or "Defendant") motion is nearly identical to a motion to dismiss filed by Farleigh Dickinson University in similar matter regarding a university closure. *See Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Sup. Ct. Feb. 5, 2021), attached as Exhibits 1-2 to the Declaration of Philip L. Fraietta (the "Fraietta Decl."), filed herewith. Both the *Fairleigh Dickinson* matter and the present *Drew* matter involve class action claims brought on behalf of students affected by the closure of their university due to COVID-19, who allege that they "lost the benefit of the education for which they paid, and[] the services for which their fees were paid, without having their tuition and fees refunded to them." Compl. ¶ 1; *compare with Fairleigh*, No. BER-L-0004966020 (N.J. Sup. Ct. Feb. 5, 2021), Exs. 1-2 to Fraietta Decl. Both cases bring the exact same legal claims (*i.e.*, breach of contract, unjust enrichment, conversion, and money had and received) and the same theory of injury, namely that Plaintiffs contracted for "*in-person* education" and are thus "entitled to a refund of tuition and fees for in-person educational services, facilities, access, and[] opportunities that Defendant has not provided." Compl. ¶ 4 (italics in original); *compare with Fairleigh*, No. BER-L-0004966020 (N.J. Sup. Ct. Feb. 5, 2021). In any event, Judge Wilson of Bergen County denied Fairleigh's motion in its entirety on February 5, 2021. *See Fairleigh*, No. BER-L-0004966020 (N.J. Sup. Ct. Feb. 5, 2021). This Court should reach the same conclusion here and deny Drew's motion.

Beginning in March 2020, the COVID-19 global pandemic disrupted the daily lives of nearly all Americans, and certainly those in New Jersey. Among the hardest hit were students and their families, like Plaintiffs Crista Dougherty ("Ms. Dougherty") and Angel Dougherty ("Angel"), who paid tens of thousands of dollars in tuition and fees in exchange for an in-person, on-campus educational experience, including all of the services, opportunities, and activities that come therewith, only to have that in-person experience ripped away. Students and their families,

like Plaintiffs, could have paid for enrollment in an online program at half the price, but opted to pay a premium for an in-person educational experience instead.  Many students and their families undertook significant debt to make these tuition and fee payments.  Nonetheless, although it has an endowment of over $138 million, Drew has refused to refund any of the tuition and fees paid by students and their families for an in-person educational experience.  As is clear from its Motion to Dismiss, Defendant believes that its students and their families should bear all of the costs of the COVID-19 pandemic.  *See* Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiffs' Complaint (hereinafter, the "Motion" or "MTD").  The Court should not permit this inequity.

Defendant argues that Plaintiffs' claims sound in "educational malpractice," and that a student may only sue a university for breach of contract if she can point to an overwhelmingly specific contractual promise.  But that is not the law.[1]  Indeed, courts across the country, including New Jersey, have by overwhelming majority denied substantially similar motions to dismiss made by other educational institutions arguing that claims brought in the COVID-19 context against universities constitute "educational malpractice."  *See Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Feb. 5, 2021); *McCarthy v. Loyola Marymount Univ.*, Case No. 2:20-cv-04668-SB, (C.D. Cal. Jan. 8, 2021); *Bergeron v. Rochester Institute of Technology*, Case No. 6:20-cv-06283-CJS, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020); *Ford v. Rensselaer Polytechnic Institute*, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020); *Chong v. Northeastern Univ.*, 2020 WL 7338499 (D. Mass. Dec. 14, 2020); *Gibson v. Lynn Univ., Inc.,* 2020 U.S. Dist. LEXIS 222214 (S.D. Fla. Nov. 29, 2020); *Saroya v. Univ. of the Pacific,* 2020

---

[1] As detailed herein, New Jersey courts hold that a student can sue a school for breach of contract, subject to the same contracts law as any other contracting party.  *See Moe v. Seton Hall Univ.*, 2010 WL 1609680 (D.N.J. Apr. 20, 2010).

WL 7013598 (N.D. Cal. Nov. 27, 2020); *Kishinevsky v. Board of Trustees of Metropolitan State University of Denver*, Case No. 2020CV31452 (Denver Dist. Ct. Col. Nov. 23, 2020); *Spiegel v. The Trustees of Indiana Univ.*, Case No. 53C06-2005-CT-000771 (Monroe Cir. Ct. Ind. Nov. 19, 2020); *Verlanga v. University of San Francisco*, Case No. CGC-20-584829 (Cal. Super. Ct. Nov. 12, 2020); *Rosado v. Barry Univ. Inc.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020); *Zahn v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230 (Ohio Ct. Cl. Oct. 19, 2020); *Waitt v. Kent State Univ.*, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020); *Salerno v. Florida Southern College*, -- F. Supp. 3d --, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020); *Garland v. Western Michigan Univ.*, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020); *Smith v. The Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020); *McDermott v. Ohio State Univ.*, 2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020); *Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*, 2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Ind. Aug. 12, 2020); *Milanov v. Univ. of Michigan*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020); *Cross v. Univ. of Toledo*, 2020 Ohio Misc. LEXIS 121 (Ohio Ct. Cl. July 8, 2020).[2]

The reasoning is straight-forward: universities are not entitled to judicial deference in transactions involving more than pure academic judgment. For example, if a university contracts to sell one of its buildings and then reneges on the deal, the putative buyer is not required to face a special contractual standard because the defendant happens to be an educational institution.

Here, Plaintiffs' claims are not academic in nature, but rather commercial, based on fundamental principles of contract law. Plaintiffs' Complaint ("Compl.") does not take issue with the specific ways that individual professors elected to teach their classes once remote learning was mandated. Nor do Plaintiffs suggest, for example, that classes should have been

---

[2] Copies of these decisions are attached as Exhibits 1-21 to the Fraietta Declaration.

taught differently online.  Rather, Plaintiffs and the putative class paid millions of dollars to Defendant to purchase an in-person, on-campus educational experience with multiple benefits, services, experiences, and opportunities.  But once the switch to remote learning occurred, Plaintiffs were denied the experience for which they bargained and paid, including interaction with other students, the use of Defendant's infrastructure, buildings, libraries, labs, computers, etc., in the particular student's chosen discipline.  Plaintiffs, like all parties to a contract, are entitled to receive the benefit of their bargain.  The denial and deprivation of the rights, privileges, and in-person education, which Defendant has afforded students of Drew University since its founding, was a breach of contract between Plaintiffs and Defendant.  Defendant intended for students to rely upon the promises Defendant made as part of its offers of admission and course registration, and the students and their families did, in fact, rely upon Defendant's offers, to their detriment.

Although Defendant says it "had no choice other than to transition to remote instruction," MTD at 1, as the *Rosado* court explained when analyzing nearly identical facts, "[t]he question is not whether [Defendant University] was justified in closing its campus due to an unforeseen pandemic.  Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about."  *Rosado*, 2020 WL 6438684, at *4.

Simply put, Defendant did not provide Plaintiffs with the services that it marketed to the public to distinguish itself from other competitors, even though Plaintiffs bargained and paid for them.  The law does not permit Defendant to retain 100% of the monies Plaintiffs and similarly situated individuals paid for the Spring 2020 semester at Drew University.

## II.    FACTUAL BACKGROUND

Defendant's Spring 2020 semester began on or about January 13, 2020 and concluded on or around May 6, 2020.  Compl. ¶ 19.  In response to the COVID-19 pandemic, "[o]n March 10,

2020, Defendant, via Drew University President MaryAnn Baenninger, announced that '[a]ll face to face classes are cancelled [from] … March 11-13[,]' and that, because of the global COVID-19 pandemic, all previously live classes would be conducted remotely beginning March 16, 2020, through at least April 3, 2020." *Id.* ¶ 7; *see also id.* ¶ 33. "Then, in an update dated March 17, 2020, President Baenninger announced the 'suspension of most campus operations' and that remote learning would continue through the remainder of the semester and finals week." *Id.* Accordingly, "Drew University [did not hold] any in-person classes [from] … March 10, 2020" through the end of the Spring 2020 Semester. *Id.* ¶ 8. "Classes that [] continued [were] only [] offered in an online format, with no in-person instruction." *Id.* "As a result of the closure of Defendant's facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities for which Plaintiffs and the putative Class contracted and paid." *Id.* ¶ 9. Thus, "Defendant did not provide in-person education, experiences, or related services for approximately 49% of the Spring 2020 Semester." *Id.* ¶ 11. "Nonetheless, Defendant has not refunded any tuition or fees for the Spring 2020 Semester." *Id.* ¶ 10.

   "Plaintiffs and Defendant entered into a contractual agreement whereby Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services." *Id.* ¶ 3. "The terms of the contractual agreement were set forth in publications from Drew University, including in the Drew University Academic Catalog (the 'Academic Catalog'), specifically the 2019-2020 College of Liberal Arts Academic Catalog." *Id.* "The Academic Catalog provided Plaintiff Angel Dougherty and Class Members with information regarding the courses offered, the relevant department, credit hours, classroom activities, and the manner in which each course is to be held." *Id.* ¶ 6.

5

Plaintiff Angel Dougherty "was an undergraduate student at Drew University [during the Spring 2020 Semester,] majoring in Fine Arts and minoring in Art History." *Id.* ¶ 13. Plaintiff Crista Dougherty is the mother of Plaintiff Angel Dougherty. *Id* ¶ 14. Plaintiffs Crista Dougherty and Angel Dougherty paid approximately $8,400 in tuition and fees to Defendant for the Spring 2020 semester. *Id.* ¶¶ 13, 14. "When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring 2020 Semester, Plaintiff Angel Dougherty and Class Members viewed the Academic Catalog to make specific course selections prior to registering and paying for selected courses." *Id.* ¶ 5; *see also id.* ¶ 55. "Plaintiff Angel Dougherty and the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll and/or pay for enrollment on an in-person basis." *Id.* ¶ 35.

## III.   LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

//

//

6

## IV.    ARGUMENT

### A.    Plaintiffs State A Claim For Breach Of Contract

#### 1.    New Jersey Courts Recognize Implied Contracts Based On University Publications

First, Defendant argues that "isolated provisions from a university publication, such as the provisions Plaintiffs try to rely on here, cannot give rise to a contract between a student and a university."  MTD at 2; *see also id.* at 11-13.  But Plaintiffs here are not pointing to *isolated* provisions of a university publication.  Rather, Plaintiffs have alleged that Defendant's publications contained numerous representations that reveal an in-person and on-campus education was a basic assumption of what both parties believed Defendant was offering Plaintiffs and the putative class.  Compl. ¶¶ 2-11, 20-22, 24-32, 35-38, 40-41, 43-47, 55-64.

Indeed, Defendant totally overlooks the legal principle that Plaintiffs may bring a breach of contract claim based on an implied contract in New Jersey.  Indeed, courts in this District have found that an implied contract exists between a University and its students.  *See Mucci v. Rutgers*, 2011 WL 831967, at *19 (D.N.J. Mar. 3, 2011) ("New Jersey recognizes an implied agreement between students and universities").  Courts in this District have also found contractual obligations arising from provisions found in University publications similar to what is at issue in the instant case.  *See Moe v. Seton Hall University*, 2010 WL 1609680, * 5 (D.N.J. Apr. 20, 2010) ("Defendants also argue that Plaintiff's contract claim is based upon a student manual and therefore fails as a matter of law.  Defendants' position[,] … in the Court's view, misstates the law.").[3]

Defendant's reliance on *Mittra v. University of Medicine and Dentistry of N.J.*, 316 N.J.

---

[3] *See also Gibson*, 2020 U.S. Dist. LEXIS 222214, *6-7 ("[T]he terms of that contractual relationship 'may be derived from university publications such as the student handbook and catalog.'") (quoting *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013)).

Super. 83 (App. Div. 1998) is misplaced because, in that case, the "plaintiff presented no evidence indicating that [Defendant] deviated in some significant way from its published rules and regulations.  His mere, conclusory allegation in his complaint that appropriate procedures were not followed was insufficient to withstand summary judgment."  *Mittra*, 316 N.J. Super. at 92.  Here, by contrast, Plaintiffs identify specific deviations from Defendant's published materials.  *See* Compl. ¶¶ 2-11, 20-22, 24-32, 35-38, 40-41, 43-47, 55-64.

*Romeo v. Seton Hall University*, 378 N.J. Super. 384 (App. Div. 2005), also cited by Defendant, is similarly flawed.  *See* MTD at 12 (citing *Romeo*, 378 N.J. Super. at 395).  In *Romeo,* which was an appeal of a summary judgment order, the court's ruling was not that a university publication could not create a binding contract.  Rather, the court held that under the facts of that case, an "*isolated provision[]*" of a student manual, did not create a contract to waive the protections afforded to a religious institution that existed under a state statute.  *Id.* at 389, 395 ("[Plaintiff] argues that Seton Hall waived its exemption [of N.J.S.A. 10:5-12] through the written statement found in its 'Non Discrimination Policy.'").  In addition, *Romeo* was partially decided on the basis of First Amendment protections that are inapplicable to the instant case.  *Id.* at 395 ("The case for such discretion is even greater, whereas here, the very values and mission in question address fundamental religious ideals.").  As discussed above, Plaintiffs here do not allege that the parties contracted for an in-person education based on *isolated provisions* of a student manual, but rather that several Drew publications reveal that an in-person and on-campus education was a basic assumption of both of the parties that went to the very heart of the agreement struck between Drew and its students.  Compl. ¶¶ 2-11, 20-22, 24-32, 35-38, 40-41, 43-47, 55-64.

Additionally, Defendant relies upon *Cruz v. Seton Hall Univ.*, 2012 U.S. Dist. LEXIS

96005 (D.N.J. July 10, 2012), but that case is also distinguishable. *See* MTD at 12 (citing *Cruz*). In *Cruz*, a summary judgment decision, the Court found there was no evidence to support the student plaintiff's allegations that he was asked to move rooms solely because of his sexual orientation. *Id.* at *18. Additionally, the alleged promise by the defendant-university in *Cruz* was contained in materials that included a specific and unambiguous disclaimer claiming the "right to move a Resident from one room to another when the University determines, in its sole and absolute discretion that the move is in the Resident's best interest or those of his/her fellow students and/or the University's." *Id.* By contrast, the instant case is not yet ripe to make a factual determination about evidence that has not yet been introduced. At any rate, the only disclaimer at issue here (discussed further below) contains broad and ambiguous language that does not specifically reserve the right to move classes online. *See infra,* at 10-13.

Finally, New Jersey law instructs that Defendant's argument is premature because "[w]hether the parties acted in a manner sufficient to create implied contractual terms is a question of fact generally precluding summary judgment." *Troy v. Rutgers*, 168 N.J. 354, 365-66 (2001) (citations omitted); *see also id.* at 371-72 ("We find it persuasive that the federal district court, in its thoughtful opinion, determined that summary judgment was not appropriate on that issue. The ultimate resolution of whether plaintiffs had an enforceable contract in respect of CY appointments must be rendered by the finder of fact."). Thus, Defendant's argument is especially ill-suited for resolution on the pleadings. *Haverty v. Andres & Berger, P.C.*, 2004 WL 2701040, at *7 (N.J. Super. Ct. App. Div. Nov. 9, 2004) (following *Troy* and holding that "[f]or an express or implied contract, the contractual terms generally require specificity, but the degree of specificity required is a very fact-based determination."); *Reynolds v. Palnut Co.*, 330 N.J. Super. 162, 171-72 (App. Div. 2000) (holding summary dismissal of breach of implied

employment contract claim inappropriate where factual issue over existence of oral policy).

### 2. Defendant's "Reservation Of Rights" Provision Lacks The Requisite Specificity And Is Therefore Unenforceable

Next, Defendant attempts to escape its contractual obligations by relying upon a disclaimer in its Academic Catalog, which purportedly "reserves the right in [Drew's] sole judgment to make changes of any nature in the University's academic program, courses, schedule, or calendar whenever in its sole judgment it is deemed desirable to do so…."  MTD at 13-14; *see also* Stio Decl., Ex. H.  However, the disclaimer in question is inapplicable and unenforceable, as it lacks the requisite specificity under New Jersey law.  As the court held in *Behne v. Union City College*, language which sums to "subject to change," does not "constitute a sufficient disclaimer."  2018 WL 566207, at *1 n.2 (D.N.J. Jan. 26, 2018).  Indeed, "adopting defendants' position could lead to the conclusion that the university could simply cancel all classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted."  *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *9 n.1 (Mich. Ct. Claims July 27, 2020).

*Deen v. New Sch. Univ.*, 2007 WL 1032295 (S.D.N.Y Mar. 27, 2007) is instructive.  In *Deen*, the court stated that a disclaimer needs to be specific to excuse a university from a promise that would otherwise be a contractual obligation.  *Id.* at *2.  Furthermore, *Deen* held that where a disclaimer is ambiguous, extrinsic evidence would need to be introduced to resolve the ambiguity, which is inappropriate at the motion to dismiss stage.  *Id.* at *4 ("Because the disclaimer is ambiguous with respect to whether the catalogue promises graduates of the program an Actors Studio diploma, the Court next considers the availability of extrinsic evidence [to find the meaning of the disclaimer to the parties].").  Applying this rule, the court in *Deen*, found that a disclaimer very similar to the one at issue in this case was ambiguous as to whether

it applied to a university's decision to end an association with the New York Actors Studio that it had previously advertised in its course catalogue. *Id.* at *3. Because both parties in *Deen* produced extrinsic evidence suggesting differing accounts of their reasonable expectations, there was a genuine issue of material fact that was unable to be resolved at the summary judgement stage. *Id.* at *3-4.

The cases that Defendant cites in support of its argument here further highlight this issue. *See* MTD at 14-15 (citing *Beukas v. Bd. of Trustees of Farleigh Dickinson Univ.*, 255 N.J. Super. 552, 556 (Law Div. 1991) and *Gourdine v. Felician College*, 2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006)). That is because, unlike in *Deen*, *Beukas* and *Gourdine* were decided on the basis of disclaimers that the court found clear and unambiguous. *See Beukas*, 255 N.J. Super. at 556 (finding disclaimer at issue specifically mentioned right to cancel program in its entirety before program was cancelled for financial reasons on motion for summary judgment); *Gourdine*, 2006 WL 2346278, at *2, *4 (same).

Defendant further relies on *Gociman v. Loyola University of Chicago*, 2021 WL 243573 (N.D. Ill. Jan. 25, 2021) and *Hassan v. Fordham University*, 2021 WL 293255 (S.D.N.Y. Jan. 28, 2021), in support of its argument. MTD at 16-17. However, neither decision is applicable to the instant case because neither case involved the application of New Jersey law. Additionally, *Gociman* relied heavily on *Lindner v. Occidental College*, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) as authority. But *Lindner*, which also did not apply New Jersey law, is currently on appeal due its reliance on *Chong v. Northeastern Univ.*, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ("*Chong I*"), which was superseded by *Chong v. Northeastern Univ.*, 2020 WL 7338499 (D. Mass. Dec. 14, 2020) ("*Chong II*"). Moreover, with respect to *Fordham*, Plaintiffs respectfully submit that the district court's decision was incorrect. That decision goes against the

vast majority of cases across the country in which courts have found that college students adequately state a claim for breach of contract based on their respective universities' failure to provide bargained-for in-person educational services.  *See supra*, at 2-3 (collecting cases).  Additionally, although the district court in *Fordham* granted the defendant's motion to dismiss, leave to amend was granted and therefore final judgment has not yet been entered.  Given the non-final nature of the court's ruling, the decision in *Fordham* is unpersuasive.

Defendant's disclaimer here does not specifically notify students that their in-person, on-campus classes may move online halfway into the semester.  The statement is ambiguous and could be understood to only apply to a change to a different physical location or a different time rather than a change to a strictly virtual program.  Thus, employing the reasoning in *Deen*, it would be inappropriate for the Court to dismiss the instant case at this stage because of an ambiguous disclaimer.  If the meaning of the disclaimer at issue in *Deen* could not be resolved at the motion for summary judgement stage in that case, the meaning of the nearly identical disclaimer in the instant case cannot be resolved at the motion to dismiss stage here.

Moreover, the purported disclaimers do not give Defendant the right to unjustly withhold funds as a result of a move online.  As the *Rosado* court explained when analyzing nearly identical facts, "[t]he question is not whether [Defendant University] was justified in closing its campus due to an unforeseen pandemic.  Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about."  *Rosado*, 2020 WL 6438684, at *4.  Defendant has not produced any agreement that shifts the financial burden to the Plaintiffs and the putative class specifically in the event of a move online as would be required.  *Hess Corp. v. ENI Petroleum US, LLC*, 435 N.J. Super. 39, 47 (N.J. Super. Ct. App. Div. 2014) ("Ordinarily, only if the force majeure clause specifically includes the event that actually

12

prevents a party's performance will that party be excused.") (citing *Kel Kim Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (1987)).  Here, even if the provision of in-person classes was impossible due to the coronavirus pandemic, Defendant nevertheless retained the full value of the tuition paid by Plaintiffs and class members, as well as other fees and expenses associated with enrollment and on-campus facilities.  Compl. ¶ 1.  This is impermissible, even under Defendant's cited provisions.

### 3.    Plaintiffs Have Sufficiently Pleaded That Defendant Promised An In-Person Experience And Breached That Promise

Defendant argues that "the course descriptions do not represent a contractual promise to hold in-person classes" because "[n]one of the course descriptions explicitly state that in-person classes will be held."  MTD at 18.  That argument fails because, as discussed above, New Jersey courts have acknowledged that, while there may be expressed terms in a contract, additional terms may also be implied where necessary to fulfill the purpose of the contract.  *See supra*, at 7-9; *see also Fairleigh* MTD Hearing Tr. at 6:5-20, Ex. 2 to Fraietta Decl.  In other words, contrary to Defendant's arguments, the Academic Catalog need not state – and the Complaint need not allege – any *explicit* promise that Plaintiff Angel's classes would be held in-person for Defendant to be contractually bound to such an expectation; it is enough that that Plaintiffs point to "promises and representations [of the Academic Catalog *relating to in-person instruction and activities*."  Compl. ¶ 24 (emphasis added).

Here, the parties unequivocally had a meeting of the minds that students were being offered the ability to take classes in-person and have the many benefits of access to Defendant's physical campuses for the entire semester.  That is clear from the numerous paragraphs of Plaintiffs' Complaint alleging specific promises made by Defendant in its Academic Catalog regarding "the courses offered, the relevant department, credit hours, classroom activities, and

13

the manner in which each course is to be held." *Id.* ¶ 6.  For instance, Defendant's Academic Catalog notes that the "Photography II (ART 230)" course offered during the Spring 2020 Semester "includes a photography field trip to New York City[,]" and it generally "promises that students can … [']produce gelatin silver prints in the darkroom.'"  That constitutes an implied promise to provide in-person instruction based on the fact that neither aspect of the course description is reasonably feasible for a student to complete in a remote setting.  Compl. ¶ 27. The same is true of the "Senior Studio II (ART 392)" course offered during the Spring 2020 Semester, which was actually "taken by Plaintiff Angel Dougherty and paid for by Plaintiff Crista Dougherty," and which the Academic Catalog promised would include "[w]eekly critiques" by "visiting artists[]" and culminate in a "senior exhibition in the Korn Gallery." *Id.* ¶ 25.  As the course description indicates, this course "involves a live senior gallery show, which is not possible in a virtual academic environment." *Id.* ¶ 13.  "Further, Angel's art classes were supposed to involve a feature of guest lecturers throughout the semester who were going to attend various classes to observe at the students' art, interact with the students, critique their work, and provide lectures on specialized subject matters." *Id.*  However, the Complaint alleges that "[a]fter all classes at Drew University went online, … Angel was not able to receive and/or benefit from the one-on-one evaluations and critiques with professors and guest lecturers that she was promised and had expected at the time of enrollment for the Spring 2020 Semester.  Indeed, none of the abovementioned resources were available to her while in-person classes were suspended and Defendant's campus was closed." *Id.*

In addition, the parties' prior course of conduct supports Plaintiffs' expectation that Defendant would provide in-person instruction and on-campus resources in exchange for the payment of tuition and fee monies.  Indeed, Plaintiff Angel, a senior at Drew University during

the Spring 2020 Semester, showed up for in-person classes and otherwise had access to campus facilities and services during the academic year for three years before Drew shut down campus and transitioned to remote learning. *See* Compl. ¶¶ 9, 11, 13-14, 18-22, 25, 33-35; *see also id.* ¶ 13 ("Defendant's decision to close campus also deprived Angel of her ability to participate in an in-person commencement ceremony, which Drew University had organized and held each May since its founding in 1950 until the Spring 2020 Semester, when no in-person commencement ceremony was held for the first time in 70 years."). Drew also "markets the on-campus experience at Drew University as a benefit of enrollment on Defendant's website." *Id*. ¶ 36. Such marketing materials encourage students to enroll at Drew based on the "environment" of "inclusiveness," the "wealth of campus activity," "the camaraderie of the students," and the "neighborhood atmosphere at Drew." *Id*. In addition, Drew charged fees that could only be used to support in-person and on-campus activities. *Id.* ¶¶ 13-14, 20-22. In sum, it is clear that prior to COVID-19, Plaintiffs and Defendant intended for the Spring 2020 Semester to be conducted in-person and on-campus.

Nevertheless, Defendant attempts to downplay the significance of its promises and representations by looking at each university publication in isolation. MTD at 11-13, 15, 18. But the allegations in a complaint are to be read as a whole, not parsed piece by piece. *Baskerville v. Society Hill at Droyers Point Condominium Ass'n*, 2009 WL 3849693, at *6 (N.J. Super. Ct. App. Div. Nov. 16, 2009) ("[The court] must accept as true the facts alleged in the complaint to determine whether, when indulgently viewed, they set forth a claim against defendants upon which relief can be granted. This requires a searching scrutiny of the complaint, made with liberality, as even a glimmer of a viable cause of action compels denial of the application."). Furthermore, New Jersey law instructs that the contractual obligations of the

parties to an agreement are determined by analyzing the entire course of conduct of the parties rather than the piecemeal approach taken by Defendant here. *Chemo Iberica, S.A. v. Betachem, Inc.*, 2016 WL 865734, at *1 (D.N.J. Mar. 7, 2016) ("[C]ourts will look to, among other things, all the relevant circumstances surrounding the transaction, as well as evidence of the parties' course of dealing, usage and course of performance.") (citing *Leitner v. Braen*, 51 N.J. Super. 31, 35 (1958)). When all relevant circumstances, university publications, and marketing materials are considered in their entirety, as New Jersey law instructs, Plaintiffs clearly contracted with Defendant for an in-person and on-campus education.

Furthermore, Plaintiffs were assessed several fees in addition to their tuition that were paid in exchange for support for their in-person, on-campus education. *See id*. ¶¶ 22-23. Plaintiffs allege that these fees, which include an "Art Fee" of $75, a "Parking Fee" of $200, and a "Technology Fee" of $125 were being used in support of the in-person and on-campus experience for which Plaintiffs had bargained and paid. *Id*. ¶¶ 13, 14.

Courts around the country have recognized this point, allowing fee claims to proceed on similar facts in the wake of COVID-19. For example, in *McDermott*, the student plaintiffs sought "to recover a prorated amount" of (1) "the student union fee, which plaintiff asserts was collected from each student specifically in exchange for use of the now-closed student union building," and (2) "the clinical support fee, which plaintiff similarly asserts was collected from each DDS candidate in order to provide for them live clinical programs." *McDermott*, 2020 Ohio Misc. LEXIS 127, at *1. In denying the defendant's motion to dismiss, the court held that allegations that the "defendant charged a fee specifically to support the dental clinic and then closed the clinic" would state claims for breach of contract and unjust enrichment. *Id*. at *4. *See also Salerno*, 2020 WL 5583522, at *2 (denying motion to dismiss breach of contract and unjust

enrichment claims for return of "tuition and fees"); *Cross*, 2020 Ohio Misc. LEXIS 121, *1 (denying motion to dismiss breach of contract and unjust enrichment claims for "refusal to provide adequate restitution for tuition, room and board, [and] fees"); *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *1 (denying motion to dismiss breach of contract and unjust enrichment claims for return of money paid for "in-person instruction, housing, meals, and student activities"); *Smith*, 2020 WL 5694224, at *1 (denying motion to dismiss claims brought by students "whose tuition and fees have not been refunded"); *Waitt*, 2020 WL 5894543, at *1 (denying motion to dismiss claims for "tuition and fees"); *Zahn*, 2020 Ohio Misc. LEXIS 230, at *3 (denying motion to dismiss breach of contract and unjust enrichment claims for return of "tuition and mandatory fees"); *Garland*, 2020 Mich. Ct. Cl. LEXIS 7, at *1 (denying motion to dismiss claims for "refund of pre-paid tuition, room and board, and fees"); *Mellowitz*, 2020 WL 5524659, at *1; *Rosado*, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020) ("[Defendant's] arguments are predicated on the notion that, if a breach existed with respect to the transition to online teaching, it was de minimis, since Rosado would still earn credits toward a diploma.  This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile.  …  That is [Defendant]'s argument and the Court declines to consider it further."); *Verlanga*, Case No. CGC-20-584829, at 7 ("It was reasonable for Plaintiffs to expect when they were billed for the Spring semester that they would receive the services, including in-person instruction ... that were allegedly promised them.").

      **4.**    <u>**Defendant's Obligations Are Not Limited To Providing Students With The Opportunity To Earn Credits**</u>

Defendant argues that "Drew's policy on tuition and fees directly ties tuition to the number of credits a student takes."  MTD at 18.  Beyond the offensiveness of a university arguing that the only value being offered in exchange for the university's tuition is credits

towards a piece of paper, rather than the education that it is supposed to symbolize, Defendant's position is also wrong and irrelevant.  The idea that both Drew and its students did not believe that Drew was offering an in-person education in exchange for tuition is contradicted by numerous Drew publications and statements.  *See* Compl. ¶¶ 2-11, 20-22, 24-32, 35-38, 40-41, 43-47, 55-64.  Moreover, Defendant's position fails to contradict Plaintiffs claims as Plaintiffs contracted for the opportunity to earn credits in an in-person classroom rather than the opportunity to earn credits in a virtual classroom.

Defendant notes that "Plaintiffs do not qualify" for a refund under the Drew "refund policy," and "Plaintiffs do not claim that Angel sought to withdraw" from her courses.  MTD at 19.  That is irrelevant.  Defendant did not move classes online until 49% into the semester, and so Plaintiffs were not warned at the time they contracted with Defendant for an in-person and on-campus education that their courses would eventually no longer be conducted in-person and on-campus.  Compl. ¶¶ 11, 64.  Regardless, a non-breaching party is entitled to "choose to proceed with the contract and recover in damages for the injuries caused by the breach."  *Deerhurst Estates v. Meadow Homes, Inc.*, 64 N.J. Super. 134, 145 (N.J. Super. Ct. App. Div. 1960) (citing Restatement, Contracts, § 410, comment (b)).  *See also Deerhurst Estates*, 64 N.J. Super. at 145 ("Simply because he is informed by the defaulting party that the latter cannot or will not perform one of his obligations under the contract, the injured party, by choosing to proceed nonetheless, obviously does not manifest agreement that the performance received is in full satisfaction of all contractual obligations.").  Thus, Plaintiffs were entitled to complete the semester and then sue for damages, as they did within weeks of the breach.

Other courts faced with nearly identical facts have applied this same reasoning.  *See, e.g.*, *Rosado*, 2020 WL 6438684, at *5 ("[Defendant] has not provided sufficient support for its

position that [Plaintiff] was required to threaten [Defendant], risk financial loss, and disrupt her academic career [by withdrawing from her classes] in order to preserve her contractual remedies."); *see also Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Feb. 5, 2021).  Thus, Plaintiffs were entitled to complete the semester and then sue for damages, as they did within weeks of Defendant's breach.

####    B.      Plaintiffs State A Claim For Unjust Enrichment

Defendant argues that Plaintiffs' claim for unjust enrichment fails for at least three reasons.  MTD at 20-22.  First, Defendant argues Plaintiffs' claim cannot stand because the unjust enrichment claim duplicates the breach of contract claim.  *Id.* at 20.  That is wrong.

Defendant's argument plainly contradicts Federal Rule of Civil Procedure 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim or defense *alternatively* or hypothetically …."  (emphasis added).  Rule 8(a)(3) likewise provides that a complaint may "include relief in the *alternative* [such as equitable relief here] or different types of relief." (emphasis added).  Additionally, it is well established that "[i]n the Third Circuit, … a plaintiff may plead a breach of contract claim and an unjust enrichment claim in the alternative when the validity of the contract is disputed."  *Jannarone v. SunPower Corp.*, 2020 WL 2085635, at *5 (D.N.J. Apr. 30, 2020) (citing *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014)); *SAT Agiyar, LLC v. 7-Eleven, Inc.*, 2020 WL 3546821, at *6 (D.N.J. June 30, 2020) ("[P]leading both breach of contract and unjust enrichment is plausible [] when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy.") (citation and quotation marks omitted); *U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*, 2014 WL 197878, at *3 (D.N.J. Jan. 14, 2014) (finding that "[i]It is only duplicate recovery that is prohibited," and not alternative theories of liability).

In other words, the existence of a contract alone does not foreclose recovery under unjust enrichment.  Instead, unjust enrichment claims will fail where there is a *valid and enforceable* contract that *actually governs the issue in dispute*.  An otherwise existing "contract" might be invalid where, for example, there is a lack of consideration.  Likewise, an otherwise valid contract might not address the issue in dispute or might be unenforceable under common law avoidance doctrines.  The merits of any affirmative defenses Defendant may raise are fact-intensive and not appropriate for discussion at this stage.  But the possibility that Defendant asserts those defenses in the future remains.  If the finder of fact (or the Court at a later stage) finds that Defendant's performance was excused, Plaintiffs' claims for equitable relief are not only viable but appropriate.  Indeed, in the cases of impossibility, impracticability, and frustration of purpose, *both* parties are excused from performance and the law seeks to restore both parties to their pre-contract position.

Here, Plaintiffs pleaded their claims for unjust enrichment in the alternative to their breach of contract claim, as they are permitted to do under Federal Rule of Civil Procedure 8(d).  *See* Compl. at Count II ("Unjust Enrichment … On Behalf Of The Class And Subclass In The Alternative") (emphasis omitted); *see also id.* ¶¶ 65-71.  Moreover, Defendant disputes the existence of a contract entitling Plaintiff Angel Dougherty and similarly situated individuals to ***in-person*** education during the Spring 2020 Semester at Drew University.  *See, e.g.*, MTD at 18 ("[T]he breach of contract claim fails because the Academic Catalog provisions that Plaintiffs rely on do not obligate Drew to provide Angel Dougherty with in-person instruction.  None of the course descriptions explicitly state that in-person classes will be held.  Thus, the course descriptions do not represent a contractual promise to hold in-person classes[.]").  As a result, it is unclear whether Plaintiff Angel and members of the putative class were entitled, contractually

20

or otherwise, to in-person classes and on-campus resources during the Spring 2020 Semester,

which is a core point of contention in this case – pleading in the alternative is appropriate to

provide additional, alternative remedies.  Indeed, it would be premature at this stage to dismiss

Plaintiffs' unjust enrichment claims simply because Drew speculates that they *may* later be

eclipsed by some other cause of action.  *See, e.g.*, *In re K-Dur Antitrust Litigation*, 338 F. Supp.

2d 517, 544 (D.N.J. 2004) (finding defendant's motion to dismiss plaintiff's unjust enrichment

claim as premature even where other remedies at law were available to plaintiff); *In re Insurance*

*Brokerage Antitrust Litig.*, 2017 WL 3642003, at *14 (D.N.J. Aug. 23, 2017) (rejecting the same

argument Defendant makes here based on Rule 8 and holding that "a plaintiff may plead a quasi-

contract claim even if it is factually inconsistent with other claims or theories premised on the

existence of a contract").

> In time, this case will resolve as a breach of contract action *or* an unjust enrichment

action, and not both.  *See Jannarone*, 2020 WL 2085635, at *5 ("A Court may allow an

alternative unjust enrichment claim to survive a motion to dismiss even though a plaintiff may

not prevail on both claims at summary judgment.") (citing *Bell Container Corp. v. Palagonia*

*Bakery Co. Inc.*, 2019 WL 8105297, at *3 (D.N.J. Dec. 26, 2019)).  However, that issue is not

ripe for resolution at this time.  Until such evidence is gathered (outside of the four corners of

pleadings) to allow the Court or the trier of fact to establish the existence and enforceability of a

contract, Plaintiffs' claims for unjust enrichment can and must be maintained.  *See, e.g.*, *Salerno*,

2020 WL 5583522, at *1 (rejecting argument that unjust enrichment claim was improper:

"Regardless of whether a contract exists, the College disputes the merits of the breach of contract

claim.  Even more important, this Court has consistently held that a plaintiff may allege

alternative claims in her complaint."); *Gibson*, 2020 U.S. Dist. LEXIS 222214, *18 (finding

dismissal of unjust enrichment on pleadings claim premature: "Although Lynn does not dispute that the relationship between a university and its students is contractual in nature, it vehemently disputes the existence of a contract for in-person education.").

Second, Defendant argues that "Plaintiffs' unjust enrichment claim fails because Plaintiffs do not adequately allege that Drew unjustly retained the benefit of their tuition and fees." MTD at 21. This is wrong. To state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford,* 144 N.J. 564, 575, 677 A.2d 747 (1996). In this case, Plaintiffs have done just that by alleging: that "Plaintiffs and members of the Class conferred a benefit on Defendant in the form of monies paid for Spring 2020 Semester tuition and other fees in exchange for certain services and promises;" that "[t]uition for Spring 2020 Semester was intended to cover in-person educational services from January through May 2020;" that Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected;" and that "[i]t would be unjust and inequitable for Defendant to retain the benefit." Compl. ¶¶ 67, 69, 70.

Nonetheless, Defendant argues that "Plaintiffs cannot plausibly allege that Drew unjustly retained the benefit of their tuition and fees" because Plaintiff Angel continued to receive remote instruction from Drew and "received credit" for courses taken during the Spring 2020 Semester. MTD at 21-22. But this argument misses the mark. Equity and good conscience require disgorgement not because Defendant switched Plaintiff Angel's classes online without providing college credits, but because Defendant switched Plaintiff Angel's classes online *while retaining the tuition and fee monies Plaintiffs paid for an in-person education, experience, and services.*

Compl. ¶¶ 67-71.  The inequity here is expecting students and their families (most of whom have incurred substantial debt in order to finance their purchases from Defendant) to continue to pay for 100% of the products, programs, access, and services that were never actually provided.  *See Gibson*, 2020 U.S. Dist. LEXIS 222214, *19-20 (finding that "it would be inequitable for Lynn to retain the full tuition and fees paid by him and similarly situated students for the full Spring 2020 semester," where plaintiff "alleged that the tuition and fees were at least in part intended to cover services, resources, and access to facilities that Lynn did not provide or only partially provided.").

Third, Defendant states that "unjust enrichment claim fails for the additional reason that there is no allegation … that Drew … failed to utilize the tuition and fees it received to further its educational mission by continuing to provide education and student services remotely in the middle of a pandemic."  MTD at 22.  This is wrong.  Plaintiffs have alleged that Defendant retained the benefit of tuition "even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances."  Compl. ¶ 69; *see also id.* ¶ 71.  That is all that is required to plead a claim for unjust enrichment.  *See supra*, at 22.  In any case, the motion to dismiss stage is not the right time to inquire into whether Defendant actually retained the tuition – that is a question of fact that can only be resolved at a later stage.  *See Des Lauriers Municipal Solutions, Inc. v. Franklin Tp.*, 2009 WL 1635455, at *3 (D.N.J. June 10, 2009) ("[B]ecause a genuine issue of material fact exists as to whether Defendants retained and used the [benefit conferred], Plaintiff may proceed with unjust enrichment claims.").

### C.    Plaintiffs State A Claim For Conversion

Next, Defendant argues that Plaintiffs' claim for conversion fails because it is "duplicative of the breach of contract claim."  MTD at 23.  But that argument fails because, like

23

unjust enrichment claims, New Jersey law allows a conversion claim to proceed in the alternative in case a contract that covers the subject matter is not found. *George E. Warren Corporation v. Colonial Pipeline Company*, 2017 WL 3038251, at *3 (D.N.J. July 17, 2017) ("[Plaintiff] pled conversion in the alternative, … [a]nd a party may, of course, set forth alternative versions of a claim in its pleadings.").

Defendant also argues that "Plaintiffs' conversion claim also fails for the separate reason that they do not plausibly allege the essential element that Drew wrongfully exercised dominion and control over the tuition and fees she paid." MTD at 24. But that is incorrect. Under New Jersey law, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Capital Health Sys. v. Veznedaroglu*, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017) (quoting *Ricketti v. Barry*, 2015 WL 1013547, at *8 (D.N.J. Mar. 9, 2015)). A conversion claim consists of the following elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Capital Health Sys.*, 2017 WL 751855, at *10.

Here, Plaintiffs allege that they had identifiable ownership rights to in-person educational services when they paid tuition and fees in exchange for that particular purpose. Compl. ¶ 74. Plaintiffs also allege that Defendant retained possession of those funds, to the exclusion of Plaintiffs, and that such retention was unauthorized because Defendant failed to apply the funds to the particular purpose for which they were paid. *Id.* ¶¶ 75-78. Accordingly, Plaintiffs state a claim for conversion.

### D.    Plaintiffs State A Claim For Money Had And Received

Defendant argues that Plaintiffs' "money had and received claim fails because it is

24

duplicative of the[ir] breach of contract claim[.]"  MTD at 25.  But like unjust enrichment and conversion claims, a plaintiff may obtain relief in quasi-contract for money had and received in the alternative.  *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d at 544; *New York Pipeline Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*, 2012 WL 209349, at *2, n.2 (D.N.J. Jan. 24, 2012) (stating "'unjust enrichment' and 'money had and received' are in essence the same claim").  Thus, for the same reasons that Plaintiffs have properly pleaded their unjust enrichment claims, they have also properly pleaded their money had and received claims.

> ### E.      Plaintiffs Do Not Allege Educational Malpractice

Finally, Defendant attempts to recast Plaintiffs' allegations as claims of "educational malpractice," which Defendant argues "are not cognizable under New Jersey law."  MTD at 25. But not every action by a student or parent against a school is an educational malpractice claim. Where the breach of contract does not ask the court to "evaluate the course of instruction," nor allege "that the school breached its agreement by failing to provide an effective education," but instead alleges failure to provide specified services, the action may be properly maintained. *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (2d Dep't 1982) ("[I]f the contract with the school were to provide for certain specified services … for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable."); *see also Williams v. Board of Ed. Of Paterson*, 2017 WL 3131974, at *4 (D.N.J. July 21, 2017) (finding plaintiff's claim was not educational malpractice where it was "not one of misjudgment in designing an educational regime").

Indeed, courts across the country have uniformly held that claims like those Plaintiffs bring here are <u>not</u> based on educational malpractice.  *See, e.g.*, *Gibson v. Lynn Univ., Inc.*, 2020 U.S. Dist. LEXIS 222214, *13-14 (S.D. Fla. Nov. 29, 2020) (holding that "this is not a case

about the quality of the education Lynn provided students during the Spring 2020 semester," but rather based on "Lynn's alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources."); *Salerno*, 2020 WL 5583522, at *5 (holding claim was not based in educational malpractice where "[Plaintiff] also admits in her response that her claim is not about the College's decision to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached."); *Cross*, 2020 WL 4726814, at *3 ("Cross's Complaint presents claims of breach of contract and unjust enrichment – not … 'educational malpractice,' as asserted by UT."); *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *9 ("This is a claim sounding in contract or in quasi-contract, not in due process."); *Mellowitz*, 2020 WL 5524659, at *1 (denying substantially similar motion to dismiss); *Smith*, 2020 WL 5694224, at *2 ("The essence of plaintiff's breach of contract claim is that she contracted for in-person classes and received online classes instead. The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice."); *Garland*, 2020 Mich. Ct. Cl. LEXIS 7, at *10 ("[P]laintiff is not asking the Court to interfere with or evaluate the substance of educational decision. Instead, she is alleging that she was promised one form of instruction, and that she had an express contractual agreement for the same, but that WMU switched the method of instruction without providing a refund."); *Waitt*, 2020 WL 5894543, at *2 ("KSU's suggestion that Waitt presents disguised educational malpractice claims is unpersuasive."); *Verlanga*, Case No. CGC-20-584829, at 7-8 ("This action does not involve what is essentially an educational malpractice claim or a decision that involves disciplinary discretion. Ruling on this fee dispute would not require an inquiry into the nuances of educational processes and theories, but rather than objective assessment of the University's performance of its promise.") (internal citations and emphasis omitted).

*Moe* is instructive.  2010 WL 1609680.  In that case, the plaintiff sued Seton Hall University for breach of contract, among other claims, alleging that it wrongfully dismissed her from her academic program by failing to comply with its policies and procedures concerning grading disputes and leaves of absence.  *Id.* at *1-2.  The court denied Seton Hall's motion to dismiss the breach of contract claim because "the gravamen of the dispute d[id] not relate to mastery of academic materials, but relate[d] to whether or not Moe complied with the procedures for taking leave and whether or not the University complied with its own procedures for grading and adjudicating grievances."  *Id.* at *5.  The *Moe* court found that while courts generally may not "intrude upon academic freedom … the sort of dispute allege here does not raise those policy concerns."  *Id.*

*Ansari v. New York University*, 1997 WL 257473 (S.D.N.Y. May 16, 1997) also provides useful guidance.  In *Ansari*, the court determined that promotional literature and written and oral communications between defendant and plaintiff comprised the terms of a contract and were the equivalent of promises that bound the university.  *Id.* at *3.  Those materials included promises to provide state-of-the-art facilities, hands-on training, and program activities from 9:00 a.m. to 4:00 p.m. every day.  *Id.*  The plaintiff alleged that defendant failed to deliver the hands-on training and facilities promised.  Defendant argued that it delivered substantially what it promised, and the deviations alleged by plaintiff were insubstantial.  *Id.* at *4.  The court determined that the plaintiff could maintain an action for breach of contract, as it was not required to review any educational decisions because the fact-finding was limited to whether the promises represented by the institution were provided, and denied the motion to dismiss.  *Id.*; *see also id.* at *3 ("Plaintiff's claim does not require an evaluation of uniquely professional academic decisions such as the adequacy of the courses or methods of instruction.  Rather, plaintiff's claim

requires an evaluation of whether defendants promised to provide services and failed to do so.").

Here, Plaintiffs' claims do not allege educational malpractice.  Rather, Plaintiffs allege that they "entered into a contractual agreement whereby Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services."  Compl. ¶ 3.  Plaintiffs allege that such rights included, among other things, "[f]ace-to-face interaction with professors, mentors, and peers," "[a]ccess to facilities such as libraries, laboratories, computer labs, and study room," and "[h]ands on learning and experimentation."  *Id.* ¶ 38.  It is undisputed that Defendant failed to provide these things from March 10, 2020 through the end of the Spring Semester 2020, and instead provided Plaintiffs with online remote learning that did not include any in-person or on-campus experience.  *Id.* ¶¶ 7-19, 33-34.  Plaintiffs do not ask the Court to review the educational decisions made by Defendant; Plaintiffs rather dispute Defendant's decision to retain 100% of tuition and fee monies paid for an in-person experience that Defendant did not deliver.

The cases cited by Defendant are readily distinguishable.  *See* MTD at 26 (citing *Myers v. Medford Lakes Bd. of Educ.*, 199 N.J. Super. 511 (App. Div. 1985) and *Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601 (Law Div. 1985)); *see also id.* at 28 (citing *Cavaliere v. Duff's Business Institute*, 605 A.2d 397 (Pa. Super. Ct. 1992)).  In *Myers*, the plaintiff "alleged educational malpractice in failing to provide him with a special remedial education to assist him to overcome his academic deficiencies."   *Myers*, 199 N.J. Super. at 513.  Similarly, the plaintiff in *Swidryk* and *Cavaliere* brought claims challenging the quality and difficulty of the education they received.  *See Swidryk*, 201 N.J. Super. at 603 (medical resident plaintiff alleged that his supervising physician "was negligent in that his [supervision of the

plaintiff] as director of medical education fell below the standard of care essential to protect others from an unreasonable risk of harm"); *Cavaliere,* 605 A.2d at 398 ("The issue is whether a complaint that pleads generally that students at a private court reporting school were given inadequate and improper instruction, in breach of an alleged implied contract for a quality education."). The claims in *Swidryk* and *Cavaliere* necessarily required "inquiry into the day to day operation" of an educational organization. *Id.* at 645. Here, in contrast, the claims at issue only require the court to evaluate "whether defendants promised to provide services and failed to do so." *Ansari*, 1997 WL 257473, at *3.

*Stein-O'Brien v. Pennington School*, 2008 WL 160588 (E.D. Pa. Jan. 15, 2008), cited by Defendant, highlights this distinction. *See* MTD at 28. In applying New Jersey law to the plaintiffs' breach of contract claims against a school, the court in *Stein-O'Brien* found that while the "general theory that Defendant failed to provide adequate or effective educational services to" the plaintiffs sounded in educational malpractice, the plaintiffs' claims "that Defendant engaged in conduct that constitutes breaches of specific contractual promises" did not. *Id.* The same reasoning applies here.

Defendant's reliance on *Regents University of Michigan v. Ewing*, 474 U.S. 214 (1985), *see* MTD at 26, is also inapposite. As the *Milanov* court explained:

> Plaintiffs are not asserting a due process violation or arguing that the University's decision to switch methods of instruction ran afoul of any constitutional rights. Instead, they are arguing that the university promised one method of instruction, charged tuition and fees commensurate with that method of instruction, yet provided a different (allegedly lesser) method of instruction. This is a claim potentially sounding in contract or quasi-contract, not in due process. The *Ewing* decision does not stand for the notion that any decision regarding academics is beyond review for a court. That is, while *Ewing* describes a number of areas into which a Court should be hesitant to intrude, principles of contract and quasi-contract are not among those areas.

29

*Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *8-9; *see also Garland*, 2020 Mich. Ct. Cl. LEXIS 7, at

*10 ("Here, in contrast to *Ewing*, however, plaintiff is not asking the Court to interfere with or

evaluate the substance of educational decision.  Instead, she is alleging that she was promised

one form of instruction, and that she had an express contractual agreement for the same, but that

WMU switched the method of instruction without providing a refund.").  Indeed, "adopting

defendants' position could lead to the conclusion that the university could simply cancel all

classes and then retain tuition and fees, having made the academic judgment that instruction was

unnecessary or unwarranted."  *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at *9 n.1.

In sum, the deference granted to educational institutions in certain matters is not as broad

or all-encompassing as Defendant contends.  Instead, such deference is granted only in cases

involving highly specialized academic judgments.  The decision to retain monies paid for

products and services that were never delivered is a standard commercial business decision, and

one encountered by all market participants who take money in return for the promise to deliver

services and/or products.  Defendant's decision to retain such monies in this case was not

academic in nature and clearly not a highly specialized academic judgment.  Plaintiffs' claims do

not rise in educational malpractice, and thus no special deference is afforded to Defendant.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's

motion to dismiss in its entirety.  To the extent Defendant's motion is granted in any respect,

Plaintiffs respectfully request leave to amend to cure such deficiencies.

Dated: March 1, 2021                              Respectfully submitted,

                                                  **BURSOR & FISHER, P.A.**

                                                  By:   */s/ Philip L. Fraietta*
                                                         Philip L. Fraietta

                                                  Philip L. Fraietta (NJ Bar No. 118322014)
                                                  888 Seventh Ave., Suite 304
                                                  New York, NY 10019
                                                  Telephone: (646) 837-7150
                                                  Facsimile: (212) 989-9163
                                                  E-Mail: pfraietta@bursor.com

                                                  **BURSOR & FISHER, P.A.**
                                                  L. Timothy Fisher (*pro hac vice* app. forthcoming)
                                                  Neal J. Deckant (*pro hac vice* app. forthcoming)
                                                  Julia K. Venditti (*pro hac vice* app. forthcoming)
                                                  1990 North California Blvd., Suite 940
                                                  Walnut Creek, CA 94596
                                                  Telephone: (925) 300-4455
                                                  Facsimile: (925) 407-2700
                                                  E-Mail: ltfisher@bursor.com
                                                          ndeckant@bursor.com
                                                          jvenditti@bursor.com

                                                  *Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRISTA DOUGHERTY and ANGEL DOUGHERTY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>DREW UNIVERSITY,<br><br>       Defendant. | Civil Action No.: 2:21-cv-00249-KM-ESK<br><br>Hon. Kevin McNulty<br><br>Motion Return Date: April 5, 2021 |

## DECLARATION OF PHILIP L. FRAIETTA

I, PHILIP L. FRAIETTA, hereby certify as follows:

  1.  I am an attorney-at-law licensed to practice in the State of New Jersey and I am a partner in Bursor & Fisher, P.A.'s New York office, located at 888 7th Avenue, New York, New York 10019. I am counsel of record for Plaintiffs in the above-captioned matter. I have personal knowledge of the facts set forth below and, if called upon, could and would competently testify thereto.

  2.  I make this declaration in opposition to Drew University's ("Drew" or "Defendant") motion to dismiss.

  3.  Attached hereto as **Exhibit 1** is a true and correct copy of the opinion from *Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Sup. Ct. Feb. 5, 2021).

  4.  Attached hereto as **Exhibit 2** is a true and correct copy of the motion to dismiss hearing transcript from *Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Sup. Ct. Feb. 5, 2021) (the "*Fairleigh* MTD Hearing Tr.").

5.      Attached hereto as **Exhibit 3** is a true and correct copy of the opinion from

*McCarthy v. Loyola Marymount Univ.*, Case No. 2:20-cv-04668-SB, (C.D. Cal. Jan. 8, 2021).

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the opinion from

*Bergeron v. Rochester Institute of Technology*, Case No. 6:20-cv-06283-CJS, 2020 WL 7486682

(W.D.N.Y. Dec. 18, 2020).

7.      Attached hereto as **Exhibit 5** is a true and correct copy of the opinion from *Ford*

*v. Rensselaer Polytechnic Institute*, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020).

8.      Attached hereto as **Exhibit 6** is a true and correct copy of the opinion from *Chong*

*v. Northeastern Univ.*, 2020 WL 7338499 (D. Mass. Dec. 14, 2020).

9.      Attached hereto as **Exhibit 7** is a true and correct copy of the opinion from

*Gibson v. Lynn Univ., Inc.,* 2020 U.S. Dist. LEXIS 222214 (S.D. Fla. Nov. 29, 2020).

10.      Attached hereto as **Exhibit 8** is a true and correct copy of the opinion from

*Saroya v. Univ. of the Pacific,* 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020).

11.      Attached hereto as **Exhibit 9** is a true and correct copy of the opinion from

*Kishinevsky v. Board of Trustees of Metropolitan State University of Denver*, Case No.

2020CV31452 (Denver Dist. Ct. Col. Nov. 23, 2020).

12.      Attached hereto as **Exhibit 10** is a true and correct copy of the opinion from

*Spiegel v. The Trustees of Indiana Univ.*, Case No. 53C06-2005-CT-000771 (Monroe Cir. Ct.

Ind. Nov. 19, 2020).

13.      Attached hereto as **Exhibit 11** is a true and correct copy of the opinion from

*Verlanga v. University of San Francisco*, Case No. CGC-20-584829 (Cal. Super. Ct. Nov. 12,

2020).

14.     Attached hereto as **Exhibit 12** is a true and correct copy of the opinion from

*Rosado v. Barry Univ. Inc.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020).

15.     Attached hereto as **Exhibit 13** is a true and correct copy of the opinion from *Zahn*

*v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230 (Ohio Ct. Cl. Oct. 19, 2020).

16.     Attached hereto as **Exhibit 14** is a true and correct copy of the opinion from *Waitt*

*v. Kent State Univ.*, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020).

17.     Attached hereto as **Exhibit 15** is a true and correct copy of the opinion from

*Salerno v. Florida Southern College*, -- F. Supp. 3d --, 2020 WL 5583522 (M.D. Fla. Sept. 16,

2020).

18.     Attached hereto as **Exhibit 16** is a true and correct copy of the opinion from

*Garland v. Western Michigan Univ.*, 2020 Mich. Ct. Cl. LEXIS 7 (Mich. Ct. Cl. Sept. 15, 2020).

19.     Attached hereto as **Exhibit 17** is a true and correct copy of the opinion from

*Smith v. The Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020).

20.     Attached hereto as **Exhibit 18** is a true and correct copy of the opinion from

*McDermott v. Ohio State Univ.*, 2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020).

21.     Attached hereto as **Exhibit 19** is a true and correct copy of the opinion from

*Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*, 2020 Ind. Super. LEXIS 854

(Marion Sup. Ct. Ind. Aug. 12, 2020).

22.     Attached hereto as **Exhibit 20** is a true and correct copy of the opinion from

*Milanov v. Univ. of Michigan*, 2020 Mich. Ct. Cl. LEXIS 1 (Mich. Ct. Cl. Jul. 27, 2020).

23.     Attached hereto as **Exhibit 21** is a true and correct copy of the opinion from

*Cross v. Univ. of Toledo*, 2020 Ohio Misc. LEXIS 121 (Ohio Ct. Cl. July 8, 2020).

I hereby certify that the foregoing is true and correct.  I am aware that if any of the

foregoing statements made by me are false, I am subject to punishment.

Dated: March 1, 2021                    Respectfully submitted,

                                        By: _/s/ Philip L. Fraietta_
                                               Philip L. Fraietta

                                        **BURSOR & FISHER, P.A.**
                                        Philip L. Fraietta (NJ Bar No. 118322014)
                                        888 Seventh Ave., Suite 304
                                        New York, NY 10019
                                        Telephone: (646) 837-7150
                                        Facsimile: (212) 989-9163
                                        Email: pfraietta@bursor.com

                                        **BURSOR & FISHER, P.A.**
                                        L. Timothy Fisher (*pro hac vice* app. forthcoming)
                                        Neal J. Deckant (*pro hac vice* app. forthcoming)
                                        Julia K. Venditti (*pro hac vice* app. forthcoming)
                                        1990 North California Blvd., Suite 940
                                        Walnut Creek, CA 94596
                                        Telephone: (925) 300-4455
                                        Facsimile: (925) 407-2700
                                        Email: ltfisher@bursor.com
                                                ndeckant@bursor.com
                                                jvenditti@bursor.com

                                        *Attorneys for Plaintiffs*

**EXHIBIT 1**

Angelo A. Stio III [ID# 01479-1997]
Michael E. Baughman [ID# 01981-1996]
**TROUTMAN PEPPER HAMILTON
  SANDERS LLP**
301 Carnegie Center
Suite 400
Princeton, NJ 08543
(609) 951.4125
*Attorneys for Defendant Fairleigh Dickinson University*

**FILED**

FEB – 5 2021

Robert C. Wilson
J.S.C.

| | |
|---|---|
| STEVEN DOVAL, MELISSA CUELLO, and CEANA CUELLO, individually and on behalf of all others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION BERGEN COUNTY **DENIED** |
| Plaintiffs, | NO. BER-L-004966-20 |
| v. | *Denied without Prejudice* |
| FAIRLEIGH DICKINSON UNIVERSITY, | |
| Defendant. | Motion Day: January 8, 2021 |

**[~~PROPOSED~~] ORDER**

**THIS MATTER** having come before the Court by way of motion of defendant Fairleigh

Dickinson University, ("FDU"), to Dismiss the Complaint, and the Court having considered the

Motion and any opposition thereto, and for good cause shown and for the reasons set forth on the

record;

**IT IS** on this _5th_ day of _February_, 2021, **ORDERED** as follows:

1.     FDU's Motion to Dismiss is hereby ~~GRANTED~~ *DENIED*;

2.     ~~The Complaint in the above-captioned matter is hereby dismissed with prejudice;~~

and

3.     Counsel for FDU shall serve a copy of this Order on all counsel within _7_ days

of receipt of this Order.

ROBERT C. WILSON, J.S.C.

**EXHIBIT 2**

                                SUPERIOR COURT OF NEW JERSEY
                                LAW DIVISION: CIVIL PART
                                BERGEN COUNTY
                                DOCKET NO.: L-4966-20
                                A.D. # _____

STEVEN DOVAL,                )
MELISSA AND CEANA CUELLO,)
                             )
        Plaintiffs,          )          TRANSCRIPT
                             )
        vs.                  )              OF
                             )
FAIRLEIGH DICKINSON          )           MOTION
UNIVERSITY,                  )
                             )
        Defendant.           )

                    Place: Bergen County Justice Center
                           (Heard via Zoom)


                    Date: February 5, 2021

BEFORE:

        HONORABLE ROBERT C. WILSON, J.S.C.

TRANSCRIPT ORDERED BY:

        PHILIP L. FRAIETTA, ESQ, (Bursor & Fisher, PA)

APPEARANCES:

        PHILIP L. FRAIETTA, ESQ. (Bursor & Fisher, PA)
        Attorney for Plaintiff's

        ANGELO STIO, ESQ. (Troutman Pepper Hamilton)
        Attorney for Defendant

                        Transcriber: Hollie Bennett
                        PHOENIX TRANSCRIPTION
                        796 Macopin Road
                        West Milford, NJ 07480
                        (862)248-0670

                        Audio Recorded
                        Recording Opr: Not indicated

<u>I N D E X</u>

                                                            <u>PAGE</u>


Colloquy re: Housekeeping..........................3



<u>MOTIONS</u>:                                    <u>PAGE</u>
Motion to Dismiss.........................4

<u>ARGUMENTS</u>:                                   <u>PAGE</u>

BY:  Mr. Stio....................................4,23

BY:  Mr. Fraietta...............................13,27

<u>THE COURT</u>:

Decision.........................................30

3

1          (Proceeding commenced @ 11:47:43 a.m.)

2          THE COURT:  This is the matter of Steven

3     Doval and Melissa Cuello and Ceana Cuello,

4     individually, on behalf of all others similarly

5     situated, versus Fairleigh Dickinson University on

6     L-4966-20.  Counsel for the plaintiff who is on the

7     motion, may I have your appearance, please?

8          MR. FRAIETTA:  Good morning, Your Honor, this

9     is Phil Fraietta of Bursor and Fisher.  I'm joined by

10    my colleague, Alec Leslie, as well as co-Counsel,

11    Antonio Vidoya (phonetic).

12         THE COURT:  Yes, but who will be arguing the

13    motion?

14         MR. FRAIETTA:  I will, Your Honor -- Mr.

15    Fraietta.

16         THE COURT:  All right, Mr. Fraietta, then

17    everyone else who is listening in must put their phones

18    on mute.  And, on behalf of Fairleigh Dickinson

19    University, may I have your appearance?

20         MR. STIO:  Yes, good morning, Your Honor,

21    Angelo Stio from Troutman, Pepper, Hamilton.  I have

22    with me my colleague, Chris Kierri (phonetic) and the

23    general Counsel for FDU, Edward Silver.  Angelo Stio

24    will be arguing the motion on behalf of FDU, Your

25    Honor.

1          THE COURT:  And, all are welcome to listen,

2     but Mr. Stio, you're the only one who will un-mute

3     their microphone.  Everyone else should now be on mute

4     because I believe it is your Motion to Dismiss the

5     plaintiff's complaint.  And, I'll hear your oral

6     argument for 10 minutes and then I'll recognize your

7     adversary for 10 minutes.  You may proceed.

8          MR. STIO:  Thank you, Your Honor.  Your

9     Honor, this cases arises from the COVID-19 pandemic.

10    Approximately half way into Fairleigh Dickinson's

11    spring semester, Governor Murphy entered an executive

12    order that required all universities to cease having in

13    person instruction.

14          In response to that executive order, FDU

15    quickly transitioned to a virtual learning environment

16    to deliver an education to its students, save the

17    spring semester, in the only way it was permitted to do

18    so under the law.  And, they took that action in

19    accordance with an expressed provision both in their

20    student handbook and in their student bulletin that

21    reserved the right for them to change courses, change

22    schedules, change times, change professors, and offer

23    reasonable alternatives.

24          And, Your Honor, that's what happened here.

25    Now, the plaintiff's have alleged that FDU breached the

1    contract that they had for in person education.

2    Plaintiff's don't point to any expressed provision.

3    They rely on an implied contract.  And, what they say,

4    Your Honor, is that there's a course catalog and the

5    course catalog implies a promise of in person

6    instruction because it lists courses, the days the

7    courses would meet, the instructor, and the physical

8    location on campus.  So, that's the implied contract --

9              THE COURT:  Mr. Stio -- Mr. Stio --

10             MR. STIO:  Your Honor, that's not an implied

11    contract --

12             THE COURT:  Mr. Stio -- Mr. Stio, can you

13    hear me?

14             MR. STIO:  It's general course information

15    and guidance --

16             THE COURT:  Oh no, you can't --

17             MR. STIO:  There was a case just last week

18    that --

19             THE COURT:  Mr. Stio, I -- maybe I need to

20    cut to the case here.  Will you at least admit that the

21    students who have a contract with Fairleigh Dickinson

22    -- which was they paid money and you were to provide

23    educational services.  I understand that you say that

24    you have fulfilled the contract but they did have a

25    contract; is that correct?

1          MR. STIO:  They had a contract to receive or

2     earn the ability to receive credits, yes, -- to get an

3     education.

4          THE COURT:  Okay, that's true too.  And, now

5     in any contract there may be expressed terms but then

6     the law also says there's implied terms in order to

7     fulfill the purpose of the contract.  And, that's

8     standard contract law and a standard jury charge we

9     have here in New Jersey.  So, it -- it is a contract

10    and then the contract may have implied terms in

11    addition to expressed terms.

12          And, then there is also an implied term of

13    the covenant of good faith and fair dealing in our

14    contract.  I understand that your adversaries have also

15    added a lot of other torts and things that may not

16    survive a Motion for Summary Judgment.  But, we'll go

17    back to that there is a contract and now with regard to

18    the contract that these students had, besides earning

19    credits, there were other things that they contracted

20    for that could no longer be provided.

21          While you were providing the education, they

22    may have lost their student activity fees that people

23    who took online courses didn't and you did not refund

24    those.  Or they may have had parking fees or a myriad

25    of other things that only those students that were on

7

1    campus would normally have.  But, since they were no

2    longer on campus, they were deprived of the fruits of

3    that.  Weren't they entitled to a refund of those kind

4    of things?

5              MR. STIO:  So, Your Honor, yes.  They

6    received a refund for -- they received a refund of

7    board.  They received a refund of room.  They received

8    a refund of parking.  FDU continued to offer services

9    virtually.  And, they only identify two fees in their

10   complaint that they claim were mandatory fees that

11   weren't refunded -- a technology fee which ironically

12   when you're taking classes virtually, it is off

13   technology, and a wellness fee and we point it out in

14   our reply brief that FDU has wellness applications and

15   continued to offer counseling and wellness services

16   remotely.

17             And, we cite to the same website that they

18   have relied upon in their complaint for their

19   allegations.  So, they can't say you didn't provide a

20   service.  Their whole claim, Your Honor, is well the

21   service you provided was subpar.  And, that gets into

22   education malpractice because New Jersey law makes

23   clear that if the Court is required to judge the

24   quality of education, that's education malpractice and

25   it's barred.

1          And, this isn't a case where they didn't

2    receive a service.  They're asking this Court to say

3    look at what in person instruction is, look at what

4    virtual instruction is, and you, Court, need to make a

5    quality determination as to what damages exist.  That's

6    not permissible under New Jersey law.

7          I also just want to point out, Your Honor,

8    that with all due respect an implied contractual

9    (indiscernible) that the Court has cited is a little

10   different in the college and university context.  And,

11   I would direct the Court's attention to our brief on

12   page 21 and our reply brief at four, in particular,

13   Mitra (phonetic), Cruz, and Barker cases.

14         In addition, there's the (indiscernible) case

15   that said, yes, there is a quasi-contractual clause of

16   action for breach of a policy or provision in a

17   handbook.  But, the University needs flexibility and

18   the inquiry there is on whether there's bad faith.

19   There is not a single allegation in this complaint of

20   bad faith.

21         In fact, the plaintiff's concede that FDU had

22   no other alternative but to continue the semester with

23   virtual education.  And, I would add Your Honor that

24   one of the plaintiff's, Ms. Ceana Cuello, actually

25   graduated on time and did not have her education

9

1    delayed.

2              And, I would submit to the Court that if FDU

3    shut down everything, we would be here with Ms. Cuello

4    filing a complaint saying you delayed my education, I

5    was delayed getting into the work force and I'm

6    entitled to damages.

7              So, the other thing I want to point out, Your

8    Honor, is yes there can be implied provision, but

9    implied provisions and the breach of duty of good faith

10   and fair dealings under New Jersey law, again, they

11   cannot replace expressed provisions.

12             And, there cannot be a contract here because

13   there is two very explicit reservation of rights

14   provisions that unquestionably give FDU the right to

15   change courses, to change schedules, to change the mode

16   of instruction, and provide reasonable alternatives.

17             That's what happened here.  We had a once in

18   a lifetime global pandemic.  It's the unexpected.  It's

19   the reason this reservation of rights provision is in

20   the course catalog and the student handbook.  FDU had

21   every right to do this in order to fulfill its

22   charitable educational purpose, which is continue to

23   provide an education to students.

24             And, I would submit to the Court that there

25   is no breach of contract because of that expressed

1     language in both the handbook and the student catalog

2     that gives FDU every right to do what it did here.

3     Under the circumstances, it continued to provide an

4     education.  It continued to provide educational support

5     services, albeit virtually.

6            This is not a case where nothing was provided

7     and FDU took the tuition and fees.  Quite to the

8     contrary, FDU had to expend significant sums -- sums of

9     money to transition almost instantly from in person

10    instruction to virtual instruction to allow its

11    students to have and continue their education unabated.

12           I would submit that that is what the Court

13    should rely upon for the breach of contract.  Under the

14    unjust enrichment claim, Your Honor, I would point out

15    that the unjust enrichment claim is based on the same

16    promise of in person instruction.  And, if the contract

17    claim fails, the unjust enrichment claim fails.

18           But, separately, if the Court believes there

19    is a contract, there is no unjust enrichment claim.

20    The conversion claim here fails because -- for two

21    reasons.  One, Your Honor, is that you cannot have

22    conversion and turn a contract into a tort claim.  But,

23    two, you cannot have a conversion claim when there's

24    not a specific identifiable corpus.

25           There was never intention for a refund here.

1   The intention was you're going to pay money, it's going
2   to be put into the (indiscernible) for the charitable
3   purpose and we're going to provide an education.  The
4   law says you cannot have a conversion claim under those
5   circumstances and I would direct the Court to, again,
6   the Fordham case that came out last week in support of
7   that.

8            And, then finally, money had and received
9   under New Jersey law, we cited in our brief, is no
10  different than an unjust enrichment claim.  There's
11  nothing unjust here about a university fulfilling its
12  charitable purpose, using the tuition to provide an
13  education.  This isn't a situation where Mr. Doval's
14  son or Ms. Cuello did not receive the credits that they
15  had the classes for.

16           THE COURT:  Thank you very much.

17           MR. STIO:  I'm happy to answer any questions.

18           THE COURT:  No -- no, I -- I want to hear
19  from your adversary.  Can I have your appearance?

20           MR. FRAIETTA:  Yes, Your Honor, this is Phil
21  Fraietta for the plaintiff's.  Good morning. I'd like
22  to --

23           THE COURT:  Good morning, Mr. Fraietta.  Good
24  morning, Mr. Fraietta.  Well, before you do what you
25  want to do, I think you better focus in on contracts

1      because basically your conversion and your unjust

2      enrichment would probably fail if you're maintaining

3      that there was a contract which I believe you are.

4      And, then you don't have a quasi-contract.  You have a

5      contract.

6              Now, with a contract, if you look at any of

7      our standard New Jersey jury charges, you're going to

8      find out that there's an -- that implied terms can be

9      made by a jury even to an expressed contract.  And, I

10     don't believe there's an integration clause.  And,

11     additionally, you're going to find that there is a

12     covenant of good faith which is an implied contract.

13             You might even be able to get a separate

14     cause of action for that, but I don't think you pled it

15     that way.  But, if you want to try to go with the hard

16     counts that's -- that's fine.  And, additionally, I did

17     read in your brief something to the effect that, while,

18     I don't think you're looking for an entire refund, you

19     are looking for some contract damages.

20             And, that -- in your brief, you say

21     furthermore, plaintiff's were assessed several fees in

22     addition to their tuition that were paid in exchange

23     for support of their in person, on campus education.

24     These fees, which included the $924 technology fee and

25     $140 university wellness fee were significantly higher

1    than corresponding fees that were assessed to students

2    who signed up for FDU's online only program.

3            So, you do -- and I think your adversary

4    admits that there is a contract and then you do cite

5    that there are some damages.  And, you do state that as

6    such there was a breach of contract and therefore the

7    motion should be denied.  But, now you can tell me what

8    you actually do state.

9            MR. FRAIETTA:  Yes, and thank you, Judge,

10   I'll certainly take that guidance and -- and we agree

11   with you, we believe that this is, first and foremost,

12   a breach of contract case.  So, what I'd like to do is

13   I'd like to start by explaining what this case is and

14   what it isn't.

15           So, Mr. Stio laid out a different case than

16   the plaintiff's have pled.  We are not challenging

17   FDU's response to COVID-19.  This is not a COVID-19

18   litigation.  We're not challenging Governor Murphy's

19   executive orders.

20           What we are challenging was FDU's decision to

21   keep the tuition and fees despite moving the courses

22   online and in doing so, breaching their contract.  So,

23   the example that I like to give, Judge, is if I paid a

24   painter to come and paint my house and the house blew

25   down between the time that I paid and the time that he

1    came to paint it, he can't keep the money.

2              That's just black letter contract law that he

3    would need to refund the money.  And, that's not what

4    happened here.  So, -- so I think that's important

5    because it goes to the educational malpractice claim

6    and this is --

7              THE COURT:  Well, you may -- you may want to

8    talk about contract law.  And, what the defendant's are

9    basically saying is that you had a contract.  Your

10   contract was to obtain education and credits and they

11   fulfilled that.  There was a modification of how they

12   filled that but there was a supervening cause that

13   required them to make the modification.

14             But, yet they still filled the essential

15   elements of what you contracted for.  And, as such,

16   you're not entitled to a refund since you did get the

17   education course and you did get the credits that you

18   had contracted for.

19             MR. FRAIETTA:  Understood.  And, where -- we

20   think that defense fails for a few reasons.  But, the

21   gist of the reason is that that defense assumes that

22   the contract was simply for education.  And, I think

23   the complaint makes clear that that's not the case.

24   So, for instance, Your Honor, at paragraph 36 of the

25   complaint, we discuss FDU's online program.

1        So, they offer a program for students who do

2   want to take courses online just for the benefit of

3   receiving credits.  And, that program is offered at a

4   program of 50 percent less than a standard FDU tuition.

5   So, -- so we think that that fact alone emphasizes that

6   there is some sort of a price premium affiliated with

7   in person education and a promise that if you're not in

8   our online program, you're in our in person program.

9        Additionally, paragraph 33 of the complaint,

10  we cite FDU's discussion of its campus and how its

11  campus provides you with "the classic college

12  experience."  And, the University boasts its

13  fraternities, its sororities, its student activities,

14  its intramural and collegiate athletic programs,

15  etcetera, etcetera.

16       These are all part of what the plaintiff's

17  contracted for at the beginning of the Spring 2020

18  semester.  So, I -- I think it would be disingenuous of

19  FDU to suggest that well all of that is just extra

20  fluff.  The only thing they really contracted for is

21  credits.  And, again, the fact that they offer an

22  online program that offers just credits cuts against

23  their argument.

24       I also would like to point out, Your Honor,

25  that Mr. Stio mentioned the Fordham case and that's a

1    big distinguishing factor of the <u>Fordham</u> case.  Fordham

2    University does not offer a distinct online program.

3    And, Judge Wood, in her opinion, noted that.

4              So, we believe that there is a contract here

5    and a contractual promise to provide the in person

6    educational experience.  That was denied to the

7    students and therefore it's a breach and with a breach

8    of contract, you're entitled to a refund.

9    Additionally, Mr. Stio argued that there's a

10   reservation of rights clause and the reservation of

11   rights clause in his mind -- words, to paraphrase,

12   gives the University the right to do whatever it wants,

13   essentially.

14             And, that's just not true under New Jersey

15   law.  So, this is at pages 17 and 18 of our brief.

16   But, to quote the Court in the case of <u>Bain versus</u>

17   <u>Union City College</u>, that's 2018 Westlaw 566, 207,

18   District of New Jersey, in 2018, that Court said that

19   the language that sums to subject to change does not

20   constitute a specific sufficient disclaimer.  And,

21   that's because, like in all contract law, ambiguous

22   clauses are interpreted against the drafter.

23             So, here FDU's reservation of rights clause

24   reads that the University reserves the right to change

25   without notice the contents of its bulletins and to

1   modify its academic calendars and programs of

2   instructions, etcetera, etcetera.  That -- it doesn't

3   say the University has the right to switch to online

4   courses midway through the semester.

5          So, a reasonable student reading that

6   provision would understand it and our clients did

7   understand it to mean the University could say, for

8   instance, to receive an economic degree you need to

9   take an additional statistics course from when you

10  originally enrolled.  We've -- we've -- the economics

11  department has decided that that too is now required --

12  that kind of thing.

13         Or math -- calculus 101 is going to be taught

14  in lecture hall two instead of lecture hall one.  It

15  doesn't allow them to change the entire nature of the

16  contract and that's what they did here.

17         And, one of the cases we cite from a Michigan

18  state Court points out that reading the clause a

19  defendant -- as broad as a defendant would like to,

20  could lead to the absurd conclusion that the defendant

21  could offer classes for a day and then cancel the rest

22  of the semester and keep the money because they reserve

23  the right to change it so we decided that you only need

24  to take one class to graduate instead of the entire

25  semester.

1          It's clearly -- it cannot be the case, Your

2     Honor.  So, we just think that the reservation of

3     rights defense fails.  It's also premature for the

4     reasons that I got into.  It requires an understanding.

5     And, Your Honor mentioned this with New Jersey contract

6     law, that jurors can find implied terms in the

7     contract.

8          So, I -- I don't quite understand how we can

9     determine as a matter of law on the pleadings alone

10    that there was no promise for in person education here.

11    So, to move on then to the educational malpractice

12    defense where I was headed earlier, the --

13         THE COURT:  You said -- you said you really

14    weren't ever pleading that -- anything about a

15    sub-standard education, you were pleading about that --

16    they literally didn't get their in person education,

17    they got an online education, and that's not what they

18    contracted for so they should, at the very least, be

19    charged what an online course goes for, not what an in

20    person class goes for.

21         MR. FRAIETTA:  Correct, and that's why the

22    overwhelming weight of authority concludes that these

23    claims are not grounded on educational malpractice.

24    And, that's in Court's all across and we cited that in

25    our papers.  There are, by my count, at least 15

1    decisions that we cited that come to that conclusion.

2              So, moving on to the fees, Mr. Stio mentioned

3    two mandatory fees, the technology fee and the wellness

4    fee -- and, again, Judge --

5              THE COURT:  I think you actually mentioned --

6    I mentioned it because I quoted it from your brief from

7    page 15 at the bottom.

8              MR. FRAIETTA:  Yes, and Mr. Stio argued that

9    the technology fee was clearly needed to put the

10   courses to Zoom and the wellness fee was still offered

11   for students to, I guess, remote counseling and things

12   of that sort.  And, again, understood and point noted,

13   however as we plead and write in the brief, those fees

14   are not assessed to students who sign up for online

15   programs.

16             So, there is a difference between the

17   technology fee and the wellness fee for the in person

18   students versus the online students.  And, -- and

19   essentially, as Your Honor just summarized our case, if

20   the semester was going to be conducted online or if

21   half of the semester was going to be conducted online,

22   we want to be charged like the online students would

23   have been charged for that half of the semester, which

24   is approximately 50 percent less based on FDU's --

25             THE COURT:  So, you're not saying -- you are

1      not claiming that, in fact, that you should be entitled

2      to a full refund of everything paid because you did

3      have the benefit of their online -- your student --

4      your clients did participate and so you're not --

5      you're not in any way saying you're entitled to a full

6      refund because the pandemic required the steps that

7      Fairleigh Dickinson took.  But, that you say that you

8      should just get what the benefit of the bargain is for

9      people who take the online as opposed to the people who

10     were no longer able to go in on campus?

11              MR. FRAIETTA:  Correct, Your Honor, exactly.

12     And, that -- that's the right term for it.  It's the

13     benefit of the bargain.  It's simple contract damages

14     that any first year law student learns.  And -- but the

15     Court in the Rosado (phonetic) case which is cited in

16     our brief -- the name of the defendant escapes me but

17     it's a different university, in that case the Court

18     draws an analogy that I think is appropriate.

19              If I buy -- contract for a Cadillac but

20     receive, an Oldsmobile, well the Oldsmobile still

21     drives, it gets me from point A to point B, but the

22     market price of the Oldsmobile is clearly less than the

23     Cadillac and therefore I get the benefit of the bargain

24     in the contract suit.

25              THE COURT:  You're -- you're rather old

1    aren't you?  First of all, they haven't made

2    Oldsmobile's in a long, long time and you know maybe

3    somebody like myself, who is even probably older than

4    you are, remembers Cadillac's and Oldsmobile's.  They

5    usually had the same engine and they were certainly

6    made by the same overall manufacturer, but I get the

7    analogy.  Anything else -- anything else?

8              MR. FRAIETTA:  I -- I'm old enough to

9    remember the Oldsmobile to be honest with you, Your

10   Honor, but I'm just quoting the Court in the Rosado

11   case.  But, no there's not much else to --

12             THE COURT:  Unfortunately -- unfortunately,

13   it was my first car.

14             MR. FRAIETTA:  I hope -- I hope you enjoyed

15   it, Your Honor, but --

16             THE COURT:  I did -- I thought it was grand.

17             MR. FRAIETTA:  But, no there isn't much else

18   to --

19             THE COURT:  And, glorious.  Is there anything

20   else I need to know about the motion was to why it

21   should be denied?

22             MR. FRAIETTA:  I don't think so, Your Honor.

23   To briefly summarize, to us, it's a -- this is a simple

24   breach of contract case and the -- the fact that the

25   defendant is a university does not change black letter

1      contract law.  If -- if I may, I would like to be heard

2      on the quasi-contract claim.  I understand that Your

3      Honor knows --

4                  THE COURT:  Well you know I've already seen

5      this happen where a Judge actually charged

6      quasi-contract and had a breach of contract case and

7      the Appellate Division took umbrage with that Judge.

8      Thankfully, it wasn't me.  But, I'm not sure how you're

9      going to get unjust enrichment if you're pleading

10     contract and contract damages.  But, we'll -- we may

11     leave that to another day if I deny the motion to see

12     how you fair in discovery.  I know you --

13                 MR. FRAIETTA:  That's what I was going to

14     say, Your Honor -- we're brining those claims --

15                 THE COURT:  And, I know that's what you --

16     that you did it as an alternate pleading.

17                 MR. FRAIETTA:  Correct.

18                 THE COURT:  I'm not even sure how you're ever

19     going to get to conversion as a tort which usually

20     involves (indiscernible) as your adversary had pointed

21     out.  But, that's why I wanted you to argue about

22     contract law because if you were going to go with

23     anything that seemed to be the best cause of action.

24                 MR. FRAIETTA:  Noted and agreed, but for the

25     purposes of the record, I just wanted to state that we

1    do bring the quasi-contract claims including unjust

2    enrichment and the alternative.  And, at this stage in

3    litigation we believe that they can proceed in the

4    alternative until the summary judgment stage where --

5    as Your Honor indicated, if the contract is proven that

6    may be different.  But, at this stage, we believe they

7    can proceed in the alternative.

8              THE COURT:  Very good.  I'd like to hear back

9    from Fairleigh Dickinson so I believe I will recognize

10   Counsel for Fairleigh Dickinson.

11             MR. STIO:  Thank you, Your Honor.  Your

12   Honor, I want to point out -- I'll start with the

13   implied contract.  I would direct the Court --

14             THE COURT:  Could you -- could you -- could

15   you do me a favor, for the record?  Could you start

16   with your name?

17             MR. STIO:  Yes, Your Honor --

18             THE COURT:  Could you start with your name?

19             MR. STIO:  Yes, sure Your Honor.  My

20   apologies.  Angelo Stio from Troutman Pepper Hamilton,

21   Your Honor.

22             THE COURT:  Thank you.

23             MR. STIO:  Your Honor, I'll start with the

24   implied contract principles.  I -- I understand the

25   Court's position, but I would direct the Court to read

1   the decisions in Mitra, Cruz, Romero, and the Berry

2   (phonetic) case which was decided on a Motion to

3   Dismiss and affirmed by the Appellate Division which

4   all said that applied contractual principles do not

5   apply in the student university context.

6         New Jersey law is unique on that.  And, what

7   plaintiff's are trying to do is cherry pick provisions

8   that they like and then require the University to have

9   rightful precision with expressed provisions from the

10  same document they rely upon.  And, the Berry Court on

11  a Motion to Dismiss said you can't do that.

12        If there's an implied contract here, it

13  included the reservation of rights provision and the

14  reservation of rights provision gives the University

15  the opportunity to do exactly what it has done here.

16  That's the case we have.

17        Second, the plaintiff's have said, well they

18  charge less for online courses.  What the plaintiff

19  doesn't tell you and what we cited in our brief and we

20  even gave you the website address, which they rely upon

21  for their allegations, so the Court can consider it, we

22  don't offer degrees in nursing and we don't offer the

23  courses in political science that Mr. Doval's son has

24  taken and the nursing courses that Ms. Cuello took

25  online.

1           There is a small universe of classes that are

2      online and none of the classes here are online.  So, to

3      say well we can charge the same amount and you can get

4      the damages, doesn't work because they couldn't take

5      any of these courses online when they registered.  They

6      couldn't have any of these full-time faculty teaching

7      the courses online when they registered.

8           What they're asking you to do, Judge, is to

9      go in and look at the quality of what they received.

10     And, Court's, time and time again, have said if it

11     involves quality, you cannot have a contract or even a

12     tort claim because it is education malpractice.

13          I also want to draw the Court's attention --

14     my adversary said well there's all of these promises in

15     the University publications about the campus life and

16     how expectations are on campus.  Footnote one in our

17     reply brief lists specific cases in the university

18     context where the Court's have said, you cannot have an

19     enforceable promise arise from indefinite statements

20     about campus life.

21          That's what they are trying to put here as a

22     contract.  And, Your Honor, there may be a contract,

23     but there is not an expressed agreement here.  They

24     have not come forward with any written document that

25     says you get this in exchange for X.

1           They're saying there's an implied agreement.

2     That implied agreement is that you have to provide in

3     person instruction under every circumstance and you

4     have to live by the letter of the course catalog.

5           In short, you disregard and you don't have to

6     even consider expressed languages.  It says the

7     University can change it because they have to be

8     specific in their expressed language but we could tell

9     you what the implied language is and you have to accept

10    it.  That doesn't make any sense.  That doesn't follow

11    New Jersey law.

12          And, I think that it's going to set a

13    horrible precedent if Court's are going to allow

14    students to come in and say, well I was supposed to

15    have a course in the new academic building, there was a

16    flood, it got changed to the old academic building and

17    because of the lighting and the air conditioning, I

18    wasn't able to get an education.

19          Universities which are non-profits would die

20    a slow death of a thousand cuts.  They can't do that.

21    And, that's why the Berry case says, you need to look

22    at whether the university acted in good faith.  Mr.

23    Fraietta admitted in his oral argument no one says the

24    University acted in bad faith.  That submission is

25    fatal for the breach of contract claim.

1          They don't have a breach of contract claim

2     because what we did was authorize, under the expressed

3     reservation of rights provision, from the same

4     documents they want this Court to imply promises, and

5     you can't do that.  I'll be happy to answer any

6     questions the Court has.

7          THE COURT:  No, thank you.  I'll hear your

8     adversary in rebuttal.

9          MR. FRAIETTA:  Thank you, Your Honor.  I'd

10    like to respond to at least two of the points that Mr.

11    Stio --

12         THE COURT:  Can I have your appearance then

13    for the record?

14         MR. FRAIETTA:  Yeah, I apologize, this is Mr.

15    Fraietta for the plaintiff.

16         THE COURT:  Thank you, Mr. Fraietta.  You may

17    proceed.

18         MR. FRAIETTA:  I'd like to respond to two of

19    the points that my adversary laid out there.  The first

20    is on damages.  So, as an initial matter, we don't need

21    to prove damages at the pleadings stage.  We only need

22    to show the existence of them.  We don't need to state

23    the amount certain under New Jersey law.

24         But, nonetheless, the argument that the

25    damages inquiry is going to require a look into the

1    quality of the education is simply not true.  And, this

2    is recognized by the Court in the matter of Bergeron

3    versus RIT which we submitted as supplemental authority

4    to the Court yesterday, I believe.  And, it's a recent

5    decision that came out after our opposition brief was

6    filed.

7              But, in Bergeron, the Court notes and Counsel

8    explains that damages in a case like this can be

9    determined at the appropriate time by experts to simply

10   determine what is the difference between the online

11   price and the in person price.  And, in this particular

12   case, it's easy because FDU gives us that difference.

13   They give us the difference of online school versus in

14   person school.

15             So, I -- this is a simple market analysis.

16   It's how much would the reasonable consumer have paid

17   had the reasonable consumer known the semester was

18   going to be half online.  That does not require the

19   Court to look into the quality of the damages.  That's

20   accepted by Bergeron and we would urge Your Honor to

21   agree with that decision.

22             As a secondary matter, Mr. Stio mentioned the

23   -- what I guess is the domino effect, so to speak, of

24   if Your Honor were to deny this motion that students

25   would run in and sue their university for every little

29

1       change, but I think that's misstating what happened

2       here.  This is not a situation where FDU changed the

3       chemistry class from lab number one to lab number two.

4               This is a situation where FDU changed the

5       entire nature of the academic program.  Instead of an

6       in person experience on its campus -- on its beautiful

7       campus I should say, it was relegated to the internet

8       on Zoom in their parents basement.  It's -- it's just a

9       completely different animal than what was bargained for

10      and we think it's -- it's a distinguishable fact for

11      that matter.

12              The educational malpractice doctrine and the

13      requirement of bad faith, as Mr. Stio says, has merit

14      in some instances.  I would agree that the state of New

15      Jersey doesn't want a student to say, hey, you know I

16      thought that my history professor just -- he had a bad

17      week so I'd like a little bit of money back, he wasn't

18      really all with it.  But, that's not what this case is.

19              This case is about changing the whole major.

20      And, to conclude on the bad faith prong, I just want to

21      clarify, our position is not that FDU did not act in

22      bad faith.  We don't think FDU acted in bad faith by

23      transitioning to online education as was required by

24      Governor Murphy's order.  We think they acted in bad

25      faith by keeping the money.

1          Governor Murphy did not order the University

2     to keep the money.  They -- they very easily could have

3     and should have refunded the tuition and that's

4     recognized by their decision to refund room and board

5     as Mr. Stio mentioned earlier which (indiscernible)

6     completely arbitrary decision -- why you would refund

7     one and not the other.

8          So, we do challenge that.  Even if a bad

9     faith standard was required, and I don't think it is

10    for the reasons stated in our brief, but even if it

11    was, there is a bad faith decision here, and it's to

12    keep the tuition money despite not delivering what was

13    promised.  And, with that, I'm happy to answer any

14    questions.

15          THE COURT:  No, the Court has before it a

16    Motion to Dismiss the plaintiff's complaint.  And,

17    again, with regard to this, there -- there is a

18    contract.  I think both parties agree that there is a

19    contract.

20          But, the Court is also mindful that our law

21    requires that when the contract terms are ambiguous or

22    the parties dispute their meaning, construction of the

23    contract and the application of any evidence submitted

24    to prove the surrounding circumstances, are for a jury.

25    And, that would be State Farm Mutual Auto Insurance

1    Company.

2            Additionally, we know that with regard to

3    contracts, we have to have a jury determine what the

4    loss was and what the contract damages are.  We do know

5    that there was a modification and the question then

6    becomes -- and, again, it is a claim of breach, whether

7    the essential terms of the contract were fulfilled by

8    the University or whether there was, in fact, a

9    meaningful breach that robbed the plaintiff of a

10   substantial part of the bargain.

11           On the other hand, the defendant is arguing

12   that the defendant substantially performed the contract

13   and as such made a good faith effort that actually

14   achieved the essential purpose of the contract and

15   provided the plaintiff with the fundamental benefits

16   that the plaintiff was supposed to receive from the

17   contract.

18           All of this brings us back down to a Motion

19   to Dismiss.  Under New Jersey Court Rules a complaint

20   may only be dismissed for failure to state a claim and

21   after an in-depth and liberal search of its allegation

22   a cause of action cannot be gleaned even from an

23   obscure statement in the complaint, particularly if

24   additional discovery is permitted.  See New Jersey

25   Court Rule 4:6-2E as citing Printing Mart versus Sharp

1   Electronics, 116 N.J. 739,746 (1989).

2            Thus, the Court must give the non-moving

3   party every inference in evaluating whether to dismiss

4   a complaint.  The test for determining the adequacy of

5   a pleading is whether a cause of action is suggested by

6   the fact, back to Printing Mart.  Now, there are some

7   additional causes of action in here which I believe

8   will eventually have to be dismissed upon the

9   completion of discovery.

10           But, they are all entwined with the same

11  factual scenario, that is, the contract claim that the

12  plaintiff has brought.  As such, the Court is going to

13  be denying the Motion to Dismiss at this juncture,

14  pending the completion of discovery, and then it would

15  be more appropriate as a Motion for Summary Judgment.

16  And, that is the decision of the Court for the reasons

17  stated on the record.  All be well and have a good

18  afternoon.

19           (Proceeding concluded at 12:27:24 p.m.)

20

21

22

23

24

25

33

1

<u>CERTIFICATION</u>

I, Hollie Bennett, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from <u>11:47:43</u> to <u>12:27:24</u>, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.

<u>    /s/ Hollie Bennett    </u>        <u>  AD/T 695  </u>
         Hollie Bennett                 AOC Number


<u>   Phoenix Transcription LLC   </u>    <u>   02/09/21   </u>
         Agency Name                      Date

**EXHIBIT 3**

2021 WL 268242

2021 WL 268242
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

BRIDGET MCCARTHY

v.

LOYOLA MARYMOUNT UNIVERSITY

Case No.: 2:20-cv-04668-SB (JEMx)
|
Signed 01/08/2021

**Attorneys and Law Firms**

John C. Bohren, Bohren Law, West Hollywood, CA, Roy T. Willey, IV, Pro Hac Vice, North Charleston, SC, Eric Marc Poulin, Anastopoulo Law Firm LLC, Charleston, SC, for Plaintiffs.

Danielle Michelle Mayer, Kristina Starr Azlin, Paul G. Lannon, Pro Hac Vice, Boston, MA, Qian Shen, New York, NY, Stacey Hsiang Chun Wang, Vito Anthony Costanzo, Holland and Knight LLP, Los Angeles, CA, for Defendants.

**Proceedings: DENYING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 29)**

STANLEY BLUMENFELD, JR., U.S. District Judge

**\*1** Before the Court is the Motion to Dismiss filed by Defendant Loyola Marymount University ("Defendant" or "LMU"). (Mot., Dkt. No. 29.) Plaintiff Bridget McCarthy opposes. (Opp., Dkt. No. 37.) Defendant has replied.(Reply, Dkt. No. 39.) For the following reasons, the Court **DENIES** the Motion.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff is an undergraduate student at LMU who was enrolled for the Spring 2020 academic semester. (First Amended Complaint ("FAC")¶¶ 13, 18, Dkt. No. 27.) The spring term was scheduled to begin on January 13, 2020 and conclude on May 10, 2020. (Id. ¶¶ 31-32.) Plaintiff chose to attend LMU based on its marketing of the benefits of its "on-campus experience." (Id ¶¶ 22-25; 73-88.) The terms of Plaintiff's contractual agreement with Defendant are set forth in its "website, academic catalogs, student

handbooks, marketing materials and other circulars, bulletins, publications, and course of dealing." (Id. ¶ 71.) Defendant's bulletin, among other things, states:

> The University Bulletin is not an offer to enter into a contract. Loyola Marymount University reserves the right to make changes to degree program requirements, academic and administrative policies and regulations, financial charges, and course offerings published in the University Bulletin at any time without prior notice.

(Defendant's Request for Judicial Notice ("RJN"), ¶ 1, Dkt. No. 32; Declaration of Dr. Thomas Poon ("Poon Decl."), ¶ 4, Ex. A, Dkt. No. 30-1.)[1]

On March 13, 2020, in the middle of the semester, Defendant announced that it would be moving all classes online for the remainder of the semester in response to the ongoing COVID-19 pandemic. (FAC ¶ 35.) Defendant also closed on-campus housing on March 22, 2020. (Id. ¶ 36.)

After Defendant's decisions, students began demanding prorated refunds for tuition and fees. (Id. ¶ 38.) On or about April 2, 2020, Defendant announced that it would not issue refunds for tuition but would refund student housing prorated from March 22, 2020. (Id. ¶ 41.) Defendant also stated it would issue partial refunds for parking and recreation fees but did not address refunds for other fees such as the student activity fee. (Id.) Defendant did not explain the calculation of these refunds. (Id. ¶ 42.)

By moving instruction exclusively online, Defendant allegedly has deprived Plaintiff of the benefits of on-campus instruction for which she contracted. (Id. ¶ 49.) Plaintiff likewise alleges deprivation of access to facilities that "are integral to the college experience ... social development and independence, and networking for future careers...." (Id. ¶ 50.)

**B. Procedural History**

Plaintiff, on behalf of herself and all students who paid tuition and fees during the Spring 2020 semester, filed her initial

Case 2:21-cv-00249-KM-ESK  Document 9  Filed 03/01/21  Page 81 of 211 PageID: 237
Bridget McCarthy v. Loyola Marymount University, Slip Copy (2021)

2021 WL 268242

complaint on May 26, 2020, alleging four claims for relief for (1) breach of contract for failure to reimburse tuition; (2) unjust enrichment for failure to reimburse tuition; (3) breach of contract for failure to reimburse fees; and (4) unjust enrichment for failure to reimburse fees. (Compl., Dkt. No. 1.) Defendant moved to dismiss Plaintiff's complaint on October 9, 2020 (Dkt. No. 22); and instead of opposing, Plaintiff filed her FAC on October 22, 2020 alleging the same four claims for relief. (FAC, Dkt. No. 27.) On November 5, 2020, Defendant filed the instant motion.

## II. LEGAL STANDARD

**\*2** Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts " 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

## III. DISCUSSION

Defendant argues that Plaintiff's FAC should be dismissed for three reasons. First, it argues that Plaintiff's claims are fundamentally nonactionable claims for educational malpractice. (Mot. at 8.) Second, Defendant argues that even if Plaintiff's claims are not barred by the educational malpractice doctrine, she fails to state a claim. (*Id.* at 12, 19.) Third, Defendant argues that Plaintiff's demands for

damages are impermissibly speculative. (*Id.* at 21.) Defendant also moves to dismiss Plaintiff's demands for declaratory and injunctive relief. (*Id.* at 23.)

### A. The Educational Malpractice Doctrine Does Not Apply.

Defendant argues that Plaintiff's claims hinge on the premise that Defendant failed to provide her and other students with the type and quality of education that was promised to them after the shift to online learning due to the pandemic. (*See generally* Mot. at 8-12.) As such, Defendant argues that Plaintiff's claims are barred by the educational malpractice doctrine.

"The basic legal relationship between a student and a private university or college is contractual in nature." *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10 (1972). However, "[t]here is a widely accepted rule of judicial non-intervention into the academic affairs of schools." *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803, 808 (1979) (collecting cases). Courts may only overturn a university's decision if it is "arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors." *Banks v. Dominican Coll.*, 35 Cal. App. 4th 1545, 1551 (1995) (citing *Paulsen*, 25 Cal. 3d at 808-09). While a university retains the flexibility to alter the relationship with its students, this rule of flexibility does not apply to specific educational promises. *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 826 (2007) ("Courts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction.").

**\*3** Plaintiff argues that she does not contest the adequacy of her education but instead alleges that Defendant breached a specific promise—the promise to provide an in-person education. (*See generally* Opp. at 3-8.) Much like the court in *Saroya v. Univ. of the Pac.*, this Court "does not read Plaintiff's FAC as alleging a failure of the university to provide [her] with an education of a certain quality." No. 5:20-cv-03196-EJD, 2020 WL 7013598, at \*4-5 (N.D. Cal. Nov. 27, 2020). Indeed, as in *Saroya*, Plaintiff alleges that she contracted for—but did not receive—"in-person educational services, experiences, opportunities, and other related services." (Opp. at 7 (citing FAC ¶¶ 70, 134).)[2] Defendant argues that this shift in the "mode of instruction" falls exclusively within its

professional judgment, and that Plaintiff's claims necessarily require a judicial determination that an online education is worth less than one received in person. (Mot. at 10.)

Defendant interprets the educational malpractice doctrine too broadly. Not all decisions made by a university are pedagogical in nature. The doctrine does not foreclose a breach of contract claim if it "would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment [of the University's performance of its promise]." *Kashmiri*, 156 Cal. App. 4th 809, 826 (2007) (quotation and citation omitted); *see also* *Zumbrun*, 25 Cal. App. 3d at 10-11. *Zumbrun* and *Kashmiri* are instructive. In *Zumbrun*, a student from the University of Southern California (USC) sued the school for not receiving the number of lectures and the type of final examination promised because of a faculty strike. 25 Cal. App. 3d at 10. On appeal, the court allowed the contract claim to proceed, concluding that "whether the partial failure of consideration ... justifies refund of a portion of the tuition and fee allocable to the course is a matter of proof" at trial. *Id.* at 11. In *Kashmiri*, students sued their university for raising tuition despite a promise not to do so. 156 Cal. App. 4th at 815. The court held that the promise constituted an enforceable implied contract and did not implicate the educational malpractice doctrine. *Id.* at 826-28.

The question here is whether Defendant made a specific promise to provide in-person instruction for the duration of Plaintiff's semester. Much like the promises in *Zumbrun* and *Kashmiri*, the purported promise in this case does not involve an academic decision outside the realm of judicial determination. The doctrine of educational malpractice exists to avoid judicial interference with academic affairs. *Kashmiri*, 156 Cal. App. 4th at 825. Here, the decision to suddenly shift to online education can hardly be characterized as an "academic decision" within the meaning of that doctrine. Indeed, the decision to cease in-person instruction involved no judgment, much less an academic one, because Defendant was mandated by government orders to do so. (Mot. at 11.) In this circumstance, the Court does not find that the educational malpractice doctrine bars Plaintiff's claims.

### B. Plaintiff States a Claim for Breach of Contract.

**\*4** The real issue raised in the motion is whether Plaintiff has stated a claim for breach of contract. Under California

law, the elements of breach of contract are: "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Defendant argues that Plaintiff's contract claims fail for four reasons, discussed below.

### 1. Plaintiff Has Sufficiently Identified a Promise to Provide In-Person Instruction.

Defendant first argues that Plaintiff's contract claims fail because she has failed to identify a discrete, specific promise that she would be provided in-person education and access to on-campus facilities. Instead, Defendant contends that Plaintiff has merely identified a vague general promise that cannot support a claim. (Mot. at 13.) Drawing all inferences in Plaintiff's favor, the Court disagrees.

Plaintiff identifies a number of promises made by Defendant that tout the benefits of its in-person teaching and on-campus experience, such as: "Face-to-face interaction with professors, mentors, and peers;" "Access to facilities such as computer labs, study rooms, laboratories, etc.;" "Extra-curricular activities, groups, intramural sports, etc.;" and "Hands-on learning and experimentation." (FAC ¶ 25.) Indeed, Defendant's publications refer to benefits of its "comprehensive, on-campus educational experience." (*See id.*¶¶ 76-87.) Read in the manner most favorable to Plaintiff, "[t]hese allegations clearly extend beyond coursework and to the entirety of the educational experience." *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *7-8 (W.D.N.Y. Dec. 18, 2020) (finding similar representations "sufficiently specific" to withstand a motion to dismiss); *see also Ford*, 2020 WL 7389155 at *4 (finding school's publications describing on-campus learning experience as "integral" adequately pleaded). As another court recognized, "this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference." *Salerno*, 2020 WL 5583522 at *5.

These allegations, moreover, must be taken in the specific context of this case. This is not a case in which Defendant opted to switch to online learning before classes began. Rather, the semester was well underway with class instruction inside a classroom with students appearing before an instructor. Plaintiff already had signed up for this instruction,

and she was in the midst of the instruction for which she reasonably assumed she had bargained. At a minimum, Plaintiff's allegations are sufficient to establish an implied contract.

**2. Defendant's Refund Policy is Inapposite.**

Defendant next asserts that its tuition refund policy precludes a breach of contract claim because it governs how and when a student may obtain a refund. In accordance with the LMU Bulletin, students may only receive refunds before a certain period in the semester. Under this policy, if a student elects to withdraw for any reason such as illness, employment relocation, or other emergencies, they are entitled to a refund based on a sliding scale. (Mot. at 16.) Defendant announced its conversion to online instruction the last day to receive a partial (25%) refund. (Opp. at 14.)

The refund policy appears inapplicable. By its terms, the policy contemplates a student's withdrawal rather than Defendant's modification or cancellation. *See* Bergeron, 2020 WL 7486682 at 7 (finding school's refund or withdrawal policies irrelevant). Plaintiff is not alleging that she sought to withdraw and was denied a refund; rather, she contends that Defendant had no contractual right to cancel in-person instruction and require the same tuition payment for online instruction without an option for a full refund. (Opp. at 14-15.)

**\*5** In short, the plain language of the refund policy precludes its application to Defendant's decision here. The policy does not address the consequences of Defendant's decision to cancel or modify instruction contrary to its promise. Were the policy to be read otherwise, it would have allowed Defendant to cancel in-person instruction—or indeed to cancel classes altogether—one day later for no refund at all. This is not what the policy states, and the Court will not remake it to say so.

**3. The Right to Modify**

Defendant next argues that it reserved the right to unilaterally modify its curriculum in the LMU Bulletin. In relevant part, the bulletin states, "[Defendant] reserves the right to make changes to degree program requirements, academic and administrative polices and regulations, financial charges, and course offerings published in the University Bulletin at any

time without prior notice." (Mot. at 4, 17 (quoting Defendant's RJN, ¶ 1; Poon Decl., ¶ 4, Ex. A).)

From this general disclaimer, Defendant asserts that it has a broad right to change it programs and policies. Defendant purports to exercise this discretion in modest fashion by changing "the mode of instruction." (Mot. at 17.) But this shift to online learning is anything but modest—the promise of learning in a dynamic classroom on a bustling and thriving campus full of amenities and planned and spontaneous human encounters is not delivered by looking at a computer screen at home. *See* Bergeron, 2020 WL 7486682 at *6-7 (rejecting similar disclaimer argument); *see also* Saroya, 2020 WL 7013598 at *6 (same). Defendant has not demonstrated that the general reservation of rights reaches this far.

**4. Plaintiff Adequately Alleges Causation.**

Defendant finally argues that Plaintiff's breach of contract claims fail because she has admitted that it was the COVID-19 pandemic that caused her alleged harm, not Defendant. (Mot. at 18-19.) This argument misses the mark.

The pandemic has wreaked havoc on the world. It is the cause of much misery and much disruption. To acknowledge this sad but obvious fact is not to eliminate liability for all harmful human acts or omissions in response to the pandemic. Here, the pandemic set off a chain of events that led to Defendant's decision to cancel in-person instruction, convert to online instruction, and require students to participate or lose all but 25% of their tuition upon immediate withdrawal. Plaintiff's lawsuit challenges Defendant's decisions in response to the pandemic and alleges that those decisions, not COVID-19, caused the breach of contract. (FAC ¶¶ 106, 137.)[3]

**C. Plaintiff May Plead Unjust Enrichment in the Alternative.**[4]

Under California law, "there is not a standalone cause of for 'unjust enrichment,' which is synonymous with 'restitution.' " Astina v. Hain Celestial Group, Inc., 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). The theory underlying unjust enrichment and restitution is "that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.' " *Id.* (citation omitted). Courts construe a claim seeking the return of that benefit "as a quasi-contract claim seeking restitution." *Id.* However, no such cause of action can

coexist with an express contract covering the same subject matter. 🔖 *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).

**\*6** Defendant argues that there is an express contract—the refund policy—that bars Plaintiff's claims for unjust enrichment. (Mot. at 20-21.) For the reasons already discussed, Defendant's refund policy is inapplicable to Plaintiff's claims. Moreover, to the extent that Defendant disclaims the existence of any enforceable contract, Plaintiff is allowed to plead alternative theories of relief at this stage under Rule 8(d)(2). *See Chong*, 2020 WL 7338499 at \*4; *Salerno*, 2020 WL 5583522 at \*5; *Ford*, 2020 WL 7389255 at \*8-9; 🔖 *Bergeron*, 2020 WL 7486682 at \*9.

### D. **Plaintiff's Damages are not Impermissibly Speculative.**

Defendant contends that Plaintiff cannot seek recovery on a contract claim for the difference in value between online and in-person classes because any such damage theory is impermissibly speculative. (Mot. at 21.) Perhaps. But Defendant has not demonstrated that Plaintiff is only pursuing its expectancy interest in the benefit of the bargain.

A party's expectancy interest is the most common form of relief recovered in a claim for breach of contract. Restatement (Second) of Contracts § 347 (1981); *see* 🔖 *Overgaard v. Johnson*, 68 Cal. App. 3d 821, 823 (1977) (" 'Benefit of the bargain' is the difference between the actual value of what plaintiff has received and that which he expected to receive."). And Defendant may well be correct that the pursuit of the expectancy interest in this case will run up against the basic principle that consequential damages must be proven with "reasonable certainty." 🔖 *Grupe v. Glick*, 26 Cal. 2d 680, 691-92 (1945); *see also* 🔖 *Sargon Enterprises, Inc. v. Univ. of S. California*, 55 Cal. 4th 747, 774 (2012).

But there are other interests that may be protected against a breach of contract, including reliance and restitutionary interests. *See* Restatement (Second) of Contracts § 344 (1981) (defining the three interests protected by remedies for contract breaches). Reliance damages generally allow recovery

for costs incurred in reliance on contract performance. Restatement (Second) of Contracts § 349 (1981) ("As an alternative to the [expectancy] measure of damages ... , the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed."); *see* 🔖 *Agam v. Gavra*, 236 Cal. App. 4th 91, 107 (2015) (describing reliance damage principles). But such damages are subject to limitations, and one constraint is that the non-breaching party should not better off because of the breach (i.e., placed "in a better position than he would have occupied had the contract been fully performed") (internal quotation and citation omitted). The limitations may preclude reliance damages in this case, but Plaintiff does not seem to be pursuing this theory.

However, Plaintiff is potentially seeking the third measure of damages, asserting a right to restitution. *See* Restatement (Second) of Contracts § 373 (1981) (stating that "the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance"). In the FAC, Plaintiff alleges that by shifting classes online and closing campus, "Defendant saved significant amounts of money" in reduced utility and maintenance costs and employee and staffing costs. (FAC ¶ 123.) While Defendant strenuously denies this allegation, Plaintiff's factual assertions must be credited for the purposes of this motion.

**\*7** In the end, the claim for contract damages in this case may prove to be an insuperable obstacle as a matter of fact or as a matter of law. The Court cannot say. All that can be said at this point is that it is too soon to tell. [5]

### IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion. Defendant must answer by January 22, 2021.

**All Citations**

Slip Copy, 2021 WL 268242

# Footnotes

1    Plaintiff's FAC incorporates the LMU Bulletin by reference. Defendant's RJN as to Exhibit A of the Poon Declaration is **GRANTED**. *See* *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

2    The vast majority of federal courts confronted with the same issue also conclude that similar claims do not implicate the educational malpractice doctrine. *See, e.g., Saroya*, 2020 WL 7013598, at *4-5 (declining to apply educational malpractice doctrine); *Ford v. Rensselaer Polytechnic Inst.*, No. 1:20-CV-470, 2020 WL 7389155, at *5-6 (N.D.N.Y. Dec. 16, 2020) (same); *Bahrani v. Northeastern Univ.*, No. CV 20-10946-RGS, 2020 WL 7774292, at *2 n. 1 (D. Mass. Dec. 30, 2020) (same); *Chong v. Northeastern Univ.*, No. CV 20-10844-RGS, 2020 WL 7338499, at *2 n. 1 (D. Mass. Dec. 14, 2020) (same); *Gibson v. Lynn Univ.*, No. 20-CIV-81173-RAR, 2020 WL 7024463, at *4 (S.D. Fla. Nov. 29, 2020) (same); *Salerno v. Fla. S. Coll.*, No. 8:20-cv-1494-30SPF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (same). Defendant relies heavily on a case reaching the opposite conclusion, *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW (RAOx), 2020 WL 7350212, at *6-7 (C.D. Cal. Dec. 11, 2020). *Lindner*, however, contained a contract provision not found in this case that reserved for the college "the right to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so." *Id.* at *8. In light of this express contract right (which defeated the contract claims), the discussion about the educational malpractice doctrine in that case appears to be dicta.

3    Whether Defendant has an excuse for nonperformance is another matter—one not raised or properly before the Court at this point. *See* Cal. Civ. Code § 1511 ("The want of performance of an obligation, or of an offer of performance, in whole or in part ... is excused ... [w]hen it is prevented or delayed by an irresistible, superhuman cause ....").

4    Even if Plaintiff was precluded from seeking restitution as a separate claim, Defendant cites no authority that precludes Plaintiff from seeking restitution as a measure of damages for breach of contract. *See* discussion *infra.*

5    Defendant also challenges the propriety of the prayer for injunctive and declaratory relief for "past wrongs" in the spring 2020 semester. (Mot. at 23.) This challenge is denied as "premature." *See* *Friends of Frederick Seig Grove #94 v. Sonoma Cty. Water Agency*, 124 F. Supp. 2d 1161, 1172 (N.D. Cal. 2000).

---

End of Document               © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 4**

KeyCite Yellow Flag - Negative Treatment

Distinguished by   Hassan v. Fordham University,   S.D.N.Y.,   January 28, 2021

2020 WL 7486682
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Nicholas BERGERON, Barbara Mycek, and
Nick Quattrociocchi, individually and on
behalf of others similarly situated, Plaintiffs,

v.

ROCHESTER INSTITUTE OF
TECHNOLOGY, Defendant.

20-CV-6283 (CJS)
|
Signed 12/18/2020

**Attorneys and Law Firms**

Edward Toptani, Pro Hac Vice, Toptani Law PLLC, John McLeod Bradham, Pro Hac Vice, Morea Schwartz Bradham Friedman & Brown LLP, Philip L. Fraietta, Bursor & Fisher, P.A., New York, NY, Robert L. Mullin, Ferr and Mullin, Fishers, NY, Roy T. Willey, IV, Pro Hac Vice, Anastopoulo Law Firm, LLC, Charleston, SC, Eric M. Poulin, Pro Hac Vice, Anastopoulo Law Firm, for Plaintiff Nicholas Bergeron.

Philip L. Fraietta, Bursor & Fisher, P.A., New York, NY, Roy T. Willey, IV, Pro Hac Vice, Anastopoulo Law Firm, LLC, Charleston, SC, Eric M. Poulin, Pro Hac Vice, Anastopoulo Law Firm, for Plaintiff Barbara Mycek.

Brett R. Cohen, Michael A. Tompkins, Jeffrey K. Brown, Leeds Brown Law, P.C., Carle Place, NY, Jason P. Sultzer, Pro Hac Vice, The Sultzer Law Group, P.C., Poughkeepsie, NY, Jeremy B. Francis, Joseph Lipari, Pro Hac Vice, The Sultzer Law Group P.C., New York, NY, for Plaintiff Nick Quattrociocchi.

Fernando Santiago, Santiago Burger LLP, Rochester, NY, Qian Shen, Robert J. Burns, Holland & Knight LLP, New York, NY, Paul G. Lannon, Jr., Pro Hac Vice, Holland & Knight LLP, Boston, MA, for Defendant.

DECISION AND ORDER

CHARLES J. SIRAGUSA, United States District Judge

**\*1** Plaintiffs Nicholas Bergeron, Barbara Mycek, and Nick Quattrociocchi filed this putative class action against Defendant Rochester Institute of Technology ("RIT"). Plaintiffs allege that RIT's retention of a significant proportion of the tuition and fees it collected for the spring semester of 2020, despite ceasing in-person instruction and closing its on campus facilities, amounted to either: breach of contract with its students (Counts I and III), unjust enrichment (Counts II and IV), conversion of student funds (Count V), or a violation of § 349 and § 350 of New York's General Business Law (Counts VI and VII) prohibiting deceptive business practices and false advertising. Am. Compl., Sept. 3, 2020, ECF No. 14.

The matter is presently before the Court on RIT's motion to dismiss for failure to state a claim. Mot. to Dismiss, Oct. 5, 2020, ECF No. 19. For the reasons stated below, with respect to Mycek, RIT's motion to dismiss [ECF No. 19] is granted in its entirety. With respect to Bergeron and Quattrociocchi, RIT's motion to dismiss is granted as to Counts V, VI, and VII, and denied as to Counts I through IV. RIT is directed to answer Counts I through IV of Plaintiffs' complaint within thirty days of the date of this order.

BACKGROUND

The following background has been drawn from Plaintiffs' amended complaint, as well as "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The factual allegations contained in the complaint have been accepted as true, and all reasonable inferences drawn in Plaintiffs' favor.

*See Menaker v. Hofstra Univ.*, 935 F.3d 20, 26 (2d Cir. 2019).

RIT is an institution of higher learning located in Henrietta, New York, with an estimated enrollment of more than 16,000 students. Am. Compl. at ¶ 6. It offers "both in-person, hands-on programs, and fully online distance learning programs, which it markets and prices as separate and distinct products." Am. Compl. at ¶ 21. Students enrolled in the online degree program are not allowed to enroll in on-campus classes, and the tuition rate for the online program is significantly less than the on-campus program. Am. Compl. at ¶ 22, 24.

RIT markets the in-person and online programs separately through its website and other publications. Am. Compl. at ¶ 23. With respect to the in-person program, RIT promotes such benefits as "face-to-face interaction with professors, mentors, and peers," "hands-on learning and experimentation," "networking and mentorship opportunities," and "experiential learning." Am. Compl. at ¶ 25–26. RIT promises to provide "undergraduates the opportunity to work directly with faculty members in their labs to investigate, explore, and ... learn hands-on skills that become the foundation of scientific research." Am. Compl. at ¶ 71.

RIT's publications regarding the in-person program are also "full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size; campus diversity; campus location, and the like." Am. Compl. at ¶ 67. On a webpage entitled "RIT Life," RIT advertises more than 300 clubs and organizations, over 13,000 on-campus and off-campus events, 27 organizations offering on-campus performances, 21 locations for on-campus dining, 31 diverse inter/national social fraternities and sororities, and over "2,600+ international students from 102 countries that complement the campus climate...." Am. Compl. at ¶ 75.

**\*2** Lastly, RIT promises students of the in-person program that they "have access to some of the finest laboratories, technology and computing facilities available on any university campus." Am. Compl. at ¶ 80–81 (quoting an admissions letter from Director of Undergraduate Admissions Marian N. Nicoletti). The Undergraduate Student Handbook for the Kate Gleason College of Engineering ("Undergraduate Bulletin") states that RIT "offers a post office, laundry rooms, computer labs, game rooms, and fitness facilities." Am Compl. at ¶ 96. It further states that "[RIT] wants you to succeed and offers an abundance of services geared toward that goal. They range from math and writing skills centers to personal counseling." Am. Compl. at ¶ 87. It also encourages students to "become part of the campus community" because doing so is "just as important as going to class, writing papers, and taking exams." Am. Compl. at ¶ 88.

Bergeron, a resident and citizen of Massachusetts, was enrolled as a student of the in-person program at RIT during the Spring 2020 term. Am. Compl. at ¶ 10. Quattrociocchi, a resident and citizen of New York, was also a student of the in-person program at RIT during the Spring 2020 term. Compl., ¶ 36, Case No. 20-cv-6558 (EAW), Jul. 30, 2020, ECF No. 1.

Mycek, a resident and citizen of Pennsylvania, is a parent [1] of a student who was enrolled in the in-person program at RIT during the Spring 2020 term. Am. Compl. at ¶ 11.

As a precondition for enrollment, Plaintiffs (and all similarly situated students) were required to pay substantial tuition. Am. Compl. at ¶ 18. In addition to tuition, students were also required to pay fees such as the "Student Activity Fee" and the "Student Health Services Fee." Am. Compl. at ¶ 12, 30. RIT's website states that the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT[,]" and the Student Health Services Fee "covers office visits and many of the basic services students may need." Am. Compl. at ¶ 31, 32.

The Spring 2020 term began on or about January 13, 2020, and was scheduled to conclude in early May. Am. Compl. at ¶ 34, 35. "Each day for the weeks and months leading up to March 15, 2020, students attended physical classrooms to receive in-person instruction, and [RIT] provided such in-person instruction." Am. Compl. at ¶ 107. Students had full access, during that period, to the full on-campus experience. Am. Compl. at ¶ 109–110. Then, on March 15, 2020, RIT announced that it was moving all of its classes online for the remainder of the Spring 2020 term, and students "were required to move out of on-campus housing no later than April 5, 2020" for the remainder of the term. Am. Compl. at ¶ 37. RIT did not offer any refunds for tuition or student fees. [2] Am. Compl. at ¶ 40, 42.

On August 4, 2020, the Plaintiffs Bergeron and Mycek stipulated to a consolidation of their separate actions against RIT, and the consolidated complaint was filed on September 3, 2020 on behalf of themselves and two putative classes of plaintiffs: the "Tuition Class," and the "Fees Class." Am. Compl. at ¶ 45. The so-called Tuition Class consists of "[a]ll people who paid tuition for or on behalf of students enrolled in classes at [RIT] for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester." *Id.* The so-called Fees Class consists of "[a]ll people who paid fees for or on behalf of students enrolled in classes at the Institute for the Spring 2020 semester." *Id.* The complaint alleges seven causes of action: (I) breach of contract for the Tuition Class; (II) unjust enrichment for the Tuition Class; (III) breach of contract for the Fees Class; (IV) unjust enrichment for the Fees Class; (V) conversion for both putative classes; (VI and VII) violation of 📁 New

York General Business Law § 349 and § 350 prohibiting deceitful business practices and false advertising for both putative classes.

**\*3** On October 5, 2020, RIT filed the motion to dismiss for failure to state a claim that is presently before the Court. A motion hearing was held via video conference on December 3, 2020. Min. Entry, Dec. 3, 2020, ECF No. 39. At the motion hearing, Plaintiffs' counsel represented to the Court that Quattrociocchi had agreed to consolidate his case with Bergeron and Mycek. On December 7, 2020, the Court signed the Order of Consolidation, which stipulated, *inter alia*, that "RIT's arguments in support of dismissal and Plaintiffs' arguments in opposition thereto shall apply equally to Plaintiff Quattrociocchi." Stip. and Order, 2, Dec. 7, 2020, ECF No. 41.

MYCEK'S STANDING

In its motion to dismiss, RIT argues that Mycek lacks standing [3] to pursue any claims against RIT. RIT argues that it is "axiomatic" that parents of adult students "lack standing to assert claims against universities concerning their adult children's education." Def.'s Mem. of Law, 6, Oct. 5, 2020, ECF No. 22. Consequently, RIT states that "the mere act of paying her son's tuition did not render Mycek a party to any underlying contract with RIT." *Id.* In response, Plaintiffs argue that RIT is wrong, and point out that courts in New York "have allowed tuition-paying parents to sue education institutions for 'reimbursement of tuition payments made by [a parent] on behalf of his son.' " Resp. at 5 (quoting *Uddin v. New York Univ.*, 6 N.Y.S.3d 900, 901 (N.Y. App. Div. 2014)).

The Supreme Court has established that the "irreducible constitutional minimum" of Article III standing consists of the three elements that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, *as revised* (May 24, 2016) (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

As the Supreme Court has further explained, "[s]tanding doctrine embraces several judicially self-imposed limits

on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights...." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Indeed, under Federal Rule of Civil Procedure 17, "[a]n action must be prosecuted in the name of the real party in interest.... [except a] minor or incompetent ... may sue by a next friend or by a guardian ad litem." Fed.R.Civ.P. 17(a)(1), (c)(2).

In the present case, Mycek does not allege that her child is a minor, hence she cannot sue on his behalf. *See, e.g., Capellupo v. Webster Cent. Sch. Dist.*, No. 13-CV-6481, 2014 WL 6974631, \*3 (W.D.N.Y. Dec. 9, 2014) ("such rights as parents to prosecute an action on their child's behalf clearly cease when the child becomes an adult.") (citations and internal quotation marks omitted). Neither does Mycek allege that she entered directly into a contract with RIT, or that she is an intended third-party beneficiary. *See, e.g., Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y. 2018) (applying settled New York law that, absent evidence of an intent to benefit the third party, the third party has no right to enforce particular contracts). Instead, Mycek alleges only that she paid the tuition and fees so that her child could enroll as an undergraduate student.

**\*4** The Court finds that Mycek's allegations are insufficient to meet her burden to show injury-in-fact. Consequently, Mycek is dismissed from the action for lack of standing. [4]

RIT'S MOTION TO DISMISS

As indicated above, Plaintiffs allege seven causes of action against Defendant RIT: breach of contract regarding services promised for both tuition and fees, unjust enrichment regarding services promised for both tuition and fees, conversion regarding monies paid for tuition and fees, and violations of New York General Business Law § 349 and § 350 regarding monies paid for tuition and fees. RIT has moved to dismiss Plaintiffs' complaint on the grounds that they have failed to state a claim. It is undisputed that New York substantive law applies.

<u>Legal Standard</u>

Case 2:21-cv-00249-KM-ESK  Document 9  Filed 03/01/21  Page 90 of 211 PageID: 246
*Bergeron v. Rochester Institute of Technology*, Slip Copy (2020)
2020 WL 7486682

"[A] motion to dismiss for failure to state a claim tests only the sufficiency of a complaint." *Green v. Maraio*, 722 F.2d 1013, 1015 (2d Cir. 1983). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Moreover, an action should also be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief...." *Twombly*, 550 U.S. at 558. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." *Comfort v. Ricola USA, Inc.*, No. 19-CV-6089 CJS, 2019 WL 6050301, at *2 (W.D.N.Y. Nov. 15, 2019) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original)). If presented with "two plausible inferences that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable...." *Twombly*, 550 U.S. at 556 (citation omitted).

Breach of Contract

**\*5** It is well-settled under New York law that there is an implied contract between a student and the college or university he attends. *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp.3d 386, 405 (W.D.N.Y. 2017) (quoting *Routh v. Univ. of Rochester*, 981 F.Supp.2d 184, 207 (W.D.N.Y. 2013)). The Second Circuit summarized the nature of that contract as follows:

Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree. The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student. Implicit in the contract is the requirement that the institution act in good faith in its dealing with its students. At the same time, the student must fulfill his end of the bargain by satisfying the university's academic requirements and complying with its procedures.

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citations and internal quotation marks omitted). The initial interpretation of a university's catalogue, "is a matter of law for the Court." *Deen v. New School University*, No. 05 Civ. 7174, 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007) (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)).

To establish a breach of contract claim under New York law, a plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Nevertheless, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Gally v. Columbia Univ.*, 22 F. Supp.2d 199, 207 (S.D.N.Y. 1998). In the context of the student-university implied contract, "a student must identify 'specifically designated and discrete promises.' " *Nungesser v. Columbia Univ.*, 169 F. Supp.3d 353, 370 (S.D.N.Y. 2016) (quoting *Ward v. New York Univ.*, No. 99-cv-8733, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000)). " 'General policy statements' and 'broad and unspecified

2020 WL 7486682

procedures and guidelines' will not suffice." *Id. See also Doe v. Rensselaer Polytechnic Inst.*, No. 120CV01359BKSCFH, 2020 WL 6544607, at *6–7 (N.D.N.Y. Nov. 6, 2020).

In the present case, Plaintiffs allege that they and the other members of the so-called Tuition and Fees classes, respectively, paid the tuition and fees in exchange for RIT's enrolling them as students, admitting them to campus, and granting them the full rights and privileges of on-campus, in-person instruction. Am. Compl. at ¶ 59. Plaintiffs further allege that RIT enrolls students in two separate and distinct products: a premium-priced on-campus program paid by those members of the putative Tuition and Fees classes, and a lower-priced online distance learning program. Am. Compl. at ¶ 64. Plaintiffs claim that RIT breached its contract with them when it moved the premium on-campus program to online distance learning in mid-March 2020, causing them damage "amounting to the difference in the fair market value of the [premium on campus] services and access for which they contracted, and the [online distance learning] services and access which they actually received." Am. Compl. at ¶ 119.

**\*6** In its motion to dismiss the contract claims, RIT presents three principle arguments. First, RIT argues that Plaintiffs' breach of contract claims are barred by RIT's Student Financial Responsibility Agreement ("SFRA") and Tuition Refund policies. Def.'s Mem. of Law at 10. Second, RIT argues that Plaintiffs fail to identify any specific and discrete promise made by RIT to provide exclusively in-person, on-campus instruction. Def.'s Mem. of Law at 13. Finally, RIT argues that Plaintiffs' contract claims fail for lack of cognizable damages. Def.'s Mem. of Law at 15.

*Student Financial Responsibility
Agreement & Tuition Refund Policies*

RIT maintains that Plaintiffs fail to state a claim for breach of contract because the contract between RIT and each individual student on campus is governed by the Student Financial Responsibility Agreement ("SFRA"), which also incorporates by reference RIT's Tuition Refund policies, and does not specifically obligate RIT to provide any particular mode of instruction. RIT also claims that its Undergraduate Bulletin contains tuition policies and a disclaimer that bar Plaintiffs' breach of contract claims.

Before addressing the language of the SFRA, the Court reiterates that, when deciding a Rule 12(b)(6) motion, it may not rely on matters outside of the complaint. Fed.R.Civ.P. 12(d). Of course, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Nevertheless, "with respect to documents that are deemed 'integral' to the complaint, 'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document' ...." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citation omitted).

RIT states that the Court can consider the SFRA because Plaintiffs incorporated both the SFRA and the Tuition Refund policy into their complaint by reference [5] when they allege both that they "entered into contracts with [RIT] which provided that Plaintiffs and other members of the Tuition Class would pay tuition ...," and that the "rights and privileges of student status that comprise the contractual terms are set forth by [RIT] through its website, academic catalogs, student handbooks, [etc.]...." Am. Compl. at ¶ 59, 60. However, after careful review of the amended complaint, the Court finds that it cannot consider either of those documents, submitted by RIT, as incorporated into the complaint, since each bears a date subsequent to the commencement of this lawsuit. *See* Granberg (Ex. B) (dated October 2, 2020); Granberg (Ex. C) (dated Sept. 30, 2020, and including the refund schedule for the Fall 2021 term). Further, other than RIT's bare assertion that "[e]very RIT student must agree to abide by the terms of RIT's SFRA," there is indication that Bergeron or Quattrociocchi actually signed it. The Court declines to dismiss the breach of contract claim at this stage on the basis of language in a document submitted by the movant that is not incorporated into the complaint.

**\*7** On the other hand, the Court may consider the RIT Undergraduate Bulletin, which Plaintiffs expressly reference in their complaint, and which contains part of the Tuition Refund policy. *See* Am. Compl. at ¶ 91; Granberg Decl. (Ex. A), 353–355, ECF No. 21-1. The Undergraduate Bulletin also contains a disclaimer, which RIT believes to be dispositive of the breach of contract claims, that "RIT reserves the right to alter any of its courses at any time." Granberg Decl. (Ex. A) at 370.

With respect to RIT's argument regarding the Tuition Policy in the Undergraduate Bulletin, the Court finds that those

2020 WL 7486682

policies do not bear on the matter at issue. The refund policies as articulated in the bulletin relate to those circumstances in which a student seeks to withdraw from class before completing the term. [6] That is, the policies govern those circumstances in which the student seeks early termination of the contract. In the present case, however, Plaintiffs made no such effort to terminate the contract. Rather, Plaintiffs fully-performed their end of the bargain – payment of tuition and fees – and seek to hold RIT to what they allege was RIT's end of the bargain – in-person, on-campus instruction.

Finally, with respect to the so-called disclaimer included in the Undergraduate Bulletin, the Court notes that it is articulated on page 370 of the University Bulletin, in text that is neither bolded nor offset from the rest of the paragraph in a multi-paragraph sub-section of the bulletin entitled "Course Registration." The paragraph reads as follows:

> To be officially registered at RIT, a student must be academically eligible, have been properly enrolled in a course, and have made the appropriate financial commitment. Typically, students start selecting courses six to eight weeks before the academic term begins and can register online. The registration period ends on the seventh calendar day (excluding Sundays and holidays) of the full fall, spring and summer terms. These first seven days (excluding Sundays and holidays) of the term are typically known as the Add/Drop period. Specific dates and procedures can be found in the academic calendar. RIT reserves the right to alter any of its courses at any time.

Granberg (Ex. A) at 370. RIT argues that this clause expressly permitted its change in the mode of instruction from in-person to online during the Spring 2020 term. Def.'s Mem. of Law at 15.

The Court is not persuaded at this stage by RIT's claim that the so-called disclaimer is dispositive of Plaintiffs' breach of contract claims. Plaintiffs allege a number promises made by RIT with respect to the benefits of enrollment in the more expensive in-person, on-campus program, including: the opportunity to work directly with faculty members in their labs (Am. Compl. at ¶ 71), multi-faceted experiential learning (Am. Compl. at ¶ 70, 73), vibrant campus life (Am. Compl. at ¶ 75), "access to the finest laboratories, technology, and computing facilities available on any campus" (Am. Compl. at ¶ 81), and "a strong and robust network of support on campus to help you succeed" (Am. Compl. at ¶ 97). These allegations clearly extend beyond coursework to the entirety of the educational experience. Read in the light most favorable to Plaintiffs, as it must be at this stage of the proceedings, the scope of the so-called disclaimer – if disclaimer it is – is not broad enough to extinguish Plaintiffs' claims.

*Specific Promises*

**\*8** RIT also argues that Plaintiffs have failed to sufficiently specify the contractual promises they are seeking to enforce. The Court disagrees. As the Court indicated in the previous paragraph, Plaintiffs identify a multitude of promises made by RIT regarding the benefits of its in-person, on-campus program, including opportunities to work directly with faculty in their labs, vibrant and diverse campus life, access to superior technology, and robust on-campus support. With respect to the student fees, Plaintiffs point to such statements on RIT's website as the Student Activity Fee "supports programs, events, and services that enhance the quality of student life at RIT," or that the Student Health Services Fee "covers office visits and many of the basic services students may need." Am. Compl. at ¶ 143. The Court finds these promises to be sufficiently specific to survive a Rule 12(b)(6) motion to dismiss.

*Damages*

Lastly, RIT argues that Plaintiffs' breach of contract claims fail "because the alleged damages are impermissibly speculative and Plaintiffs have not pled, nor can they establish, that RIT caused their alleged damages." Def. Mem. of Law at 15. There are obviously two parts to this argument. First, RIT claims that Plaintiffs' alleged damages would require the Court to speculate about the difference between the subjective value of distance learning and the subjective value of on-campus, in-person instruction. *Id.* Second, RIT argues that by identifying Covid-19 as the cause of RIT's shift

from in-person instruction to online learning, Plaintiffs fail to demonstrate that RIT caused their injury and consequently any resulting damages. Def.'s Mem. of Law at 17.

The Court disagrees with both parts of RIT's argument. In the present case, it is clear that Plaintiffs are attempting to recover "market damages." "General damages are sometimes called 'market' damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach." *Schonfeld v. Hilliard, 218 F.3d 164, 175–76 (2d Cir. 2000)* (internal quotation omitted). Here, the amended complaint states that "Plaintiffs and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received." [7] Am. Compl. at ¶ 119. The Court finds this formulation sufficiently specific.

RIT's claim regarding the lack of causation is similarly without merit. Plaintiffs are not arguing, as RIT suggests, that Covid-19 caused the breach of contract. Rather, Plaintiffs argue that RIT itself caused the breach of contract when, after Plaintiffs had paid valuable consideration in full performance of their part of the bargain, RIT accepted such consideration from Plaintiffs, but "provided a materially different product, which deprived Plaintiffs ... of the benefit of the bargain for which they had already paid." Am. Compl. at ¶ 116. Hence, the Court finds Plaintiffs sufficiently pled RIT as the cause of their injury.

Unjust Enrichment

**\*9** In the alternative to their breach of contract claims, Plaintiffs also allege that RIT was unjustly enriched when it closed its campus in March 2020 and moved its classes online. "The theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder, 973 N.E.2d 743, 746 (N.Y. 2012)* (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268 (N.Y. 2009)* (internal quotation marks omitted)). To adequately plead such a claim under New York law, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience

to permit the other party to retain what is sought to be recovered." *Cohen v. BMW Investments L.P., 668 F. App'x 373, 374 (2d Cir. 2016)* (quoting *Georgia Malone & Co., Inc. 973 N.E.2d at 746* (internal quotation marks omitted). Unjust enrichment "is available only in unusual situations when ... circumstances create an equitable obligation running from the defendant to the plaintiff." *Cohen, 668 F. App'x at 374* (quoting *Corsello v. Verizon New York, Inc., 967 N.E.2d 1177 (2012)*).

Here, Plaintiffs allege that they "and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits." Am. Compl. at ¶ 124. Additionally, "Plaintiffs and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain." Am. Compl. at ¶ 156. Nevertheless, RIT has retained both the full tuition and fees that they paid even though RIT "has failed to provide the services, access, benefits and/or programs for which the [tuition and] fees were collected, making [RIT]'s retention unjust under the circumstances." Am. Compl. at ¶ 159.

RIT argues that Plaintiffs' unjust enrichment claims should be dismissed for two reasons. First, RIT points out that it is well settled under New York law that a party cannot recover on a claim for unjust enrichment where a contract governs the subject matter of the dispute. Def.'s Mem. of Law at 18 (quoting *Pappas v. Tzolis, 20 N.Y.3d 228, 234 (N.Y. 2012)*). Because the parties agree that a contract governs the relationship between RIT and its students, RIT states, the Plaintiffs are precluded from claiming unjust enrichment. *Id.* Second, RIT also argues that Plaintiffs' claim for unjust enrichment fails as a matter of law because Plaintiffs had no reasonable expectation of receiving a refund under RIT's published Refund Policy. *Id.*

New York law does not permit recovery on a quasi-contract claim such as unjust enrichment if the parties have a valid, enforceable contract that governs the same subject matter as the quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005)* (citing *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co., 516 N.E.2d 190 (1987)*). However, a plaintiff may seek damages on alternative – and "mutually exclusive" – theories of breach of contract and unjust enrichment where "there is a dispute over the existence,

2020 WL 7486682

scope, or enforceability of the putative contract." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999).

*See also Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp.2d 185, 195 (S.D.N.Y. 2009).

The Court declines to dismiss Plaintiffs' unjust enrichment claims at this juncture, as they have adequately pled the elements of unjust enrichment and – as noted above in the breach of contract discussion – there is a dispute over the existence, scope, or enforceability of the alleged contract in this case. Further, for the reasons stated above, the Court declines to find Plaintiffs had no reasonable expectation of a refund based on RIT's refund policy. Plaintiffs allege that their performance conferred a financial benefit on RIT to which it was not entitled.

Conversion

**\*10** Plaintiffs' fifth cause of action is for conversion, based on their allegations that they paid their tuition and fees, and that RIT has retained those monies and continues to possess them despite its failure to provide the services promised. Am. Compl. at ¶ 168–176. RIT argues that Plaintiffs' conversion claim is barred by the economic loss rule, and that Plaintiff fails to establish the elements of conversion. Def. Mem. of Law at 20.

According to New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006), *certified question answered*, 864 N.E.2d 1272 (2007) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121 (1995)). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property. *Id.* (quoting *Sporn v. MCA Records, Inc.*, 448 N.E.2d 1324, 1326 (1983)). It also requires that the defendant exclude the owner from exercising her rights over the goods. *Id.* (citing *New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 710 (2002)).

"An action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession." *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases). If the allegedly converted money is "incapable of being described

or identified in the same manner as a specific chattel," such as when a customer of a bank deposits funds into an account at the bank, it is "not the proper subject of a conversion action." *High View Fund, L.P. v. Hall*, 27 F. Supp.2d 420, 429 (S.D.N.Y. 1998). "This is so because a depositor loses (and the bank gains) title to money deposited in a general account at the moment those funds are deposited." *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp.2d 133, 148 (S.D.N.Y. 2000).

In this case, as RIT argues, Plaintiffs have failed to establish the elements of conversion. In particular, Plaintiffs have not alleged "a specific identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp.2d 153, 163–64 (E.D.N.Y. 2013) (quoting *Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 712 (N.Y. App. Div. 1990)). Rather, Plaintiffs voluntarily paid tuition and fees to RIT in exchange for the full rights and privileges of student status. Am. Compl. at ¶ 59. Upon voluntary payment of those monies, title legitimately passed to RIT. *Citadel Mgmt., Inc.*, 123 F. Supp.2d at 148. Consequently, Plaintiffs' conversion claim must be dismissed as a matter of law.

New York General Business Law § 349 and § 350

Plaintiffs' sixth and seventh causes of action allege violations of New York's General Business Law § 349 and § 350 prohibiting deceptive business practices and false advertising. Plaintiffs maintain that RIT's marketing publications created the reasonable expectations of enrolled students that they would receive an in-person, on-campus education for the entire Spring 2020 term. Am. Compl. at ¶ 186. Thus, RIT's actions depriving the students of an in-person, on-campus education between March and May of 2020 "constitute[d] unfair business practices since the actions were deceptive and injurious to Plaintiffs and" other members of the putative classes. Am. Compl. at ¶ 188. The Court disagrees.

**\*11** New York General Business Law sections 349 and 350 state in pertinent parts as follows:

2020 WL 7486682

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful....

False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

N.Y. Gen. Bus. Law §§ 349(a) and 350. Deceptive acts are defined as those that are "likely to mislead a reasonable consumer acting reasonably under the circumstances."

*Horowitz v. Stryker Corp.*, 613 F. Supp.2d 271, 287 (E.D.N.Y. 2009) (citation omitted).

"In order to state a claim under either ... § 349 (which prohibits deceptive business practices) or § 350 (which prohibits false advertising), plaintiff must allege that the defendant engaged in: (1) consumer-oriented conduct; (2) that was materially misleading; and that (3) plaintiff suffered actual injury as a result of the allegedly deceptive conduct." *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 204 (W.D.N.Y. 2020) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). A plaintiff need not establish defendant's intent to defraud or mislead. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).

Determining whether a practice is deceptive or materially misleading is an objective exercise, and requires a showing that the "reasonable consumer would have been misled by the defendant's conduct." *M & T Mortg. Corp. v. White*, 736 F. Supp.2d 538, 570 (E.D.N.Y. 2010). In the present case, the Court finds that no reasonable prospective student could consider him- or herself "deceived" or "misled" where the school's normal course of on-campus instruction was altered mid-semester by an unforeseen global pandemic that prompted the Governor of New York to issue an unprecedented executive order prohibiting on-campus, in-person instruction. Whatever the merit of Plaintiffs' breach of contract or unjust enrichment claims, there is nothing in the complaint that plausibly alleges that RIT's publications would lead a reasonable prospective student to believe that the institution would so risk student safety and defy the Governor's orders.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff Mycek is dismissed from this action for lack of standing, and the Clerk of Court is directed to remove Plaintiff Mycek's name from the case caption; and it is further

ORDERED that Defendant RIT's motion to dismiss the amended complaint [ECF No. 19] is granted in part, and denied in part. Plaintiffs' claims that RIT converted Plaintiffs' funds and violated General Business Law § 349 and § 350 (Counts V, VI, and VII) are dismissed. Plaintiffs' claims that RIT was in breach of contract or was unjustly enriched with respect to tuition and fee payments (Counts I, II, III, IV), may go forward; and it is further

ORDERED that Defendant RIT must file an answer to Plaintiffs' remaining claims within thirty days of the date of this order.

**All Citations**

Slip Copy, 2020 WL 7486682

## Footnotes

1    The amended complaint alleges that Mycek is also a student. However, Plaintiffs' counsel clarified during oral argument that this was a typographical error, and that Mycek is actually a parent of an undergraduate student.

2    By contrast, it appears that RIT did offer a prorated refund for housing costs. *See* Pla. Mem. of Law, 5 n.8, Nov. 5, 2020, ECF No. 32.

3    RIT originally argued that Bergeron also lacked standing, but later withdrew that claim. *See* Def.'s Reply, 4 n.3, Nov. 19, 2020, ECF No. 37. There is no challenge to Quattrociocchi's standing.

2020 WL 7486682

4    The court notes that other jurisdictions have likewise found that a parent lacks Article III standing to bring an action against an institution of higher learning on behalf of their adult children. *See, e.g., Salerno v. Fla. S. Coll.*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522, at *4 (M.D. Fla. Sept. 16, 2020) ("It is also of note that the lack of injury to Salerno is clear regardless of whether Salerno provided financial support to her daughter. That arrangement was between mother and daughter.") *See also Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212, at *6 (C.D. Cal. Dec. 11, 2020) ("... Plaintiffs allege that the injury at issue is Occidental's failure 'to provide in-person courses and access to campus benefits.' However, [the student], not [the parent], was the intended beneficiary of any promises that Occidental allegedly made and [the student], not [the parent], suffered any alleged injury that resulted from the transition to remote instruction. Plaintiffs have failed to allege any separate and distinct injury suffered by [the parent]....") (citations omitted).

5    *Cf. Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOX), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020); *Chong v. Ne. Univ.*, No. CV 20-10844-RGS, 2020 WL 5847626, at *2–3 (D. Mass. Oct. 1, 2020). RIT cites the foregoing cases in support of its motion to dismiss. However, in both of these cases, the agreements were explicitly referenced and relied upon by the plaintiffs in their complaint. *See Lindner*, 2020 WL 7350212 at *1 (stating "[p]laintiffs allege that they entered into a contract with Occidental and that "[t]he terms of the contractual agreement were set forth in publications from Occidental, including Occidental's" 2019-2020 Course Catalog.... [in which] Occidental expressly reserved the right, in the Tuition and Fees section, 'to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so.' "); *Chong*, 2020 WL 5847626 at *2–3 (stating "plaintiffs allege that they 'had an agreement' with Northeastern 'in the form of the' [Financial Responsibility Agreement].... [which] ties the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction.")

6    In the Undergraduate Bulletin, the Tuition Refund policy states that a student is entitled to a full refund upon withdrawal only in the event of active military service, academic suspensions, and specified circumstances for part-time students. Granberg Decl. (Ex. A) at 354. The policy states that a student may receive a partial refund only for illness, withdrawal at RIT's request, transfer by employer, or withdrawal by the student for reasons approved by the student's academic advisor. *Id.*

7    In addition, at the motion hearing, counsel for Plaintiffs reiterated that Plaintiffs were not seeking a subjective evaluation of in-person versus online instruction. Counsel explained:

[W]e'll put this up at the appropriate time which is clearly not in a Rule 12(b)(6) motion. But we're just going to have experts who are going to be able to identify the price, what I'll call premium, to an in-person education versus an online education and that's easy to do ... because there's a market for it.
There are ... literally hundreds of universities, if not thousands, across this country. Some offer classes exclusively online. Some offer hybrid programs. Some offer both like RIT. And in every single case, the online program is substantially cheaper.... It's because the market, the market for educational services demands a premium for in-person learning....
Tr. 29:3–16.

---

**End of Document**                                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 5**

KeyCite Yellow Flag - Negative Treatment

Distinguished by  Hassan v. Fordham University,  S.D.N.Y.,  January 28, 2021

2020 WL 7389155
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Morgan FORD, individually and on behalf of all others similarly situated; Ethan Deecher, individually and on behalf of all others similarly situated; and Grady Habicht, individually and on behalf of all others similarly situated, Plaintiffs,

v.

RENSSELAER POLYTECHNIC INSTITUTE, Defendant.

1:20-CV-470
|
Signed 12/16/2020

### Attorneys and Law Firms

OF COUNSEL: ERIC POULIN, ESQ., ROY T. WILLEY, IV, ESQ., ANASTOPOULO LAW FIRM, Attorneys for Plaintiffs, 32 Ann Street, Charleston, South Carolina 29403.

OF COUNSEL: KELSEY W. SHANNON, ESQ., LYNN LAW FIRM, LLP, Attorneys for Plaintiff Ford, M&T Bank Building, 101 South Salina Street, Suite 750, Syracuse, New York 13202.

OF COUNSEL: EDWARD TOPTANI, ESQ., TOPTANI LAW PLLC, Attorneys for Plaintiff Ford, 375 Pearl Street Suite 1410, New York, New York 10038.

OF COUNSEL: JOHN McLEOD BRADHAM, ESQ., PETER BRYAN KATZMAN, ESQ., MOREA SCHWARTZ BRADHAM FRIEDMAN & BROWN LLP, Attorneys for Plaintiff Ford, 444 Madison Avenue, 4th Floor, New York, New York 10022.

OF COUNSEL: DONALD W. BOYAJIAN, ESQ., JAMES R. PELUSO, JR., ESQ., JOSHUA R. FRIEDMAN, ESQ., DREYER BOYAJIAN LLP, Attorneys for Plaintiffs Deecher and Habicht, 75 Columbia Street, Albany, New York 12210.

OF COUNSEL: JONATHAN B. FELLOWS, ESQ., SUZANNE M. MESSER, ESQ., BOND SCHOENECK &

KING, PLLC, Attorneys for Defendant, One Lincoln Center, Syracuse, New York 13202.

OF COUNSEL: MICHAEL E. GINSBERG, ESQ., PATTISON, SAMPSON LAW FIRM, Attorneys for Defendant, P.O. Box 208, 22 First Street, Troy, New York 12181.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, United States District Judge

## I. INTRODUCTION

**\*1** It barely needs mentioning that the daily life of a vast majority of Americans—and indeed, human beings—before the COVID-19 pandemic seems foreign to the way we now must live in the middle of it. Higher education has not been spared. Countless students were sent home from colleges and universities mid-semester, including the students attending defendant Rensselaer Polytechnic Institute ("RPI" or "defendant"). Although their education continued remotely, to at least some of those students online learning was apparently less than they bargained for.

Now three of RPI's students, Morgan Ford ("Ford"), Ethan Deecher ("Deecher"), and Grady Habicht ("Habicht", together "plaintiffs") have sued defendant for breach of contract and other New York torts in the hopes of recovering in some measure the difference between the on-campus education they expected and the online schooling they received. Defendant disputes plaintiffs' claims and to that end has moved for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c). That motion, having been fully briefed, will now be decided on the parties' submissions and oral arguments.

## II. BACKGROUND

Plaintiffs Ford, a New Jersey resident, Deecher, a Massachusetts resident, and Habicht, a Connecticut resident, are all undergraduate students currently enrolled at RPI. Dkt. 28 ("Compl."), ¶¶ 10-15. [1] Plaintiffs allege that they were drawn to defendant in part because of "The Rensselaer Plan 2024" (the "Plan"), a framework of programs, some enacted, some yet hypothetical, designed to afford its students a unique educational experience. *Id.* ¶¶ 28-29, 31. The language of the Plan has a flavor of commitment, and most of its substantive

clauses begin with the phrase "we will." *See* Dkt. 28-1, *passim.*

Of particular relevance, RPI claims in the Plan that it "will ... [o]ffer a complete student experience, highlighted by[ ] Clustered Learning, Advocacy, and Support for Students" ("CLASS"). Dkt. 28-1, p. 6. [2] Defendant's CLASS program, which it has actively incorporated into student life, is designed to improve counseling, academic skill development, community building, and other purported benefits that "originate within the residential setting." *Id.* at 12, *see* Compl. ¶ 41 (describing CLASS as an operational and ongoing program). Defendant's catalog defines the CLASS program as "built around a time-based clustering and residential commons program." Dkt. 29-1. To help facilitate CLASS, defendant mandates that all first- and second-year students, as well as transfer students, live on campus. Compl. ¶ 131.

In addition to the CLASS program, RPI has another program that it refers to as "The Arch." Compl. ¶ 44. The Arch requires all second-year students to live on-campus during the summer between their second and third years. *Id.* During that summer, the students take focused classes that are intended to afford more meaningful interaction with defendant's professors. *Id.* ¶ 47. After completing the Arch, third-year students typically spend their fall semester away from campus in internships or other experiential learning environments to facilitate post-graduate employment opportunities. *Id.* ¶ 49.

**\*2** As is the case with so many areas of life, however, the COVID-19 pandemic drastically changed the way RPI's 2020 programs would proceed. On March 10, 2020, due to concerns about the spread of the virus, defendant cancelled all university-sponsored events. Compl. ¶ 73. On March 11, 2020, defendant required students to move out of on-campus housing. *Id.* ¶ 75. Although defendant eventually issued refunds for Spring 2020 room and board fees after having required its students to move out early, defendant reduced these reimbursements by the net of a reimbursed student's financial aid. *Id.* ¶ 85. Effective March 16, 2020, defendant moved all classes exclusively online. *Id.* ¶ 74. Nevertheless, rising third-year students were still required to complete the Arch online, even though it would no longer provide the in-person experience it originally intended. *Id.* ¶ 80.

Plaintiffs allege that because RPI cancelled all activities and in-person instruction, they were deprived of the benefit of the on-campus education, activity fees, housing fees, and meal

allowances for which they had paid in full before the semester began. Compl. ¶¶ 77, 81-84.

On April 25, 2020, Ford filed the present class action complaint in this District. Dkt. 1. Deecher and Habicht filed their own complaints on May 4, 2020. On September 10, 2020, all three plaintiffs filed a consolidated amended complaint, the current operative pleading. Dkt. 28. The amended complaint states eleven causes of action, eight of which state putative class allegations: (I & II) breach of contract or in the alternative unjust enrichment on behalf of a class of those who paid tuition for students for the Spring 2020 or Arch 2020 semesters; (III & IV) breach of contract or in the alternative unjust enrichment for a class of those who paid fees for students for the Spring 2020 or Arch 2020 semesters; (V & VI) breach of contract or in the alternative unjust enrichment for a class of those who paid for on-campus housing for students during the Spring 2020 semester; (VII & VIII) breach of contract or in the alternative unjust enrichment for a class of those who paid for students' meal plans for the Spring 2020 semester; (IX) conversion; (X) violation of N.Y. GEN. BUS. LAW §§ 349 (" § 349") and 350 ("§ 350"); and (XI) promissory estoppel. Compl. pp. 22-54.

On October 9, 2020, RPI answered the amended complaint. Dkt. 29. Four days later, on October 13, 2020, defendant filed the present motion for judgment on the pleadings under Federal Rule of Civil Procedure ("Rule") 12(c). Dkt. 30. On December 3, 2020, the parties presented oral argument. Text Minute Entry dated 12/3/2020.

## III. LEGAL STANDARD

Rule 12(c) allows a party to move for judgment on the pleadings, so long as it does so early enough not to delay trial. FED. R. CIV. P. 12(c). In most material respects, the Rule 12(c) standard is the same as the familiar failure to state a claim standard under Rule 12(b)(6). *See, e.g., Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Instead, the complaint must contain

2020 WL 7389155

sufficient factual matter that it presents a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540. The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## IV. DISCUSSION

**\*3** RPI has moved to dismiss plaintiffs' amended complaint in its entirety. Defendant argues five major points: (1) plaintiffs have failed to allege a specific contractual promise defendant breached to sustain their breach of contract claims; (2) plaintiffs' unjust enrichment claims are duplicative of their breach of contract claims and fail to prove that justice requires plaintiffs to be repaid; (3) plaintiffs' conversion claims are also duplicative and fail to identify a property interest of which plaintiffs were deprived; (4) plaintiffs' General Business Law claims fail to allege a deceptive practice; and (5) plaintiffs have not alleged that defendants breached a clear and unambiguous promise.

### A. Breach of Contract (Counts I, III, V, and VII).

To survive a motion to dismiss, a breach of contract claim need only allege: (1) the existence of an agreement; (2) adequate performance of that agreement by the plaintiff; (3) breach of the agreement by the defendant; and (4) resulting damages. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Specific to universities, an implied contract "is formed when a university accepts a student for enrollment[.]" *Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81, 93 (2d Cir. 2011).

That implied contract tasks a student with complying with the university's terms and completing its required courses, and in return the student is awarded a degree. *Papelino*, 633 F.3d at 93. But also implicit in that contract is a requirement that the university "act in good faith in its dealing with its students."

*Id.* (citing *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 426 N.Y.S.2d 248, 402 N.E.2d 1150, 1153 (1980)).

However, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014). Instead, "only specific promises ... in a school's bulletins, circulars[,] and handbooks, which are material to the student's relationship with the school," are enforceable." *Keefe v. N.Y. Law School*, 71 A.D.3d 569, 897 N.Y.S.2d 94, 95 (1st Dep't 2010). In other words, "[g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice." *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 175 (N.D.N.Y. 2020) (internal citations and quotation marks omitted).

RPI's arguments proceed across five vectors. The first is that the contractual nature of a student's relationship to an educational institution is limited to only specific promises in the university's bulletins, circulars, and regulations. To hear defendant tell it, plaintiffs have failed to point to any promise in such a document that defendant has broken. Instead, the only promise defendant sees is a generalized agreement to pay for tuition, which it defines as payment for instruction. By continuing to instruct its students, defendant argues that it has upheld its end of the bargain.

To that end, RPI relied in large part at oral argument on *Maas v. Cornell University*, 94 N.Y.2d 87, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999). The *Maas* court affirmed a lower court's denial of judicial review of a contractual dispute between a school and a tenured professor. *Id.*, 699 N.Y.S.2d 716, 721 N.E.2d at 967. In doing so, it noted that "[c]ourts retain a restricted role in dealing with and reviewing controversies involving colleges and universities" because educational institutions "are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence." *Id.*, 699 N.Y.S.2d 716, 721 N.E.2d at 968-69.

*Maas*'s use is somewhat limited. After all, there is precious little similarity between students asserting a breach of contract claim and a professor asking a court to take up a judicial review of a school's administrative decision. *Maas*, 699 N.Y.S.2d 716, 721 N.E.2d at 967. Nevertheless, the Court of

course acknowledges that its review of plaintiffs' contractual claims is circumscribed to enforcing specific promises.

**\*4** RPI has repeatedly insisted that plaintiffs have identified no such promise. But plaintiffs claim they have pointed at two. Their first candidate, an implied promise for on-campus education based on the nature of defendant's dealings with the school, does not withstand scrutiny. As defendant pointed out both on the papers and at oral argument, breach of contract actions between a student and a school must be grounded in a text, such as a school's bulletins, handbooks, catalogs, or circulars, or else courts should decline to involve themselves.

*See, e.g.,* *Keefe*, 897 N.Y.S.2d at 95; *Maas*, 699 N.Y.S.2d 716, 721 N.E.2d at 968-69. In light of existing precedent, such an esoteric contract claim cannot be sustained.

But plaintiffs' submissions do provide for one alternative source of a specific promise: RPI's CLASS program, which is described at length in defendant's circulars, including the Plan and catalog. According to plaintiffs, defendant's publications describe a (mandatory) on-campus learning experience that is integral to attending its school.

Nevertheless, RPI argues that it is improper to rely on the Plan as a basis for a specific promise, because the Plan merely sets goals, not policy. Plaintiffs dispute defendant's characterization of the Plan as aspirational ideas, because the Plan's tone is consistently declaratory, with several of its statements beginning with the phrase "we will."

RPI's arguments concerning the Plan must be rejected. At the outset, whether the Plan could adequately provide a promise is largely beside the point. Defendant's catalog describes the CLASS program in much the same terms as the Plan. That document's claims that the CLASS program provides a "time-based clustering and residential commons program" touted as an "award-winning First-Year Experience" that "extends learning across the spectrum of student residential life" fits the bill of a specific promise in any case, at least for the purposes of a  Rule 12(c) motion. Dkt. 29-1; *Andre v. Pace Univ.*, 170 Misc.2d 893, 655 N.Y.S.2d 777, 779 (Sup. Ct. App. Div. 2d Dep't 1996) ("The rights and obligations of the parties, as contained in the university's bulletins and catalogs[,] became a part of the parties' contract ....").

But in any case, the Plan is similarly qualified to provide a specific promise to support plaintiffs' claims at this stage. At least for the purposes of a  Rule 12(c) motion, the Plan

qualifies as a circular, and thus would be eligible to present a specific promise to support plaintiff's claim. [3]

Even if the Plan is the right type of document to provide a promise, RPI argues that the Plan amounts only to aspirational goals and statements of policy, which it claims cannot support a specific promise. In making that argument, defendant relies on cases striking down breach of contract claims based on anti-discrimination policies and declarations involving vague terms such as "fair and equal treatment." *See, e.g., Faiaz*, 64 F. Supp. 3d at 359-60 (rejecting as promise requirement that "standards of consistency and equity in disciplinary proceedings are maintained" (cleaned up)).

But generic statements like those are of an entirely different character than the specific programs the Plan formulates. Although it may lay out some objectives defendant only hopes to achieve, RPI has implemented parts of the Plan —and especially the CLASS programs. *See* Compl. ¶ 41. Yet despite defendant's enacting CLASS just as it claimed it would, plaintiffs were denied the opportunity to enjoy the supposed benefits of that program. It is one thing for courts to refuse to open up an institution of higher learning to liability for any possible breach of its commitment to "fairness" in its administrative proceedings, but using that line of reasoning to absolve a school of its liability for not providing a program that it claimed in circulars that it "will" provide is another matter entirely. *See Faiaz*, 64 F. Supp. 3d at 359-60.

**\*5** Even still, RPI points to two cases that it believes illustrate why plaintiffs' claims should be dismissed. The first is *Paynter v. New York University*, 66 Misc.2d 92, 319 N.Y.S.2d 893, 893-94 (Sup. Ct. App. Div. 1st Dep't 1971), in which the court dismissed a breach of contract claim after the defendant university completely shut classes down in response to civil unrest. Plaintiffs distinguish *Paynter* by noting that the court in that case only reversed a lower court's ruling that canceling a few days of in-person classes to protect the safety of its students constituted a breach of contract. 319 N.Y.S.2d at 894. The Court agrees with plaintiff that there is a world of difference between canceling some classes—in the absence of any affirmative guarantee on the number of classes to be held—and not affording students services and benefits for an extended period of time despite such a promise. Accordingly, *Paynter* does not control the outcome of this case.

RPI also points to  *Chong v. Northeastern University.* ——— F.Supp.3d ———, 2020 WL 5847626 (D. Mass. Oct. 1, 2020).

In *Chong*, the District of Massachusetts dismissed a breach of contract claim against a university for shuttering in-person classes during the COVID-19 pandemic. *Id.* at ——– ——–, at *2-3. Of particular importance to its decision, the plaintiffs in that case failed to provide any promise more concrete than a document that amounted to an agreement to pay tuition in exchange for classes. *Id.* at ——–, at *3.

However, it bears noting that the *Chong* court nevertheless allowed its plaintiffs' claims alleging a breach of contract for not refunding those plaintiffs' activity fees to proceed. —— F.Supp.3d at ——–, 2020 WL 5847626, at *4. For their part, plaintiffs dispute *Chong* by arguing that their theory of recovery is different from that of the plaintiffs in that case, because these plaintiffs have pointed to the Plan and the catalog as the source of specific promises of in-person instruction on defendant's part. *See id.*

Plaintiffs are correct. The document that purported to establish a specific promise in *Chong* only tied the payment of tuition to a student's ability to register for courses or receive other services, without so much as mentioning whether those classes would be in-person or what those services would be. —— F.Supp.3d at ——–, 2020 WL 5847626, at *3. This case, by contrast, involves precisely such a promise directed at affording an in-person program that defendant had previously put in place and implemented. *See, e.g.*, Dkt. 29-1 p. 13 (describing and touting benefits of CLASS program). Accordingly, *Chong* is distinguishable and of little weight.

Contrary to RPI's arguments, it made some bold claims— or, plausibly, promises—about its in-person programming and hammered repeatedly on the benefits of those programs in an assortment of circulars and even in its catalog. As it stands, plaintiffs have thus adequately alleged, through both the catalog and the Plan, that defendant has released a publication expounding the virtues of its in-person programming that it ultimately did not provide. Drawing all reasonable assumptions in plaintiffs' favor, those allegations are sufficient for the purposes of a Rule 12(c) motion and defendant's first line of argument must be rejected. *See, e.g., Salerno v. Fla. S. Coll.*, —— F.Supp.3d ——–, ——– ——–, 2020 WL 5583522, at *4-5 (M.D. Fla. Sept. 16, 2020)

(holding that breach of contract claim should survive Rule 12 motion because defendant college's publication implied that courses would be conducted in-person and touted the school's many resources and facilities). [4]

RPI's second line of argument is that "tuition" is defined as payment for instruction, which plaintiffs received. Thus, any argument that plaintiffs make that would entitle them to a return of their tuition payments would by necessity challenge the quality of defendant's instruction and be an impermissible educational malpractice claim in disguise. Because New York does not recognize educational malpractice, or claims alleging the school failed to provide an effective education, defendant claims this argument alone settles matters. *See Papelino*, 633 F.3d at 93.

*6 But RPI's arguments about the definition of tuition again miss the mark. It may be that tuition is defined as "payment for instruction," but defendant can hardly deny that there is more to the contractual relationship than its argument would suggest. Paying tuition inherently changes the applicant's status to student. That status allows a student to access a number of resources she would be denied if she had not enrolled. Access to the school's computers, laboratory equipment, library services, research tools, and more hinge entirely on whether a student has paid up. In short, what a student expects to receive in exchange for tuition money covers much more territory than simply the right to take classes.

But setting the logical pitfalls of RPI's arguments aside, the legal consequences of adopting defendant's arguments are at least as problematic. If a plaintiff may only recover tuition that she paid in circumstances in which the school breached a contract involving her instruction, then once a student pays her tuition the school need only provide some instruction to be able to keep the entire tuition figure.

So long as it teaches her anything at all, any other conceivable breach would fall into either of two categories. On the one hand, a claim not concerning the instruction itself would— under RPI's reasoning—not entitle the plaintiff to recover tuition because tuition is only recoverable in instances of a denial of instruction. On the other hand, if a claim did contemplate a promise regarding the quality of her instruction, it would fall under the heading of educational malpractice and thus not be cognizable under New York law. *Papelino*, 633 F.3d at 93.

By necessary implication, if RPI's arguments as to the nature of tuition carry the day, a school could expressly promise anything it wished in terms of the nature of its instruction—even in its bulletins, circulars, and handbooks—never even attempt to provide those things, yet be perfectly insulated from a suit to recover any portion of tuition so long as it actually provided some education to its students. New York's deference to educational institutions cannot reach so far as to deny students any recourse for breaches of express promises. Otherwise, the cemented rule that a university can be bound by promises in its bulletins, handbooks, and circulars would be devoid of any avenue for a plaintiff to recover for a breach of one of those promises because the school would be entitled to keep plaintiff's tuition payments regardless of any breach. *Keefe*, 897 N.Y.S.2d at 95.

Accordingly, plaintiffs' claims seeking recompense from their tuition payments do not by necessity fall under the heading of educational malpractice, and if plaintiffs successfully prove out their claims of breach based on the Plan and the catalog, they will be able to recover from RPI a portion of the amount they paid in tuition.

Because plaintiffs do not automatically transgress New York's educational malpractice prohibition by the nature of their claims, it is worth noting further that plaintiffs' claims do not run afoul of the educational malpractice prohibition by merit, either. Plaintiffs do not argue that they were given inferior instruction. They similarly do not challenge the merits of RPI's decision to shift to remote learning, which is what New York's educational malpractice rule seeks to avoid. *Cf.* *Papelino*, 633 F.3d at 94 (noting in dismissing breach of contract claim as disguised educational malpractice claim that academic decisions should be "left to the sound judgment of the professional educators"). All they argue is that regardless of fault, the value of the on-campus experience defendant plausibly promised them is greater than the value of the remote experience they received. That can be true even if defendant made every choice reasonably, or even perfectly.

*7 Which, unsurprisingly, is exactly what RPI claims that it did. Its third line of argument cashes out to claiming that it had no choice but to shut down, and that it thus cannot be held accountable for the financial fallout of that decision, to whatever extent it had the discretion to decide. Yet ultimately, it bears remembering that much as defendant would make of the fact that it was forced to shut down, that does not answer whether it or its students should bear the cost of that outcome.

When pressed on this point at oral argument, RPI was adamant that it did not profit from shutting down and that it felt losses just like its students did. The Court does not doubt the veracity of this claim. A pandemic is global by definition, and few if any have escaped hardship as a consequence. For all that, the question remains: in the event of an unforeseeable, faultless breach, who should bear the burden for the unfulfillment of a contract?

It therefore does not matter whether RPI could have continued to operate in-person classes. It does not matter whether defendant's decisions were prudent or necessary. What matters at this moment is that plaintiffs have plausibly alleged that defendant specifically promised in its circulars a bevy of in-person academic programs that it did not provide. Those allegations are enough to survive a motion for judgment on the pleadings.

Accordingly, because all of RPI's arguments against plaintiffs' Count I breach of contract claim by the purported tuition class have been rejected, defendant's motion for judgment on the pleadings against Count I must be denied. [5] *See, e.g.*, *Rosado v. Barry Univ. Inc.*, --- F.Supp.3d ----, ---- – ----, 2020 WL 6438684, at *3-4 (S.D. Fla. Oct. 30, 2020) (denying motion to dismiss because plaintiffs' complaint properly alleged that school, not students, should bear risk for cessation of in-person classes necessitated by COVID-19 pandemic).

Fourth, RPI argues that Count III should be dismissed because plaintiffs have not demonstrated a specific promise on defendant's part regarding the activity fees plaintiffs paid to it. Plaintiffs counter that argument by pointing out that according to defendant's own catalog, the Activity Fee all students pay "carries with it Rensselaer Union membership privileges." Dkt. 29-1, p. 68. As for what those privileges entail, that same document points to "over 200 service, media, recreation, club sports, performing and visual arts, multicultural, and special interest student organizations." *Id.* at 35. Plaintiffs have alleged that they paid the full activity fees, yet after March they did not "have access to ... facilities, activities, services, or other opportunities." Compl. ¶¶ 62, 64-65. Plaintiffs have thus plausibly alleged a breach of a specific promise. [6] Accordingly, defendant's motion for judgment on the pleadings against Count III must also be denied.

2020 WL 7389155

**\*8** Fifth and finally, RPI argues that it did, in fact, provide partial refunds to students to the extent that they paid for room and board and that by extension Counts V and VII must be dismissed. Plaintiffs do not dispute that they received a partial refund, but they do argue that reducing refunds based on the amount of financial aid paid to students is unfair because the amount of aid is not responsive to whether a student signs up for a meal plan or lives on-campus. Instead, plaintiffs argue students are paid financial aid in a flat amount based on their family's income regardless of whether they live on campus or purchase a meal plan.

Upon consideration, and for the purposes of a 🔖 Rule 12(c) motion, the Court agrees with plaintiffs. Because plaintiffs have plausibly alleged a promise of room and board in exchange for their payment of the associated fees, RPI is saddled with an ongoing duty of good faith and fair dealing in carrying out that promise. 🔖 *Papelino*, 633 F.3d at 93. Withholding repayment to plaintiffs for a service that they did not receive because of an entirely unrelated consideration could plausibly violate that duty, and thus plaintiffs' claims must survive for now. In addition, the Court is concerned that defendant's policy in fact seems to directly target the students most in need of a refund. Accordingly, defendant's motion for judgment on the pleadings against plaintiffs' Counts V and VII must also be denied. Plaintiffs' breach of contract claims must proceed to discovery.

**B. Unjust Enrichment (Counts II, IV, VI, and VIII).**
Proving an unjust enrichment claim under New York law requires a plaintiff to prove: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." 🔖 *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citations and quotation marks omitted). Unjust enrichment is a quasi-contractual theory of recovery that exists in the absence of an affirmative agreement. 🔖 *Id.* at 586-87 (citing 🔖 *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 807 N.Y.S.2d 583, 841 N.E.2d 742, 746 (2005)).

By extension, the existence of an enforceable, written contract will typically preclude a recovery for a quasi-contractual claim, including for unjust enrichment, 🔖 *EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861, 873-74 (S.D.N.Y. 2000). In other words, an unjust enrichment

claim is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." 🔖 *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (quoting 🔖 *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012)).

However, if the subject-matter of an unjust enrichment claim "is not covered by a valid, enforceable contractual obligation," that claim is not duplicative and need not be dismissed based solely on the existence of a breach of contract claim. *See, e.g.*, 🔖 *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010) (declining to dismiss unjust enrichment claim where contract did not cover subject of unjust enrichment claim).

RPI makes two arguments in favor of dismissing plaintiffs' unjust enrichment claims. First, it argues that these claims are duplicative of plaintiffs' breach of contract claims, because the implicit contract between students and universities governs plaintiffs' requests for relief. Plaintiffs counter this argument by pointing out that they are permitted to plead unjust enrichment in the alternative because defendant disputes that a contract covers their claims. Defendant would dispel plaintiffs' point by noting that it does not dispute the existence of a contractual relationship between the parties, only that there exists a specific promise entitling plaintiffs to the relief that they seek.

**\*9** RPI's argument is clever, but mistaken. If defendant successfully proves that there is no valid, enforceable contractual provision that affords plaintiffs relief, then their unjust enrichment claim would be viable regardless of their erstwhile breach of contract claims. *Spirit Locker*, 696 F. Supp. 2d at 305. In particular, plaintiffs correctly note that if defendant successfully proves impossibility, the contract would become unenforceable, and their unjust enrichment arguments would return to fill the gap. *See* 🔖 *H.Daya Int'l Co. v. Arazi*, 348 F. Supp. 3d 304, 312 n.6 (S.D.N.Y. 2018) (dismissing unjust enrichment claim as moot only after defendants failed to prove impossibility of contract and were found liable for breach of contract).

RPI's second argument is a closer call. Defendant argues that plaintiffs cannot contend that justice requires that they be reimbursed because the pandemic demanded the end of defendant's in-person programming. Plaintiffs of course do not dispute that defendant needed to shut down. Instead,

they argue that it is unjust for defendant to keep their full tuition payments and to discount plaintiffs' refunds based on financial aid on a net basis.

Plaintiffs' framing of the issue of what justice requires is the better one. Once again, RPI misses the mark by viewing plaintiffs' complaint as an attack on its decision to shut down. Plaintiffs do no such thing. Instead, plaintiffs simply call defendant to task for keeping the money that plaintiffs paid expecting in-person instruction. For the same reasons discussed regarding plaintiffs' breach of contract claims, defendant's alleged suggestions of the value of its in-person programming make the injustice of defendant keeping the portions of plaintiffs' tuition, fees, housing, and meals payments plausible. Thus, plaintiffs' unjust enrichment claims under Counts II, IV, VI, and VIII must survive. *See, e.g.*, *Salerno*, —— F.Supp.3d at ——, 2020 WL 5583522, at *5 (allowing unjust enrichment claim in alternative to breach of contract claim where defendant university needed to shut down for COVID but had implicitly promised in-person instruction).

### C. Conversion (Count IX).

New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 637 N.Y.S.2d 342, 660 N.E.2d 1121, 1126 (1995)). To prove that claim out, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted).

However, conversion cannot enforce a simple obligation to pay money, *see Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases), unless the money is in the form of a "specific, identifiable fund" subject to "an obligation to return or otherwise treat in a particular manner[,]" *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 559 N.Y.S.2d 704, 712 (1st Dep't 1990). Additionally, "[a] conversion claim may only succeed if the

party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (footnote omitted).

RPI argues that plaintiffs fail to identify a property interest over which defendant improperly took dominion. Plaintiffs respond by arguing that the tuition and fees they paid defendant took the form of a specific fund that defendant could convert. But plaintiffs cannot realistically argue that once that money was paid to defendant it remained intact, as opposed to pooling in with defendant's other funding. Thus, plaintiffs have failed to allege that their tuition and fee payments still exist as a "specific, identifiable fund" that defendant could have converted. *Chem. Bank*, 559 N.Y.S.2d at 712. Defendant's motion for judgment on the pleadings must therefore be granted as to plaintiffs' Count IX claim for conversion.

### D. New York General Business Law §§ 349 and 350 (Count X).

**\*10**  To state a claim under §§ 349 or 350[7], a plaintiff must allege: "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 N.Y.S.2d 452, 967 N.E.2d 675, 675 (2012). "Deceptive acts are defined objectively[ ] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (cleaned up and internal citation marks and quotations omitted).

RPI principally argues that plaintiffs have failed to plead a materially misleading practice on its part. Plaintiffs counter that defendant advertises that it will have on-campus learning, and that those students reasonably expected on-campus learning to be available. Plaintiffs also argue that there is no specific intent requirement under either § 349 or § 350.

Plaintiffs' arguments, although establishing the difference between their expectations and reality, fail to demonstrate how defendant misled them as contemplated by the statute. Even assuming that plaintiffs' formulation of the law is correct and there is no specific intent requirement, plaintiffs have nevertheless failed to adequately allege that RPI committed a deceptive act. No reasonable consumer would expect a university to remain open for in-class instruction

Case 2:21-cv-00249-KM-ESK Document 9 Filed 03/01/21 Page 106 of 211 PageID: 262
Ford v. Rensselaer Polytechnic Institute, --- F.Supp.3d ---- (2020)

2020 WL 7389155

in the face of a pandemic and a state-mandated shutdown, regardless of whether the school advertised on-campus learning as a strength. *Boule*, 328 F.3d at 94. Accordingly, plaintiffs' arguments as to specific intent are irrelevant because they cannot plausibly allege that they meet the objective test required of them. *Id*. Plaintiffs' Count X claims under §§ 349 and 350 must therefore also be dismissed.

#### E. Promissory Estoppel (Count XI).

A plaintiff may establish promissory estoppel through proving three elements: (1) the defendant's "clear and unambiguous promise"; (2) upon which the plaintiff reasonably relied; (3) to her detriment. *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019). Much like unjust enrichment, promissory estoppel is a quasi-contractual claim, which "generally applies only in the absence of a valid and enforceable contract." *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011).

However, once again, most courts have held that where a defendant disputes the existence of a valid, enforceable contract, a plaintiff may plead promissory estoppel as an alternative theory of recovery. *See, e.g.*, *Personal Watercraft Prod. SARL v. Robinson*, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (collecting cases permitting alternative pleading of promissory estoppel and unjust enrichment).

The arguments on this point effectively rehash the parties' earlier breach of contract arguments. RPI argues that plaintiffs do not provide a specific promise which they allege it breached outside of the Plan, which is only a list of goals and principles. Plaintiff argues that the Plan does provide specific promises and defendants should be held to them.

**\*11** RPI has not provided any novel ground worthy of barring plaintiffs' promissory estoppel claim distinct from those that did not allow it to prevail in dismissing plaintiffs' breach of contract claims. The only new cases defendant cites in support of dismissing plaintiffs' promissory estoppel claim are *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017), and *Prasad v. Cornell University*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016). But neither of those cases found a specific promise to support their plaintiffs' breach of contract claims. *Rolph*, 271 F. Supp. 3d at 408; *Prasad*, 2016 WL 3212079, at *22.

This Court has found that plaintiff plausibly alleged those promises in the Plan and defendant's catalog. Accordingly, plaintiffs have plausibly alleged a specific promise, and their Count XI promissory estoppel claim must survive. [8]

### V. CONCLUSION

The Court understands RPI's frustration. Its shutdown was necessitated by acts of nature and government well beyond its control. But though defendant may have been in an impossible position, plaintiffs did not ask for their lives to be disrupted on a mass scale either. The purpose of this litigation is not to apportion blame. It is only to ensure that the hardship imposed by the present state of the world falls justly. To that end, plaintiffs' complaint must proceed to discovery, with the exception of their conversion and New York General Business Law claims under Counts IX and X, respectively.

Therefore, it is

ORDERED THAT

1. Defendant Rensselaer Polytechnic Institute's Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART;

2. Plaintiffs' Count IX conversion claim is DISMISSED;

3. Plaintiffs' Count X claim under New York General Business Law §§ 349 and 350 is DISMISSED; and

4. Defendant Rensselaer Polytechnic Institute's motion regarding plaintiffs' claims under Counts: (I) breach of contract for the purported tuition class; (II) unjust enrichment for the purported tuition class; (III) breach of contract for the purported fees class; (IV) unjust enrichment for the purported fees class; (V) breach of contract for the purported housing class; (VI) unjust enrichment for the purported housing class; (VII) breach of contract for the purported meal plan class; (VIII) unjust enrichment for the purported meal plan class; and (XI) for promissory estoppel across all classes is DENIED and those claims may proceed to discovery.

IT IS SO ORDERED.

### All Citations

--- F.Supp.3d ----, 2020 WL 7389155

Ford v. Rensselaer Polytechnic Institute, --- F.Supp.3d ---- (2020)

2020 WL 7389155

## Footnotes

1    As is appropriate on a 🔖 Rule 12(c) motion, the facts are taken from "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." 🔖 *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and citations omitted).

2    Pagination corresponds with CM/ECF.

3    Curiously, when defendant at oral argument would frequently reference the materials that can provide the terms of the implied contracts between a student and a university, defendant omitted the word "circulars," despite it appearing repeatedly in New York case law. *See, e.g.*, *Keefe*, 897 N.Y.S.2d at 95.

4    *Salerno* relies on Florida law, not New York law, and thus its usefulness is of course blunted. —— F.Supp.3d at ——— – ———, 2020 WL 5583522, at *4-5. Nevertheless, the two legal schemes appear to be nearly identical, at least insofar as both hinge on the school's publications providing the terms of an "implied in fact contract." *See id*.

5    Defendant also argued that plaintiffs waived their breach of contract claims for tuition beyond the spring 2020 semester by continuing to attend school, including the Arch program. But whether continuing to enroll in the Arch and classes after the spring 2020 semester constituted a waiver of further damages or a mitigation of those damages in place of plaintiffs' only alternative of dropping out of school altogether until the end of the pandemic is a factual dispute unsuited to a 🔖 Rule 12(c) motion.

6    To the extent defendant argues that it kept operating the Student Union and Health Center even through the pandemic, plaintiffs have plausibly alleged that those services were at the least reduced below the threshold defendant promised in its catalog. Compl. ¶¶ 62, 64-65. Accordingly that argument is also unavailing.

7    The only meaningful difference between 🔖 §§ 349 and 350 is that § 350 deals specifically with false advertising practices. 🔖 *Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190, 1195 n.1 (2002). This is contrary to the Second Circuit's frequent imputation of a reliance element for § 350 claims, 🔖 *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005), which the New York Court of Appeals has specifically identified as an error, *Koch*, 944 N.Y.S.2d 452, 967 N.E.2d at 676.

8    However, the possible viability of a promissory estoppel claim against a school is uncertain. Any specific promise contained in a school's bulletins, handbooks, or circulars would presumably become part of the terms of the implicit contract, and thus be properly cognizable as a breach of contract claim, closing the door on promissory estoppel. 🔖 *Bader*, 773 F. Supp. 2d at 415. Perhaps an oral promise from a school official with the capacity to bind the school might qualify, but plaintiffs have not alleged any such promise. Under any circumstance, the proper time to consider that question is not during a 🔖 Rule 12(c) motion.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 6**

2020 WL 7338499

2020 WL 7338499
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Manny CHONG, Thane Gallo,
and All Others Similarly Situated,
v.
NORTHEASTERN UNIVERSITY

CIVIL ACTION NO. 20-10844-RGS
|
Filed 12/14/2020

**Attorneys and Law Firms**

Gary M. Klinger, Mason Lietz & Klinger LLP, W. Clifton Holmes, Pro Hac Vice, The Holmes Law Group, Ltd., Chicago, IL, Gary E. Mason, Pro Hac Vice, Mason Lietz & Klinger LLP, Washington, DC, Douglas F. Hartman, Hartman Law, PC, Boston, MA, for Manny Chong.

Douglas F. Hartman, Hartman Law, PC, Boston, MA, Gary M. Klinger, Mason Lietz & Klinger LLP, W. Clifton Holmes, Pro Hac Vice, The Holmes Law Group, Ltd., Chicago, IL, Gary E. Mason, Pro Hac Vice, Mason Lietz & Klinger LLP, Washington, DC, for Thane Gallo.

Daniel J. Cloherty, Rebecca M. O'Brien, Victoria L. Steinberg, Todd & Weld, John A. Shope, Rachel C. Hutchinson, Foley Hoag LLP, Boston, MA, for Northeastern University.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

STEARNS, D.J.

 *1 Manny Chong and Thane Gallo filed this putative class action against Northeastern University. By way of a Third Amended Complaint (TAC) (Dkt # 40), they allege that Northeastern breached a contract with its students (Counts I, III, and V) or, alternatively, unjustly enriched itself at its students' expense (Counts II, IV, and VI) when it retained the full amount of tuition and fees collected for the Spring semester of 2020, despite ceasing in-person instruction and closing its on-campus facilities and resources. Northeastern moves to dismiss all claims pursuant to ⚖ Fed. R. Civ. P.

12(b)(6). For the following reasons, the court will ALLOW the motion in part and DENY it in part.

**BACKGROUND**

The essential facts, drawn from the TAC and documents incorporated by reference, and viewed in the light most favorable to the plaintiffs as the nonmoving parties, are as follows. Northeastern is a private educational institution with a main campus in Boston, Massachusetts. Gallo is an undergraduate student who enrolled in courses at Northeastern during the Spring semester of 2020. Chong is a graduate student who enrolled in courses at Northeastern during the Spring semester of 2020.

Before the semester began, Gallo and Chong (and all similarly situated students) executed an Annual Financial Responsibility Agreement (FRA) with the University. Insofar as relevant here, the agreement provides:

> In exchange for the opportunity to enroll at Northeastern, to receive educational services, and for other valuable consideration, I agree to the following terms and conditions:
>
> ...
>
> PAYMENT OF FEES/PROMISE TO PAY
>
> By registering for any class or receiving any service from Northeastern, I accept full responsibility to pay all tuition, fees and other associated costs assessed as a result of my registration and/or receipt of services. I understand and agree that my registration and acceptance of these terms constitutes a promissory note agreement ... in which Northeastern is providing me educational services, deferring some or all of my payment obligation for those services, and I promise to pay for all assessed tuition, fees and other associated costs by the published or assigned due date.

Ex. A to TAC; Ex. B to TAC. The FRA does not explicitly define the term "educational services." Plaintiffs allege, however, that Northeastern described the "educational services" each student could expect to receive in "numerous statements, promises, and representations in the Semester Schedule and Class Details documents" that Northeastern issued during student registration. TAC ¶ 18.

2020 WL 7338499

After signing the FRA, plaintiffs registered for courses designated in Class Detail documents as having "traditional" instruction (i.e., face-to-face instruction in a classroom setting), *id.* ¶¶ 30-31, and Northeastern issued Semester Schedules specifying that instruction for their courses would occur "within an assigned room in specific buildings — Ryder Hall (as to ... Chong), and Kariotis Hall, Hurtig Hall, Richards Hall, and Behrakis Center (as to ... Gallo) — on Northeastern's Boston campus," *id.* ¶ 23.

**\*2** For the first half of the Spring semester, instruction for plaintiffs' courses occurred in person, as specified in the Semester Schedule and Class Details documents. On March 11, 2020, however, the University's president notified students that "all Spring 2020 courses offered by Northeastern would be taught online beginning March 12, 2020 for the remainder of the semester, in response to the spread of the Covid-19 virus." *Id.* ¶ 45. Northeastern also closed its on-campus facilities, including its classrooms, laboratories, library, student center, fitness centers, and the First Year Learning & Innovation Center workspaces, effective March 12, 2020. No tuition-paying student had access to in-person instruction or on-campus facilities and resources during the remainder of the Spring semester of 2020. Chong further alleges that one of his professors ceased offering lectures to students following the switch to remote learning and instead emailed weekly notes, reducing the hands-on instruction time in the course to zero until the end of the semester.

Chong petitioned for a partial refund of the tuition and fees he had paid to Northeastern for the Spring semester of 2020, citing the pedagogical inferiority of online instruction. When Northeastern failed to act on his petition or otherwise offer its students a refund, he and Gallo filed the instant putative class action. They assert six claims on behalf of three nominated classes: breach of contract (Count I) or, alternatively, unjust enrichment (Count II) as to a Tuition Class, tentatively defined as "[a]ll Northeastern University students who attended one or more courses in-person for credit on a Northeastern campus between January 1, 2020 and March 11, 2020 ... and paid tuition monies to Northeastern" for these courses; breach of contract (Count III) or, alternatively, unjust enrichment (Count IV) as to an Undergraduate Fees Class, tentatively defined as "[a]ll Northeastern University undergraduate students who paid Northeastern a student activity fee, an undergraduate student fee, a campus recreation fee, and a student center fee on or before March 11, 2020, and who registered for one or more Spring 2020 courses for credit on a Northeastern campus March 11, 2020"; and breach

of contract (Count V) or, alternatively, unjust enrichment (Count VI) as to a Graduate Fees Class, tentatively defined as "[a]ll Northeastern University graduate students who paid Northeastern a student activity fee, a recreation fee, and a student center fee on or before March 11, 2020, who registered for one or more Spring 2020 courses for credit on a Northeastern campus before March 11, 2020." *Id.* ¶¶ 59, 64, 66.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Count I, breach of contract as to the Tuition Class

Count I asserts a claim for breach of contract relative to the payment of tuition for the Spring semester of 2020.[1] "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Boston*, 342 Mass. 385, 387 (1961).

**\*3** Northeastern argues that plaintiffs have failed to state a claim for breach of contract because they have not sufficiently identified the basis for any contractual right to in-person instruction. Plaintiffs respond that the contractual right to in-person instruction derives from two sources: the FRA and the course registration materials.[2] Specifically, they cite to statements in the FRA tying the payment of tuition to

registration and the receipt of "educational services" and statements in plaintiffs' Semester Schedule and Class Detail documents indicating that the "educational services" they had contracted to receive for the semester would include "traditional," face-to-face instruction in physical locations on campus. [3] Drawing all inferences in plaintiffs' favor, the court cannot, as a matter of law, say that no student who read these statements could have reasonably expected that executing the FRA and registering for on campus courses would entitle them to in-person instruction. *See* 🔖 *Bleiler v. Coll. of Holy Cross*, 2013 WL 4714304, at *15 (D. Mass. Aug. 26, 2013)* ("When interpreting contracts between students and their academic institutions, under Massachusetts law courts employ the standard of reasonable expectation — what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." (internal quotation marks omitted)), quoting *Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000). Further factual development is needed to resolve the issue on the merits. [4] The court accordingly denies the motion to dismiss Count I.

### b. Counts III and V, breach of contract as to the Undergraduate Fees Class and the Graduate Fees Class

Counts III and V assert breach of contract claims relative to the payment of certain student fees. Plaintiffs allege that Northeastern breached its obligations under the educational services agreement "when it ceased permitting access to any Northeastern student to its campus facilities, including its student center, with no on-campus activities conducted in any of those facilities, upon information and belief, from late March 2020 onward." TAC ¶ 110.

Plaintiffs do not point to any explicit language in the FRA or the registration materials creating an entitlement to access on-campus facilities and resources. Because the FRA ties the payment of fees to the receipt of services, however, the educational services agreement may implicitly create such a right. The court accordingly turns to the payment terms and description of the services received for each fee. Northeastern states that it assesses the campus recreation fee "during terms a student is in classes to support and maintain current facilities and the future construction of athletic fields and facilities," and to give students "the option to gain admission to home athletic events, use the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym (fitness and pool)." *Fee Descriptions*, Ne. Univ. Student

Fin. Servs., https://studentfinance.northeastern.edu/billing-payments/tuition-and-fees/fee-descriptions/ (last visited December 4, 2020); *see also* TAC ¶ 62. It further states that it assesses the student activity fee annually to "provide[ ] support for student organizations, clubs and entertainment events throughout the school year." *Id.* The student center fee is described as a payment "per in-school term to support the Curry Student Center." *Id.* Finally, Northeastern purports to assess the undergraduate student fee per "in-class or study abroad term" to "support[ ] enrollment related services throughout the student's first year, including new student orientation and welcome week activities," and to "support[ ] subsequent enrollment services and ... costs related to ongoing communication to students and parents." *Id.*

**\*4** Because students pay the student activity fee, the student center fee, and the undergraduate student fee to "support" certain facilities during terms for which those students are enrolled in classes, [5] and not to gain admission to any on-campus facility or access to a given resource (or even to support the operation of any specific service at an on-campus facility), plaintiffs have not stated a claim for breach of contract with respect to those fees. The court accordingly allows the motion to dismiss Counts III and V to the extent these claims are premised on payment of the student activity fee, the student center fee, or the undergraduate student fee.

Students also pay the campus recreation fee to "support" certain facilities. Payment of the campus recreation fee, however, gives students "the option to gain admission to home athletic events" and to "use the Marino Fitness Center, the SquashBusters athletic facility, and the Cabot Gym (fitness and pool)." Because plaintiffs allege that they lost the option to attend home athletic games or use fitness facilities after March 12, 2020, [6] plaintiffs have stated a plausible claim for breach of contract with respect to the campus recreation fee. The court accordingly denies the motion to dismiss Counts III and V to the extent these claims are premised on payment of the campus recreation fee.

### c. Counts II, IV, and VI, unjust enrichment as to all classes

Counts II, IV, and VI assert claims of unjust enrichment. To assert a claim for unjust enrichment, a plaintiff must show (1) "she conferred a benefit upon the defendant," (2) "the defendant accepted the benefit," and (3) "the defendant's retention of the benefit would be inequitable without payment

for its value." [icon] *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012), *aff'd*, [icon] 527 F. App'x 20 (1st Cir. 2013).

Northeastern argues that plaintiffs cannot, as a matter of law, state a claim for unjust enrichment because they have an adequate alternative remedy available, namely, a breach of contract action. *See* [icon] *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (noting that "a party with an adequate remedy at law cannot claim unjust enrichment"). But unlike the Second Amended Complaint, the TAC does not rely on the existence of a single document that indisputably governs the parties' contractual relationship. It alleges a broader educational services agreement entitling students to in-person instruction. As Northeastern disputes the existence of any binding contract, and as plaintiffs plead unjust enrichment only to the extent the parties do not have a valid contract, it would be inappropriate for the court to find plaintiffs limited to a contractual remedy at this early stage of the litigation. *See* [icon] *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-141 (1st Cir. 2012). The court accordingly declines to dismiss these counts. [7]

## ORDER

**\*5** For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u> as to the portions of Counts III, IV, V, and VI premised on payment of any student activity fee, student center fee, or undergraduate student fee. It is <u>DENIED</u> in all other respects. Counts I and II and the portions of Counts III, IV, V, and VI premised on payment of a campus recreation fee also survive Northeastern's motion.

SO ORDERED.

## All Citations

Slip Copy, 2020 WL 7338499

## Footnotes

1    The court is not convinced that plaintiffs' contract claim is merely a disguised educational malpractice claim, as Northeastern implies. The TAC appears to challenge the mere fact of the switch from in-person to online instruction, not the *quality* of the online education Northeastern provided. *See Salerno v. Fla. S. Coll.*, 2020 WL 5583522, at \*5 (M.D. Fla. Sept. 16, 2020). And while it is possible that the measure of damages for this alleged breach will so inextricably implicate the issue of quality as to render the claim non-actionable, the court needs more information before it can make an informed assessment.

2    Northeastern maintains that the FRA and the course registration materials cannot reasonably be read together. The court declines to resolve the issue at this juncture. Plaintiffs allege that the documents are intertwined and form a larger educational services agreement, and these allegations are at least plausible given repeated references to the registration process in the FRA and the fact that, as a matter of common sense, students presumably would not incur any obligation to pay for "educational services" unless they registered for classes. The court accordingly reserves for a future (post-discovery) stage the determination of whether the overarching educational services agreement pled by plaintiffs does, in fact, exist.

3    Northeastern disputes the allegation that a student could reasonably expect the statements, promises, and representations in their Semester Schedule and Class Detail documents to guarantee the nature of the "educational services" that he or she would receive under the FRA. For the reasons discussed in footnote 2, however, the court declines to resolve the issue as a matter of law at this juncture. Plaintiffs' allegation is at least plausible, so it would be inappropriate to dismiss the claim prior to discovery.

4    Other documents unavailable to the court at the motion to dismiss stage, for example, may undercut the reasonableness of any expectation of in-person instruction.

5    The fee descriptions refer generally to annual payments or payments per in-class term. Because the fees are assessed on a per year or per term basis (i.e., not daily), and because plaintiffs presumably were still

2020 WL 7338499

classified as in-class students for the Spring semester of 2020, even after the switch to remote learning, the court declines to find that they had no obligation to pay these fees after March 12, 2020.

6    Northeastern contends that it could not have breached any obligation to give students the "option" to attend home athletic games because there were no home athletic games held on campus after March 12, 2020. But this argument implicates a factual issue (whether cancelling all home athletic events deprived students of the *option* to attend home athletic games) and is therefore inappropriate for resolution at the motion to dismiss stage.

7    The court notes, however, that the unjust enrichment claims only survive to the extent the contract claims survive. It thus dismisses the portions of Counts IV and VI premised on payment of a student activity fee, student center fee, or undergraduate student fee.

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 7**

2020 WL 7024463
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Raymond GIBSON, individually, and on
behalf of all others similarly situated, Plaintiff,

v.

LYNN UNIVERSITY, INC., Defendant.

CASE NO. 20-CIV-81173-RAR
|
Signed 11/29/2020

**Synopsis**
**Background:** Student brought putative class action against
private university alleging university breached its contract
with students, or alternatively, was unjustly enriched when it
closed its facilities and transitioned to remote learning during
COVID-19 pandemic. University filed motion to dismiss.

**Holdings:** The District Court, Rodolfo A. Ruiz, J., held that:

[1] student plausibly alleged existence of valid contract for
in-person education, a material breach, and damages;

[2] university failed to conclusively establish that student's
breach of contract claim was barred by affirmative defenses
of impossibility or frustration of purpose;

[3] university failed to allege student affirmatively manifested
intent to approve university's actions with full knowledge of
all material facts; and

[4] undisputed express or implied-in-fact contract for in-
person education was not established.

Motion denied.

**Procedural Posture(s):** Motion to Dismiss for Failure to
State a Claim.

West Headnotes (14)

[1]     **Contracts**  🔑  Grounds of action

Under Florida law, the elements of a breach of
contract action are: (1) a valid contract, (2) a
material breach, and (3) damages.

[2]     **Education**  🔑  Contractual nature of
relationship with institution

Under Florida law, the legal relationship between
a private university and a student is solely
contractual in character.

[3]     **Education**  🔑  Admission or Matriculation

Under Florida law, a private university may
set forth the terms under which it will admit
and subsequently graduate students who subject
themselves to the rules, regulations and regimen
of the college.

[4]     **Education**  🔑  Contractual nature of
relationship with institution

Under Florida law, the terms of a contractual
relationship between a private university and
a student may be derived from university
publications such as the student handbook and
catalog.

[5]     **Education**  🔑  Contractual nature of
relationship with institution

Under Florida law, a private university's
publications are terms of an implied-in-fact
contract with students rather than an express
contract.

[6]     **Education**  🔑  Contractual nature of
relationship with institution

Student plausibly alleged existence of valid
contract for in-person education at private
university, a material breach, and damages, as
required to state claim under Florida law alleging
university breached its contract with students
when it closed its facilities and transitioned to
remote learning during COVID-19 pandemic,
where student alleged that he enrolled in and

paid for university division specifically for in-person instruction and access to campus facilities and activities, that terms of contract were dictated by university's publications, policies, invoices, and parties' course of conduct, and that publications and policies suggested courses would be conducted in-person and students would have access to campus facilities and activities.

**[7]**    **Contracts** 🔑 Discharge by Impossibility of Performance

Under Florida law, even when included in an undisputed express contract between parties, force majeure provisions are narrowly construed and will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified.

1 Cases that cite this headnote

**[8]**    **Contracts** 🔑 Discharge by Impossibility of Performance

Under Florida law's doctrine of impossibility of performance or frustration of purpose, a party is discharged from performing a contractual obligation which is impossible to perform and the party neither assumed the risk of impossibility nor could have acted to prevent the event rendering the performance impossible.

**[9]**    **Federal Civil Procedure** 🔑 Affirmative Defenses, Raising by Motion to Dismiss

An affirmative defense cannot normally be decided at the motion to dismiss stage.

**[10]**    **Federal Civil Procedure** 🔑 Affirmative Defenses, Raising by Motion to Dismiss

A complaint is subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim.

**[11]**    **Education** 🔑 Contractual nature of relationship with institution

It was unclear extent to which private university's policies formed contractual expectations and thus university failed to conclusively establish that student's breach of contract claim under Florida law was barred by affirmative defenses of impossibility or frustration of purpose, as required for defenses to bar student's claim at motion to dismiss stage in action alleging university breached contract with students for in-person education when it closed facilities and transitioned to remote learning during COVID-19 pandemic, where significant questions remained as to which contractual provisions governed dispute and when they came into effect and, although force majeure provision in policies suggested students may have assumed risk of closure, policies purported not to create a contract.

**[12]**    **Education** 🔑 Contractual nature of relationship with institution

Private university failed to allege student affirmatively manifested intent to approve university's actions with full knowledge of all material facts, as required for ratification to bar student's breach of contract claim under Florida law at motion to dismiss stage in action alleging university breached contract with students for in-person education when it closed facilities and transitioned to remote learning during COVID-19 pandemic, where university failed to allege what information was conveyed to students at time university moved courses online or what actions, if any, student took upon learning of transition, and failed to allege student knew he could reject the contract at any point during semester.

**[13]**    **Contracts** 🔑 What constitutes ratification

Under Florida law, ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable.

[14] **Education**  🔑  Contractual nature of relationship with institution

Undisputed express or implied-in-fact contract between private university and student for in-person education was not established at motion to dismiss stage and thus dismissal of student's unjust enrichment claim under Florida law not warranted in action alleging private university breached its contract with students, or alternatively, was unjustly enriched when it closed its facilities and transitioned to remote learning during COVID-19 pandemic, where university disputed existence of contract for in-person education, and university alleged that court should have rejected student's invitation to manufacture an implied contract because finance agreement between university and student constituted express agreement between parties governing same subject matter.

**Attorneys and Law Firms**

Brenton Jeremy Goodman, Matthew David Schultz, Rebecca K. Timmons, Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., Pensacola, FL, Patrick F. Madden, Pro Hac Vice, Berger & Montague, P.C., Philadelphia, PA, for Plaintiff.

Allison Gluvna Folk, Leslie Lagomasino Baum, Mendy Halberstam, Jackson Lewis P.C., Miami, FL, Stephanie Leigh Adler-Paindiris, Jackson Lewis, Orlando, FL, for Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

RODOLFO A. RUIZ II, UNITED STATES DISTRICT JUDGE

**\*1** Far from Pink Floyd's admonition that "we don't need no education," [1] students across the country are vehemently challenging universities' decisions to shut down campuses and move courses online in the face of the COVID-19 pandemic. This class action suit alleges that Defendant Lynn

University ("Lynn"), a private university in Boca Raton, Florida, breached its contract with students, or alternatively, was unjustly enriched when it closed its facilities and transitioned to remote learning in March of 2020 as the COVID-19 outbreak accelerated in the United States.

Before the Court is Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 15] ("Motion"), filed on August 31, 2020. The Court having reviewed the Motion, Plaintiff's Response [ECF No. 24], Defendant's Reply [ECF No. 32], the parties' notices of supplemental authority [ECF Nos. 17, 30, 33, 43, and 44], and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 15] is **DENIED** for the reasons set forth herein.

**BACKGROUND**

Plaintiff Raymond Gibson, an undergraduate student at Lynn, contends that he and similarly situated students contracted with Lynn for "live on-campus instruction and access to campus facilities," and were deprived of the benefit of their bargain when Lynn closed its facilities and moved its courses online due to the COVID-19 pandemic. *See* Am. Compl. ¶ 1, 3. Plaintiff alleges that Lynn's relationship with its students "is based on the terms and conditions set forth *inter alia*, in Lynn's Academic Catalog, in its University Policies, and its invoices, and is informed by Lynn's common course of conduct and procedures." *Id.* ¶ 15. He indicates that Lynn offers students the opportunity to enroll in one of three divisions—the Undergraduate Day Division, the Online Division, and the Graduate Division—and that when students enroll in the Undergraduate Day Division, which costs more per credit than the Online Division, they are specifically contracting with the university to provide in-person instruction and access to campus facilities and activities. *Id.* ¶ 16-22.

Plaintiff contends that Lynn's promises are set forth in a variety of university publications and documents. For example, for students who enroll in the Undergraduate Day Division, Lynn's University Policies expressly state that "[t]he University believes that ... the classroom experience is the most important part of the student's educational experience." *Id.* ¶ 30. Lynn's Academic Catalog also indicates that "[t]he student's involvement in classroom activities and discussions is encouraged and expected ... [t]herefore, attendance is not

only important, but essential to the learning experience." *Id.* ¶ 31. Plaintiff alleges that the Academic Catalog "boasts a rich and lively on-campus student experience," including social activities, intramural sports, and a fitness center. *Id.* ¶ 37. He also asserts that the tuition and fees reflected in his invoice for the Spring 2020 term clearly reflect enrollment in the University's Undergraduate Day Division. *Id.* ¶ 47. Plaintiff contends that he and similarly situated students are entitled to "the prorated portion of tuition and fees necessary to compensate them for the difference in value between what they bargained and paid for and what they received." *Id.* ¶ 119.

**\*2**  In its Motion to Dismiss for failure to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)*, Lynn contends that the Amended Complaint does not allege any contractual provisions requiring Defendant to provide *exclusively* in-person education or requiring a refund of fees. *See* Mot. at 6-12. Lynn asserts that, in fact, the University Policies cited by Plaintiff expressly state that "[t]here will be no refund of tuition, [or] fees ... in the event the operation of the University is suspended at any time as a result of an act of God, strike, riot, disruption or for any other reasons beyond the control of the University." *Id.* at 9.

Lynn further argues that Plaintiff fails to allege a material breach and non-speculative damages; that Plaintiff ratified any alleged breach; and that impossibility and/or frustration of purpose bar Plaintiff's breach of contract claim. *Id.* at 13-17. Lynn also seeks dismissal of Plaintiff's alternative unjust enrichment claim, arguing that Plaintiff (i) has an adequate remedy at law because of its contractual relationship with Lynn; and (ii) cannot establish that it would be inequitable for Lynn to retain the cost of tuition and other fees for the Spring 2020 semester. *Id.* at 17-20.

### LEGAL STANDARD

To survive a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.*

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Id.* However, a court need not accept plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Further, when considering a 12(b)(6) motion to dismiss, the court's review is generally " 'limited to the four corners of the complaint.' " *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). However, the court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

### ANALYSIS

#### A. Breach of Contract

**[1]**  Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). In its Motion, Lynn argues that no contractual provision existed regarding in-person education and that even if such an agreement existed, Plaintiff has not shown a material breach and non-speculative damages. Lynn further asserts ratification, impossibility, and frustration of purpose defenses. The Court will address these arguments in turn.

#### *i. Whether Plaintiff sufficiently alleged the existence of a valid contract, a material breach, and damages.*

**[2]  [3]  [4]  [5]**  "Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.' " *Sirpal v. Univ. of Miami*, 509 F. App'x 924, 929 (11th Cir. 2013) (quoting *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). "The

university 'may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college.' " *Id.* (quoting *Univ. of Miami v. Militana,* 184 So. 2d 701, 704 (Fla. 3d DCA 1966)). It is generally accepted that the terms of that contractual relationship "may be derived from university publications such as the student handbook and catalog."

*Id.* (citing *Jallali,* 992 So. 2d at 342); *Orzechowitz v. Nova Se. Univ.,* No. 13-62217-CIV, 2014 WL 1329890, at *3 (S.D. Fla. Mar. 31, 2014)* ("[A] student handbook or publication can create contractual obligations on the part of university that are not necessarily limited to the 'service' of providing a college degree."); *see also McCawley v. Universidad Carlos Albizu, Inc.,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). The university's publications are terms of an "implied-in-fact contract" rather than an express contract. *Jarzynka v. St. Thomas Univ. of Law,* 310 F. Supp. 2d 1256, 1269 (S.D. Fla. 2004); *Williams v. Fla. State Univ.,* No. 4:11-CV-350-MW/ CAS, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014).

**\*3** **[6]** Here, Plaintiff alleges that he entered into a binding contract with Lynn for in-person education when he enrolled in and paid for the Undergraduate Day Division. *See* Am. Compl. ¶¶ 16-27. Plaintiff contends that the terms of that contract are dictated by the university's publications, policies, invoices, and the parties' course of conduct. *See id.* ¶ 15. Throughout the Amended Complaint, Plaintiff cites to portions of Lynn's publications and policies that suggest courses would be conducted in-person and students would have access to campus facilities and activities. *See id.* ¶¶ 30-41. At this early stage of the case—given that Florida law recognizes that the university/student contract may be implied in the university's publications—these factual allegations are sufficient to plead the existence of a valid contract for in-person education.

Indeed, two courts applying Florida law recently denied universities' motions to dismiss nearly identical breach-of-contract claims in the COVID-19 context. *See Rosado v. Barry Univ. Inc.,* No. 1:20-CV-21813, --- F.Supp.3d ----, ----, 2020 WL 6438684, at *3 (S.D. Fla. Oct. 30, 2020) (concluding that Plaintiff's "allegations that [Defendant] accepted $773 more per credit for in-person classes from [Plaintiff], and actually provided in-person education to [Plaintiff] until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract."); *Salerno v. Fla. S. Coll.,* No. 8:20-CV-1494-30SPF, ---

F.Supp.3d ----, ----, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (finding that Plaintiff's allegations that "the College's publications clearly implied that courses would be conducted in-person" and that the "College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation" were sufficient to establish an implied contract).

To be sure, an implied contract between the parties may well have contemplated that the students would bear the risk of a university closure caused by a global pandemic. As Lynn points out, the University Policies referenced in the Amended Complaint state that "[t]here will be no refund of tuition, [or] fees ... in the event the operation of the University is suspended at any time as a result of an act of God, strike, riot, disruption or for any other reasons beyond the control of the University." ("*Force Majeure* Provision"). Plaintiff insists that this *Force Majeure* Provision does not apply to the facts in this case because Lynn's operations were not entirely "suspended," but instead moved online. *See* Resp. at 15. However, under Plaintiff's reading of the provision, if Lynn had shut down *entirely*, it would be entitled to keep all tuition and fees—but because Lynn opted to provide some continuity for its students through remote learning, it is required to provide prorated refunds. The Court is unconvinced that the *Force Majeure* Provision should be construed to produce such illogical results.

Nevertheless, a determination of whether the *Force Majeure* Provision or other statements in Lynn's policies and publications foreclose Plaintiff's breach-of-contract claim is more appropriate at the summary judgment stage. Although Plaintiff has sufficiently pleaded the existence of a contract for in-person education, this is not necessarily "a typical contract situation where there is an express document with delineated terms that a plaintiff can reference." *Salerno,* --- F.Supp.3d at ----, 2020 WL 5583522, at *5.* [2] Therefore, further factual development is needed to clarify the terms and conditions that govern the parties' relationship. *See*

*Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1326 n.3 (11th Cir. 2012) ("In Florida, whether a contract is implied in fact is inferred from the facts and circumstances of the case.") (internal quotation omitted); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.,* 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) ("Typically, in [implied-in-fact] contracts, the parties have in fact entered into an agreement, but without sufficient clarity, so a fact finder must examine and interpret their conduct to define their unspoken agreement."); *Willis of Fla., Inc. v.*

*All Risks, Ltd.*, No. 2:12-CV-14148, 2012 WL 5504786, at *3 (S.D. Fla. Nov. 13, 2012) (denying Defendant's motion to dismiss Plaintiff's claim for breach of an implied-in-fact contract "because Defendant is attacking the merits of Plaintiff's claim and the 'examination of the parties' conduct is a fact-based inquiry, something that cannot be resolved in a motion to dismiss.' ") (quoting *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, No. 07-80091, 2007 WL 1099124, at *2 (S.D. Fla. Apr. 10, 2007)); *see also Rosado*, ––– F.Supp.3d at ––––, 2020 WL 6438684, at *4 (S.D. Fla. Oct. 30, 2020) (noting that discovery may reveal whether "the contractual provisions referenced by [the university] govern this dispute.").

**\*4** **[7]** The lack of clarity regarding precisely which terms control this dispute is evidenced by the parties' pleadings. Plaintiff's Amended Complaint cites to the University Policies, among other documents, to support the existence of a contract for in-person education. *See* Am. Compl. ¶¶ 15, 30, 38, 40, and 106. However, when confronted with the *Force Majeure* Provision, Plaintiff disavows those same policies, pointing to a disclaimer stating that the policies "do[ ] not create an express or implied contract." *See* Resp. at 15. Conversely, Lynn contends that Plaintiff is bound by the *Force Majeure* Provision found in the University Policies, *see* Mot. at 9-10 and 18-19, but then insists in its Reply that the controlling terms are those found in the Financial Responsibility Agreement, which does not appear to incorporate the language of the *Force Majeure* Provision. *See* Reply at 5-6; Statement of Financial Responsibility [ECF No. 33-1]. Thus, the universe of terms and conditions governing the parties' relationship is a disputed matter to be resolved when the full factual record is before the Court—not on a motion to dismiss. [3]

The Court is also unpersuaded by Lynn's position that Plaintiff has not sufficiently pleaded materiality and damages. Lynn argues that if it breached its contractual duty by transitioning to remote learning, the breach was minimal and did not go to the essence of the bargain because students still received education and credits. *See* Mot. at 13. Borrowing Judge Martinez's apt analogy from *Rosado*, "This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the 'Olds' can also go from Point A to Point B." *Rosado*, ––– F.Supp.3d at ––––, 2020 WL 6438684, at *4. Moreover, Plaintiff has cited various statements by Lynn emphasizing the importance of campus life and the classroom experience and has pointed to

the differences in the market value of Lynn's online program versus its on-campus program. *See* Am. Compl. ¶¶ 30-37, 46. With respect to damages, Plaintiff asserts that he is entitled to the "prorated portion of tuition and fees necessary to compensate him" for the difference in value between the in-person, on-campus education he bargained for and what he received. *Id.* ¶ 119. At this stage, such allegations are enough to draw reasonable inferences that the alleged breach was not trivial and that damages flowed from the breach.

The Court emphasizes that this is not a case about the quality of the education Lynn provided students during the Spring 2020 semester. Lynn is correct that Florida does not recognize a cause of action for educational malpractice. *See McCurdy v. Virginia Coll., LLC*, No. 3:17-CV-562-J-32JBT, 2018 WL 1886579, at *4 (M.D. Fla. Mar. 7, 2018). Rather, Plaintiff's claim is based on Lynn's alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources. To be clear, the Court does not opine on the merits of this breach of contract claim at this stage of the proceedings. It simply finds that the elements of the claim have been sufficiently pleaded, particularly considering that Florida law recognizes an implied contractual relationship between a university and its students derived from the university's publications.

### *ii. Whether Plaintiff's breach of contract claim is barred by impossibility of performance or frustration of purpose.*

**\*5** **[8]** **[9]** **[10]** "Under the doctrine of impossibility of performance or frustration of purpose, a party is discharged from performing a contractual obligation which is impossible to perform and the party neither assumed the risk of impossibility nor could have acted to prevent the event rendering the performance impossible." *Marathon Sunsets, Inc. v. Coldiron*, 189 So. 3d 235, 236 (Fla. 3d DCA 2016). "[N]ormally an affirmative defense cannot be decided at the motion to dismiss stage." *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2014). However, "[a] complaint is subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (internal quotation and citation omitted).

**[11]** Lynn argues that impossibility and frustration of purpose are evident on the face of the Amended Complaint.

*See* Mot. at 16. Lynn contends that the Court "can take judicial notice of the existence of the basis for the frustration of purpose and impossibility affirmative defenses" and cites to orders from the Governor of Florida and the Palm Beach County government mandating certain closures due to COVID-19. *Id.* at 16. However, as discussed above, at this stage in the litigation, significant questions remain as to which contractual provisions govern the parties' dispute and when they came into effect. Until those questions are resolved, the Court is unable to definitively ascertain which party assumed the risk of impossibility. *See Rosado*, ––– F.Supp.3d at ––––, 2020 WL 6438684, at \*5. Although the *Force Majeure* Provision in the University Policies suggests that students may have assumed the risk, the University Policies also purport not to create an express or implied contract, so it is unclear at this juncture the extent to which those policies formed the parties' contractual expectations. *See, e.g., Incwebs, Inc. v. First Student, Inc.*, No. 8:15-CV-1661-T-33TGW, 2016 WL 727577, at \*4 (M.D. Fla. Feb. 24, 2016) (denying motion to dismiss implied-in-fact contract claim based on terms in letter of intent that purported not to create a binding agreement between the parties). Accordingly, the Court finds that the facts alleged in the pleadings do not conclusively establish that Plaintiff's breach of contract claim is barred by impossibility or frustration of purpose.

### iii. Whether the pleadings establish that Plaintiff ratified the alleged breach.

**[12]**   **[13]**   Lynn further argues that Plaintiff's breach of contract claim is barred because Plaintiff ratified the allegedly breaching conduct by continuing to attend courses remotely and accepting credits. *See* Mot. at 16. "Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable." *Citron v. Wachovia Mortg. Corp.*, 922 F. Supp. 2d 1309, 1321–22 (M.D. Fla. 2013); *see also Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001) ("Ratification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority.").

The Court disagrees that the issue of ratification is established on the face of the pleadings. It is not apparent from the allegations in the Amended Complaint what information was conveyed to students at the time Lynn moved its courses online or what actions, if any, Plaintiff took upon learning of

the transition. Nor do the pleadings show that Plaintiff knew he could reject the contract at any point during the Spring semester. *See In re Standard Jury Instructions–Contract & Bus. Cases*, 116 So. 3d 284, 328–29 (Fla. 2013) (ratification occurs where (1) a defendant performs an act which breached contract; (2) plaintiff knew of the act and that he could reject the contract because of the act; and (3) plaintiff accepted the act). Without a developed factual record, the Court cannot ascertain whether Plaintiff affirmatively manifested an intent to approve Lynn's actions with "full knowledge of all the material facts." *See First Sw. Fin. Servs., LLC v. Best Light, LLC*, No. 13-20049, 2015 WL 13777174, at \*12 (S.D. Fla. Feb. 6, 2015) ("While ratification need not be expressed in words, there must be some intelligent act or conduct of the principal, made with a full knowledge of the facts, which clearly shows an intention to be bound.") (internal quotation and citation omitted).

 \*6   Here, the Court will not draw the conclusion that Plaintiff relinquished his contractual remedies solely based on allegations that he did not—in the face of an unpredictable, novel, and rapidly evolving pandemic—quit school mid-semester and risk forfeiting his tuition. *See Rosado*, ––– F.Supp.3d at ––––, 2020 WL 6438684, at \*5.

### B. Unjust Enrichment

 **[14]**   Lynn maintains that Plaintiff's unjust enrichment claim should be dismissed because: (1) the relationship between students and an institute of higher education is contractual in nature and unjust enrichment can only survive where there is no adequate remedy at law; and (2) Plaintiff has not established that it would be inequitable for Lynn to retain the cost of tuition and other fees for the Spring 2020 semester.

Unjust enrichment may be properly pleaded where "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (quotation omitted). Although a party may only recover under an unjust enrichment theory when there is no valid express or implied-in-fact contract, unjust enrichment and breach of contract may be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid. *See Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm*

*Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011); 📄 *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013).

Here, the Court finds it premature to dismiss Plaintiff's unjust enrichment claim. Although Lynn does not dispute that the relationship between a university and its students is contractual in nature, it vehemently disputes the existence of a contract for in-person education. *See* Mot. at 6-7. Furthermore, in its Reply, Defendant argues that the Court should "reject Plaintiff's invitation to manufacture an implied contract" because the Financial Responsibility Agreement constitutes an express agreement between the parties governing the same subject matter. *See* Reply at 6, n.5. Thus, although the Amended Complaint adequately *pleads* the existence of a valid implied-in-fact contract, an undisputed express or implied-in-fact contract has yet to be established at this stage in the proceedings—and, therefore, dismissal of Plaintiff's unjust enrichment claim is not warranted. *See Raven v. Lincoln Nat. Life Ins. Co.*, No. 07-23137-CIV, 2011 WL 5553837, at *7 (S.D. Fla. Nov. 15, 2011) ("It is only upon a showing that an express contract exists that the unjust enrichment ... count fails.") (internal quotation marks and citation omitted); 📄 *Martorella*, 931 F. Supp. 2d at 1228 ("[I]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails."); *see also Salerno*, ––– F.Supp.3d at ––––, 2020 WL 5583522, at *5 (denying motion to dismiss student's alternative unjust enrichment claim); *Rosado*, ––– F.Supp.3d at ––––, 2020 WL 6438684, at *5 (same).

Without opining on the merits of Plaintiff's unjust enrichment claim, the Court also finds that Plaintiff has adequately

pleaded it would be inequitable for Lynn to retain the full tuition and fees paid by him and similarly situated students for the full Spring 2020 semester. Plaintiff has alleged that the tuition and fees were at least in part intended to cover services, resources, and access to facilities that Lynn did not provide or only partially provided. At this stage in the litigation, these allegations are sufficient to state a plausible claim for unjust enrichment.

## CONCLUSION

**\*7** For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Lynn's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 15] is **DENIED**.

2. The stay of discovery imposed by the Court in its Order dated October 29, 2020 [ECF No. 40] is hereby **LIFTED**.

3. On or before **December 14, 2020**, Plaintiff shall file a Second Amended Complaint removing claims concerning the Summer 2020 term given Plaintiff's concession that he does not have an actionable claim for that term. *See* Resp. at 20, n.24.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 29th day of November, 2020.

**All Citations**

--- F.Supp.3d ----, 2020 WL 7024463

## Footnotes

1    Pink Floyd, Another Brick in the Wall, Pt. 2 (Columbia Records 1979).

2    In its Reply, Lynn argues for the first time that the Financial Responsibility Agreement attached to one of its Notices of Supplemental Authority [ECF No. 17] is in fact the controlling express contract between the parties —and the Court should therefore reject Plaintiff's argument that there was an implied contract. *See* Reply at 5-6. However, the Financial Responsibility Agreement is not referenced in Lynn's Motion, and the Court will not entertain arguments raised by Lynn for the first time in its Reply, thereby foreclosing Plaintiff's opportunity to respond. *See Tafel v. Lion Antique Investments & Consulting Servs.*, 459 F. App'x 847, 849 (11th Cir. 2012) ("The district court had no obligation to consider an argument raised for the first time in the reply brief."); *see also Thuan Viet Doan v. United States*, No. 18-21841, 2018 WL 4953353, at *5 (S.D. Fla. Oct. 12, 2018);

*Grant v. Miami-Dade Cty.*, No. 13-22008, 2014 WL 11412699, at *3 (S.D. Fla. Mar. 4, 2014). Even if the Court were to consider this argument, upon construing the facts in the light most favorable to Plaintiff—as the Court must do at this stage—it is not clear that the Financial Responsibility Agreement exclusively governs the subject of this dispute—*i.e.*, whether Plaintiff contracted with Lynn for in-person learning and access to Lynn's campus facilities and which party was intended to bear the financial risk of an event like a pandemic. In the case Lynn relies on, plaintiffs had specifically alleged a breach of the Financial Responsibility Agreement, so the governing contractual terms were not in dispute as they are here. *See* ▯ *Chong v. Ne. Univ.*, No. CV 20-10844, ---- F.Supp.3d ----, ----, 2020 WL 5847626, at *2 (D. Mass. Oct. 1, 2020).

3     The Court notes that even when included in an undisputed *express* contract between parties, *force majeure* provisions are "narrowly construed" and "will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified." *See ARHC NVWELFL01, LLC v. Chatsworth at Wellington Green, LLC*, No. 18-80712, 2019 WL 4694146, at *3 (S.D. Fla. Feb. 5, 2019). Although "[p]recedent on the enforcement of force majeure clauses is limited in Florida," *id.*, this District, upon addressing the applicability of a *force majeure* clause in the context of COVID-19 regulations, has found it to be "a factual question that cannot be determined on a motion to dismiss." *Palm Springs Mile Assocs., Ltd. v. Kirkland's Stores, Inc.*, No. 20-21724, 2020 WL 5411353, at *2 (S.D. Fla. Sept. 9, 2020). Here, the Court is similarly reluctant to assess the applicability of the *Force Majeure* Provision without the benefit of a full factual record, particularly considering that: (i) the *Force Majeure* Provision is found in a policy that purports not to create an express or implied contract; and (ii) government orders and guidance concerning COVID-19 are constantly evolving.

---

**End of Document**                                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 8**

2020 WL 7013598
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Viney SAROYA, Plaintiff,

v.

UNIVERSITY OF THE PACIFIC, Defendant.

Case No. 5:20-cv-03196-EJD
|
Signed 11/27/2020

**Attorneys and Law Firms**

Blair E. Reed, L. Timothy Fisher, Bursor and Fisher, P.A., Walnut Creek, CA, for Plaintiff.

Danielle Michelle Mayer, Kristina Starr Azlin, Stacey Hsiang Chun Wang, Vito Anthony Costanzo, Holland & Knight LLP, Los Angeles, CA, Paul G. Lannon, Jr., Holland and Knight LLP, Boston, MA, Qian Shen, Holland and Knight LLP, New York, NY, for Defendant.

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS;
GRANTING MOTION TO STRIKE**

Re: Dkt. No. 31, 33

EDWARD J. DAVILA, United States District Judge

*1  The COVID-19/Coronavirus pandemic has affected several sectors of our society. In particular, the COVID-19 pandemic has reverberated throughout the higher education system. Beginning in March, higher education institutions across the country made the unprecedented decision to close their campuses, hitting pause on the "full collegiate experience." At the same time, universities began transitioning their classes to online and other remote learning formats for their students to avoid a lost quarter or semester. Plaintiff Viney Saroya filed this putative class action against Defendant, University of the Pacific ("UOP"), alleging UOP breached a contract with its students (Claim I) or, alternatively, unjustly enriched itself at its student's expense (Claim II) when it retained the full amount of tuition and fees it collected for the Spring 2020 semester despite ceasing in-person instruction and closing its campus facilities and

resources with just six weeks left of the semester. The class action also raises a claim of conversion (Claim III) and a claim of money had and received (Claim IV). Currently at issue is UOP's Motion to Dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 31, ("Mot. to Dismiss"). UOP has also moved to strike specific allegations from the First Amended Compliant ("FAC"). Dkt. No. 33, ("Mot. to Strike"). Having considered the parties' arguments and submissions, and for the reasons set forth below, the Court GRANTS in part and DENIES in part the Motion to Dismiss and GRANTS in part and DENIES in part the Motion to Strike.

**I. BACKGROUND**

Plaintiff brings this class action on behalf of all people who paid tuition and fees for the Spring 2020 semester at UOP, and who lost the benefit of the education and services that they paid for as a result of UOP's response to COVID-19. FAC ¶ 1. UOP is a private university, with a total enrollment of over 6,000 students across eleven schools and colleges with campuses located in Sacramento, San Francisco, and Stockton, California. *Id.* ¶ 2. The university offers over 40 degrees encompassing more than 80 areas of study for undergraduate students, as well as a number of graduate and professional programs. *Id.* Plaintiff is an undergraduate student at UOP's San Francisco campus pursuing a bachelor's degree in business and economics. *Id.* ¶ 15.

UOP's Spring 2020 semester commenced on or about January 13, 2020. *Id.* ¶ 22. Before paying tuition and fees for the spring semester, Plaintiff consulted UOP's course catalogue where he came to understand and believe that every course he enrolled in would be taught in-person. *Id.* ¶ 16. The course catalogue is directed at students and provides information about the courses offered, the instructors, the days and times during which the courses would be held, and the on-campus location where the courses would be taught. *Id.* ¶¶ 5, 16. According to Plaintiff, UOP promotes its "on-campus experience" on its website, while other publications such as course specific syllabi and university attendance policies highlight the in-person nature of the courses that were offered for the spring semester. *Id.* ¶¶ 6, 30.

*2  On March 11, 2020, UOP interim President, Maria Pallavicini, announced that because of the COVID-19 pandemic, spring break would be extended through March 20, 2020, and that effective March 23, 2020, all in-person classes would be suspended for the remainder of the Spring 2020 semester. *Id.* ¶ 26. UOP did not hold any in-person classes from March 23, 2020, through the end of the spring semester

Saroya v. University of the Pacific, Slip Copy (2020)

2020 WL 7013598

which concluded on or around May 6, 2020. Classes that continued after March 23, 2020 were provided in an online format, with no in-person instruction.

Plaintiff alleges that UOP and its students "entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and UOP, in exchange, would provide in-person educational services, experiences, opportunities, and other related services." *Id.* ¶ 3. Plaintiff, it is argued, was deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. *Id.* ¶ 31. According to Plaintiff, UOP did not deliver the educational services, access, or opportunities that Plaintiff and other students like him contracted and paid for. *Id.* ¶ 28.

The approximate cost of tuition and fees at UOP for the Spring 2020 semester was $24,794 for full-time undergraduate students, and $24,687 for full-time graduate students. *Id.* ¶ 24. At the beginning of the semester, Plaintiff paid approximately $15,000 in tuition and fees to UOP. *Id.* ¶ 15. Through this action, Plaintiff seeks individually and on behalf of the class, UOP's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and UOP halted in-person services. *Id.* ¶ 34. UOP moves to dismiss the FAC as legally insufficient. The matter is now ripe for adjudication.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). On a Rule 12(b)(6) motion, Rule 8(a) governs and requires that, to avoid dismissal of a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

## III. DISCUSSION

### A. Judicial Notice

**\*3** UOP requests that the Court take judicial notice of two sets of exhibits. Dkt. No. 32, ("RJN"). UOP first asks the Court to take judicial notice of Exhibits A-H attached to the declaration of Dr. Maria Pallavicini (the "Pallavicini Decl."). All exhibits are readily available on UOP's public website. RJN at 5. Exhibits A-D are UOP's course catalogs for the 2019-2020 academic year, which are referred to throughout Plaintiff's FAC. Pallavicini Decl. ¶¶ 5-8; *see also* FAC ¶¶ 3-5, 16, 46-48, 50. Exhibit E is a copy of the Financial Responsibility Agreement Acknowledgements ("Financial Agreement"). Pallavicini Decl. ¶ 9. Exhibits F-H are periodic communications UOP sent to students concerning the university, campus, and COVID-19. *Id.* ¶¶ 11, 13-14. Next, UOP asks the Court to take judicial notice of Exhibits A-J attached to the declaration of Kristina S. Azlin (the "Azlin Decl."). The exhibits include state and local orders and announcements concerning response to COVID-19.

2020 WL 7013598

The Court GRANTS IN PART and DENIES IN PART UOP's RJN. The Court does not take judicial notice of Exhibits A-J attached to the Azlin Declaration. The Court does not find these materials necessary to consider for the Court's analysis. However, the Court takes judicial notice of Exhibits A-H attached to the Pallavicini Declaration. Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also* Fed. R. Civ. P. 12(d). This rule does not apply to the incorporation by reference doctrine or judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998.

In the Ninth Circuit, incorporation by reference is a doctrine that "treats certain documents as though they are part of the complaint itself." *Id.* at 1002. A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties —and the Court—are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n. 10 (9th Cir. 2014) (citation and quotation marks omitted).

Here, Plaintiff does not argue that the Court cannot take judicial notice of Exhibits A-H. Plaintiff's FAC incorporates by reference Exhibits A-H because Plaintiff explicitly and repeatedly refers to excerpts of these exhibits to support his claims. Moreover, Exhibits A–H are all publicly available documents and thus are subject to judicial notice. *See In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1253 (N.D. Cal. 2019). Accordingly, the Court takes notice of Exhibits A-H.

**B. Motion to Dismiss**

UOP moves to dismiss all of Plaintiff's claims on three grounds. First, UOP argues that Plaintiff's claims should be dismissed because they are fundamentally demands for judicial intervention in academic decisions regarding mode of instruction, which is a claim for "educational malpractice." Alternatively, UOP contends that even if the allegations are not barred under the educational malpractice doctrine, Plaintiff fails to plead the elements of his state law claims. Third, UOP argues that Plaintiff's demands for speculative

damages warrants dismissal of all claims. UOP also moves to dismiss Plaintiff's demand for punitive damages.

**i. Educational Malpractice Doctrine**

UOP contends that Plaintiff's FAC fails to state a claim because California law precludes monetary damages for what UOP characterizes as a tort claim for educational malpractice. According to UOP, allegations in the FAC which describe remote learning as "subpar" and "in no way the equivalent of the in-person education putative class members contracted and paid for," demonstrate that this action is ultimately about a perceived decline in the quality of education following UOP's transition to distance learning. *See* Mot. to Dismiss at 6-9; *see also* FAC ¶¶ 10, 31-32. Plaintiff, however, asserts that his claims arise from UOP's failure to provide specific services to its students and the university's decision to still make students pay full tuition and fees for the Spring 2020 semester. Thus, Plaintiff argues, his claims are not academic in nature and do not "require an inquiry into the nuances of educational processes or theories." Opposition to Mot. to Dismiss., Dkt. No. 34 at 4 (quoting *Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 826-27 (2007)) (citation omitted). The Court agrees with Plaintiff.

**\*4** The basic legal relationship between a student and a private university is contractual in nature. *Zumbrun v. Univ. of S. California*, 25 Cal. App. 3d 1, 10 (Ct. App. 1972). It is quite clear, however, that universities are entitled to some leeway in modifying their programs from time to time to exercise their educational responsibility properly. *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976). Courts across the country have uniformly refused, based on public policy considerations, "to enter the classroom to determine claims based upon educational malpractice." *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 87 (1982) (citations omitted); *see also Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 825 (Ct. App. 1976) (refusing to recognize a cause of action for education malpractice; *Paulsen v. Golden Gate Univ.*, 25 Cal. 3d 803, 808 (1979) ("There is a widely accepted rule of judicial nonintervention into the academic affairs of schools.")

In *Peter W.*, an 18–year–old former public school student, who graduated high school with a fifth grade reading level, sued his school district for failure to provide an adequate education. The California Court of Appeal concluded that the complaint failed to allege a breach of a duty the law

would recognize, noting that "classroom methodology affords no readily acceptable standards of care, or cause, or injury." *Peter W.*, 60 Cal. App. 3d at 824. The court recognized the difficulties of assessing the wrongs and injuries involved, the lack of a workable rule of care against which a school district's conduct may be measured, and the incalculable burden which may be imposed on public school systems. As such, California courts do not intervene in the academic affairs of schools absent "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Banks v. Dominican Coll.*, 35 Cal. App. 4th 1545, 1551 (1995).

While courts may not have a role in adjudicating claims for educational malpractice, the Court does not read Plaintiff's FAC as alleging a failure of the university to provide him with an education of a certain quality. The considerations identified in *Peter W.* do not apply to claims where resolution "does not require judgments about pedagogical methods or the quality of the school's classes, instructors, curriculum, textbooks, or learning aids," nor "require evaluation of individual students' educational progress or achievement, or the reasons for their success or failure." *Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1212 (2006) (permitting California False Claims Act claim that charter school did nothing more than collect students' attendance forms); *Zumbrun*, 25 Cal. App. 3d (permitting breach of contract claim where university gave plaintiff a "B" for the course but did not provide instruction for the last month of class).

Here, the FAC alleges Plaintiff "entered into a contractual agreement where [he] would provide payment in the form of tuition and fees and UOP, in exchange, would provide in-person educational services, experiences, opportunities, and other related services." FAC ¶ 3. The rights asserted include access to campus buildings, including the buildings where classes were scheduled to meet, participation in on-campus activities, hands-on training and face-to-face instruction as promised by UOP. *Id.* ¶¶ 4-9; 13; 16; 26-34. Thus, construing the FAC in the light most favorable to Plaintiff, his claim is not that UOP failed to provide students with an adequate education, but that it failed to provide certain services as promised. Notwithstanding Plaintiff's allegations comparing remote learning to in-person learning, "[r]uling on these issues would not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum, or an evaluation of Plaintiff'[s] "progress or achievement, or the

reasons for their success or failure." *See Wells*, 39 Cal. 4th at 1212.

**\*5** Therefore, the Court declines to dismiss Plaintiff's claims as barred under the educational malpractice doctrine. The Court will now turn to Plaintiff's four individual claims.

### ii. Breach of Contract

First, Plaintiff asserts a claim for breach of contract relative to the payment of tuition and fees for the Spring 2020 semester. Under California law, the elements of a breach of contract claim are: (1) the existence of a contract, (2) performance or excuse of nonperformance, (3) defendant's breach, and (4) damages. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). As discussed above, the basic relationship between a student and a university is contractual in nature. "By the act of matriculation, together with payment of required fees, a contract between the student and the institution is created." *See Kashmiri*, 156 Cal. App. 4th at 824. In the absence of an express agreement between the university and the student, catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become implied terms of an implied-in-fact contract depending on the conduct of the parties. *Id.* at 828-29. However, "general and vague declarations or promises in university publications" do not "creat[e] contractual obligations." *Id.* at 832. When interpreting the enforceable terms of the agreement, courts will look to the reasonable expectation of the student at the time of contracting, "measured by the definiteness, specificity, or explicit nature of the representation at issue." *Id.*

Here, UOP asserts that it entered into an express Financial Agreement with students such as Plaintiff, which contains "Plaintiff's specific promise to pay tuition and fees upon registration or receipt of services ... and in exchange, [UOP] agrees to confer certain benefits, including 'course registration, grades, and diplomas.'" Mot. to dismiss at 10. The Financial Agreement lacks any promise that the university would guarantee in-person instruction and thus, UOP argues, Plaintiff is unable to allege that UOP has breached an enforceable promise. However, while the Financial Agreement may lack a promise of in-person instruction, Plaintiff has sufficiently alleged that UOP's publications when considered together established a contractual agreement where students like Plaintiff would provide payment in the form of tuition and fees for the Spring

2020 semester and UOP, in exchange, would provide in-person educational services, experiences, opportunities, and other related services. *See* FAC ¶ 3.

Specifically, Plaintiff alleges that in consulting UOP's course catalogue, Plaintiff understood and believed that every course in which he enrolled would be taught in-person. *Id.* ¶ 16. The course catalogues include information about the "days and times" and "the location" in which the courses would be held. *See id.* ¶¶ 5-6, 30. Plaintiff has also alleged that other UOP materials such as course syllabi and university policies reference the in-person nature of the spring semester and also tout "campus life." *Id.* Moreover, while it is true, that Plaintiff does not identify any express or specific promise that was breached, the FAC does allege that tuition and fees paid to UOP cover not just the academic instruction but encompass, face-to-face interaction with professors, mentors, and peers; access to facilities such as libraries, laboratories, computer labs, and study rooms; extra-curricular activities, groups, and intramural sports; hands on learning and experimentation; and networking and mentorship opportunities among other things. *Id.* ¶ 32. The Court finds these allegations, at this stage, are sufficient to state a claim for breach of an implied-in-fact contract.

**\*6** Moreover, it was reasonable for Plaintiff to expect that when he was billed for the Spring 2020 semester, he would receive the in-person educational services that were allegedly promised to him. In *Kashmiri*, the California Court of Appeal affirmed summary judgment for plaintiff students after the university billed students for the spring and summer terms, but then increased the fees after the students had received their bills. *Kashmiri*, 156 Cal. App. 4th at 841-848. The court determined that "it was reasonable for the student to expect that once he or she received an actual bill for a specific amount to be paid by a particular date, and that bill did not indicate there could be any further change, the University had established the actual fee as reflected by the bill." *Id.* at 844. The university's general disclaimer on its website that it retained the right to increase the fees without providing any notice could not overcome the reasonable expectations of the parties at the time the contract was formed. *Id.* at 842-43. "[O]nce the student is told that he or she can enroll at a particular price and must pay that particular sum by a certain date, the student should reasonably be able to expect that fee has now become firm." *Id.* at 848. Thus, the university breached its contracts with the students attending the two terms when it raised the educational fees for these terms after

the students had received bills charging them a set fee to be paid by a particular date. *Id.*

Here, UOP billed Plaintiff for tuition and fees for the Spring 2020 semester. Plaintiff alleges that prior to beginning classes, he paid full tuition and fees. Thus, like the students in *Kashmiri*, it was reasonable for Plaintiff to expect that when he was billed for the Spring 2020 semester, he would receive all of the services that were allegedly promised to him. When UOP changed the nature of the educational services students reasonably expected to receive in exchange for his tuition and fees payment, it arguably breached its contract with Plaintiff.

UOP also contends that its tuition refund policy and reservation of right to change or modify services and fees warrant dismissal of Plaintiff's breach of contract claim. UOP's remaining arguments, including its damages argument, as well as arguments about the qualitative value of the "campus lifestyle and benefits" at a satellite campus and others are more appropriate at the dispositive motion stage. At this time, the Court expresses no opinion on the merits of the breach of contract claim. Accordingly, UOP's Motion to Dismiss Plaintiff's breach of contract claim is denied.

### iii. Unjust Enrichment

Plaintiff's next claim is for unjust enrichment. He asserts that UOP received tuition and fees for the Spring 2020 semester, which were supposed to cover in-person educational services from January through May 2020. Plaintiff claims, however, that UOP failed to provide the education, experience, and services for which the tuition and fees were collected or return the pro-rated portion of Plaintiff's tuition and fees for educational services not provided after UOP shut down on March 6, 2020. According to Plaintiff, "[i]t would be unjust and inequitable for [UOP] to retain the benefit conferred by Plaintiff and Class Members' overpayments." *Id.* ¶¶ 58-62.

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.' " *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted). Unjust enrichment and restitution "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.' " *Id.* "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.' " *Id.* (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.

App. 4th 221, 231 (2014)). However, "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Rutherford Holdings, LLC*, 223 Cal. App. 4th at 231; *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) ("[a] plaintiff may not ... pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter.").

Here, Plaintiff expressly alleges the existence of an enforceable agreement. *See* FAC ¶¶ 3-4. A plaintiff may assert inconsistent theories of recovery at the pleading stage, including inconsistent claims alleging both the existence and the absence of an enforceable contract. *See* Fed. R. Civ. P. 8(2)(2), (3); *see also Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2576 EMC, 2011 WL 6099394, at \*9 (N.D. Cal. Dec. 7, 2011) ("even though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative."). However, a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid. *See Klein*, 202 Cal. App. 4th at 1389 (holding that consumers could not maintain unjust enrichment claim based on retail purchases of gasoline, which they alleged were enforceable contractual relationships, where their unjust enrichment claim did not deny the existence or enforceability of the agreements). Plaintiff's unjust enrichment claim did not deny the existence or enforceability of the alleged enforceable agreement. Accordingly, he is precluded from asserting a quasi-contract claim under the theory of unjust enrichment. *See id.* at 1389-90; *see also World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, No. 13-CV-03455-WHO, 2014 WL 1411249, at \*2 (N.D. Cal. Apr. 11, 2014) (dismissing unjust enrichment claim because plaintiff explicitly pleaded the existence of enforceable agreements between the parties). Plaintiff's unjust enrichment claim is dismissed with leave to amend.

### iv. Conversion

**\*7** Plaintiff's third claim is for conversion. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition

of property rights; and (3) damages." *Lee v. Hanley* 61 Cal. 4th 1225, 1240 (2015). "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. A generalized claim for money [is] not actionable as conversion." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007). Moreover, "actions for the conversion of money have not been permitted where the amount of money involved is not a definite sum." *Id.*

Here, Plaintiff is not seeking to recover all of the tuition and fees he paid to UOP, but rather only an unspecified "prorated portion" of tuition and fees for educational services not provided. *See* FAC ¶ 34. An obligation to pay money, like Plaintiff's claim for partial tuition reimbursement, is insufficiently tangible to qualify as property under these facts. *See PCO, Inc.*, 150 Cal. App. 4th at 395 (affirming summary judgment on conversion claim where "plaintiffs could only estimate the amount of cash" allegedly converted; *see also Salerno v. Florida S. Coll.*, No. 8:20-CV-1494-30SPF, 2020 WL 5583522 at \*5 (M.D. Fla. Sept. 16, 2020) (dismissed conversion claim with prejudice where "an obligation to pay money, like [plaintiff's] claim for tuition reimbursement, is also insufficiently tangible to qualify as "property" under these facts") (applying Florida law). Thus, Plaintiff's claim for conversion is dismissed with no leave to amend.

### v. Money Had and Received

Plaintiff's final claim is one for money had and received. "[A] plaintiff may not maintain quasi-contract claims such as ... money had and received ... 'if the parties have an enforceable agreement regarding a particular subject matter.' " *Allen v. Hylands, Inc.*, No. CV 12-01150 DMG (MANx), 2012 1656750 at \*5 (C.D. Cal. May 2, 2012) (quoting *Klein*, 202 Cal. App. at 1388); *Langley Partners, L.P. v. Tripath Tech., Inc.*, No. C-05-4194 SC, 2006 WL 563053, at \*7 (N.D. Cal. Mar. 7, 2006) (finding that plaintiff could not bring a "legally feasible" claim for unjust enrichment or money had and received because the parties had a valid and enforceable contract). To prevail on a claim for money had and received, a plaintiff must show "unjust enrichment of the wrongdoer, and in order for plaintiff to recover in such action [ ] he must show that a definite sum, to which [ ] he is justly entitled, has been received by defendant." *Walter v. Hughes Comm., Inc.*, 682

2020 WL 7013598

F. Supp. 2d 1031, 1047 (N.D. Cal. 2010) (applying California law) (internal citations and quotations omitted).

Plaintiff bases his claim for money had and received on UOP's retention of students' Spring 2020 semester tuition and fees, despite not providing in-person educational services, activities, opportunities, resources, and facilities for which those monies were paid. FAC ¶ 74. The Court finds Plaintiff fails to state a claim. As discussed above, Plaintiff alleges the existence of an enforceable agreement. *See* FAC ¶¶ 3-4. He cannot succeed on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter. "A plaintiff may not ... pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter." *See Klein*, 202 Cal. App. 4th at 1389; *see also Tsai v. Wang*, No. 17-cv-00614-DMR, 2017 WL 2587929, at *7-8 (N.D. Cal. June 14, 2017) (plaintiff may plead alternative claims, but "may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." (citing *Klein*)). As in *Klein*, Plaintiff pleads the existence of a contract, but fails to deny its existence or enforceability in the FAC, or plead facts suggesting the contract is unenforceable or invalid. As such, he fails to state a money had and received claim.

**\*8** Furthermore, Plaintiff fails to sufficiently allege a sum certain. Although Plaintiff argues allegations that he paid "approximately $15,000 in tuition and fees" and that UOP "delivered approximately 50%" establish a sum certain, Plaintiff fails to demonstrate that his request for a pro-rated reimbursement and mere estimates substantiate his money had and received claim. Without more from Plaintiff, an attempt to amend his money had and received common claim is unwarranted. Plaintiff's claim for money had and received is dismissed with no leave to amend.

### vi. Demand for Punitive Damages

Lastly, UOP claims that none of Plaintiff's claims entitle him to an award of punitive damages. However, a complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law. *See, e.g., Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007); *Oppenheimer v. Southwest Airlines Co.*, No. 13-CV-260-IEG (BGS), 2013 WL 3149483 at *4 (S.D. Cal. June 13, 2013) ("Because punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigs.*, 517 F.Supp.2d 662, 666 (S.D.N.Y. 2007) ("Punitive damages are not a claim and thus [motion to dismiss] is an ill-sited procedural vehicle.") Accordingly, here, UOP's Motion to Dismiss Plaintiff's request for punitive damages is denied.

### C. Motion to Strike

UOP also seeks to strike the following two paragraphs in Plaintiff's FAC [1] :

32. Even though UOP stated in a Letter from the Provost that "our new plans for the fall semester, with nearly all of our teaching and learning conducted remotely, will provide our students the same superb Pacific education[,]"5 the remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for. The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition. The tuition and fees for in-person instruction at UOP are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

• Face to face interaction with professors, mentors, and peers;

• Access to facilities such as libraries, laboratories, computer labs, and study room;

• Student governance and student unions;

• Extra-curricular activities, groups, intramural sports, etc.;

• Student art, cultures, and other activities;

• Social development and independence;

• Hands on learning and experimentation;

• Networking and mentorship opportunities.

33. This is further evidenced by the fact that UOP is waiving all course fees for the upcoming fall semester as well as various campus recreation fees.

2020 WL 7013598

FAC ¶¶ 32-33. UOP contends that any mention of the university's plans for the fall 2020 semester is impertinent and irrelevant as Plaintiff's claims for a pro rata fee reimbursement concern only UOP's response to COVID-19 during the spring 2020 term. UOP also argues that its changes in policy for the fall 2020 semester is evidence of subsequent remedial conduct which is inadmissible pursuant to Federal Rule of Evidence 407. Thus, UOP's position is that unless stricken, these allegations pose a serious risk of jury confusion and prejudice against the university.

1    UOP also moves to strike the accompanying footnotes

**\*9** Plaintiff opposes the Motion to Strike, arguing that both allegations are material to the case. The Court disagrees as to a portion of Paragraph 32. Plaintiff argues that the provost's letter about the university's plans for the fall 2020 semester sets forth UOP's stance on the quality of online learning. However, this has no connection to Plaintiff's claims, which relate exclusively to the Spring 2020 semester and how UOP's response to COVID-19 allegedly breached a contract it had with its students to provide in-person educational services during that semester. The allegation is immaterial and impertinent to Plaintiff's FAC and should be stricken from any amended pleading. The Court accordingly grants UOP's Motion to Strike language from Paragraph 32 that discusses the university's plans for the fall 2020 semester and its stance on the quality of online learning. 2

2    Additionally, the entirety of footnote 5 related to Paragraph 32 is stricken.

Plaintiff next argues that the allegation in Paragraph 33, which discusses UOP's intention of waiving all course fees for the

Fall 2020 semester as well as various campus recreation fees, relates to the feasibility of providing tuition and fee refunds to account for the provision of services that are of a different value. The Court does not agree. Plaintiff's claims relate exclusively to pro-rated refunds, whereas the decision to waive fees for a semester does not implicate issues with pro-rating an unidentified amount or refunding money as no money was paid. Thus, the allegation is immaterial and impertinent. Moreover, UOP's intentions and acts for a period of time that follows the relevant Spring 2020 semester raises an issue that will serve to cause prejudice to UOP. *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)* ("The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted inferences' at trial is the type of prejudice that is sufficient to support the granting of a motion to strike.") (citation omitted). Accordingly, the Court grants UOP's Motion to Strike Paragraph 33.

### IV. CONCLUSION

For the forgoing reasons, the Court GRANTS in part and DENIES in part UOP's Motion to Dismiss. Claim 2 is DISMISSED with leave to amend. Claim 3 and 4 are DISMISSED without leave to amend. UOP's Motion to Strike is GRANTED. Plaintiff shall file any amended complaint within 21 days of the date this Order is filed.

### IT IS SO ORDERED.

### All Citations

Slip Copy, 2020 WL 7013598

---

End of Document                     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 9**

2020 WL 7087313 (Colo.Dist.Ct.) (Trial Order)
District Court of Colorado.
Denver County

Ariel KISHINEVSKY, Plaintiff(s),

v.

BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER, Defendant(s).

No. 20CV31452.
November 23, 2020.

**\*1**  Courtroom: 275

**Order: Motion to Dismiss**

A. Bruce Jones, Judge.

THIS MATTER comes before the Court on Defendant's motion to dismiss Plaintiff's amended complaint. The Court, having reviewed the parties' briefs and exhibits, the relevant legal authority, and being otherwise fully advised, hereby ORDERS as follows.

## Background

Plaintiff is a student at Metropolitan State University of Denver. In the wake of the ongoing COVID-19 pandemic, Plaintiff sued the Defendant Board of Trustees for the University following the University's transition of most of its services to online formats. Plaintiff's two claims—stated in the alternative—are for breach of contract and unjust enrichment, both relating solely to student fees for the Spring 2020 semester that were paid and not refunded following the transition. In its motion to dismiss both claims, Defendant argues it is immune from suit and that Plaintiff fails to state a claim for breach of contract. In the event it is not immune from suit, Defendant also moves for a more definite statement on the unjust enrichment claim.

## Immunity

Defendant first argues it is immune from Plaintiff's claims under C.R.S. § 24-33.5-711.5(1), which states:

> Neither the state nor the members of the expert emergency epidemic response committee designated or appointed pursuant to section 24-33.5-704.5 are liable for any claim based upon the committee's advice to the governor or the alleged negligent exercise or performance of, or failure to exercise or perform an act relating to an emergency epidemic. Liability against a member of the committee may be found only for wanton or willful misconduct or willful disregard of the best interests of protecting and maintaining the public health. Damages awarded on the basis of such liability shall not exceed one hundred thousand dollars for any injury to or damage suffered by one person or three hundred thousand dollars for an injury to or damage suffered by three or more persons in the course of an emergency epidemic.

Case 2:21-cv-00249-KM-ESK   Document 9   Filed 03/01/21   Page 135 of 211 PageID: 291

Kishinevsky v. Bd. of Trustees of Metropolitan State..., 2020 WL 7087313...

The interpretation of this statutory provision appears to be a matter of first impression. However, other sources of state immunity provide guidance. State immunity has its roots in the historical relic that the King can do no wrong. *See generally* *Evans v. Bd. of Cnty. Comm'rs*, 482 P.2d 968 (Colo. 1971); *see also* *Ace Flying Serv. v. Colo. Dep't of Agric.*, 314 P.2d 278, 281 (Colo. 1957). Because state immunity now derogates from the common law in Colorado, "legislative grants of immunity must be strictly construed." *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000) (interpreting the Colorado Governmental Immunity Act). As such, the Court interprets the provision narrowly.

Defendant argues, and Plaintiff does not contest, that Defendant is an arm of the state. Accordingly, the immunity provision, if applicable, extends to Defendant. The more salient question concerns the scope of immunity provided, including whether it extends to contract claims for damages. The Court concludes it does not.

**\*2** By its terms, § 24-33.5-711.5(1), immunizes the state from suit for negligent acts or omissions in response to an epidemic. For instance, if the state underestimated the pandemic and took inadequate steps to protect the public, the state might nevertheless be immune from suit by would-be plaintiffs who contracted the virus.

But extending immunity to contract claims for damages would have far more sweeping ramifications. For example, it would be surprising if the state, after contracting with a private entity to provide testing for the virus, could breach the contract and then assert immunity from suit or limit damages to $100,000 regardless of the monetary value of the contract. Indeed, it has long been held that "when a state enters into authorized contractual relations it thereby waives immunity from suit." *Ace Flying Serv.*, 314 P.2d at 280; *see also* *Wheat Ridge Urban Renewal Auth.*, 176 P.3d 737, 744-46 (Colo. 2007) (holding that specific performance of the state's eminent domain power, as opposed to damages for breach of contract, could not be judicially ordered); *Thompson Creek Townhomes, LLC v. Tabernash Meadows Water & Sanitation Dist.*, 240 P.3d 554, 555-57 (Colo. App. 2010) (same). Against this backdrop, the Court would require clear statutory language indicating immunity against contract claims for damages.

Neither the Court, nor Plaintiff it seems, takes issue with Defendant's response to the pandemic to protect the health of its students. Stated differently, there is no negligent act or omission being alleged. But strictly construed, the Court does not read the statute as granting the state license to breach a contract with impunity, even if doing so were deemed a part of the pandemic response. Nothing in the language of the provision is to that effect. In other words, the statute does not grant the state the authority to visit the economic consequences of its actions on those who contracted for state services. Accordingly, Defendant is not immune from Plaintiff's claims.

### Failure to State a Claim for Breach of Contract

Defendant next argues that Plaintiff fails to state a claim for breach of contract. Specifically, Defendant contends that the parties' contractual arrangement is confined solely within the "Financial Responsibility and Promissory Note Agreement" (hereafter "the FRPNA"), and that Plaintiff cannot incorporate the list of fee descriptions into the FRPNA. Alternatively, Defendant argues that the fee descriptions do not contain promises of student access to campus amenities.

Under Rule 12(b)(5), "a court properly dismisses a claim if the factual allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, do not present plausible grounds for relief." *Begley v. Ireson*, 2017 COA 3, ¶ 8 (citing *Warne v. Hall*, 2016 CO 50, ¶¶ 9, 24). Documents referenced in the complaint and central to the plaintiff's claims are not outside the pleadings and thus may be considered in a Rule 12(b)(5) motion. *Yadon v. Lowry*, 126 P.3d 332, 336 (Colo. App. 2005).

The Court finds it plausible that the FRPNA incorporates the list of fee descriptions and fee schedule. *See CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo. 1994) ("Materials actually provided to a student, including enrollment agreements and catalogs, may become part of the agreement."). Indeed, the FRPNA references several sources of additional information. Ex. A. Further, the FRPNA purports to be a promissory note without stating the principal debt amount, which necessarily indicates that other documents must be resorted to flesh out its terms. *Id*. As such, for the purposes of this motion, the Court treats the fee descriptions as incorporated into the FRPNA.

 **\*3**  Defendant nevertheless contends that the fee descriptions do not contain any promises of unfettered student access to campus amenities. The pertinent fee descriptions, at least those that were briefed, are as follows:

  **Intercollegiate Athletic Fee:** This fee allows MSU Denver students access to all MSU Denver intercollegiate sporting events. This fee also funds the operating budget for MSU Denver's NCAA-II intercollegiate athletic program, which consists of nine women's and seven men's varsity teams.

  **Tivoli Park Facility Fee:** This tri-institution student-approved fee is used to fund the development, enhancement, and ongoing maintenance of the Tivoli Park/Quad, Tivoli Patio and Coffee Lounge, and future campus-wide student gathering spaces.

  **Campus Recreation Fee:** This student-approved fee is used for the operation of a wide range of high quality, and inclusive recreational and wellness opportunities. The fee supports equipment replacement, program and facility improvements.

  **Information Technology Fee:** This fee will support, maintain, and enhance technology and software in classrooms, labs, and on-line learning environments.

Ex. B. In his response, Plaintiff argues that these descriptions necessarily imply student access to the subject amenities. Except for the Intercollegiate Athletic Fee, the Court disagrees that the language quoted above necessarily implies student access. However, the fee descriptions and fee schedule do lend credence to Plaintiff's position, just not for the reason he articulates. The Court notes the following language:

  *Undergraduate students registered <u>exclusively</u> for online classes will be charged tuition, Student Affairs Fee, Immunization Fee, Metro Bond Fee, Phoenix Center Fee, Information Technology Fee and **an Online Education Fee of $20.00 per credit hour.**

  *Undergraduate students registered for both, <u>main and online courses</u> will be charged all of the mandatory fees **plus an Online Education Fee of $20.00 per credit hour** for the online course(s).*

*Id*. (emphases in original). The inclusion of this language indicates that the parties could have contemplated fewer fees for online learners, presumably because online learners would not utilize the full extent of campus amenities. In any event, the scope of these provisions cannot be resolved in favor of Defendant by way of a Rule 12(b)(5) motion.

In its reply brief, Defendant also argues that it was the act of registering for classes that resulted in Plaintiff owing student fees, not his receipt of services or access to certain campus amenities. Defendant would have the Court follow reasoning to that effect in *Zwiker v. Lake Superior State Univ.*, 2020 Mich. Ct. Cl. LEXIS 2 (Mich. Ct. Claims Aug. 31, 2020). However, as explained above, the amount of student fees Plaintiff owed may indeed have depended on the nature of the instruction he was provided. *Zwiker* is thus unpersuasive.

Nor are Plaintiff's claims grounded in the rejected notion of educational malpractice. Like the plaintiffs in *CenCor*, Plaintiff's claims relate to specific provisions incorporated into the FRNPA, rather than the general quality of the educational experiences he received. *CenCor*, 868 P.2d at 398-99.

Case 2:21-cv-00249-KM-ESK   Document 9   Filed 03/01/21   Page 137 of 211 PageID: 293

Kishinevsky v. Bd. of Trustees of Metropolitan State..., 2020 WL 7087313...

Overall then, Plaintiff's allegations, taken as true and viewed in the most favorable light, plausibly support a breach of contract claim.


**More Definite Statement for Unjust Enrichment**


 **\*4**  Defendant last argues that a more definite statement is required for Plaintiff's unjust enrichment claim. Defendant reasons that unjust enrichment is an equitable remedy available only in the absence of an express contract, and that an express contract exists here. *See generally* *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). As such, Defendant seeks a more definite statement from Plaintiff regarding how the express contract fails or does not cover the matter of student fees.

While the Court agrees that Plaintiff cannot <u>recover</u> under both theories, Rule 8(a) expressly allows inconsistent claims to be <u>pleaded</u> in the alternative. *See also* *Montgomery Ward & Co., Inc. v. Andrews*, 736 P.2d 40, 47 (Colo. App. 1987) ("Parties can state as many separate claims as they wish, regardless of their consistency. It is the evidence at trial that determines what relief will be granted."). Defendant essentially asks that Plaintiff be forced to argue against himself at the pleading stage. The Court will not require him to do so. Plaintiff's unjust enrichment claim has been adequately, and alternatively, stated to allow Defendant to prepare a responsive pleading.

Accordingly, Defendant's motion to dismiss is DENIED. Defendant shall have fourteen (14) days to file an answer.

DATED AND ORDERED: November 23, 2020.

**BY THE COURT:**

<<signature>>

Judge A. Bruce Jones Denver

District Court Judge

---

**End of Document**                                        © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 10**

2020 WL 7135320 (Ind.Cir.) (Trial Order)
Circuit Court of Indiana.
Monroe County

Justin SPIEGEL, individually and or behalf of all others similarly situated, Plaintiff,

v.

THE TRUSTEES OF INDIANA UNIVERSITY, Defendant.

No. 53C06-2005-CT-000771.
November 19, 2020.

**Order Denying Defendant's Motion for Judgment on the Pleadings**

Hon. Nathan G. Nikirk, Special Judge.

**\*1**  TO THE CLERK, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

On October 30, 2020, at 10:00 a.m., via Zoom, Defendant Indiana University's ("Defendant") Motion for Judgment on the Pleadings came on for regularly scheduling hearing, the Honorable Nathan G. Nikirk presiding. Appearances are as reflected on the record.

Having duly considered Defendant's Motion for Judgment on the Pleadings, all opposition, reply and supplemental papers, arguments of counsel, and all other matters presented to the Court in relation to Defendant's Motion for Judgment on the Pleadings. For the reasons that follows, the Motion for Judgment on the Pleadings is **DENIED**.

## I. FACTUAL BACKGROUND

Justin Spiegel ("Plaintiff") alleges that he and Defendant entered into a contract for in-person, on-campus education, which Defendant breached when it closed campus halfway through the Spring 2020 semester and required campus residents to return to their homes. Am. Compl. ¶¶ 42-42. Plaintiff also alleges that he and Defendant had a contract for access to campus facilities and on-campus events and activities, which Defendant also breached when it had closed its campus and evicted its students. *Id.* at ¶¶ 26-34. Plaintiff states that Defendant has refused to reduce or refund the prepaid tuition and fees as result of Defendant's transition to remote instruction. *Id.* at ¶¶ 24, 30, 32, 34. Plaintiff alleges that he paid higher tuition and fees when he enrolled in Defendant's on-campus program, rather than Defendant's online courses, which cost substantially less. *Id.* at ¶¶ 20, 79, 81, 82. In total, Plaintiff asserts that he paid a premium of approximately $13,000 to enroll in Defendant's on-campus product from January 13, 2020 through May 8, 2020. *Id.* at ¶¶ 38-39. Plaintiff seeks a pro-rata refund for what the parties contracted for, and what the Plaintiff actually received, ¶ 4.

Plaintiff alleges, and Defendant does not dispute, that contractual promises can be found in a variety of documents and oral communications, which include Defendant's website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins and publications. *Id.* at ¶ 69. For instance, Plaintiff contends that the Code of Student Rights, Responsibilities, & Conduct promise "students shall have the right to have access to faculty, academic technology, classrooms, libraries, presentations, and other resources necessary for the learning process." *Id.* at ¶ 116. Additionally, Plaintiff alleges during registration, each class is listed not only by description, but also by meeting time and physical classroom location, which Plaintiff and similarly situated students understood, accepted, and paid tuition for. *Id.* at ¶ 120. Also, Plaintiff claims the class syllabi referenced class meeting schedules, locations, and physical attendance requirements. *Id.* at ¶ 125. Finally, Plaintiff alleges that

a contract was also implied through the parties actions as each day for the weeks and months prior to announced closures, students had access to campus. *Id.* at ¶¶ 126-127.

**\*2**  Defendant answered Plaintiff's Amended Complaint. Defendant now moves for Judgment on the Pleadings.

## II. LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Ind. Trial Rule 12(C), In reviewing a T.R. 12(C) motion, courts accept as true the well-pleaded facts alleged in the complaint, basing its ruling solely on the pleadings. *Davis v. Edgewater Systems for Balance Living, Inc.* 42 N.E.3d 524, 526 (Ind. Ct. App.2015)(citing *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010)). Courts will draw all reasonable inferences in the non-moving party's favor. *Indianapolis Public Transp. Corp. v. Department of Local Government Finance*, 40 N.E.3d 536, 539 (Ind. T.C. 2015). A Rule 12(C) motion for judgment on the pleadings is to be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Murray*, 925 N.E.2d at 731 (quoting *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 (Ind. 2001)).

## III. ANALYSIS

### A. Breach of Contract (Counts I & III)

It is well-settled under Indiana law that "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007).

Defendant's principal argument is that that adjudication of this matter would invoke the educational malpractice doctrine. Alternatively, Defendant argues that no contractual provision existed regarding an on-campus, in-person educational experience between Plaintiff, the putative classes and Defendant. Further, Defendant argues that COVID-19 had made performance under the contract impossible. Finally, Defendant claims that novation had occurred because Plaintiff continued to take online classes. Each argument will be addressed in turn.

### 1. Plaintiff's Claims Do Not Constitute an Educational Malpractice Claim.

According to Defendant, Plaintiff's claims are based on the assertion that online learning is substandard to in-person classes, but Plaintiff points to no specific contractual provision stating that classes would be conducted in person. As a result, Defendant argues that Plaintiff's breach of contract and unjust enrichment claims are educational malpractice claims in disguise, which is not a recognized claim in Indiana. Consequently, Defendant asserts that Plaintiff's claims for a refund of tuition and fees should be dismissed.

Plaintiff alleges that a contract was created when he paid tuition to Defendant and Defendant breached said contract by holding classes virtually without refunding a portion of the previously paid tuition and fees. The essence of Plaintiff's claims is that he contracted for in-person classes and certain services, which he never received and for which he paid a premium. This does not challenge the quality of the education, but the actual product and service delivered. Indeed, it would make no difference if what Plaintiff received were actually or a higher value, just that he did not receive that for which he contracted and pre-paid valuable consideration in the form of tuition and fees. Accordingly, making all inferences in Plaintiff's favor, the Court finds that Plaintiff's claims are not for educational malpractice. Therefore, Defendant's Motion for Judgment on the Pleadings on that basis is denied.

**2. Plaintiff Has Sufficiently Alleged the Existence of a Valid Contract**

**\*3**  Plaintiff alleges that based on documents including the student handbook, university catalog, program publications, and course syllabi, and registration papers, which invoiced Plaintiff higher tuition corresponding to in-person classes rather than the lower tuition associated with Defendant's online learning program – a contract promising in-person instruction was created. The Court agrees with Plaintiff that there is sufficient factual content alleged in the Amended Complaint to establish the existence of a valid contract with respect to in-person education. Several considerations compel this conclusion.

Courts in Indiana have recognized that the relationship between a student and a university may be found in university catalogs, student manuals, student handbooks, and other university policies and procedures. More recently, in the COVID-19 context, an Indiana court applying Indiana law denied a university's motion to dismiss on a nearly identical breach-of-contract claim. *See Mellowitz v. Ball State Univ. & Bd. of Trs. of Ball State Univ.*, 2020 Ind. Super. LEXIS 854 (Marion Sup. Ct. Civil Div. 14 Aug. 12, 2020).

This Court agrees with *Mellowitz* and accordingly concludes that Plaintiff's allegations that Defendant accepted additional tuition and fees for in-person classes and on-campus services from Plaintiff, and actually provided in-person classes and on-campus services to Plaintiff until March 15, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract.

The Court further rejects Defendant's position that Plaintiff received what he had contracted for – earning credits toward a degree. This argument is contrary to Defendant's existing tuition rate for its online product toward the very same degree and online university tuition rates nationally, which clearly reflect a monetary difference between on-campus education and remote education. At this point in the litigation, it is determined that factual development is required.

**3. There Was No Novation of the Contract**

Defendant next argues when on-campus classes became impossible and illegal, Defendant offered and Plaintiff accepted, virtual learning as substitute performance… [effecting] a novation, thereby discharging any obligations of either party under the pre-pandemic contract," Def.Mem. at pg. 15. This Court disagrees. The pleadings allege, that Plaintiff was forced from campus. Moreover, it is clear, from the pleadings that Plaintiff did not assent to remote instruction. Simply failing to withdraw is insufficient at this juncture: to: establish, an assent to novation. Defendant has not provided sufficient support for its position that Plaintiff was required to risk financial loss and disrupt his academic career in order to preserve his contractual remedies.

**B. Unjust Enrichment (Counts II & IV)**

Dismissal is further inappropriate in regard to Plaintiff's unjust enrichment claims. It is clear that "[a] pleading may also state as many separate: claims or defenses as the pleader has "regardless of consistency and whether based on legal or equitable grounds," Ind. Trial Rule 8(E)(2).

Plaintiff cannot succeed on a claim of unjust enrichment when his claims are governed by a valid, enforceable contract. However, at this stage, neither criteria have been established. At some point in time, this case will necessarily resolve as a breach of contract action or an unjust enrichment action, and not both. However, that point in time is not now. Accordingly, Plaintiff's unjust enrichment claims may remain for now, in the alternative.

**IV. <u>CONCLUSION</u>**

**\*4**  For the foregoing reasons, the Motion for Judgment on the Pleadings filed by Defendant is **DENIED**.

**IT IS SO ORDERED.**

Date: 11-19-2020

<<signature>>

Hon. Nathan G. Nikirk

Special Judge

---

**End of Document**                                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 11**

2020 WL 7229855 (Cal.Super.) (Trial Order)
Superior Court of California.
San Francisco County

Samantha VERLANGA, Jasmine Moore and Amber Kaiser,
individually and as representatives of their class, Plaintiffs,

v.

UNIVERSITY OF SAN FRANCISCO, Defendant.

No. CGC-20-584829.
November 12, 2020.

**Order on Defendant University of San Francisco's Demurrer to Complaint**

Hon. Ethan P. Schulman, Judge.

**\*1** Defendant University of San Francisco's demurrer to the complaint came on regularly for hearing before the Hon. Ethan P. Schulman, on November 12, 2020 at 9:30 a.m. in Department 302. Both parties appeared via videoconference by their counsel of record.

The Court, having considered the papers and pleadings filed in connection with the motion, and the arguments of counsel presented at the hearing, and good cause appearing therefor, hereby rules as follows:

Defendant University of San Francisco's demurrer to the complaint is overruled as to the first cause of action for breach of contract, sustained with leave to amend as to the second cause of action for violation of the Unfair Competition Law and without leave to amend as to the third cause of action for conversion, and sustained with leave to amend as to the fourth cause of action for quasi-contract and the fifth cause of action for promissory estoppel.

## FACTUAL ALLEGATIONS

This is a putative class action on behalf of all California citizens who paid tuition and other fees for the Spring 2020 academic semester at USF and who, because of USF's response to the global COVID-19 pandemic, did not receive the full benefit of the educational services, facilities, and other services for which they allegedly contracted and paid. Plaintiffs Samantha Berlanga and Jasmine Moore, both undergraduates at USF, allege they were each charged approximately $26,000 in tuition and fees to attend USF in person for the Spring 2020 semester, which began on January 21, 2020 and ended with final exams around May 14, 2020. Plaintiffs allege that effective March 11, 2020, USF suspended all classes and closed its campus because of the pandemic; that students were notified that they needed to vacate their residence halls no later than March 21, 2020; and that USF has not held any in-person classes since March 11, 2020, but instead has moved all educational instruction online (so-called "distance learning"). Plaintiffs allege that the online learning options offered to USF students are "subpar" and "deprive students of the full university learning experience, because of the lack of facilities, materials, and access to faculty"; and that online learning has deprived them of "the opportunity for collaborative learning and in-person dialogue, feedback and critique" and of "the full academic and social university experience" for which they paid. Plaintiffs allege further that USF has announced that it will not refund any tuition or fees for the Spring 2020 semester. They seek a refund of tuition for in-person educational services, facilities, access and/or opportunities that USF has not provided, and a refund of other fees for services that USF is not providing.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    1

**DISCUSSION**

While USF admittedly did not meet and confer with Plaintiffs before filing its demurrer as required by Code of Civil Procedure section 430.41, the Court does not believe there is any realistic prospect that an agreement could have been reached that would have resolved the objections raised in the demurrer, and accordingly will decide the demurrer on its merits.

**\*2**  At the outset, the Court declines to consider the declaration of Dr. Tyrone Heath Cannon. It is elementary that a demurrer can be used only to challenge defects that appear on the face of the complaint, or from matters outside the pleading that are judicially noticeable. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994.) "No other extrinsic evidence can be considered." (*Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225,229.) The Court likewise denies USF's request for judicial notice of its catalog, including the refund policy and the university's reservation of rights to modify its regulations and programs. "Although the *existence* of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97,113 [error to take judicial notice of parties' letter agreement on demurrer] (emphasis in original); see also *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 [demurrer may not be turned into contested evidentiary hearing].) Plaintiffs do not refer to USF's catalogs or published policies in their complaint, nor do they allege that any statements in those materials form a basis for their claims. (Compare *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 828 ["[plaintiffs] contend that the University breached its express promise on its websites and its catalogues not to increase the [professional degree fee] for continuing students."].) They therefore are not properly considered by the Court on demurrer.

USF's demurrer to the claims asserted by Plaintiff Amber Kaiser, the parent of Plaintiff Jasmine Moore, on the ground that she lacks standing to assert claims on behalf of an adult student is overruled. Plaintiffs do not allege that Ms. Moore was an adult when her Spring 2020 fees were paid and, as noted, the Court cannot consider extrinsic evidence on demurrer to determine that issue.

The Court overrules USF's demurrer to the first cause of action for breach of contract. "[T]he basic legal relationship between a student and a private university is contractual." (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 823-824; see also *Zumbrun v. University of Southern California* (1972) 25 Cal.App.3d 1, 10.) "By the act of matriculation, together with payment of required fees, a contract between the student and the institution is created." (*Id.* at 824.) Absent a formal agreement between the student and the university, the agreement is an implied-in-fact contract. "The terms of an express contract 'are stated in words,' while the terms and the existence of an implied contract 'are manifested by conduct.'" (*Id.* at 827.) Statements in university catalogues, student manuals, and registration materials may become part of the implied-in-fact contract. (*Id.* at 828-829.) Significantly at this stage of the proceedings, "the question whether the parties' conduct creates such an implied agreement is generally a question of fact." (*Id.* at 829.)

Plaintiffs have adequately pled each of the basic elements of a claim for breach of contract: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Thus, Plaintiffs allege that through the admission agreement and payment of tuition and fees, they entered into a binding contract with USF. (Compl. ¶ 44.) Specifically, they allege that tuition for Spring semester 2020 was "intended to cover in-person educational services from January through May 2020." (*Id.* ¶ 45.) Finally, they allege that they have suffered damage as a direct and proximate result of USF's contractual breaches, including being deprived of "the in-person education, experience, and services … which they were promised and for which they have already paid." (*Id.* ¶ 51.) While it is true, as USF argues, that Plaintiffs do not identify any express or specific promise that

was breached, they allege that tuition and fees at USF are paid in exchange for, among other things, in-person coursework; face-to-face interaction and collaboration with professors, advisors, and peers; access to facilities such as libraries, laboratories, computer labs, and study rooms; access to technology, graphic design computer programs, and equipment; visits and tours of advertising agencies, including in-person presentations and interviews; student governance and student unions; extra-curricular activities, groups, intramural sports, and related activities; student art, cultures, church access, and other activities; social development, fraternal organizations, and independence; hands-on learning and experimentation; and networking and mentorship opportunities. (Compl. ¶ 33.)

**\*3** Construing the complaint liberally, as required (Code Civ. Proc. § 452), these allegations are sufficient to state a claim for breach of an implied-in-fact contract. As one federal court recently concluded in a closely analogous case,

> Throughout the amended complaint, [plaintiff] alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—of which were located on the campus thereby implying in-person participation. These allegations are sufficient at this early stage, especially because Florida law recognizes that the college/student contract is typically implied in the College's publications.

(*Salerno v. Florida Southern College* (M.D. Fla. Sept. 16, 2020) —— F.Supp.3d ——, 2020 WL 5583522, at \*5; [1] see also Zumbrun, 25 Cal.App.3d at 10-11 [allegations that USC contracted to give course consisting of a given number of lectures and a final examination in exchange for tuition and fees paid by plaintiff, and that professor refused to give all promised lectures and to conduct a final exam because of faculty strike protesting United States foreign policy in Cambodia, stated claim for breach of contract].) USF's arguments regarding damages and proximate cause raise factual issues that cannot be resolved on demurrer. (See Zumbrun, 25 Cal.App.3d at 11 [whether alleged breach "justifies refund of a portion of the tuition and fee allocable to the course is a matter of proof, under the present state of the pleadings, at trial in an appropriate forum"].)

In *Kashmiri*, the Court of Appeal affirmed summary judgment for plaintiff students in a class action against the University of California seeking injunctive and declaratory relief and damages after the university increased various fees. The court concluded that implied contracts were formed between the university and students, and that the university breached its contracts in two respects: by raising the professional educational fees for continuing students after promising on its website and in its catalogues that such fees would not be raised for the duration of the students' enrollment in the professional program; and by raising the educational fees for the spring and summer sessions in 2013 after the students had received bills specifying the exact amount to be paid. That case is closely instructive here.

Plaintiffs' allegations here are most comparable to the second claim in *Kashmiri*, that the university billed students for the spring and summer terms, but then increased the fees after the students had received their bills. (*Id.* at 841-848.) The court determined that "it was reasonable for the student to expect that once he or she received an actual bill for a specific amount to be paid by a particular date, and that bill did not indicate there could be any further change, the University had established the actual fee as reflected by the bill." (*Id.* at 844.) The university's general disclaimer on its website that it retained the right to increase the fees without providing any notice could not overcome the reasonable expectations of the parties at the time the contract was formed. (*Id.* at 842-843.) "[O]nce the student is told that he or she can enroll at a particular price and must pay that particular sum by a certain date, the student should reasonably be able to expect that fee has now become firm." (*Id.* at 848.) Thus, the University breached its contracts with the students attending the two terms when it raised the educational fees for these terms after the students had received bills charging them a set fee to be paid by a particular date. (*Id.*)

**\*4** Here, likewise, USF billed students such as Plaintiffs for tuition and fees for the Spring semester, and Plaintiffs allege they paid those amounts. It was reasonable for Plaintiffs to expect when they were billed for the Spring semester that they would

receive the services, including in-person instruction and lodging in university residence halls, that were allegedly promised to them. When USF changed the nature of the educational and other services students reasonably expected to receive in exchange for their payments, it arguably breached its contracts with Plaintiffs and other students.

USF contends that although Plaintiffs have framed their claims as contractual in nature, they are actually attempting to challenge academic decisions regarding USF's "mode of instruction" (i.e., shifting from in-person to online), which amounts to a forbidden claim of "educational malpractice." (Dem. at 4-7.) The Court disagrees. As the *Kashmiri* court acknowledged, "it is well settled that contract law is not always rigidly applied, especially in actions challenging the academic decision of a university or a student's qualifications for a degree." (*Id.* at 825.) "Courts have applied contract law flexibly to actions involving academic and disciplinary decisions by educational institutions because of the lack of a satisfactory standard of care by which to evaluate these decisions." (*Id.* at 826; see also *id.* at 835 ["Courts have consistently refused to interfere with the educational curriculum and selection, retention, and conditions of employment of academic personnel, which is not at issue in the case before us."].) "Courts have, however, not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction." (*Id.*) This action, like *Kashmiri*, "does not involve what is essentially an educational malpractice claim or a decision that involves disciplinary discretion.... 'Ruling on this [fee dispute] would not require an inquiry into the nuances of educational processes and theories, but rather than objective assessment of the University's performance of its promise." (*Id.* at 826-827.) Just as in *Salerno*, "this case is not about the quality of the [University's] education" or its decision to move to online learning; "This case is simply about an alleged promise to provide in-person learning that was allegedly breached." (2020 WL 5583522, at *5.)

USF also contends that its decision to suspend in-person instruction was "a reasonable response to emergency conditions and required by government orders" concerning the pandemic. (Dem. at 6:7-17.) That may well be, but it is not dispositive of Plaintiffs's claims at the pleading stage. "[E]conomic crises do not excuse performance on a contract. 'Facts which may make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility.'" (*Kashmiri*, 156 Cal.App.4th at 839 [rejecting argument by University of California that state fiscal crisis constituted an emergency that excused its performance of a contractual promise not to raise certain student fees].)

Because the first cause of action states a claim for breach of contract, the Court need not address USF's additional argument regarding the included claim for breach of the implied covenant of good faith and fair dealing. A general demurrer may not be sustained as to a portion of a cause of action. (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1167; see also *Franklin v. The Monadnock Co.* (2007) 151 Cal.App.4th 252, 257 ["It is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory."].)

**\*5** The Court sustains USF's demurrer to the second cause of action for violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, with leave to amend. Plaintiffs apparently seek to predicate the UCL claim on a purported violation of the Consumer Legal Remedies Act (Compl. ¶ 58(a)), but do not actually allege any claim for violation of the CLRA or the factual basis for such a claim. Nor do Plaintiffs allege sufficient facts to state a claim under the UCL's "unfair" or "fraud" prongs. Plaintiffs do not allege that members of the public are likely to be deceived by the challenged conduct. (*Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167.) Nor do they allege (nor, presumably, could they) that USF's statements were fraudulent *when made*—i.e., before the pandemic. Finally, although Plaintiffs seek injunctive relief, they do not allege that USF is engaged in any *ongoing* conduct that could properly be enjoined. An injunction under the UCL "is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff." (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315-316.) Plaintiffs have leave to amend to clarify the factual basis for their UCL claim under one or more of the statutory prongs.

The Court sustains USF's demurrer to the third cause of action for conversion without leave to amend. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership

or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.) "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. A generalized claim for money [is] not actionable as conversion." (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395.) "[A]ctions for the conversion of money have not been permitted where the amount of money involved is not a definite sum." (*Id.*)

Here, Plaintiffs are not seeking to recover all of the tuition and fees they paid to USF, but rather only an unspecified "prorated portion" of that tuition and fees. (Compl. ¶¶ 39(e) ["that portion of the tuition and fees attributable to the services that USF did not provide"], 70, 73.) Moreover, that prorated amount presumably is different for each Plaintiff (and every member of the putative class), depending on the tuition and fees each paid, whether such amounts were covered in whole or in part by grants or other forms of financial aid, whether they had lodging in USF residence halls and, if so, when they moved out, and the extent to which their individual undergraduate or graduate programs involved areas of concentration where in-person instruction and access to technology is or is not crucial. (See Compl. ¶¶ 13, 14, 27.) Plaintiffs' counsel conceded at the hearing that the specific amount that was allegedly converted is "unknown." Thus, the complaint does not state a claim for conversion. (See *PCO, Inc.*, 150 Cal.App.4th at 395 [affirming summary judgment on conversion claim where "plaintiffs could only estimate the amount of cash" allegedly converted]; see also *Salerno*, 2020 WL 5583522, at *5 [dismissing conversion claim with prejudice where "an obligation to pay money, like [plaintiff's] claim for tuition reimbursement, is also insufficiently tangible to qualify as 'property' under these facts"] [applying Florida law].) Plaintiffs have not shown a reasonable likelihood that they could amend to overcome this defect.

USF's demurrers to Plaintiffs' claims in the fourth cause of action for quasi-contract and in the fifth cause of action for promissory estoppel are sustained with leave to amend. "'[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.'" (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 231-232.) "Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement, that is not what occurred here. Instead, plaintiffs' breach of contact claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement. Plaintiffs are therefore precluded from asserting a quasi-contract under the theory of unjust enrichment." (*Klein v. Chevron USA, Inc.* (2012) 202 Cal.App.4th 1342, 1389-1390.) The same is true here. (See Compl. ¶44 [alleging Plaintiffs "entered a binding contract with USF"].) Plaintiffs have leave to amend to allege facts supporting an alternative theory of recovery.

**\*6** Likewise, promissory estoppel is an equitable doctrine that allows enforcement of a promise that would otherwise be unenforceable because of lack of consideration. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901-902.) "The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'" (*Id.* at 901.) Promissory estoppel is not available here because Plaintiffs allege that the underlying contract was entered into for consideration. (Compl. ¶ 45.) Again, however, Plaintiffs have leave to amend to plead such an alternative theory.

Finally, USF's demurrer to Plaintiffs' prayer for punitive damages and injunctive relief is unavailing. "[A] demurrer cannot rightfully be sustained to part of a cause of action or to a particular type of damage or remedy." (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1047; *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1562 ["a demurrer tests the sufficiency of the factual allegations of the complaint rather than the relief

suggested in the prayer of the complaint"]; 📖 *Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 163 [punitive damage allegations were not subject to demurrer].)

## CONCLUSION

In the Spring of this year, USF, like countless other educational institutions in the United States and around the world, was confronted with an unprecedented public health crisis that dramatically affected its ability to continue holding classes and providing education as it had in the past. Nothing in this order is intended to suggest that USF did anything improper in acting as it did to shift from in-person to online instruction. The Court merely finds that Plaintiffs have pled certain viable causes of action. Whether Plaintiffs can prevail on those causes of action and, if so, the amount of tuition and fees which they may be entitled to recover, if any, present factual issues that will have to await decision on a complete record at a later stage of the litigation. ( 📖 *Kerivan*, 147 Cal.App.3d at 229 ["plaintiff's possible inability or difficulty in proving the allegations of the complaint is of no concern."]; see *Salerno*, 2020 WL 5583522, at *1 ["[Plaintiff], a student, has alleged the elements of a breach of contract claim against Florida Southern College in her amended complaint. At this early stage in the case, that is all that is necessary. The more difficult issues will come later, at the summary judgment stage."].)

Plaintiffs have 20 days leave to amend.

**IT IS SO ORDERED.**

Dated: November 12, 2020

<<signature>>

HON. ETHAN P. SCHULMAN

## Footnotes

1       Other courts have begun to hand down rulings on initial motions to dismiss actions brought against public and private universities by students seeking tuition and fee refunds as a result of the COVID-19 pandemic. Those courts largely have denied those motions based on reasoning similar to that set forth here. (See, e.g., *Rosado v. Barry University Inc.* (S.D. Fla. Oct. 30, 2020) —— F.Supp.3d ——, 2020 WL 6438684; *Chong v. Northeastern University* (D. Mass. Oct. 1, 2020) —— F.Supp.3d ——, 📖 2020 WL 5847626; *Waitt v. Kent State University* (Oh. Ct. Cl. Sept. 28, 2020) 2020 WL 5894543; *McDermott v. The Ohio State University* (Oh. Ct. Cl. Aug 24, 2020); *Cross v. University of Toledo* (Oh. Ct. Cl. July 8, 2020) 2020 WL 4726814.)

**End of Document**                                                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 12**

2020 WL 6438684
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Marlena ROSADO, on behalf of herself
and all others similarly situated, Plaintiff,

v.

BARRY UNIVERSITY INC., Defendant.

CASE NO. 1:20-CV-21813-JEM
|
Signed 10/30/2020

**Synopsis**
**Background:** Student brought action against university
asserting claims for breach of contract and unjust enrichment
arising from university's failure to reimburse student for
tuition, fees, on-campus housing, or meal plans after
transition from in-person to remote instruction due to
COVID-19 pandemic. University moved to dismiss for failure
to state a claim.

**Holdings:** The District Court, Jose E. Martinez, J., held that:

[1] student sufficiently alleged existence of an implied
contract with respect to in-person education;

[2] allegations were sufficient to allege material breach and
damages elements of breach of contract claim;

[3] District Court would not take judicial notice of the
existence of "frustration of purposes" and "impossibility"
affirmative defenses;

[4] determination of applicability of "frustration of purposes"
and "impossibility" affirmative defenses was not appropriate
in deciding motion to dismiss;

[5] allegations in complaint were insufficient to establish
that student ratified alleged breach of contract for in-person
instruction; and

[6] allegations were sufficient to state claim for unjust
enrichment.

Motion denied.

**Procedural Posture(s):** Motion to Dismiss for Failure to
State a Claim.

West Headnotes (14)

[1]    **Federal Courts**    Substance or procedure;
       determinativeness

       In diversity action, federal court applies
       substantive law of the forum state.

[2]    **Contracts**    Grounds of action

       Under Florida law, to establish a breach of
       contract claim a plaintiff must prove that (1) a
       valid contract existed; (2) a material breach of the
       contract; and (3) damages.

[3]    **Education**    Contractual nature of
       relationship with institution

       Student's allegations that university accepted
       $773 more per credit for in-person classes
       from student, and actually provided in-person
       education to student until date that university
       closed campus due to COVID-19 pandemic,
       along with numerous university documents
       referring to in-person classes and amenities,
       sufficiently alleged, at minimum, the existence
       of an implied contract with respect to in-
       person education, as required to support breach
       of contract claim under Florida law based on
       university's failure to reimburse student for
       tuition, fees, on-campus housing, or meal plans
       as a result of transition to remote instruction
       during pandemic.

       2 Cases that cite this headnote

[4]    **Education**    Contractual nature of
       relationship with institution

       Student's allegations that university failed to
       reimburse her for tuition, fees, on-campus
       housing, or meal plans as a result of transition
       from in-person to remote instruction during
       COVID-19 pandemic, despite alleged contract
       promising in-person instruction and higher

tuition corresponding to in-person classes and lower tuition associated with online learning program, and that on-campus experience was superior in facilitating academic achievement and job placement after graduation, were sufficient to allege material breach and damages elements of breach of contract claim under Florida law, regardless that student would still earn credits toward a diploma with remote instruction.

**[5]    Federal Civil Procedure** 🔑 Affirmative Defenses, Raising by Motion to Dismiss

A complaint may be subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim. 📄 Fed. R. Civ. P. 12(b)(6).

**[6]    Evidence** 🔑 Nature and scope in general

Court can only take notice of adjudicative facts, not legal conclusions determining ultimate issues in a case. Fed. R. Evid. 201(a).

**[7]    Evidence** 🔑 Particular facts

District Court would not take judicial notice of the existence of "frustration of purposes" and "impossibility" affirmative defenses in student's action against university asserting claims for breach of contract and unjust enrichment arising from university's failure to reimburse student for tuition, fees, on-campus housing, or meal plans after transition from in-person to remote instruction due to COVID-19 pandemic; although the existence of COVID-19 was generally known and could not reasonably be questioned, that did not conclusively establish the defense of impossibility or frustration of purpose on the facts alleged, particularly given the overlapping and sometimes contradictory state and local regulations, and evolving standards, for dealing with the virus. Fed. R. Evid. 201(a).

**[8]    Federal Civil Procedure** 🔑 Fact issues

Determination of applicability of "frustration of purposes" and "impossibility" affirmative defenses was not appropriate in deciding university's motion to dismiss for failure to state a claim in student's action asserting claims for breach of contract and unjust enrichment arising from university's failure to reimburse student for tuition, fees, on-campus housing, or meal plans after transition from in-person to remote instruction due to COVID-19 pandemic, since significant questions remained about which contractual provisions were agreed to, and when they came into effect, such that further discovery was necessary. 📄 Fed. R. Civ. P. 12(b)(6).

**[9]    Contracts** 🔑 Restoration of former status of parties

Under Florida law, in the absence of specific contractual provisions, courts often attempt to return the parties to their pre-contractual positions, insofar as possible, when nonperformance is excused.

**[10]    Education** 🔑 Contractual nature of relationship with institution

Under Florida law, student's allegation that she was forced to leave campus after university's transition from in-person to remote instruction due to COVID-19 pandemic and that a withdrawal request at the time of the campus closure would have triggered the forfeiture of her tuition and a significant academic penalty was insufficient to establish, in deciding university's motion to dismiss for failure to state a claim, that student ratified alleged breach of contract for in-person instruction.

2 Cases that cite this headnote

**[11]    Implied and Constructive Contracts** 🔑 Unjust enrichment

To establish unjust enrichment under Florida law, a plaintiff must prove that (1) plaintiff has conferred a benefit on the defendant, who

has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.

**[12]    Implied and Constructive
Contracts   🔑   Effect of Express Contract**

Under Florida law, an unjust enrichment claim cannot be maintained when there is an express contract with a legal remedy.

1 Cases that cite this headnote

**[13]    Pleading   🔑   Particular causes of action**

Under Florida law, a plaintiff may assert a claim for unjust enrichment as an alternative to a breach of contract claim.

1 Cases that cite this headnote

**[14]    Implied and Constructive
Contracts   🔑   Unjust enrichment**

Student's allegations that university retained full tuition and fees paid by her for the full semester after university's transition from in-person to remote instruction due to COVID-19 pandemic, but that student lost the benefits of those services and amenities when university suspended in-person classes and forced student to move off campus, were sufficient to state claim for unjust enrichment under Florida law.

**Attorneys and Law Firms**

Jonathan Marc Streisfeld, Jeffrey Miles Ostrow, Kristen Lake Cardoso, Joshua Robert Levine, Kopelowitz Ostrow Ferguson Weiselberg Gilbert, Fort Lauderdale, FL, Jennifer Thelusma, Tycko, Zavareei, Washington, DC, for Plaintiff.

Mendy Halberstam, Allison Gluvna Folk, Jackson Lewis P.C., Miami, FL, Stephanie Leigh Adler-Paindiris, Jackson Lewis, Orlando, FL, for Defendant.

**ORDER DENYING MOTION TO DISMISS**

JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE

**\*1   THIS CAUSE** is before the Court upon the Motion to Dismiss filed by Defendant, Barry University Inc. ("Barry") (DE 21). The Court has carefully considered the motion, response, and reply thereto, and is otherwise fully advised. For the reasons that follow, the Motion to Dismiss is **DENIED**.

**I. FACTUAL BACKGROUND**

This action for breach of contract and unjust enrichment highlights one of the many ways the COVID-19 pandemic has caused collateral damage on private economic interests in a variety of contexts. Plaintiff, Marlena Rosado is an undergraduate student at Barry University. Following a spike in virus transmission earlier this year, many educational institutions, including Barry, transitioned from in-person to online education in an effort to curb the spread of the disease and protect the health and safety of the community.

Rosado alleges that she and Barry entered into a contract for in-person education, and related services, which Barry breached when it closed campus on March 19, 2020 and required campus residents to move out. (DE 15, Am. Compl. ¶¶ 12-14, 30-35, 79). Rosado states that apart from a small credit, Barry has not reimbursed her or similarly situated students in any way for tuition, fees, on-campus housing, or meal plans as a result of the transition to remote instruction. (*Id.* ¶¶ 35-36). Rosado alleges that Barry and many independent studies have indicated that the on-campus experience is superior in facilitating academic achievement and job placement after graduation. (*Id.* ¶¶ 22-27). Rosado claims that she paid higher tuition and fees when she enrolled in Barry's on-campus program, rather than Barry's online courses, which cost substantially less. (*Id.* ¶¶ 1, 35, 41-48). In total, Rosado asserts that she paid $20,026 to Barry for tuition, housing, a meal plan, and fees for the Spring 2020 semester from January 8 through May 8. Rosado seeks a partial reimbursement for the "diminution of value of the education" as well as insurance, health and technology fees, and housing and meal plan payments following campus closure on March 19, 2020. (*Id.* ¶¶ 4, 11, 28-29).

Rosado alleges, and Barry does not dispute, that contractual promises can be found in a variety of documents including the student handbook, course syllabi, marketing materials and other circulars, bulletins, and publications, in print and on Barry's websites. (*Id.* ¶ 80; *see also* DE 35 and DE 45-1). For instance, Rosado contends that the student handbook provides that students have the right to the presence of an instructor according to the class schedule provided at the beginning of the course. (Am. Compl. ¶ 81). Similarly, Rosado alleges that the university catalog promises access to classrooms, intramural sports leagues, and on-campus events. (*Id.* ¶ 86). The terms and conditions of registration contains a list of class times and days, which Rosado was required to acknowledge. (*Id.* ¶ 88). Also, Rosado claims that class syllabi referenced class locations, times, and physical attendance requirements. (DE 15: ¶¶ 92). Rosado contends that these documents collectively constitute promises of access to in-person instruction, amenities, and activities. (*Id.* ¶ 94).

**\*2** To complete the mosaic of documents purportedly governing the relationship between the parties, Barry supplements the record with snippets and links from its website and a copy of its housing agreement. Barry cites the following:

- **Refund Policy**: After the fifth week [into the semester] there is no refund .... All fees, outside of tuition and room and board, are non-refundable. (DE 35: 3) [1] .

- **Fee Structure**: Arrangements for payment of all tuition, fees, room and board, and all associated expenses must be made prior to completion of registration. (DE 35: 4) [2] .

- **Registration Agreement**: Registration constitutes a financial agreement between you and the University. Tuition, fees and other charges you incur, including but not limited to housing, meal plans and bookstore charges ("Charges") shall be added to your student account .... Students assume responsibility for all costs incurred as a result of enrollment at Barry University. (DE 35: 4) [3] .

- **Tuition Policy**: (Same as Registration Agreement).

- **Response and Recovery Operations (Temporary Closure)**: One of the protective actions that may be issued by the Public Safety Department or University Crisis Management Team personnel is "temporary closure." A temporary closure protective action may be issued after an evacuation has been ordered, and it is determined that a building or the campus is unsafe until further notice. This protective action is aimed to keep students, faculty, staff and visitors safe by keeping them out of the hazard area, and away from emergency response operations. Additionally, temporary closure means all campus classes and functions are canceled until further notice. Only essential personnel should remain on campus .... (DE 35: 5) [4] .

- **Meal Plans**: Student meal plans run on a weekly basis starting on Friday morning and ending Thursday evening. Unused Board Meals do not roll over to the following week. (DE 35: 5) [5] .

- **Housing Agreement**: If the Student chooses to voluntarily cancel his/her room assignment, a Student who has officially checked in is still responsible for a percentage of the room and board rates as published in the University's withdrawal policies. (DE 45: 2, and Ex. 1 ¶ 12).

Barry moves to dismiss the Amended Complaint as legally insufficient. This matter is now ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

**\*3** In considering a 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the

complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). However, the court may also consider those "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). In reviewing the complaint, this Court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

### III. <u>ANALYSIS</u>

#### A. Breach of Contract (Count I)

**[1]  [2]** In this diversity action, Florida law applies. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010). Under Florida law, to establish a breach of contract claim a Plaintiff must prove that "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017).

Barry's principal argument is that no contractual provision existed regarding in-person education. Barry alternatively contends that, even the agreement existed, there was no material breach or damages, and that COVID-19 would have "frustrated its purpose" in any event. Barry further claims that Rosado "ratified" Barry's alleged breach by continuing to take online classes. Each arguments will be addressed in turn.

#### 1. Whether Rosado Has Sufficiently Alleged the Existence of a Valid Contract, Material Breach, and Damages

Rosado alleges that based on documents including the student handbook, university catalog, program publications, and course syllabi, and registration papers, which invoiced Rosado higher tuition corresponding to in-person classes rather than the lower tuition associated with Barry's online learning program—a contract promising in-person instruction was created. The Court agrees with Rosado that there is sufficient factual content alleged in the Amended Complaint

to establish the existence of a valid contract with respect to in-person education. Several considerations compel this conclusion.

Courts in this district have acknowledged that the terms of the relationship between a student and a university may be found in university catalogs, student manuals, student handbooks, and other university policies and procedures. *Villard v. Capella Univ.*, 2017 WL 9253388, at *1-2, 2017 U.S. Dist. LEXIS 220541, at *4 (M.D. Fla. Dec. 21, 2017) (applying Florida law); *Sirpal v. Univ. of Miami*, 684 F. Supp. 2d 1349, 1359 (S.D. Fla. 2010) (applying Florida law). More recently, in the COVID-19 context, a district court applying Florida law denied a college's motion to dismiss on a nearly identical breach-of-contract claim because it found there were sufficient facts to allege a contract for in-person instruction. *Salerno v. Florida Southern College*, ——— F.Supp.3d ———, ———, 2020 WL 5583522, at *4 (M.D. Fla. Sept. 16, 2020). Indeed, the plaintiff in *Salerno*, just as in this case, alleged that the college made references to on-campus locations, times, and amenities in its publications and had "touted its many resources and facilities." *Id.* at ——, at *5.

**[3]**  The Court is persuaded by *Salerno* and accordingly concludes that Rosado's allegations that Barry accepted $773 more per credit for in-person classes from Rosado, and actually provided in-person education to Rosado until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract. *See also Jallali v. Nova Southeastern University, Inc.*, 992 So.2d 338, 342 (Fla. 4th DCA 2008) (recognizing a student's relationship with his university as an implied contract arising out of a university's rules, regulations, regimen and publications at the time of enrollment).

***4**  Barry vehemently disputes its obligation to provide in-person instruction and emphasizes that there is nothing in its various publications that contractually prohibited Barry from switching to an electronic mode of instruction as dictated by the circumstances. Indeed, Barry paints itself as a co-equal victim of the pandemic and goes on at length about how its administrative response was totally reasonable. But this misses the point. The question is not whether Barry was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about.

The Court pauses to note that the existence of a contract in this case may well be a double-edged sword. If the contractual provisions referenced by Barry govern this dispute, as discovery may reveal, the refund policy may have allocated the risk of emergency closures to students. On the other hand, some Florida cases (albeit in a different context) seem to support the rule that the designation of a payment as "nonrefundable" in a contract is not necessarily controlling in cases where performance is excused by circumstances beyond the control of the contracting parties. *See, e.g., Waksman Enterprises, Inc. v. Oregon Properties, Inc.*, 862 So. 2d 35, 43 (Fla. 2d DCA 2003); *Arthur Rutenberg Corp. v. Pasin*, 506 So. 2d 33, 34 (Fla. 4th DCA 1987). At this juncture, the Court offers no opinion on this possibility. These matters have not been adequately briefed by the parties and further factual development is required before such a determination can be made.

[4] The Court further rejects Barry's materiality and damages arguments. Both arguments are predicated on the notion that, if a breach existed with respect to the transition to online teaching, it was *de minimis*, since Rosado would still earn credits toward a diploma. This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile. Although both are fine vehicles, surely it is no consolation to the Cadillac buyer that the "Olds" can also go from Point A to Point B. That is Barry's argument and the Court declines to consider it further.

### 2. Whether Impossibility of Performance or Frustration of Purpose Bar Rosado's Claims

[5] A complaint may also be subject to dismissal "when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001). In this connection, Barry argues that it was impossible for it to conduct in-person classes and activities due to the pandemic, which frustrated Rosado's purpose. "Should Barry have just *ignored* COVID-19 and continued to offer in-person instruction, risking the health of students, faculty, and staff?" the university ponders. (DE 21: 21). This defense is a variation of its contractual validity argument. Barry implies that since it had little choice but to close the campus, its nonperformance is excused.

[6] [7] The Court perceives two problems with this argument. First, the defenses are not apparent on the face of the pleading. Barry states that "[t]he Court can take judicial notice of the existence of the frustration of purposes and impossibility affirmative defenses." (DE 21: 19). But a Court can only take notice of adjudicative facts, *Fed. R. Evid. 201(a)*, not legal conclusions determining ultimate issues in a case. *See generally Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204–05 (11th Cir. 2004) (stating that "taking of judicial notice of facts is ... a highly limited process" (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997))). Although the existence of COVID-19 is generally known and cannot reasonably be questioned, that does not conclusively establish the defense of impossibility or frustration of purpose on the facts alleged, particularly given the overlapping and sometimes contradictory state and local regulations, and evolving standards, for dealing with the virus. Furthermore, Barry has not pointed the Court to any authorities supporting the application of the doctrines in this context.

*5 [8] [9] Second, even assuming for present purposes that impossibility/frustration is established by the pleading, this still leaves open the question set forth previously: Who bears the risk for the pandemic based upon the contractual expectations of the parties. If the answer is Barry, then these defenses make no difference to the viability of Rosado's claims for pro-rata reimbursement. Indeed, in the absence of specific contractual provisions, courts often attempt to return the parties to their precontractual positions, insofar as possible, when nonperformance is excused. *See, e.g., E.B. Sherman, Inc. v. Mirizio*, 556 So. 2d 1143, 1144 (Fla. 3d DCA 1989); *Juno by the Sea Condo. Apartments, Inc. v. Juno by the Sea N. Condo. Ass'n (The Tower), Inc.*, 418 So. 2d 1190 (Fla. 4th DCA 1982). It would certainly be anomalous, without sufficiently strong evidence of contractual intent, to permit a party to reap the full benefits of an agreement in return for only partial performance. So, the applicability of these doctrines is only part of the picture. The Court accordingly concludes that, in the unique circumstances here, where significant questions remain about which contractual provisions were agreed to, and when they came into effect, further discovery is necessary.

### 3. Whether Rosado Ratified the Contract After the Alleged Breach

**[10]**  Barry next argues that "[Rosado's] conduct is the *very essence* of ratification and is a *textbook example* of the defense" because, if Rosado "truly believed" she had a claim against Barry, "she was required to advise Barry of such breach, refuse to attend classes that breached the agreement, and demand that Barry refund her money and erase any negative grade ..." (DE 21: 23). The Court disagrees. The pleading alleges that Rosado was forced to leave campus and that a withdrawal request at the time of the campus closure would have triggered the forfeiture of her tuition and a significant academic penalty. Rosado's decision to avoid that outcome, dictated by an unpredictable viral outbreak, without more, is insufficient at this juncture to establish an "affirmative showing" of her "intention to adopt" Barry's alleged breach of contract. *See Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001)(stating that "[r]atification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority"). Barry has not provided sufficient support for its position that Rosado was required to threaten Barry, risk financial loss, and disrupt her academic career in order to preserve her contractual remedies.

**B. Unjust Enrichment (Count II)**

**[11]**  Dismissal is further inappropriate in regard to Rosado's unjust enrichment claim. To establish unjust enrichment under Florida law, a plaintiff must prove that "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

**[12]  [13]**  Although it is well established that an unjust enrichment claim cannot be maintained when there is an express contract with a legal remedy, *see, e.g., Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014), it is equally clear that a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim. *Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316 (S.D. Fla. 2018).

**[14]**  Rosado alleges that Barry has been unjustly enriched by retaining the full tuition and fees paid by her and similarly situated students for the full Spring 2020 semester. Rosado alleges that she lost the benefits of those services and amenities when Barry suspended in-person classes and forced Rosado to move out. She states further that Barry retained the tuition and fees paid by Rosado even though it did not provide the services for which payments were made.

**\*6**  The Court concludes that Rosado has pled sufficient facts to withstand dismissal of her unjust enrichment claim. Although Barry disputes that the retention of the payments was "unjust," a motion to dismiss tests the sufficiency of the pleading, not the merits of the case. The Court further concludes that Rosado has properly pled unjust enrichment as an alternative to her claim for breach of contract. *See Salerno*, ---- F.Supp.3d at ------, 2020 WL 5583522, at \*5.

**IV. CONCLUSION**

For the foregoing reasons, the Motion to Dismiss filed by Defendant, Barry University Inc. (DE 21) is **DENIED**. Defendant's Motion to Stay (DE 22) and Plaintiff's Motion to Strike (DE 49) are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 30th day of October 2020.

**All Citations**

--- F.Supp.3d ----, 2020 WL 6438684

**Footnotes**

1       https://www.barry.edu/student-handbook/handbook/refund-policy.html (last accessed October 28, 2020).
2       https://www.barry.edu/future-students/undergraduate/admissions/tuition-and-fees.html (last accessed October 28, 2020).
3       https://barryustorage.blob.core.windows.net/assets/docs/registrar/registration-agreement-form.pdf (last accessed October 28, 2020).

4       https://www.barry.edu/prepare/plan-at-work/response-recovery.html (last accessed October 28, 2020).

5       https://www.barry.edu/dining-services/residential-meal-plan-options.html (last accessed October 28, 2020).

---

**End of Document**                                                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 13**

2020 WL 6163919 (Ohio Ct.Cl.) (Trial Order)
Court of Claims of Ohio.
Franklin County

Lily ZAHN, Plaintiff,

v.

OHIO UNIVERSITY, Defendant.

No. 2020-00371JD.
|
October 19, 2020.

## Entry of Partial Dismissal

Clifford P Bendau II, PO Box 97066, Phoenix AZ 85060.

Randall W Knutti, Peter E DeMarco, Jeanna V Jacobus, Assistant Attorney General, 150 East Gay Street 18th Floor, Columbus OH 43215-3130.

James L Simon, 5000 Rockside Road Suite 520, Independence OH 44131.

Edward W Ciolko, Gary F Lynch, 1133 Penn Avenue 5th Floor, Pittsburgh PA 15222.

Dale A. Crawford, Judge.

**\*1** On August 20, 2020, Defendant, Ohio University (OU), filed a motion to dismiss Plaintiff's amended complaint pursuant to Civ.R. 12(B)(1) and (6). On September 10, 2020, Plaintiff filed a reply. For the reasons discussed below, Defendant's motion shall be granted, in part, and denied, in part.

## Standard of Review

A motion to dismiss filed pursuant to Civ.R. 12(B)(6) tests the sufficiency of the claims asserted in a complaint. *Gordon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-792, 2018-Ohio-2272, ¶ 13. In construing a complaint upon a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In order for a court to dismiss a complaint, it must appear beyond a doubt that the plaintiff can prove no set of facts entitling her to recovery. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). "In resolving a Civ.R. 12(B)(6) motion to dismiss, the trial court may consider only the statements and facts contained in the pleadings, and may not consider or rely on evidence outside the complaint." *Powell v. Vorys*, 131 Ohio App.3d 681, 684, 723 N.E.2d 596 (10th Dist.1998).

## Factual Background

Plaintiff is an undergraduate student at OU and brings an amended complaint on behalf of herself and a proposed class. The proposed class consists of "[a]ll persons who paid tuition and the Mandatory Fees for a student to be enrolled at any undergraduate or graduate programs at an Ohio University campus during the Spring 2020 semester, Summer 2020 semester, and any future semester, but had their class(es) moved to online learning." (Amended Complaint, ¶ 58.) Plaintiff alleges that on March 10, 2020, OU's president moved all in-person classes online due to the Covid-19 pandemic. *Id.* at ¶ 29. Then, on

March 12, 2020, OU closed all dining venues except for one venue that was limited to carry out. *Id* at ¶ 31. Thereafter, on March 13, 2020, OU announced that all in-person classes would be conducted virtually for the remainder of the spring semester and switched from a traditional letter grading system to a satisfactory/no credit grading system. *Id.* at ¶ 32-34. Plaintiff further alleges that OU closed and restricted access to its on-campus facilities. *Id.*

The crux of Plaintiff's claim is that the online instruction provided by OU is deficient compared to the in-person classes for which she and the proposed class members contracted. *Id.* at ¶ 43. Specifically, Plaintiff points to the fact that the tuition and mandatory fees for OU's online "eCampus" classes offered each semester are significantly less expensive than its on campus classes. *Id.* at ¶ 21-25. The claims brought on behalf of Plaintiff and the proposed class seek to recover a prorated refund of the tuition and mandatory fees (i.e. meal plans, university's general fee, technology fee, career & experiential learning fee, and student info system/network fee) associated with the use of OU's on-campus facilities, Plaintiff paid to OU for the semesters where online learning was conducted rather than in-person learning. *Id.* at ¶ 56. Plaintiff brings claims for breach of contract, unjust enrichment, conversion, and violations of the 5th and 14th amendments to the Constitution on behalf of herself and the putative class members.

**\*2**  In its motion, OU argues that Plaintiff's claims for breach of contract, unjust enrichment, and conversion should be dismissed because, as alleged, they constitute claims for educational malpractice, which is not a viable claim in Ohio. Alternatively, OU argues that the claims for breach of contract, unjust enrichment, and conversion should be dismissed because they are "baseless." Lastly, OU argues that this Court lacks subject matter jurisdiction over Plaintiff's constitutional claims.

### Plaintiff's claims do not constitute an educational malpractice claim.

According to OU, Plaintiff's claims are based on the assertion that online learning is substandard to in-person classes, but Plaintiff points to no specific contractual provision stating that classes would be conducted in person. As a result, OU argues that Plaintiff's breach of contract, unjust enrichment, and conversion claims are an educational malpractice claim in disguise, which is not a recognized claim in Ohio. Consequently, OU asserts that Plaintiff's claims seeking a refund of tuition and fees should be dismissed.

However, when a trial court determines whether an action sets forth a claim upon which relief can be granted, a trial court should look to the body of the complaint. *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 11. A trial court's role generally does not include recasting a party's pleadings. *See* 🔖 *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

Plaintiff alleges that a contract was created when she paid tuition to OU and OU breached said contract by holding classes virtually without refunding a portion of the previously paid tuition and fees. The essence of Plaintiff's claims is that she contracted for in-person classes and certain services that she never received. The mere mention of possible consequences to Plaintiff's educational or professional future does not render Plaintiff's amended complaint a claim for educational malpractice. Accordingly, making all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's claims are not an educational malpractice claim. Therefore, OU's motion to dismiss Plaintiff's amended complaint on this basis is denied.

### Plaintiff has plead sufficient facts to support a claim for breach of contract.

To prove a claim for breach of contract, a plaintiff must establish: (1) a contract existed; (2) the plaintiff performed his obligations under the contract; (3) the defendant breached the contract; and (4) plaintiff suffered damages or loss due to the breach. *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 18 (10th Dist.), citing 🔖 *Powell v. Grant Med. Ctr.*, 148

*Ohio App.3d 1, 10, 771 N.E.2d 874 (10th Dist.2002).* Ohio law recognizes three types of contracts: express, implied in fact, and implied in law. *Union Sav. Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App.3d 540, 2010-Ohio-6396, 946 N.E.2d 835 (10th Dist.). "While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the contract." *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 133 Ohio App.3d 844, 849, 729 N.E.2d 1259 (7th Dist.1999).

**\*3** In an express contract, the assent to the terms of the contract is formally expressed in the offer and acceptance of the parties. *Id.* However, in an implied contract, no such formal offer and acceptance occurs, and no express agreement exists. *Id.* "Unlike express contracts, implied contracts are not created or evidenced by explicit agreement of the parties; rather, they are implied by law as a matter of reason and justice." *Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, 2006-Ohio-2957, 855 N.E.2d 909, ¶ 56 (10th Dist.). "An implied-in-fact contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement." *Id.*

A review of Plaintiff's amended complaint reveals that a portion of the expenses and fees she seeks to recover are covered by an express contract (e.g. meal plans, facility fees, etc.). Yet, Defendant asserts that no contractual provision exists to support Plaintiff's claim that classes were required to be held in person. However, based upon the allegations in the amended complaint, Plaintiff can at least state a claim that an implied contract exists for an in-person education as opposed to an online education.

As discussed above, a contract requires offer and acceptance and can be either *express or implied*. Plaintiff has alleged that she paid an amount of money to OU with the expectation that she would receive an in-person education rather than an online education. Plaintiff has also alleged that she paid money for certain mandatory fees and has not received the services associated with those fees (e.g. access to dining halls, activity fees, facility fees, etc.). Based on these assertions, the Court finds it is not beyond doubt that Plaintiff could prove a set of facts that either an express or implied contract was created. Plaintiff has a right to submit evidence to the fact finder in support of her claims. Accordingly, OU's motion to dismiss Plaintiff's breach of contract claim is denied.

### Plaintiff has plead sufficient facts to state a claim for unjust enrichment.

OU alternatively argues that Plaintiff's unjust enrichment claim should be dismissed because it lacks merit and is "baseless." However, it is well settled that, in determining a 12(B)(6) motion to dismiss, the Court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *See Mitchell*, *supra*. Moreover, a Civ.R. 12(B)(6) motion does not test the merits of a claim. *See Fifo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 15 (7th Dist.). In fact, whether a plaintiff can prove the facts asserted in the complaint is an issue for a later determination. *See Fifo* at ¶ 15. Unjust enrichment of a person, or liability in quasi-contract, "occurs when [a person] has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). Generally, "an express agreement and an implied contract, such as one which would be raised under a quasi-contract/unjust enrichment theory, cannot exist in connection with the same thing at the same time." *Lone Star Equities, Inc. v. Dimitrouleas*, 2015-Ohio-2294, 34 N.E.3d 936, ¶ 71 (2d Dist.). However, it is well settled that unjust enrichment can be plead in the alternative to a breach of contract claim if the existence of the underlying contract is in dispute. *See Cristino v. Admr, Ohio Bur. of Worker's Comp.*, 10th Dist. Franklin No. 12AP-60, 2012-Ohio-4420, ¶ 26. ("The mere presence of both [breach of contract and unjust enrichment] claims in a complaint does not warrant the dismissal of the unjust-enrichment claim on a Civ.R. 12(B)(6) motion.").

**\*4** Upon review, the Court finds that, after all reasonable inferences are afforded in favor of Plaintiff, it does not appear beyond doubt that Plaintiff can prove no set of facts entitling her, or members of the proposed class, to relief based on a theory of unjust enrichment. Because the existence of the underlying contract is in dispute, it would be premature for the Court to dismiss Plaintiff's unjust enrichment claim plead in the alternative to her breach of contract claim. If the Court were to find that

there is no express or implied contract, plaintiff retains the right to provide the fact finder with evidence of unjust enrichment. Accordingly, OU's motion to dismiss Plaintiff's unjust enrichment claim is denied.

**Plaintiff does not state a claim for conversion.**

To establish the tort of conversion, a plaintiff must show that (1) she has ownership or the right of possession of the property in question at the time of the alleged conversion, (2) defendant converted the property through a wrongful act, and (3) damages resulted from the defendant's act. *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 10th Dist. Franklin No. 14AP-482, 2015-Ohio-2166, ¶ 30. In order to maintain an action for conversion of money, the plaintiff must establish that the funds were "earmarked," such that the defendant had an obligation to deliver a specific corpus of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt. *Haul Transport of Virginia, Inc., v. Morgan*, 2d Dist. Montgomery No. 14859, 1995 Ohio App. LEXIS 2240 (June 2, 1995).

Upon review of the amended complaint, the factual allegations do not support an action for conversion. OU did not take possession of money Plaintiff would have received. Rather, the money went to OU for payment of the in-person classes and mandatory fees for which Plaintiff contracted. Plaintiff is merely finding a new way of stating that OU, despite paying tuition and fees as agreed, failed to fulfill their contractual obligation of holding in-person classes and failed to provide the amenities associated with the fees paid by Plaintiff. Thus, the court finds that Plaintiff's conversion claim must be dismissed pursuant to Civ.R. 12(B)(6).

**The Court of Claims lacks subject matter jurisdiction over Plaintiff's constitutional claims.**

In her response, Plaintiff concedes that this Court lacks jurisdiction over her claims arising under the 5th and 14th amendments to the Constitution. As a Court of limited jurisdiction, this Court lacks subject-matter jurisdiction over alleged violations of claims arising under 42 U.S.C. 1983 or alleged violations of constitutional rights. *Jackson v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 19AP-621, 2020- Ohio-1518, ¶12; *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶12. Consequently, Plaintiff's constitutional claims must be dismissed pursuant to Civ.R. 12(B)(1).

**Conclusion**

The Covid-19 pandemic and resulting orders from state and local officials closing public and private facilities have created novel legal issues that need exploration and ultimate resolution. To dismiss a claim because it is novel would be a mistake. Plaintiff will be given the opportunity to proceed with her claims individually and/or by class action. Based upon the foregoing, Defendant's motion to dismiss is GRANTED, in part, and DENIED, in part. Plaintiff's constitutional claims are DISMISSED pursuant to Civ.R. 12(B)(1). Plaintiff's conversion claim is DISMISSED pursuant to Civ.R. 12(B)(6). Defendant's motion to dismiss Plaintiff's breach of contract and unjust enrichment claims is DENIED. Defendant shall file its answer to Plaintiff's amended complaint in the normal course.

**\*5** <<signature>>

DALE A. CRAWFORD

Judge

cc:

Clifford P Bendau II

PO Box 97066

Phoenix AZ 85060

Randall W Knutti

Peter E DeMarco

Jeanna V Jacobus

Assistant Attorney General

150 East Gay Street 18th Floor

Columbus OH 43215-3130

James L Simon

5000 Rockside Road Suite 520

Independence OH 44131

Edward W Ciolko

Gary F Lynch

1133 Penn Avenue 5th Floor

Pittsburgh PA 15222

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 14**

2020 WL 5894543 (Ohio Ct.Cl.) (Trial Order)
Court of Claims of Ohio.
Franklin County

Caitlyn WAITT, Plaintiff,

v.

KENT STATE UNIVERSITY, Defendant.

No. 2020-00392JD.
September 28, 2020.

**Decision**

Clifford P Bendau II, PO Box 97066, Phoenix AZ 85060.

James L Simon, 5000 Rockside Road Suite 520, Independence OH 44131.

Randall W Knutti, Peter E DeMarco, Jeanna V Jacobus, Assistant Attorneys General, 150 East Gay Street 18th Floor, Columbus OH 43215-3130.

Edward W. Ciolko, Gary F. Lynch, 1133 Penn Avenue 5th Floor, Pittsburgh PA 15222.

Patrick M. McGrath, Judge.

**\*1**  Pursuant to Civ.R. 12(B)(1) and (6), defendant Kent State University (KSU) moves to dismiss the first amended class-action complaint filed by plaintiff Caitlyn Waitt. KSU's motion should be granted, in part, for reasons set forth below.

### I. Background

Waitt has filed a first amended class-action complaint against KSU and members of KSU's board of trustees in their official capacities. Waitt's lawsuit stems from KSU's decision to close buildings and switch in-person classes to a remote format in the face of a COVID-19 pandemic. Waitt asserts the following causes of action: (1) breach of contract, (2) violation of the constitutional guarantee against the taking of property without just compensation arising under 42 U.S.C. 1983, (3) violation of the constitutional guarantee of due process arising under 42 U.S.C. 1983, (4) unjust enrichment, and (5) conversion. Waitt has demanded a jury trial.

On August 27, 2020, KSU moved to dismiss Waitt's first amended class-action complaint pursuant to Civ.R. 12(B)(1) and (6). KSU maintains that Waitt's claims of breach of contract, unjust enrichment, and conversion rest on a notion that remote-education is "inferior to in-person education, which means all of those claims are disguised educational malpractice claims;" that the first amended class-action complaint "identifies no contract term that KSU is alleged to have breached; there is nothing 'unjust' about charging tuition and fees for educating a student and awarding her the credits to which she was entitled;" and this court lacks jurisdiction to consider the first amended class-action complaint's "due process" and "takings" claims. KSU also characterizes Waitt's causes of action as "baseless."

*Waitt v. Kent State University, 2020 WL 5894543 (2020)*

Waitt opposes KSU's motion, contending in a memorandum that she has alleged an enforceable breach-of-contract claim—not a claim for educational malpractice—and that she has sufficiently pled claims for unjust enrichment and conversion. And Waitt states in a footnote in her memorandum: "Plaintiff removes any request for a Jury Demand made in the Amended Complaint, as it was included as a scrivener's error. Further, as to the constitutional claims contained in the Amended Complaint, Plaintiff agrees to dismiss without prejudice the Second and Third Claim For Relief for Violation of the Takings Clause and Violation of Due Process, respectively. Plaintiff further agrees to voluntarily dismiss without prejudice the individuals named in the Amended Complaint."

KSU did not file a timely reply to Waitt's response.

## II. Law and Analysis

### A. Legal Standards

The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) "is whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641 (1989). By comparison, a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim "is procedural and tests the sufficiency of the complaint." *Dunkle v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 13AP-923, 2014-Ohio-3046, ¶ 7, citing *Volbers-Klarich v. Middletown Mgmt.*, 125 Ohio St. 3d 494, 2010-Ohio-2057, ¶ 11, 929 N.E.2d 434. A Civ.R. 12(B)(6) motion does not test the merits of a claim. *See Filo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 15 (7th Dist.). Whether a plaintiff can prove the facts as a plaintiff presents them is an issue for a later determination. *See Filo* at ¶ 15. When a court is presented with a Civ.R. 12(B)(6) motion to dismiss, the "factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. *** It must appear beyond doubt that plaintiff can prove no set of facts entitling [plaintiff] to relief." *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280, 649 N.E.2d 182 (1995).

### B. Discussion

**1. A court generally does not recast a party's pleading. A Civ.R. 12(B)(6) motion does not test the merits of a claim.**

**\*2** Waitt's first amended class-action complaint does not present a claim of "educational malpractice," as KSU suggests. When a trial court determines whether an action sets forth a claim upon which relief can be granted, a trial court should look to the body of the complaint. *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 11. A court's role, however, generally does not include recasting a party's pleadings. *See Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

KSU's suggestion that Waitt presents disguised educational malpractice claims is unpersuasive. Moreover, KSU's contention that Waitt's claims are "baseless" is of no moment because a Civ.R. 12(B)(6) motion does not test the merits of a claim, *see Filo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 15 (7th Dist.), and whether a plaintiff can prove the facts as a plaintiff presents them is an issue for a later determination. *See Filo* at ¶ 15. Based on the court's review, it does not appear beyond doubt that, after all reasonable inferences are afforded in favor of Waitt and the proposed class, Waitt and the proposed class can prove no set of facts entitling her, or members of the proposed class, to relief based on claims of breach of contract, unjust enrichment, and conversion.

### 2. The Court of Claims of Ohio lacks subject-matter jurisdiction over alleged violations of claims arising under 42 U.S.C. 1983 or alleged violations of constitutional rights.

As a court of limited jurisdiction, this court lacks subject-matter jurisdiction over alleged violations of claims arising under 42 U.S.C. 1983 or alleged violations of constitutional rights. *Jackson v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 19AP-621, 2020-Ohio-1518, ¶ 12; *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 12. *See generally You v. Northeast Ohio Med. Univ.*, 10th Dist. Franklin No. 17AP-426, 2018-Ohio-4838, ¶ 34-35 (discussing this court's lack of jurisdiction over constitutional claims). KSU's contention that Waitt's claims of alleged violations of constitutional rights should be dismissed for lack of jurisdiction is well-taken.

Moreover, despite Waitt's "agree[ing] to dismiss without prejudice the Second and Third Claim For Relief for Violation of the Takings Clause and Violation of Due Process, respectively," Waitt does not call the court's attention to an Ohio Rule of Civil Procedure that supports such an action. Notably, under Civ.R. 41(A)(1), subject to exceptions, a plaintiff, without order of court, "may dismiss *all claims* asserted by that plaintiff against a defendant". (Emphasis added.) In *Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, ¶ 18, the Ohio Supreme Court explained that Civ.R. 41(A)(1) "does not allow for the dismissal of a *portion* of the claims against a certain defendant. Civ.R. 41(A) applies to discrete parties, not discrete causes of action". Waitt's purported dismissal without prejudice of her constitutional claims is unavailing.

### 3. The only defendant in original actions in the Court of Claims of Ohio is the state. Members of KSU's Board of Trustees should be dismissed as parties.

The only defendant in original actions in this court is the "state." R.C. 2743.02(E). As used in R.C. Chapter 2743, the term "state" "means the state of Ohio, including, but not limited to, the general assembly, the supreme court, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state." R.C. 2743.01(A). In common usage, an instrumentality is a "means or agency through which a function of another entity is accomplished, such as a branch of a governing body." *Black's Law Dictionary* 952 (11th Ed. 2019).

**\*3** KSU is an instrumentality of the state of the Ohio as KSU is an institution of higher education created by statute. See R.C. 3341.01 (establishing Kent State University); *see Mihalcin v. Hocking College*, 10th Dist. Franklin No. 95API06-760, 1995 Ohio App. LEXIS 5496, at \*9 (Dec. 14, 1995) (state universities, as named separately in the Ohio Revised Code, are created by statutory enactment). The government of KSU, however, is vested in its board of trustees. R.C. 3341.02(C).

Because KSU is an instrumentality of the state of Ohio, KSU therefore is the only proper defendant in this original action under R.C. 2743.02(E). KSU's board members, as the governing body of KSU, does not constitute the "state" for purposes of R.C. Chapter 2743. KSU's board members should be dismissed as parties in this case because they are not proper defendants in this original action under R.C. 2743.02(E).

### 4. Waitt is not entitled to a jury trial under R.C. 2743.11.

Pursuant to R.C. 2743.11, no claimant in this court "shall be entitled to have his civil action against the state determined by a trial by jury. Parties retain their right to trial by jury in the court of claims of any civil actions not against the state." Waitt's demand for a trial by jury therefore is of little consequence in this instance because under R.C. 2743.11 Waitt is not entitled to a trial by jury. Waitt's jury demand should be stricken.

### III. Conclusion

For reasons set forth above, the court concludes that (1) KSU's motion to dismiss should be granted in part; (2) Waitt's constitutional claims should be dismissed for lack of subject matter jurisdiction; (3) defendants Virginia C. Addicott, Rev Dr. Todd C. Davidson, Ralph M. Delia Ratta, Rob S. Frost, Jasmine Hoff, Robin M. Kilbride, Nicholas R. Kollar, Donald L. Mason, Stephen A. Perry, Shawn M. Riley, Catherine L. Ross, Michael D. Solomon, and Ann Womer Benjamin should be dismissed as parties; and (4) Waitt's jury demand should be stricken.

<<signature>>

PATRICK M. MCGRATH

Judge

### JUDGMENT ENTRY

For reasons set forth in the decision filed concurrently herewith, the court (1) GRANTS, in part, defendant's motion to dismiss filed on August 27, 2020, (2) DISMISSES plaintiffs constitutional claims contained in a first amended class-action complaint for lack of subject matter jurisdiction, (3) DISMISSES defendants Virginia C. Addicott, Rev Dr. Todd C. Davidson, Ralph M. Delia Ratta, Rob S. Frost, Jasmine Hoff, Robin M. Kilbride, Nicholas R. Kollar, Donald L. Mason, Stephen A. Perry, Shawn M. Riley, Catherine L. Ross, Michael D. Solomon, and Ann Womer Benjamin as parties; and (4) STRIKES plaintiff's jury demand in the first amended class-action complaint.

<<signature>>

PATRICK M. MCGRATH

Judge

cc:

Clifford P Bendau II

PO Box 97066

Phoenix AZ 85060

James L Simon

5000 Rockside Road Suite 520

**Waitt v. Kent State University, 2020 WL 5894543 (2020)**

Independence OH 44131

Randall W Knutti

Peter E DeMarco

Jeanna V Jacobus

Assistant Attorneys General

150 East Gay Street 18th Floor

Columbus OH 43215-3130

Edward W. Ciolko

Gary F. Lynch

1133 Penn Avenue 5th Floor

Pittsburgh PA 15222

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 15**

2020 WL 5583522
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Sara SALERNO and Lindsay Murillo, Plaintiffs,
v.
FLORIDA SOUTHERN COLLEGE, Defendant.

Case No. 8:20-cv-1494-30SPF
|
Signed 09/16/2020

**Synopsis**
**Background:** College student and her mother brought action,
on behalf of themselves and class of similarly-situated
students, against college, alleging breach of contract, unjust
enrichment, and conversion after college moved curriculum
from in-person to online instruction during COVID-19
pandemic. College moved to dismiss.

**Holdings:** The District Court, James Moody, Senior District
Judge, held that:

mother lacked Article III standing;

student sufficiently alleged claim for breach of contract;

unjust enrichment claim was proper; and

student's claim for tuition reimbursement was not sufficiently
tangible to qualify as property.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to
State a Claim.

**Attorneys and Law Firms**

Sarah Westcot, Bursor & Fisher, P.A., Miami, FL, Max Stuart
Roberts, Bursor & Fisher, P.A., New York, NY, for Plaintiffs.

Elizabeth Anne Morris, Latham & Watkins LLP, New York,
NY, Robert Eugene Puterbaugh, Stephen R. Senn, Peterson &
Myers, PA, Lakeland, FL, for Defendant.

**ORDER**

JAMES S. MOODY, JR., UNITED STATES DISTRICT
JUDGE

**\*1**  THIS CAUSE comes before the Court upon Defendant
Florida Southern College's Motion to Dismiss (Dkt. 34) and
Plaintiffs' Response in Opposition (Dkt. 43). The Court, upon
review of the motion, response, and being otherwise advised
in the premises, concludes that the motion should be granted
in part and denied in part. Specifically, the Court agrees that
Plaintiff Sara Salerno lacks standing to assert the legal claims
because she was not a student of Defendant Florida Southern
College. The Court also agrees that the conversion claim fails
to state a claim under Rule 12(b)(6). Defendant's arguments
with respect to Plaintiff Lindsay Murillo's breach of contract
and unjust enrichment claims are unavailing at this motion to
dismiss stage because she has adequately pled these claims.

**BACKGROUND**

The Novel Coronavirus Disease 2019 ("COVID-19")
pandemic has wreaked havoc on the world. In the Spring of
2020, many schools and colleges, both public and private,
were forced to move their curriculum from in-person to online
instruction out of concern for the health of their students,
faculty, and staff, and in response to government-mandated
closures and social-distancing measures.

Plaintiffs Lindsay Murillo and her mother, Sara Salerno, bring
this action on behalf of themselves and a class of similarly-
situated students, contending that Defendant Florida Southern
College breached its contract with its students because
that contract included the promise to provide in-person
educational services. The damages flowing from this alleged
breach? Tuition reimbursement.

This case is novel in the sense that there is no legal precedent
involving a pandemic's impact on a school's promise to
provide in-person learning when doing so would be unsafe
and/or against government mandates. And so, like the ripple
in a pond after one throws a stone, the legal system is now
feeling COVID-19's havoc with the current wave of class
action lawsuits that seek tuition reimbursement related to
forced online tutelage. As explained further below, Florida
law recognizes that a college has a contractual relationship

with its students. Murillo, a student, has alleged the elements of a breach of contract claim against Florida Southern College in her amended complaint. At this early stage in the case, that is all that is necessary. The more difficult issues will come later, at the summary judgment stage. The Court now turns to the specific facts alleged in the amended complaint, which the Court must accept as true at this stage. (Dkt. 32).

The amended complaint states that it is a class action lawsuit [1] on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Florida Southern College, and who lost the benefit of the educational services that they contracted and paid for as a result of Florida Southern College's response to COVID-19.

**\*2** Florida Southern College (the "College") is a private college with an enrollment of over 3,000 students. The College offers 50 undergraduate majors and pre-professional programs, graduate programs in nursing, business, and education, and post-graduate programs in nursing, education, and physical therapy. It has been named among the most beautiful college campuses in the country.

Plaintiffs and Florida Southern College "entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services." (Dkt. 32 at ¶3). The terms of the contractual agreement were set forth in Florida Southern College's publications, including the Spring 2020 Semester Course Portal ("Course Portal"). The Course Portal is directed at students and provides information about the courses offered, including the instructors, the days and times, and the location (including the building and room number).

Other publications refer to the in-person nature of the Spring 2020 semester course offerings, including course specific syllabi, and the Florida Southern College Academic Catalog 2019/2020 ("Academic Catalog"). The Academic Catalog details the policies, procedures, and expectations expected of the students. The Academic Catalog emphasizes that "[c]lass attendance [and] participation in engaged learning activities ... are essential college requirements." *Id.* at ¶7. The Academic Catalog likewise notes that "[s]tudents are expected to attend all class and laboratory sessions on time and should be absent only for unavoidable documented reasons." *Id.* In addition, the Academic Catalog highlights the on-campus facilities, such as the Roux Library (described as

an "integral part of the intellectual life of the College"), Tûtû's Cyber Café (which "contributes to the educational and social fabric of the campus"), the Rinker Technology Center, and the Nina B. Hollis Wellness Center. *Id.* at ¶8.

Florida Southern College's Spring 2020 semester commenced on or around January 6, 2020, and concluded on or around April 29, 2020. On March 12, 2020, Florida Southern College announced that because of the global COVID-19 pandemic, in-person classes would be suspended on March 13, 2020, for ten days, with classes to resume online on March 23, 2020. Florida Southern College advised students to leave campus and return home. It anticipated that in-person classes would resume on April 15, 2020.

On March 18, 2020, the College's President, Anne B. Kerr, announced in a campus-wide email that the College would "proceed with offering remote instruction for the remainder of the semester. Thus, students will not return to campus, as [ ] first planned, for classes to resume face-to-face on April 15th." The email also announced the decision to "close campus buildings[ ] ... and cancel May graduation." *Id.* at ¶11.

Florida Southern College did not hold any in-person classes from March 12, 2020, through the end of the Spring 2020 semester. Classes that continued after March 12, 2020, were provided in an online format, with no in-person instruction. No classes were held (either in-person or online) from March 13, 2020, through March 23, 2020.

Plaintiffs allege that: "As a result of the closure of Defendant's facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the putative Class contracted and paid for. The online learning options being offered to [the College's] students were subpar in practically every aspect, from the lack of facilities, materials, and access to faculty. Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique. The remote learning options were in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for." *Id.* at ¶13.

**\*3** With respect to Plaintiff Lindsay Murillo, she is an undergraduate student at Florida Southern College pursuing a bachelor's degree in biology. She avers that the biology program relies extensively on in-person instruction, lab work, and access to facilities. None of the abovementioned resources were available to her while in-person classes were

suspended. Murillo paid approximately $18,430 in tuition, a $315 technology fee, and a $75 activity fee for the Spring 2020 semester. Murillo claims Florida Southern College failed to refund any of these fees, despite the fact that all students were required to leave campus on March 13, 2020.

The amended complaint alleges three claims: breach of contract; unjust enrichment; and conversion (Counts I-III respectively). Now, Florida Southern College moves to dismiss for various grounds, including Plaintiff Salerno's lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court turns to standing first, which is a question of subject matter jurisdiction and therefore a threshold issue. The Court will then discuss whether the claims are adequately pled.

**DISCUSSION**

**I. Standing**

To bring a suit in federal court, a party must meet the standing requirements of Article III of the Constitution. Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

Because standing is jurisdictional, a defendant can move to dismiss a complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Id.* "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (citation omitted). "By contrast, a factual attack on a complaint challenges the existence of subject matter

jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.*

"In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists" by a preponderance of the evidence. *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). When subject matter jurisdiction is faced with a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Here, Florida Southern College factually attacks Salerno's standing. The motion attaches as Exhibit A the Affidavit of V. Terry Dennis. The Affidavit states that Salerno is not a student at the College. Her daughter, Murillo, is a "twenty year old adult who recently completed her Sophomore year at the College." Exhibit A at ¶ 5. The College has no contractual agreement of any type with Salerno. Murillo executed all documents relating to her admission and attendance. Murillo did not grant Salerno access to her records or information at the College under the Federal Family Educational Rights and Privacy Act of 1974 ("FERPA"), which bars the College from disclosing educational records to parents unless the student completes and signs a FERPA authorization waiver. Murillo did not execute this waiver. Exhibit A at ¶ 9.

**\*4** Florida Southern College does not maintain any contractual agreements or accounts receivable records of any kind between parents of students and the College. The College does not pursue the parents of its students for unpaid balances. All student financial and academic records are maintained using a Student ID number, with the student's name.

The College also points to evidence that—contrary to Salerno's allegations that she paid "approximately $18,430 to [the College] for Ms. Murillo's Spring 2020 tuition," Dkt. 32 at ¶19—the College has no account in Salerno's name. The amended complaint also alleges, inconsistently, that Murillo paid this amount with her own credit card. Dkt. 32 at ¶18.

Florida Southern College argues that these facts demonstrate that the only relationship from which any legal obligations may arise is between the College and Murillo. The Court agrees. Notably, Salerno does not rebut this evidence or adequately explain how any action on Florida Sothern College's part injured her. It is also of note that the lack of injury to Salerno is clear regardless of whether Salerno provided financial support to her daughter. That arrangement

was between mother and daughter. It does not establish a relationship between the College and Salerno under these facts. Accordingly, Florida Southern College's motion is granted to the extent that Salerno will be dismissed from this action for lack of standing.

## II. Failure to State a Claim

Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

Legal conclusions, though, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

### A. Breach of Contract

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Florida Southern College acknowledges that, under Florida law, a student and a private university have a contractual relationship. *See John B. Stetson Univ. v. Hunt*, 88 Fla. 510, 102 So. 637, 640 (1924); *see also Sharick v. Southeastern Univ. of Health Sciences, Inc.*, 780 So. 2d 136, 138 (Fla. 3d DCA 2000). It is also generally accepted that the terms and conditions

of that contractual relationship may include the publications of the private university. *Sharick,* 780 So. 2d at 138-39. The university's publications are terms of an "implied-in-fact contract" rather than an express contract. *Id.; see also McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) (noting that the terms of the contract are generally set forth in university catalogs, student manuals, student handbooks, and other university policies and procedures); *Ali v. Stetson Univ., Inc.*, 340 F. Supp. 2d 1320, 1328 (M.D. Fla. 2004).

**\*5** The crux of the College's motion is that the amended complaint does not identify a specific contractual provision that establishes that the College had an obligation to provide "in-person educational services" for the entire Spring 2020 semester. The Court disagrees based on its careful review of the amended complaint. Throughout the amended complaint, Murillo alleges that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on the campus thereby implying in-person participation. These allegations are sufficient at this early stage, especially because Florida law recognizes that the college/student contract is typically implied in the College's publications. In other words, this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous.

That being said, the Court underscores that this case is not about the quality of the College's education. Murillo acknowledges in her response that Florida law does not recognize educational malpractice cases because it is not a court's place to opine on that matter. Murillo also admits in her response that her claim is not about the College's *decision* to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached.

Also, the Court expresses no opinion on the merits of the breach of contract claim. The Court simply holds that Murillo has adequately pled a breach of contract claim. The College's remaining arguments are more appropriate at the dispositive motion stage.

### B. Unjust Enrichment

The College's next argument is that the unjust enrichment claim is improper because the College does not contest that a contract exists. Regardless of whether a contract exists, the College disputes the merits of the breach of contract claim.

Even more important, this Court has consistently held that a plaintiff may allege alternative claims in her complaint. *See. e.g., Rea v. It Works! Glob., Inc.,* No. 8:19-CV-599-T-30JSS, 2019 WL 5722479, at *2 (M.D. Fla. June 21, 2019) ("This Court permits pleading an unjust enrichment claim in the alternative.") (citing *United Surgical Assistants, LLC v. Aetna Life Ins. Co.,* 8:14-CV-211-T-30MAP, 2014 WL 5420801, at *4 (M.D. Fla. Oct. 22, 2014) ("Plaintiffs are permitted to plead alternative causes of action ... Although USA may not recover under both theories of liability, at this stage, it is premature to dismiss the equitable relief claims.")). Accordingly, Murillo's unjust enrichment claim may remain for now, in the alternative.

#### C. Conversion

Finally, the College argues, in relevant part, that the conversion claim fails to identify the type of property that was deprived. The Court agrees. "Under Florida law, conversion is an intentional tort consisting of an unauthorized act which deprives another of his property, permanently or for an indefinite time." *Furmanite America, Inc. v. T.D. Williamson, Inc.,* 506 F. Supp. 2d 1134, 1143 (M.D. Fla. 2007). "[T]he elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Joe Hand Promotions, Inc. v. Creative Entertainment, LLC,* 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013).

The type of property at issue here, in-person learning, is intangible and not the subject of a conversion claim for the reasons stated in the College's motion. *See* (Dkt. 34 at 24-25). Notably, an obligation to pay money, like Murillo's claim for tuition reimbursement, is also insufficiently tangible to qualify as "property" under these facts. *See Rosen v. Marlin,* 486 So. 2d 623, 625–26 (Fla. 3d DCA 1986) ("This is

not a case where a party intentionally received a specifically identifiable sum of money knowing that he had no right to take it and who refused to give it back as was the case in *Senfeld v. Bank of Nova Scotia Trust Company Cayman, Ltd.,* 450 So. 2d 1157 (Fla. 3d DCA 1984). This is not a case where a party refused to pay over to the demanding party a specific fund capable of separate identification required to be deposited into a special account as was the case in *Aero International Corp. v. Florida National Bank of Miami,* 437 So. 2d 156 (Fla. 3d DCA 1983)"). Accordingly, the conversion claim will be dismissed with prejudice.

**\*6** It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Florida Southern College's Motion to Dismiss (Dkt. 34) is granted in part and denied in part.

2. Plaintiff Sara Salerno is dismissed without prejudice from this action for lack of standing. The Clerk of Court is directed to terminate her as a Plaintiff in this case.

3. The breach of contract and unjust enrichment claims (Counts I and II) are not dismissed.

4. The conversion claim (Count III) is dismissed with prejudice.

5. Defendant shall file its answer to Counts I and II of the amended complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida, this September 16, 2020.

**All Citations**

--- F.Supp.3d ----, 2020 WL 5583522

---

## Footnotes

1    The Court makes no determination at this stage whether this case is appropriate for class certification. That issue will be decided after Plaintiffs file a motion for class certification and after the matter is fully briefed.

---

     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 16**

2020 WL 8365183 (Mich.Ct.Cl.) (Trial Order)
Michigan Court of Claims.
Wayne County

Kai GARLAND, and all others who are similarly situated, Plaintiffs,

v.

WESTERN MICHIGAN UNIVERSITY, and The Board of Trustees of Western Michigan University, Defendants.

No. 20-000063-MK.
September 15, 2020.

**Opinion and Order**

Cynthia Diane Stephens, Judge.

**\*1**  Pending before the Court in this putative class action is defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8). For the reasons that follow, the motion is DENIED.

## I. BACKGROUND

Plaintiff is a student at defendant Western Michigan University (WMU). This case arises out of plaintiff's demand for a refund of pre-paid tuition, room and board, and fees after plaintiff left WMU's campus following the university's transition to online learning during the onset of the COVID-19 pandemic in March 2020. The university offered distance learning for the remainder of the Spring 2020 semester, starting in mid-March. It also urged students to move out of on-campus housing. Plaintiff agrees in her complaint that she accepted, the university's offer of a $1,000 refund for moving out of on-campus housing but asserts that amount was inadequate to compensate for both the accommodations and meal and educational services and fees for which she paid but the value of which she did not receive.

Plaintiff's complaint alleges that WMU retained the value of payments made by plaintiff and other purported class members for tuition, room and board, and fees, while failing to provide the services that were promised to students. Plaintiff purports to bring the action on behalf of three classes of claimants: (1) the "tuition" class, i.e., those students who paid tuition and expected live, in-person instruction; (2) the "room and board" class, i.e., those students who moved out of university housing and who did not receive a refund for prepaid amounts; and (3) the "fee" class, i.e., those students who paid fees for the Spring 2020 semester but who did not receive the expected services associated with those fees.

Count I of the complaint alleges breach of contract with respect to tuition paid by plaintiff. According to plaintiff, she entered into a contractual agreement—which agreement is in the possession of WMU—with WMU pursuant to which the university agreed to provide live, in-person instruction in exchange for the payment of tuition. WMU purportedly breached this agreement, however, by moving the second half of all Spring 2020 classes to online, distance learning platforms and by refusing to refund tuition amounts prepaid by plaintiff and other class members. Plaintiff alleges that she has been damaged because she was deprived of the value of live, in-person instruction in a classroom setting.

Count II alleges breach of contract with respect to room and board. Plaintiff alleges that this count arises out of a contract that is in WMU's possession. Pursuant to this agreement, she prepaid an amount for room and board, and WMU was to provide on-campus housing and meals. WMU allegedly breached this agreement, however, by not providing housing and meals for the entire semester.

Count III alleges breach of contract with respect to certain fees paid during the Spring 2020 semester. Once again, plaintiff alleges that the pertinent contracts are in WMU's possession. In short, plaintiff alleges that WMU charged certain fees, but failed to provide the agreed-upon services related to the various fees. Plaintiff alleges that she was damaged because she was deprived of the value of the services the fees were intended to cover, and that WMU has refused to provide a refund.

**\*2** Counts IV-VI, which are alleged in the alternative, assert claims of unjust enrichment with respect to tuition, room and board, and fees. Plaintiff alleges that defendants retained prepaid amounts for tuition, room and board, and fees to which they were not entitled, given that the services intended to be covered by the funds were never provided. Plaintiff contends that equity demands defendants return the portion of funds to which they were not entitled.

This matter is before the Court on defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8). Defendants first argue that this Court should refrain from entertaining plaintiff's claims and insist that the Court should not interfere with the autonomy of the university to control and manage its affairs. Second, defendants argue that enrollment in the university does not create contractual rights and obligations as a matter of law. Defendants assert that they did not breach any agreements that might have existed. Finally, defendants argue that plaintiff's unjust enrichment claims fail as a matter of law because plaintiff failed to allege that WMU retained any monies for an improper purpose.

## II. ANALYSIS

Defendants move this Court for summary disposition under MCR 2.116(C)(8). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. Summary disposition is appropriate under subrule (C)(8) only if the plaintiff's claim "is so clearly unenforceable that no factual development could possibly justify recovery." *Id.*

## A. UNIVERSITY AUTONOMY

The Court first turns to defendants' argument that it should refrain from interfering with university autonomy and that it should decline to question the manner in which WMU conducts its affairs. In support, defendants cite Const 1963, art 8, § 6, and *Sprik v Regents of Univ of Mich*, 43 Mich App 178; 204 NW2d 62 (1972), aff'd on other grounds 390 Mich 84; 210 NW2d 332 (1973). In *Sprik*, 43 Mich App at 182, the University of Michigan, pursuant to leases with certain students, increased rent for students living in certain university-owned housing. The University used the rent increase to make a payment to the Ann Arbor School District. *Id.* The plaintiffs in that case objected to the money being paid to the school district. *Id.* at 183. After accepting the plaintiffs' concession that their leases with the University of Michigan allowed the increase, the Court of Appeals held that the University Regents had constitutional authority to control and manage university affairs, including the expenditure of the funds at issue. *Id.* at 186.

The Court does not agree with defendants' contention in the instant case that the holding in *Sprik* precludes the relief requested by plaintiff. Nor does the Court agree that the holding in *Sprik* precludes it from considering whether the refund issued to plaintiff for room and board adequately compensated plaintiff for any damages to which she may or may not be entitled. As the parties' briefing acknowledges, the pleadings and arguments in this case are strikingly similar to those in other cases filed against other public universities in the Court of Claims. The Court finds instructive and persuasive the reasoning employed in *Milanov v Univ of Mich*, opinion and order of the Court of Claims, issued July 27, 2020 (Docket No. 20-000056-MK), p. 8:

**\*3** The case at bar is distinguishable from *Sprik* because plaintiffs are not challenging an expenditure made by defendants. Instead, they are arguing that defendants breached contractual agreements and/or unjustly retained a benefit by failing to provide plaintiffs the full benefit of their bargain. Defendants have failed to present a compelling argument as to why [the Michigan Constitution's] provisions about defendant regents' control over university expenditures would insulate them from claims sounding in contract or quasi-contract.

This case is not about WMU's budget allocations , instead it concerns whether the university promised something that it failed to deliver. Defendants' argument that this Court should abstain from interfering in the type of allegations made by plaintiff in the complaint is unpersuasive.

### B. CONTRACT CLAIMS REGARDING TUITION AND FEES

Defendants next argue that plaintiff failed to state actionable contract claims. Defendants first argue that Counts I and III, with respect to tuition and fees, fail to state a claim because this state's jurisprudence rejects the notion that enrollment at a university creates an express or implied contract between the university and a student. In support of their position, defendants cite unpublished (and non-binding) Court of Appeals decisions, as well as *Cuddihy v Wayne State Univ*, 163 Mich App 153; 413 NW2d 692 (1987). In *Cuddihy*, the Court of Appeals held that the payment of fees did not entitle a student to graduate, nor could there be an enforceable promise in an academic advisor's statement that the plaintiff in that case could "graduate soon," regardless of whether she maintained her grades and passed her examinations. *Id.* at 157-158.

The Court agrees with plaintiff in the instant case that *Cuddihy* and the rest of defendants' cases are unpersuasive, and it is unconvinced by defendants' assertions that no contracts can exist between universities and their students. Unlike in *Cuddihy*, plaintiff in the instant matter is not alleging the right to graduate or to continue in her studies. Rather, she alleges that she was promised a certain form of instruction and the benefit of certain fees, but that WMU failed to uphold its end of the bargain. Borrowing from the opinion and order in *Milanov* once again, the Court agrees that "it is a bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent … a contract in violation of law or public policy." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012) (citation and quotation marks omitted; cleaned up). See also *Milanov*, opinion and order of the Court of Claims, pp. 8-9. Plaintiff alleges that there were express contracts making the promises contained in the complaint, and that defendants breached those agreements. Based on these allegations, she has properly alleged contract claims that can be enforced by the Court, and at this stage of the litigation, summary disposition is not warranted on these claims.

### C. ACADEMIC FREEDOM AND AUTONOMY

Defendants next argue that any claims related to tuition refunds must fail for the reason that plaintiff asks the Court to interfere with WMU's academic autonomy. Citing *Regents of Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507; 88 L Ed 2d 523 (1985), defendants argue that the First Amendment protects certain essential freedoms for universities, including the freedom to determine how courses are to be taught. According to defendants, any dispute regarding the decision to move classes online in the Spring 2020 semester is non-justiciable, because the Court cannot challenge WMU's academic decisions.

**\*4** The Court disagrees that plaintiff's complaint asks the Court to interfere with WMU's academic autonomy, or that the First Amendment concerns cited in *Ewing* are implicated here. In *Ewing*, the plaintiff was dismissed from the University of Michigan

after failing a written examination. *Ewing*, 474 US at 215. The issue in that case was whether the University of Michigan deprived the plaintiff of due process of law because it departed from past practice when it denied him the opportunity to retake the exam. *Id.* The Supreme Court of the United States cautioned that it had a responsibility to safeguard the academic freedom

—which it remarked was a "special concern of the First Amendment"—of universities and educational institutions. *Id.* at 226 (citation and quotation marks omitted). And, the Court held that it was not suited "to evaluate the substance of the multitude of academic decisions that are made daily by faculty members of public educational institutions ...." *Id.* Here, in contrast to *Ewing*, however, plaintiff is not asking the Court to interfere with or evaluate the substance of an educational decision. Instead, she is alleging that she was promised one form of instruction, and that she had an express contractual [1] agreement for the same, but that WMU switched the method of instruction without providing a refund. As did the Court in *Milanov*, the Court concludes that *Ewing* is inapposite and that defendants' arguments predicated on that case are not persuasive. The Court declines to extend *Ewing* to contract express contract claims.

### D. PLAINTIFF'S PLEADINGS

Next, defendants urge the Court to dismiss because plaintiff failed to attach the alleged contracts to her complaint. In addition, defendants argue that plaintiff's complaint failed to plead the fundamental elements of a contract, such as formation, whether promises were made in writing, which specific promises were made, and how those promises were made. Defendants' arguments are meritless. MCR 2.113(C)(1) provides that, when a claim is based on a written instrument, such as plaintiff's breach of contract claims, a copy of the instrument or its pertinent parts "must be attached to the pleading ...." However, the requirement to attach the instrument is excused if the instrument is "in the possession of the adverse party and the pleading so states." MCR 2.113(C)(1)(b). Here, plaintiff's complaint expressly states that the alleged contracts are in defendants' possession and she alleges specific promises that suffice to state a claim. Thus, her complaint has—albeit without much room to spare—satisfied the Court Rule, and defendants' assertions about plaintiff's failure to attach the documents are not fatal to the contract claims under MCR 2.116(C)(8) review. If the alleged agreements do not exist, and defendants have produced evidence to support their assertions, then they can make the appropriate motion under the appropriate Court Rule. However, for purposes of MCR 2.116(C)(8) review, and accepting the facts alleged as true as it is required to do, the Court rejects defendants' contentions about the adequacy of plaintiff's pleadings.

### E. THE "HOUSING CONTRACT"

With respect to plaintiff's contentions about a contractual agreement for room and board, defendants have taken a different approach. As it concerns Count II, which alleges a breach of contract for room and board, defendants attach to their briefing as Exhibit F a "Housing Contract." This agreement, which is referenced in plaintiff's complaint, may be considered by the Court at this stage of the litigation. See MCR 2.113(C)(2); *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). Defendants argue that the "Housing Contract" is not a traditional contract, but instead is a set of rules with which plaintiff must comply in order to remain eligible for university housing. Defendants note that the Housing Contract reserves to WMU the right to remove students from on-campus housing if doing so is deemed to be in the best interests of WMU or its students. In addition, they note that the Housing Contract gave WMU the right to amend or modify the agreement when "activities endanger" the health, welfare, or safety of students. However, as plaintiff points out, the Housing Contract also provides that, in the event a public emergency or "other unforeseen occurrences beyond the control of WMU prevent a student from using housing facilities, "this Contract for housing shall immediately terminate and You shall be responsible for charges *prorated to date of termination*." (Emphasis added). Paragraph 67 of the complaint alleges that plaintiff was "not provided housing for the entire semester" due to the COVID-19 pandemic. She also alleges that defendant gave a "directive" for students to move out of residence halls. In sum, plaintiff has alleged facts that, if true, would support her claim for a prorated refund of prepaid room and board charges. She has also alleged that that which was offered to her was inadequate. Thus, at this stage of the proceedings, defendants have not presented a reason for this Court to dismiss Count II.

**\*5**  Furthermore, the Court finds defendants' renewed citation to *Sprik* inapplicable here as well. The question presented in this case is not a challenge to the propriety of defendants' decision to modify the Housing Contract or to limit on-campus housing. Rather, as alleged in the complaint, this case is concerned with plaintiff's assertion that a refund was owed under the terms of the parties' agreement. Defendants cannot, by citing the autonomy of the university under authorities such as *Sprik*, escape alleged contractual liability.

### F. ACCORD AND SATISFACTION

Next, the Court disagrees that defendants are entitled to summary disposition on Counts II and V—which pertain to room and board—because of the doctrine of accord and satisfaction. Defendants note that plaintiff was offered, and that she accepted, $1,000 as a refund after she moved out of on-campus housing. Accord and satisfaction is an affirmative defense to a breach of contract claim. *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 70; 711 NW2d 340 (2006). "An accord is a contract that requires a meeting of the minds of those who enter into it." *Id.* A satisfaction "is the discharge of the debt occurring after acceptance of the accord." *Id.* 71. In order to prove the existence of an accord and satisfaction:

> a defendant must show (1) its good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition. A defendant need not show a plaintiff's express acceptance of the condition; rather, the law of accord and satisfaction is that where a creditor accepts a conditional tender, the creditor also agrees to the condition. However, the expression of the condition must be clear, full, and explicit. [*Faith Reformed Church of Traverse City, Mich v Thompson*, 248 Mich App 487, 492; 639 NW2d 831 (2001) (citations and quotation marks omitted).]

At this stage of the proceedings, the Court agrees that there is a lack of an explicit and clear condition indicating that, if the money offered to plaintiff was accepted, it would discharge her entire claim. Indeed, the pleadings do not contain sufficient details on this matter to allow the Court to reach the conclusion suggested by defendants, and no documentary evidence was submitted to suggest otherwise, much less could that documentary evidence even be considered on MCR 2.116(C)(8) review. As a result, defendants' attempt to rely on this affirmative defense is unavailing at this state of the litigation.

### G. UNJUST ENRICHMENT

Finally, defendants argue that plaintiff has failed to state actionable unjust enrichment claims. Citing an unpublished Court of Appeals decision, defendants argue that there is no unjust enrichment when monies collected by a university are used for items in furtherance of the university's educational mission and/or functions of the university. Defendants argue that plaintiff has not, and cannot, identify funds that were used for non-university purposes, so her unjust enrichment claims must fail as a matter of law.

The primary authority on which defendants rely is *Moss v Wayne State Univ*, unpublished per curiam opinion of the Court of Appeals, issued December 1, 2009 (Docket No. 286034). In *Moss*, Wayne State University decided to increase tuition and to add a per-credit-hour contingency fee, given its uncertainty about receiving state funding. *Moss*, unpub op at 1. The contingency fee was only collected in the Fall 2007 semester, and the proceeds from the fees were used "to pay off a foundation loan, to add to a rainy-day fund, and for improvement of classrooms and technology, research and clinical trials, and student retention programs." *Id.* The plaintiffs in that case challenged the university's retention of the contingency fee funds despite the university's subsequent receipt of state funds. *Id.* In a single paragraph, the Court of Appeals panel held that the plaintiff's claims for unjust enrichment failed because he and other students "gained a general benefit" from the university's expenditures. *Id.* at 3. As a result, the university "was not the sole recipient of a benefit" and it was not inequitable for the university to retain the contingency fees. *Id.*

**\*6**  The Court begins by pointing out that the *Moss* decision is not binding under the rule of stare decisis. MCR 7.215(C)(1). Moreover, whatever persuasive value the decision might have is limited by its dissimilarities to the instant case. In contrast to the plaintiffs in *Moss*, plaintiff in the instant case alleges inequity resulting, not just from WMU's retention of the funds, but from WMU's retention of funds after providing students with less than what was expected. Notably, plaintiff alleges that she paid for but did not receive: a full semester of live, in-person instruction; on-campus housing; meal plans; and services. Accepting the allegations contained in the complaint as true—which this Court must do under MCR 2.116(C)(8)—plaintiff stated a claim for unjust enrichment based on the claim that she paid for, and defendants retained, excess in comparison to what plaintiff received. See *Wright v Genesee Co*, 504 Mich 410, 419; 934 NW2d 805 (2019). See also *Milanov*, opinion and order of the Court of Appeals, pp. 13-14.

### III. CONCLUSION

IT IS HEREBY ORDERED that defendants' motion for summary disposition is DENIED.

This is not a final order and it does not resolve the last pending claim or close the case.

September 15, 2020

<<signature>>

Cynthia Diane Stephens

Judge, Court of Claims

### Footnotes

1    Again, on review under MCR 2.116(C)(8), the Court accepts as true plaintiff's allegation that an express contract existed and that the contract is in defendants' possession, as alleged in the complaint and as permitted by MCR 2.113(C)(1)(b).

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 17**

2020 WL 5694224 (Ohio Ct.Cl.) (Trial Order)
Court of Claims of Ohio.
Franklin County

Brooke SMITH, Indv., Plaintiff,

v.

THE OHIO STATE UNIVERSITY, Defendant.

No. 2020-00321JD.
September 9, 2020.

**Entry Denying Defendant's Motion to Dismiss**

Randall W Knutti, Peter E DeMarco, Jeanna V Jacobus, Assistant Attorneys General, 150 East Gay Street 18th Floor, Columbus OH 43215-3130.

Scott D Simpkins, 55 Public Square Suite 1950, Cleveland OH 44113.

Patrick M. McGrath, Judge.
Magistrate Holly True Shaver, Judge.

**\*1** On June 30, 2020, defendant The Ohio State University (OSU) filed a motion to dismiss plaintiffs amended complaint pursuant to Civ.R. 12(B)(6). [1] On July 30, 2020, plaintiff filed a response. On August 6, 2020, defendant filed a reply. For the reasons discussed below, defendant's motion shall be denied.

**Standard of Review**

A motion to dismiss filed pursuant to Civ.R. 12(B)(6) tests the sufficiency of the claims asserted in a complaint. *Gordon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-792, 2018-Ohio-2272, ¶ 13. In construing a complaint upon a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In order for a court to dismiss a complaint, it must appear beyond a doubt that the plaintiff can prove no set of facts entitling her to recovery. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). "In resolving a Civ.R. 12(B)(6) motion to dismiss, the trial court may consider only the statements and facts contained in the pleadings, and may not consider or rely on evidence outside the complaint." *Powell v. Vorys*, 131 Ohio App.3d 681, 684, 723 N.E.2d 596 (10th Dist.1998).

**Factual Background**

Plaintiff is an undergraduate student at OSU and brings a complaint on behalf of herself and a proposed class. The proposed class consists of "all ODHE students who paid Defendants (sic) Spring Semester 2020 tuition and/or fees for in-person educational services that Defendants failed to provide, and whose tuition and fees have not been refunded." (Complaint at ¶ 29.) Plaintiff alleges that on March 9, 2020, OSU's president moved all classes online due to the Covid-19 pandemic. *Id.* at ¶ 20. Thereafter,

OSU's president announced that all in-person classes would be conducted virtually for the remainder of the spring semester. *Id.* Plaintiff alleges that the online instruction provided by OSU is deficient compared to the in-person classes for which she and the proposed class members contracted. *Id.* The claims brought on behalf of plaintiff and the proposed class seek to recover "a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendants have not provided." *Id.* at ¶ 22. Plaintiff brings claims for breach of contract, unjust enrichment, and conversion on behalf of herself and the putative class members.

In its motion, defendant argues that plaintiff's claims are for educational malpractice, which is not a viable claim in Ohio. Defendant alternatively argues that the unjust enrichment and conversion claims should be dismissed because unjust enrichment and conversion cannot be pleaded alternatively to breach of contract in this circumstance.

### Plaintiff's breach of contract claim is not an educational malpractice claim

**\*2** According to defendant, plaintiff's amended complaint asserts that online learning is substandard to in-person classes, and that plaintiff points to no specific contractual provision stating that classes would be conducted in person. Therefore, defendant argues that plaintiffs breach of contract claim is an educational malpractice claim in disguise, which is not a recognized claim in Ohio. Consequently, defendant argues, plaintiffs breach of contract claim concerning a refund of tuition and fees should be dismissed.

However, when a trial court determines whether an action sets forth a claim upon which relief can be granted, a trial court should look to the body of the complaint. *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 11. A trial court's role generally does not include recasting a party's pleadings. *See* *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

Plaintiff alleges that when she paid tuition to defendant a contract was created and that by holding classes virtually and not refunding a portion of the previously paid tuition and fees, defendant breached said contract. The essence of plaintiff's breach of contract claim is that she contracted for in-person classes and received online classes instead. The mere mention of possible consequences to plaintiffs educational or professional future does not render plaintiffs complaint a claim for educational malpractice. Accordingly, making all reasonable inferences in plaintiff's favor, the court finds that plaintiff may state a claim for breach of contract. Therefore, defendant's motion to dismiss plaintiff's breach of contract claim is DENIED.

### Plaintiff can plead unjust enrichment and conversion in the alternative

Defendant alternatively argues that plaintiff's unjust enrichment and conversion claims should be dismissed because unjust enrichment and conversion cannot be pleaded in the alternative to a breach of contract claim absent an allegation of fraud or bad faith, or if the parties do not dispute the existence of the contract governing their relationship. Plaintiff does not allege fraud or bad faith. And defendant argues that the parties agree that a contract exists between them. It is well settled that the relationship between a university and a student enrolled therein is contractual in nature. *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 13AP-696, 2014-Ohio-3043, ¶ 24.

Defendant refers to case law, including *Savoy*, to argue that the university catalog, handbook, and other guidelines supplied to the student constitute the terms of a contract between the university and the student. However, in the same motion, defendant asserts that plaintiff has failed to point to any contractual provision that covers the basis of plaintiff's breach of contract claim.

As plaintiff correctly argues, it is not known at this point which express contract, if any, governs plaintiffs claims. Furthermore, plaintiff asserts that defendant is in possession of the documents covering her claim which is only available to her through discovery. Therefore, not only do the parties disagree as to which contract governs this case, but they also disagree as to the existence of one or more of the alleged contracts. In construing the complaint under the Civ.R. 12(B)(6) standard, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell*, 40 Ohio St.3d at 192, 532 N.E.2d 753. Because the existence of the underlying contract is disputed, it would be premature for the court to dismiss plaintiffs unjust enrichment and conversion claims. Furthermore, it would also be premature for the court to dismiss unjust enrichment and conversion claims pleaded in the alternative at this stage of the litigation. *See Cristino v. Admr., Ohio Bur. of Worker's Comp.*, 10th Dist. Franklin No. 12AP-60, 2012-Ohio-4420, ¶ 26. ("The mere presence of both [breach of contract and unjust enrichment] claims in a complaint does not warrant the dismissal of the unjust-enrichment claim on a Civ.R. 12(B)(6) motion."). Accordingly, defendant's motion to dismiss plaintiffs unjust enrichment and conversion claims is denied.

## Conclusion

 **\*3**  Based upon the foregoing, defendant's motion to dismiss is DENIED. Defendant shall file its answer to plaintiff's amended complaint in the normal course.

<<signature>>

PATRICK M. MCGRATH

Judge

cc:

Randall W Knutti

Peter E DeMarco

Jeanna V Jacobus

Assistant Attorneys General

150 East Gay Street 18th Floor

Columbus OH 43215-3130

Scott D Simpkins

55 Public Square Suite 1950

Cleveland OH 44113

**Smith v. The Ohio State University, 2020 WL 5694224 (2020)**

## Footnotes

1    Plaintiff also named the Ohio Department of Higher Education (ODHE) in her amended complaint. However, on July 15, 2020, this court dismissed ODHE as a party in this action at the request of plaintiff. Since ODHE is no longer a party in this action the June 30, 2020 motion to dismiss filed on behalf of ODHE is DENIED as moot.

**End of Document**                                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 18**

2020 WL 5239892 (Ohio Ct.Cl.) (Trial Order)
Court of Claims of Ohio.
Franklin County

Morgan MCDERMOTT, Plaintiff,

v.

THE OHIO STATE UNIVERSITY, Defendant.

No. 2020-00286JD.
|
August 24, 2020.

**Entry**

Drew Legando, Tom Merriman, Edward S Jerse, 1360 West 9th Street Suite 200, Cleveland OH 44113.

Randall W Knutti, Peter E DeMarco, Jeanna V Jacobus, Assistant Attorneys General, 150 East Gay Street 18th Floor, Columbus OH 43215-3130.

Patrick M. McGrath, Judge.

 **\*1**  Before the court is defendant's combined partial motion to dismiss and motion for a definite statement, which has been fully briefed. For the reasons set forth below, defendant's combined motion will be denied.

**Background**

Plaintiff, a fourth-year dental student at The Ohio State University (OSU or defendant), brings a complaint on behalf of herself, a proposed class, and a proposed subclass. The proposed class consists of "all students enrolled in a graduate or undergraduate program at Ohio State University's Columbus, Ohio campus for the Spring 2020 semester." (Complaint at ¶ 19.) The claims brought on behalf of plaintiff and the proposed class seek to recover a prorated amount of the student union fee, which plaintiff asserts was collected from each student specifically in exchange for use of the now-closed student union building.

The proposed subclass consists of "all students enrolled in the Ohio State College of Dentistry's DDS program during the Spring and/or Summer 2020 semester." (Complaint at ¶ 20.) The claims brought on behalf of plaintiff and the proposed subclass seek to recover a prorated amount of the clinical support fee, which plaintiff similarly asserts was collected from each DDS candidate in order to provide for them live clinical programs that are required for their degrees and licenses.

In her complaint, plaintiff brings a total of four claims. Her first two claims are breach of contract, one on behalf of plaintiff and the class and one on behalf of plaintiff and the subclass. The other two claims allege unjust enrichment, again on behalf of plaintiff and the class and on behalf of plaintiff and the subclass.

In its combined motion, defendant argues that plaintiff's unjust enrichment claim concerning the clinical support fee should be dismissed to the extent that it is a claim for educational malpractice. Defendant alternatively argues that both unjust enrichment claims should be dismissed because unjust enrichment cannot be pleaded alternatively to breach of contract in this circumstance. Regarding plaintiff's breach of contract claims, defendant moves for a more definite statement pursuant to Civ.R. 12(E). Defendant argues that plaintiff's breach of contract claims are vague or ambiguous because plaintiff did not attach the contract or contracts upon which the claims are based, as required by Civ.R. 10(D)(1).

**Law and Analysis**

A motion to dismiss filed pursuant to Civ.R. 12(B)(6) tests the sufficiency of the claims asserted in a complaint. *Gordon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-792, 2018-Ohio-2272, ¶ 13. In construing a complaint upon a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In order for a court to dismiss a complaint, it must appear beyond a doubt that the plaintiff can prove no set of facts entitling her to recovery. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). "In resolving a Civ.R. 12(B)(6) motion to dismiss, the trial court may consider only the statements and facts contained in the pleadings, and may not consider or rely on evidence outside the complaint." *Powell v. Vorys*, 131 Ohio App.3d 681, 684, 723 N.E.2d 596 (10th Dist. 1998).

**\*2** Civ.R. 12(E) governs a motion for a definite statement. "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a definite statement before interposing his responsive pleading." Civ.R. 12(E). Such a motion "shall point out the defects complained of and the details desired." *Id.* Under Ohio law, Civ.R. 12(E) "is designed to strike at unintelligibility, rather than want of detail. Hence, a motion for a definite statement should not be granted to require evidentiary detail that may be the subject of discovery." *Columbia Gas v. Robinson*, 81 Ohio Misc.2d 15, 16, 673 N.E.2d 701 (M.C.1996), citing *Woods v. Reno Commodities, Inc.*, 600 F. Supp. 574 (D.Nev. 1984).

**Plaintiff's unjust enrichment claim is not an educational malpractice claim**

According to defendant, plaintiff's unjust enrichment claim concerning the clinical support fee asserts doubt as to whether she or other dental students will be able to graduate on time. Defendant argues that the claim is thus an educational malpractice claim in disguise, which is not a recognized claim in Ohio. Consequently, defendant argues, plaintiff's claim for unjust enrichment concerning the dental clinical support fee should be dismissed.

However, when a trial court determines whether an action sets forth a claim upon which relief can be granted, a trial court should look to the body of the complaint. *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 11. A trial court's role generally does not include recasting a party's pleadings. *See Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

Plaintiff's complaint does not merely assert that the education she received was substandard due to the clinic being closed. Rather, plaintiff alleges that defendant charged a fee specifically to support the dental clinic and then closed the clinic. That is sufficient to assert an unjust enrichment claim. *See generally Natl./RS, Inc. v. Huff*, 10th Dist. Franklin No. 10AP-306, 2010-Ohio-6530, ¶ 28 (a plaintiff "must establish the following three elements to prove unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment"). The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's well-pleaded unjust enrichment claim a claim for educational malpractice.

**Plaintiff can plead unjust enrichment in the alternative**

Defendant alternatively argues that both of plaintiff's unjust enrichment claims should be dismissed because unjust enrichment can be pleaded in the alternative to breach of contract claims only if plaintiff alleges fraud or bad faith or if the parties dispute the existence of the contract governing their relationship. Plaintiff does not allege fraud or bad faith. And defendant argues that the parties agree that a contract exists between them. The relationship between a university and a student enrolled therein is contractual in nature. *Savoy v. Univ. of Akron*, 2014-Ohio-3043, 15 N.E.3d 430, ¶ 24 (10th Dist.).

**\*3**  Defendant refers to case law, including *Savoy*, to argue that the university catalog, handbook, and other guidelines supplied to the student constitute the terms of a contract between the university and the student. However, plaintiff argues that the university catalog and handbook are not relevant to the dispute and do not cover the closing of the student union building and dental clinic. Rather, plaintiff asserts, implied contracts were created when the class paid the student union fee for the purposes of using the student union building and the subclass paid the clinical support fee for the purposes of participating in the dental clinic. In reply, defendant disputes the existence of any implied contracts other than those based on the university catalogs, handbooks, and other guidelines.

The parties thus not only disagree as to which contract governs the case, but they also disagree as to the existence of one or more of the alleged contracts. In construing the complaint under the Civ. 12(B)(6) standard, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell*, 40 Ohio St.3d at 192, 532 N.E.2d 753. Because the existence of the underlying contract is disputed, it would be premature for the court to dismiss plaintiff's unjust enrichment claim. Furthermore, it would also be premature for the court to dismiss an unjust enrichment claim pleaded in the alternative at this stage of the litigation. *See Cristino v. Admr., Ohio Bur. of Worker's Comp.*, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 26 (10th Dist.) ("The mere presence of both [breach of contract and unjust enrichment] claims in a complaint does not warrant the dismissal of the unjust-enrichment claim on a Civ.R. 12(B)(6) motion."). Defendant's motion to dismiss will thus be DENIED.

### Defendant's motion for a definite statement is not well taken

In support of its motion for a definite statement, defendant argues that plaintiff's breach of contract claims are vague or ambiguous because plaintiff did not attach the contract or contracts upon which the claims are based, as required by Civ.R. 10(D)(1). However, plaintiff asserts that she cannot provide a more definite statement because the contracts upon which her complaint rests are implied-in-fact. It is axiomatic that there is no written instrument for an implied-in-fact contract.

Furthermore, if the allegations in plaintiff's complaint are covered by one or more express, written contracts, either the contracts are in defendant's possession—such as the university catalog or handbook—or they may be obtained from plaintiff through discovery. The complaint itself is not unintelligible, and thus it is not susceptible to a Civ.R. 12(E) motion. *See Columbia Gas*, 81 Ohio Misc.2d at 16, 673 N.E.2d 701 (M.C.1996) (Civ.R. 12(E) is designed to strike at unintelligibility and a Civ.R. 12(E) motion should not be granted to require evidentiary detail that may be the subject of discovery). Therefore, defendant's motion for a definite statement will be DENIED.

### Conclusion

For the reasons set forth above, the court DENIES defendant's combined partial motion to dismiss and motion for a definite statement. Defendant shall file a responsive pleading within *14 days* of the date of this entry.

<<signature>>

PATRICK M. MCGRATH

Judge

cc:

Drew Legando

Tom Merriman

Edward S Jerse

1360 West 9th Street Suite 200

Cleveland OH 44113

Randall W Knutti

Peter E DeMarco

Jeanna V Jacobus

Assistant Attorneys General

150 East Gay Street 18th Floor

Columbus OH 43215-3130

---

**End of Document**                                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 19**

2020 WL 5524659 (Ind.Super.) (Trial Order)
Superior Court of Indiana,
Civil Division 14.
Marion County

Keller J. MELLOWITZ, on behalf of himself and all others similarly situated., Plaintiff,

v.

BALL STATE UNIVERSITY and Board of Trustees of Ball State University, Defendants.

No. 49D14-2005-PL-015026.
August 14, 2020.

**Order Denying Defendants' Motion to Dismiss**

Matthew C. Kincaid, Special Judge.

**\*1**  This matter comes before the Court on Defendants' Motion to Dismiss. The Court, having reviewed the same and being duly advised in the premises, now finds that the Motion should be and now is DENIED.

IT IS THEREFORE SO ORDERED, ADJUDGED AND DECREED that Defendant's Answer is due [Text redacted in copy.] September 14, 2020.

Date: August 14, 2020

<<signature>>

**MATTHEW C. KINCAID**

**Special Judge**

**Marion Superior Court**

**DISTRIBUTION:**

**Counsel of Record**

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 20**

2020 WL 7135331 (Mich.Ct.Cl.) (Trial Order)
Michigan Court of Claims.
Ingham County

Kliment MILANOV, and Trent Ingell, Plaintiffs,

v.

UNIVERSITY OF MICHIGAN, and The Regents of the University of Michigan, Defendants.

No. 20-000056-MK.
July 27, 2020.

**Opinion and Order**

Michael J. Kelly, Judge.

Cynthia Diane Stephens, Judge.

**\*1** Pending before the Court is defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8) and (C)(10). For the reasons that follow, the motion is DENIED. Given the comprehensive and informative briefing submitted by the parties, this matter will be decided without oral argument. See LCR 2.119(A)(6).

### I. BACKGROUND AND PLAINTIFFS' COMPLAINT

Plaintiffs in this putative class action are students at defendant university. Their complaint arises out of actions defendants took in response to the onset of the COVID-19 pandemic. Plaintiffs allege that defendants' actions deprived them of benefits for which they had already paid, including the benefit of in-person instruction, housing, meals, and student activities. Plaintiffs seek refunds of the amounts they paid, on a pro-rata basis, for the remainder of the 2020 winter/spring semester.

Plaintiffs allege that, in approximately March 2020, defendant university announced that it would cancel all live, in-person instruction and would transition to online distance learning for the remainder of the semester. In addition, defendants instructed students who lived in residence halls and on-campus housing to move out if they were able to do so. Plaintiffs contend that nearly half of the semester remained at this time, yet defendants did not offer adequate refunds of tuition and fees for the services that were no longer available to students. Plaintiffs note that defendants offered a $1,200 credit—which both plaintiffs accepted in this case—for students who followed the directive to move out of the residence halls by March 25, 2020. However, plaintiffs contend that this credit is not commensurate with the financial losses they have suffered, nor is it equal to a prorated, unused amounts for room and board. Plaintiffs allege that defendants failed to offer a refund for the difference in value between online distance learning and live, in-person instruction in a classroom setting.

Plaintiffs have now filed this putative class action in which they allege that the benefits and services for which they paid tuition and which they expected to receive were no longer available to them. They allege that the online classes are not the equivalent of live, in-person instruction. In particular, plaintiff Kliment Milanov alleges that two of his classes were essentially cancelled because defendant university's online method of instruction failed to provide an adequate learning environment. Plaintiffs assert that the decisions to transition to online classes and to encourage students to leave campus we're "responsible" ones; nevertheless, they allege it is unlawful for defendants to retain the full tuition and fees paid by plaintiffs under the circumstances.

Plaintiffs filed a six-count complaint as a putative class action. Count I alleges breach of contract on behalf of what plaintiffs contend is the "Tuition Class." In this count, plaintiffs allege that they, and others like them, entered into contracts with defendant

university in which they agreed to pay tuition, in exchange for which defendant university would provide live, in-person instruction in a classroom setting. Despite plaintiffs paying the required amounts, plaintiffs allege that defendant university breached the agreement by providing online instruction for the second half of the winter semester. Plaintiffs allege that they have been deprived of the value of the method of instruction for which they paid tuition. They seek disgorgement of the difference between the value of half a semester of online learning versus the value of half a semester of live, in-person instruction.

**\*2** Count II of the complaint alleges breach of contract with respect to what plaintiffs contend is the "Room and Board Class." Plaintiffs allege that they entered into contracts with defendant university wherein plaintiffs agreed to prepay funds for room and board. However, they allege that they were not provided room and board for the second half of the semester, and that defendants should provide a refund for the unused days of room and board.

Count III of the complaint alleges breach of contract by what plaintiffs have called the "Fee Class." This count alleges that plaintiffs paid certain fees to defendant university in exchange for services. However, defendant university retained the fees without providing to plaintiffs the benefit anticipated in the parties' agreement. Plaintiffs seek a refund in the form of disgorgement of the prorated, unused amounts of fees charged and collected.

Count IV of the complaint alleges, in the alternative to Count I, unjust enrichment with respect to the "Tuition Class" described in Count I. They allege that equity demands the return of the value of the difference between half a semester of online distance learning and the value of half a semester of live, in-person instruction. Plaintiffs allege defendant university has been unjustly enriched by retaining monies paid by plaintiffs for live, in-person instruction without providing the services for which those funds were paid.

Count V is asserted in the alternative to Count II, and it is alleged with respect to the "Room and Board Class." Plaintiffs allege that defendant university received a benefit to which it was not entitled at the expense of plaintiffs who paid a full semester of room and board, but who received the benefit of only half a semester of room and board. Plaintiffs allege that equity demands the return of the prorated, unused amounts paid for room and board.

Count VI of the complaint is alleged by the "Fee Class" in the alternative to Count III. Plaintiffs assert that defendant university should return any monies paid for fees for the winter semester for services that plaintiffs were not provided. The retention of these funds is inequitable, allege plaintiffs.

## II. DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

This matter is now before the Court on defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8) and (C)(10). Defendants have raised a number of arguments in support of summary disposition, raising from assertions that this Court should abstain from reviewing educational matters, to failure to state a claim, and to contract defenses such as impossibility and/or commercial impracticability. The Court will review each of the arguments below.

Under MCR 2.116(C)(8), summary disposition is properly granted when "[t]he opposing party has failed to state a claim on which relief can be granted." A motion predicated on subrule (C)(8) tests the legal sufficiency of plaintiffs' claims based on the factual allegations contained in the complaint. *El-Khalil v Oakwood Hosp*, 504 Mich 152, 159; 934 NW2d 665 (2019). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. The Court may only grant the motion "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.*

As it concerns subrule (C)(10), summary disposition is warranted where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The moving party under subrule (C)(10) must identify specific issues and "must support its motion with

affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted." *Barnard Mfg Co Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009), citing MCR 2.116(G)(3). "If the moving party properly supports its motion, the burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id.* at 370 (citation and quotation marks omitted).

### III. ANALYSIS

### A. DEFENDANTS' CONTENTION THAT COURTS MUST ABSTAIN FROM REVIEWING EDUCATIONAL MATTERS IS WITHOUT MERIT HERE

**\*3** Defendants first argue that, as it concerns plaintiffs' claims concerning the switch from live, in-person instruction to online distance learning must be dismissed because this Court should abstain from reviewing educational matters absent a clear violation of a student's due process rights. In support of this assertion, defendants cite the United States Supreme Court's decision in *Regents of the Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507; 88 L Ed 2d 523 (1985). However, the Court concludes that the case is inapposite to the issues presented in the matter at hand. In *Ewing*, the plaintiff was not permitted to retake an examination at defendant university, and he argued that defendant university's decision deprived him of property without due process of law. *Id.* at 215. Assuming that the plaintiff could assert a due process claim, the Supreme Court remarked that defendant university's decision regarding the plaintiff was an academic judgment. *Id.* at 225. The Court explained that, "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Id.* Furthermore, the Court noted that it must remain cognizant of its responsibility to safeguard the academic freedom—"a special concern of the First Amendment"— in matters involving educational institutions. *Id.* at 226 (citation omitted). In that case, this "narrow avenue for judicial review" foreclosed any conclusion that defendant university's decision to dismiss the plaintiff rose to the level of a due process violation. *Id.* at 227.

Returning to the instant case, the Court finds the citation to *Ewing* inapposite. Plaintiffs are not asserting a due process violation or arguing that the University's decision to switch methods of instruction ran afoul of any constitutional rights. Instead, they are arguing that the university promised one method of instruction, charged tuition and fees commensurate with that method of instruction, yet provided a different (allegedly lesser) method of instruction. This is a claim potentially sounding in contract or in quasi-contract, not in due process. The *Ewing* decision does not stand for the notion that *any* decision regarding academics is beyond review for a court. [1] That is, while *Ewing* describes a number of areas into which a Court should be hesitant to intrude, principles of contract and quasi-contract are not among those areas.

### B. THE REGENTS' CONSTITUTIONAL AUTHORITY DOES NOT BAR PLAINTIFFS' CLAIMS AS A MATTER OF LAW

Defendants next ask this Court to dismiss the entirety of plaintiffs' complaint because this Court, or any court, lacks authority to interfere with defendant regents' decisions regarding expenditures and operation of defendant university. In essence, defendants ask the Court to conclude that they are shielded by a type of immunity that leaves them impervious to nearly any type of claim. The Court disagrees, and finds the section of the Constitution and the caselaw cited by defendants inapplicable to the matter at hand.

In making their argument, defendants cite Const 1963, art 8, § 5, which grants defendant regents "general supervision of its institution and the control and direction of all expenditures from the institution's funds." Defendants also rely on caselaw interpreting this provision, and they primarily cite the Court of Appeals' decision in *Sprik v Regents of Univ of Mich*, 43 Mich App 178; 204 NW2d 62 (1972). In that case, students in "family housing units" for married students at defendant university

brought a class action against defendant regents. The issue in that case concerned an adjustment to lease agreements made between the regents and members of the class concerning a rent increase; such a rent increase could, pursuant to the terms of the leases, be made at the university's sole discretion upon the requisite notice being given. *Id.* at 182. The rent increase in that case was paid to the Ann Arbor School District in lieu of property taxes. *Id.*

While challenging the validity of the increase, the plaintiffs conceded that the terms of their lease gave defendant regents the authority to raise their rent. *Id.* at 185. However, they argued that their rent could only be raised for purposes connected with the housing provided to them, and not in the manner done by defendant regents. *Id.* Citing art 8, § 5, the Court of Appeals held that defendant regents had "the entire control and management of University affairs, including the management of property and expenditure of funds, to the exclusion of all other departments of the State." *Id.* at 186. Hence, the Court held that the funds in issue could be spent "for any object which is not subversive" of the university's purpose. *Id.* at 187. And in that case, payment of funds to support schools in the community in which the university was located promoted community relations and encouraged local education—both purposes that were squarely within constitutional bounds. *Id.* at 188.

**\*4** Returning to the matter at hand, the Court agrees with plaintiffs that defendants' citation to art 8, § 5 and to the holding in *Sprik* are not controlling in the case at bar. The case at bar is distinguishable from *Sprik* because plaintiffs are not challenging an expenditure made by defendants. Instead, they are arguing that defendants breached contractual agreements and/or unjustly retained a benefit by failing to provide plaintiffs the full benefit of their bargain. Defendants have failed to present a compelling argument as to why art 8, § 5's provisions about defendant regents' control over university expenditures would insulate them from claims sounding in contract or quasi-contract.

## C. STUDENTS CAN, AND DO, ENTER INTO CONTRACTS WITH UNIVERSITIES

Defendants next argue that, assuming their constitutional and immunity arguments do not apply, plaintiffs' claims must be dismissed because this state's jurisprudence does not recognize the existence of a contract between universities and students. To this end, they argue that courts have repeatedly held that student handbooks, codes, or other informational materials given to students do not create contracts between universities and students.

The Court disagrees and finds the authorities defendants cite inapposite. The instant case is not one where plaintiffs are alleging that they had a contractual right to continued enrollment or to graduation. Cf. *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153; 413 NW2d 692 (1987). As plaintiffs point out, "[i]t is a bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent… a contract in violation of law or public policy." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012) (citation and quotation marks omitted). Moreover, plaintiffs have attached to their responsive briefing a number of documents, such as housing contracts and meal plan contracts, between students and defendants. These documents expressly state that they are, in fact, binding agreements between students and defendant university. In short, if the law does not recognize contractual relationships between universities and students, this would appear to be news to defendants, based on the record before the Court. [2] That is not to say that plaintiffs have established their breach of contract claims or the existence of the pertinent contracts in this case; rather, it is simply a rejection of defendants' legal argument that such agreements cannot exist.

## D. DEFENDANTS' ARGUMENTS ABOUT THE ADEQUACY OF PLAINTIFFS' PLEADINGS ARE WITHOUT MERIT

Defendants next argue that summary disposition on plaintiffs' contract claims is warranted under MCR 2.116(C)(8) because plaintiffs failed to attach copies of pertinent agreements to their pleadings. To this end, MCR 2.113(C)(1) provides that if a

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    4

claim is based on a written instrument, "a copy of the instrument or its pertinent parts must be attached to the pleading[.]" The rules provide exceptions for agreements that are "in the possession of the adverse party and the pleading so states," and "inaccessible to the pleader and the pleading so states, giving the reason[.]" MCR 2.113(C)(1)(b)-(c). Here, the Court concludes that dismissal is unwarranted because, although the pertinent agreements were not attached to the pleadings [3] it is apparent that the complaint repeatedly references the alleged agreements as being defendants' agreements, i.e., that defendants possess the purported agreements. In addition, plaintiffs have attached to their responsive briefing portions of certain contractual agreements with defendants. Consequently, the Court declines to find that summary disposition is warranted at this time. [4]

**\*5** Defendants' remaining arguments regarding plaintiffs' pleadings fare no better. Defendants argue that plaintiffs failed to state a claim on which relief can be granted because they: (1) failed to plead the essential elements of a valid contract; and (2) failed to plead damages. A contract claim requires a plaintiff to establish "that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). A contract is valid if the following elements exist: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* at 101 (citation and quotation marks omitted).

Having reviewed Counts I-III of the complaint, the Court disagrees that these claims fail to plead the elements of a breach of contract cause of action. For instance, ¶ 65 of the complaint identifies the parties to the contract, the subject-matter (live, in-person instruction, room and board, and "fees"), the consideration provided by each side, and each side's obligations. Paragraph 67 expressly alleges a breach by defendant university, and ¶¶ 69-70 allege damages suffered by plaintiffs. Counts II and III are likewise adequately pled. See, e.g., Complaint, ¶¶ 74-78; 81-84. The aforementioned elements, including the element of damages —which is repeatedly mentioned throughout the complaint—are sufficient to satisfy this state's notice-pleading requirements. See *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (citation and quotation marks omitted) (explaining that the "primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position.").

### E. DEFENDANTS' REAL-PARTY-IN-INTEREST ARGUMENTS LACK MERIT

Defendants next ask the Court to dismiss because they contend plaintiffs' complaint fails to identify the real parties in interest. To this end, they note that the complaint refers to the proposed class as students, as well as those who paid tuition on behalf of students. "A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013). Here, the two named plaintiffs alleged in ¶¶ 9-20 that they paid certain tuition, costs, and fees for the winter 2020 semester pursuant to agreements with defendant, that they did not receive the benefits for which they paid, and that they suffered damages as a result. Given these allegations, it is apparent plaintiffs are the ones with a vested right of action on their alleged claims. See *id.* Defendants' real-party-in-interest defense is without merit as a result.

### F. THE ALTERNATIVE CLAIMS FOR UNJUST ENRICHMENT ARE PROPERLY PLED

Defendants next argue that plaintiffs failed to plead claims for unjust enrichment such that summary disposition is warranted on these claims pursuant to MCR 2.116(C)(8), and/or that summary disposition is warranted on the unjust enrichment claims pursuant to MCR 2.116(C)(10). The elements of an unjust enrichment claim are: "(1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." *MeisnerLaw Group PC v Weston Downs Condos Ass'n*, 321 Mich App 702, 721; 909 NW2d 890 (2017). "Not all enrichment is unjust in nature, and the key to determining whether enrichment is unjust is determining whether a party unjustly received and retained an independent benefit." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012). Unjust enrichment "describes the result or effect

of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Id.* (citation and quotation marks omitted). In general, the question of whether one has been unjustly enriched is a question of fact. *Morris Pumps v Centerline Piping, Inc,* 273 Mich App 187, 193; 729 NW2d 898 (2006).

**\*6** Here, defendants ask the Court to dismiss the unjust enrichment claims because they contend plaintiffs failed to allege that the monies collected by defendant university were used for anything other than legitimate purposes. Hence, the retention of the benefits was not inequitable, argue defendants. In support, defendants cite an unpublished Court of Appeals decision, *Moss v Wayne State Univ,* unpublished per curiam opinion of the Court of Appeals, issued December 1, 2009 (Docket No. 286034). In that case, Wayne State University (WSU) faced uncertainty about certain state funding, so it increased tuition by 12.8% and added a per-credit-hour contingency fee. *Moss,* unpub op at 1. The contingency fee was eliminated for the winter semester after the uncertainty over receiving state funds was resolved. *Id.* The already-collected fees were used "to pay off a foundation loan, to add to a rainy-day fund, and for improvement of classrooms and technology, research and clinical trials, and student retention programs." *Id.* The Court of Appeals panel remarked that the contingency fees collected by WSU in that case were used for "programs and projects to further the educational goals of the mission." *Id.* at 3. Thus, the plaintiffs and other students in that case gained a benefit from the funds—because they were put to uses that benefited the students—such that WSU was not the sole recipient of a benefit in that case. *Id.* As a result, it was not inequitable for WSU to retain the contingency fees in that case. *Id.*

The Court is unmoved by the nonbinding decision in *Moss,* see MCR 7.215(C)(1) (declaring that an unpublished decision from the Court of Appeals is not binding under the rule of stare decisis), and concludes that: (1) plaintiffs' complaint adequately pleads causes of action for unjust enrichment; and (2) the current documentary evidence does not support the request for summary disposition under subrule (C)(10). Here, the allegations by plaintiffs are that defendants did not provide the full extent of the services that were secured by plaintiffs' payment of amounts for tuition, fees, and room and board. While plaintiffs might have received a benefit from attending classes in an online environment, the case is distinguishable from the nonbinding *Moss* decision because plaintiffs allege that they received a lesser education than that which they stood to receive from live, in-person instruction. Indeed, "[r]estitution restores a party who yielded excessive and unjust benefits to his or her rightful position." *Wright v Genesee Co,* 504 Mich 410, 419; 934 NW2d 805 (2019). Here plaintiffs have alleged that they yielded excess in comparison to what they received. Defendants' documentary evidence has not negated this element of plaintiffs' claim. Furthermore—and as it concerns the room-and-board claim—defendants have not presented evidence in support of their brief, one-sentence argument that their retention of excess amounts paid for room and board provided a benefit to plaintiffs. See *Barnard,* 285 Mich App at 370 ("If the moving party fails to properly support its motion for summary disposition, the nonmoving party has no duty to respond and the trial court should deny the motion."). Thus, summary disposition is not warranted on this basis.

### G. DEFENDANTS' DEFENSES TO PLAINTIFFS' CONTRACT THEORIES DO NOT WARRANT SUMMARY DISPOSITION

As an alternative to the arguments set forth above, defendants assert the affirmative defense of supervening impossibility and/or impracticability to plaintiffs' breach of contract claims. "A promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform." *Roberts v Farmers Ins Exchange,* 275 Mich App 58, 73; 737 NW2d 332 (2007). A party asserting this affirmative defense need not show "absolute impossibility"; instead, the party must demonstrate "impracticability because of extreme and unreasonable difficult, expense, injury or loss involved." *Id.* at 74 (citation and quotation marks omitted). Here, defendants argue that the COVID-19 pandemic and Governor Whitmer's Executive Orders rendered live, in-person instruction and the provision of room and board impossible and/or impracticable.

In response to defendants' arguments, plaintiffs argue that they are not contesting whether defendants could provide the contracted-for services. Instead, they argue that they should be entitled to a refund of the services, for which plaintiffs pre-paid, that defendant university stopped providing in light of the pandemic. As plaintiffs point out, caselaw holds that, even

when performance has become impossible, a party who was deprived of the promised performance is entitled to a refund of consideration for services not rendered due to impossibility. *Vowels v Arthur Murray Studios of Mich, Inc*, 12 Mich App 359, 363; 163 NW2d 35 (1968). Defendants have not articulated a compelling argument as to why impossibility or impracticability would be a valid defense to this type of refund claim. As a result, summary disposition is not appropriate based on defendants' stated affirmative defenses.

## H. DEFENDANTS' ARGUMENT BASED ON ACCORD AND SATISFACTION DOES NOT WARRANT SUMMARY DISPOSITION IN THEIR FAVOR

**\*7**  Defendants next argue that they are entitled to summary disposition on Counts II and V of the complaint with respect to amounts paid by plaintiffs for room and board because of the doctrine of accord and satisfaction. According to defendants, the $1,200 refund bars plaintiffs from pursuing this action. Further, they argue that the "tender-back" rule required plaintiffs to return the $1,200 prior to filing suit, which they have not done.

The doctrine of accord and satisfaction is an affirmative defense to a contract claim. *Faith Reformed Church of Traverse City, Mich v Thompson*, 248 Mich App 487, 491; 639 NW2d 831 (2001). "An 'accord' is an agreement between parties to give and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due, and 'satisfaction' is the performance or execution of the new agreement." *Id.* at 491-492. A defendant asserting accord and satisfaction, must demonstrate:

> (1) its good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition. A defendant need not show a plaintiff's express acceptance of the condition; rather, the law of accord and satisfaction is that where a creditor accepts a conditional tender, the creditor also agrees to the condition. However, the expression of the condition must be clear, full, and explicit. [*Id.* at 492 (internal citations and quotation marks omitted).]

On the evidence before the Court, defendants are not entitled to summary disposition on their accord and satisfaction claim. Firstly, defendants have produced no evidence of a communication of a good-faith dispute of any claims by plaintiffs. Indeed, it appears from the only documentary evidence before the Court that $1,200 was simply offered to students who moved out of university-owned housing. Furthermore, and more significantly, the record lacks a "clear, full, and explicit" expression that the refund was offered in full and final resolution of any claims plaintiffs might have against defendant. Cf. *Faith Reformed Church*, 248 Mich App at 493-494. The only documentary evidence regarding the $1,200 credit to student accounts states that the refund was being "offered" to students who moved out of university housing by March 25. The record is void of documentary evidence indicating that, by moving out and by accepting the $1,200, students were agreeing to a full and final resolution of any claims they might have against defendants with respect to prepaid amounts for room and board. Thus, the record lacks evidence of the "accord" part of an accord-and-satisfaction defense, and summary disposition under subrule (C)(10) is not warranted on this record. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 71; 711 NW2d 340 (2006) (describing the operation of the accord-and-satisfaction doctrine).

## I. DEFENDANTS' ARGUMENTS REGARDING PLAINTIFF INGELL

Defendants next argue that they are entitled to summary disposition on plaintiff Ingell's claims for the reason that he did not pay tuition or fees during the winter 2020 semester; instead, his tuition and fees for the semester were covered by scholarships and grants. At the outset, any scholarships or grants awarded to plaintiff Ingell cannot bar his claims for room and board

reimbursement. Indeed, defendants' own documentary evidence, at ¶ 9 of Vicky Crupper's affidavit, reveals that plaintiff Ingell used federal student loan money, i.e., non-scholarship funds, to pay at least part of his room and board expenses for the winter semester. In addition, the documentary evidence defendants provide does not convince the Court that plaintiff Ingell would be unable to plead and prove damages. Notably, while the documentary evidence shows that plaintiff Ingell's tuition was paid by scholarship and grant monies during the 2020 winter semester, the evidence does not answer the question of whether the particular use of scholarship and grant money at that time was to the detriment of the future use of scholarship and grant money. In other words, the evidence does not speak to whether there is a finite source of scholarship and grant money, nor does it inform whether the use of the money in the winter 2020 semester could potentially reduce any amounts plaintiff Ingell could use at a later date. Additionally, caselaw provides that nominal damages will sustain a cause of action, meaning that, even if plaintiff Ingell did not sustain actual damages, he can still maintain an action upon showing a violation of rights by way of a breach of contractual promise to provide live, in-person instruction. See *4041-49 W Maple Condo Ass'n v Countrywide Home Loans, Inc*, 282 Mich App 452, 460; 768 NW2d 88 (2009).

## IV. CONCLUSION

**\*8** IT IS HEREBY ORDERED that defendants' motion for summary disposition is DENIED.

This is not a final order and it does not resolve the last pending claim or close the case.

July 27, 2020

<<signature>>

Michael J. Kelly

Judge, Court of Claims

## Footnotes

1    While the same is unnecessary for rendering a decision at this stage of the litigation, the Court notes troubling aspects of defendants' position. For instance, adopting defendants' position could lead to the conclusion that the university could simply cancel all classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted.

2    This is particularly so in light of *Sprik*, a case in which the validity of lease agreements between the plaintiff students and defendant regents was conceded by all of the parties involved.

3    In fact, it is not apparent that plaintiffs have identified an express contractual agreement establishing their right to live, in-person instruction. Should it become clear at some point in the future that such an agreement does not exist, it could be grounds for revisiting summary disposition on Count I of the complaint as it concerns an express contractual right to live, in-person instruction. However, the Court will not dismiss Count I at the current time, for the reason that the allegations contained within the complaint are sufficient to fulfill plaintiffs' pleading obligations.

4    Furthermore, given plaintiffs' attachment of these documents to their responsive briefing, the Court would entertain plaintiffs' alternative request for leave to amend to attach the agreements even if it were inclined to grant summary disposition at this time.

**End of Document**                                                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 21**

2020 WL 4726814 (Ohio Ct.Cl.) (Trial Order)
Court of Claims of Ohio.
Franklin County

Trevor CROSS, Plaintiff,

v.

UNIVERSITY OF TOLEDO, Defendant.

No. 2020-00274JD.
|
July 8, 2020.

**Decision**

Drew Legando, Tom Merriman, Edward S Jerse, 1360 West 9th Street Suite 200, Cleveland OH 44113.

Randall W Knutti, Peter E DeMarco, Jeanna V Jacobus, Assistant Attorneys General, 150 East Gay Street 18th Floor, Columbus OH 43215-3130.

Dale A. Crawford, Judge.

**\*1** Defendant University of Toledo (UT) has filed a motion labeled "Combined Partial Motion To Dismiss And Motion For A Definite Statement." Plaintiff Trevor Cross opposes UT's combined motion.

## I. Background

On April 28, 2020, Cross, on behalf of himself and all others similarly situated, filed a Verified Class Action Complaint against UT in which Cross asserted claims of breach of contract and unjust enrichment. Cross's claims stem from UT's alleged "refusal to provide adequate restitution for tuition, room and board, fees, and other applicable costs after the Plaintiff and similarly situated students were forced to leave the University due to the Novel Coronavirus Disease of 2019 ('COVID-19') pandemic." (Complaint, ¶ 1.) Cross asserts that he and similarly situated students "lost the benefits of in-person instruction, housing, meals, and student activities for which they had already paid or been charged by the University for an entire semester. Plaintiff and similarly situated students seek refunds of the amounts they paid on a pro-rata basis or an equivalent reduction in amounts owing as well as other damages \*\*\*." (Complaint, ¶ 1.) Cross maintains that UT informed students on March 25, 2020, that

> UToledo students with housing and meal plans who moved off campus on or before March 25 will receive a credit of up to $1,230. Students who lived in McComas Village and did not have a meal plan will receive a credit of up to $750. Students living in Honors Academic Village with a meal plan will receive a meal plan credit of up to $350. And students with a commuter meal plan will receive a credit of up to $200.

> Students have three options to receive these funds: a credit toward next fall's on-campus housing; a credit toward next fall's meal plan; or a credit applied to their student account with a refund determined after UToledo aid, non-refundable aid, any balances owed, and federal student financial aid are taken into consideration. If a student chooses a fall 2020 credit option, the amount received may be treated as estimated financial assistance for the 2020-21 academic year.

> \*\*\*

(Complaint, ¶ 40.) Cross maintains that the credits offered by UT are inadequate. (Complaint, ¶ 39, 41.)

Cross seeks certification of three classes: (1) "Tuition Class," (2) "Room and Board Class," and (3) "Fee Class." [1] Cross demands (1) certification of the proposed classes, designation of Cross as class representative, and the appointment of Cross's counsel as class counsel; (2) a declaration that UT is financially responsible for notifying the members of the proposed classes of the pendency of the lawsuit; (3) a declaration that the UT has wrongfully refused to reduce outstanding charges and that UT has wrongfully kept funds that have been paid for tuition, room and board, and fees; (4) disgorgement of amounts that have been wrongfully obtained for on-campus tuition, room and board, and fees; (5) an order requiring UT to reduce outstanding charges for tuition, room and board, and fees; (6) injunctive relief, including an order enjoining UT from refusing to reduce outstanding charges and from retaining the prorated, unused amounts paid for tuition, room and board, and fees; (7) an award of reasonable attorney fees, costs and expenses; (8) an award of pre- and post-judgment interest on any amounts awarded; and (9) an award of other relief as may be just and proper. (Complaint, ¶ 92.)

**\*2** On June 1, 2020, UT filed a motion labeled "Combined Partial Motion To Dismiss And Motion For A Definite Statement." UT maintains in the motion that Cross's "tuition-refund claims" are "educational malpractice" claims, which Ohio courts do not recognize. UT also maintains that Cross's unjust enrichment claims should be dismissed pursuant to Civ.R. 12(B)(6) because such claims could be pled as an alternative to Cross's contract claims only if Cross could show that UT committed fraud or bad faith, and then only if the parties disputed the existence of the contract that governs Cross's relationship with UT. In the combined motion UT also seeks an order under Civ.R. 12(E) that would direct Cross to prepare a definite statement regarding Cross's claims of breach of contract.

Cross opposes UT's combined motion. Cross disputes UT's framing of Cross's breach-of-contract claims as educational-malpractice claims because Cross has not alleged that UT's decision to move to online classes was negligent or substantially departed from educational norms. Cross maintains that the unjust enrichment claims may be pleaded as an alternative to the contract claims and the unjust enrichment claims therefore should not be dismissed. Cross also maintains that UT's Civ.R. 12(E) motion should not be granted because the Complaint complies with Civ.R. 8's requirements for notice pleading, and the Complaint "lays out a plain statement of the facts, a short, coherent legal theory, and an unambiguous prayer for relief." Cross further maintains that he is not required under Civ.R. 10(D)(1) to attach a copy of the parties' contract because, as noted in the Complaint, the contract is in UT's possession.

UT maintains in its reply brief that Cross's response to UT's combined motion reduces to three propositions: (1) UT promised Cross that his courses would be taught through "live in-person instruction in a brick and mortar classroom;" (2) Cross's concession that an equitable action for unjust enrichment will not lie in the absence of fraud or bad faith when the subject of the claim is governed by an express contract; and (3) Cross refuses to respond to UT's specific requests for a definite statement about specific contract provisions that undergird Cross's tuition-refund, room-and-board-refund or student-fee-refund claims.

## II. Law and Analysis

### A. Legal Standards

A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim "is procedural and tests the sufficiency of the complaint." *Dunkle v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 13AP-923, 2014-Ohio-3046, ¶ 7, citing *Volbers-Klarich v. Middletown Mgmt.*, 125 Ohio St. 3d 494, 2010-Ohio-2057, ¶ 11, 929 N.E.2d 434. A Civ.R. 12(B)(6) motion does not test the merits of a claim. *See Filo v. Liberato*, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 15 (7th Dist.). Whether a plaintiff can prove the facts as a plaintiff presents them is an issue for a later determination. *See Filo* at ¶ 15. When a court is presented with a Civ.R. 12(B)(6) motion to dismiss, the "factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. \*\*\* It must appear beyond doubt that plaintiff can prove no set of facts entitling [plaintiff] to relief." *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280, 649 N.E.2d 182 (1995).

Civ.R. 12(E) governs a motion for definite statement. Pursuant to Civ.R 12(E), if a pleading to which a responsive pleading is permitted "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired." Under Ohio law, Civ.R. 12(E) "is designed to strike at unintelligibility, rather than want of detail. Hence, a motion for a definite statement should not be granted to require evidentiary detail that may be the subject of discovery."

📖 *Columbia Gas v. Robinson*, 81 Ohio Misc.2d 15, 16, 673 N.E.2d 701 (M.C.1996), citing *Woods v. Reno Commodities, Inc.*, 600 F. Supp. 574 (D.Nev. 1984). [2]

## B. Discussion

**\*3**  To support UT's request for partial dismissal under Civ.R. 12(B)(6), UT maintains that Cross's "tuition-refund" claims are "educational malpractice" claims and Cross's unjust enrichment claims could be pled as an alternative to Cross's contract claims only if Cross could show that UT committed fraud or bad faith and then only if the parties disputed the existence of the contract that governs his relationship with UT.

Cross's Complaint presents claims of breach of contract and unjust enrichment— not "tuition refund" or "educational malpractice" claims, as asserted by UT. When a trial court determines whether an action sets forth a claim upon which relief can be granted, a trial court should look to the body of the complaint. *Guillory v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-861, 07AP-928, 2008-Ohio-2299, ¶ 11. Atrial court's role, however, generally does not include recasting a party's pleadings. *See* 📖 *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (stating that in "our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present").

Pursuant to Civ.R. 8(A), a pleading that sets forth a claim for relief "shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." According to Civ.R. 10(D)(1), when any claim is founded on an account or other written instrument, a copy of the account or written instrument "must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading." Cross's Verified Class Action Complaint contains plain statements showing that Cross is entitled to relief and a demand for relief. The Complaint thus generally satisfies Civ.R. 8(A)(1) and (2)'s requirements. While Cross has not appended copies of the contracts referenced in the Complaint, Cross indicates in paragraph 58 of the Complaint that the contracts are in UT's possession; such an indication by Cross satisfies Civ.R. 10(D)(1)'s requirements.

Based on the Court's review, it does not appear beyond doubt that, after all reasonable inferences are afforded in favor of Cross, Cross can prove no set of facts entitling him, or members of the proposed class, to relief based on claims of unjust enrichment. *See generally Natl./Rs, Inc. v. Huff*, 10th Dist. Franklin No. 10AP-306, 2010-Ohio-6530, ¶ 28 (a plaintiff "must establish the following three elements to prove unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment"). UT's request for a Civ.R. 12(B)(6) dismissal of Cross's claims of unjust enrichment is not well taken.

To support UT's motion for a definite statement, UT asks the Court to issue an order directing Cross to submit a definite statement addressing certain contract allegations referenced in paragraphs 58, 60, 67, and 73 of the Complaint. UT's request does not claim that paragraphs 58, 60, 67, or 73 are unintelligible. Rather, UT essentially requests evidentiary detail that properly is the subject of discovery—not a Civ.R. 12(E) motion. *See* 📖 *Columbia Gas v. Robinson*, 81 Ohio Misc.2d 15, 16, 673 N.E.2d 701 (M.C.1996) (Civ.R. 12(E) is designed to strike at unintelligibility and a Civ.R. 12(E) motion should not be granted to require evidentiary detail that may be the subject of discovery). UT's motion for a definite statement is not well taken.

### III. Conclusion

**\*4**  The Court concludes that UT's "Combined Partial Motion To Dismiss And Motion For A Definite Statement" should be denied for reasons set forth above.

<<signature>>

DALE A. CRAWFORD Judge

### JUDGMENT ENTRY

For reasons set forth in the decision filed concurrently herewith, the Court DENIES Defendant University of Toledo's Combined Partial Motion To Dismiss And Motion For A Definite Statement of June 1, 2020.

<<signature>>

DALE A. CRAWFORD

Judge

cc:

Drew Legando

Tom Merriman

Edward S Jerse

1360 West 9th Street Suite 200

Cleveland OH 44113

Randall W Knutti

Peter E DeMarco

Jeanna V Jacobus

Assistant Attorneys General

150 East Gay Street 18th Floor

Columbus OH 43215-3130

# Footnotes

1    Cross asserts "Tuition Class" should be defined as: "All people who were charged for or paid tuition for students enrolled
     in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use
     online distance learning platforms for the last quarter of the 2019-2020 academic year." (Complaint, ¶ 47.)
     Cross maintains that the "Room and Board Class" should be defined as: "All people who were charged for or paid
     the costs of room and board (housing and meals) for students enrolled in classes at the University for the Spring 2020
     semester who moved out of their on-campus housing prior to the completion of that semester because of the University's
     policies and announcements related to COVID-19." (Complaint, ¶ 47.)
     Cross contends that the Fees Class should be defined as: "All people who were charged for or paid fees for or on behalf
     of students enrolled in classes at the University for the Spring 2020 semester." (Complaint, ¶ 47.)

2    *Accord Hopewell Mtge. Invests. v. Davis*, Franklin C.P. No. 14-CV-000392, 2014 Ohio Misc. LEXIS 16429 (Aug. 4,
     2014); *Nelson v. Matheney*, Franklin C.P. No. 12 CV 10430, 2013 Ohio Misc. LEXIS 10721 (Aug. 21, 2013); *Gardens
     v. Maher*, Hancock C.P. No. 2011 CV 218, 2011 Ohio Misc. LEXIS 7954 (Sep. 22, 2011); *Chase Bank v. Alam*, Franklin
     C.P. No. 10 CV 6351, 2010 Ohio Misc. LEXIS 19311 (Aug. 17, 2010); *Fogel v. Todd Dev. Co.*, Butler C.P. No. CV
     2005 11 3515, 2006 Ohio Misc. LEXIS 403 (Apr. 24, 2006); *Rickard v. Clapsaddle*, Union C.P. No. 02-CV-0321, 2003
     Ohio Misc. LEXIS 1173 (Feb. 19, 2003).

---

**End of Document**                                                            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRISTA DOUGHERTY and ANGEL DOUGHERTY, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>    v.<br><br>DREW UNIVERSITY,<br><br>                        Defendant. | Civil Action No.: 2:21-cv-00249-KM-ESK<br><br>Hon. Kevin McNulty<br><br>Motion Return Date: April 5, 2021 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 1, 2021, true and correct copies of the foregoing documents were filed and served on all parties of record via the Court's Electronic Case Filing (ECF) system: (1) Plaintiffs' Memorandum of Law in Opposition to Defendant Drew University's Motion to Dismiss, (2) Declaration of Philip L. Fraietta and exhibits thereto, and (3) this Certificate of Service.

                      By:  */s/ Philip L. Fraietta*
                              Philip L. Fraietta

1