UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRISTA and ANGEL DOUGHERTY,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**DREW UNIVERSITY,**<br><br>Defendant. | Civ. No. 21-00249 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Angel Dougherty, previously an undergraduate at Drew University, and her mother, Crista Dougherty, sued the University based on its conversion from in-person to virtual education in response to COVID-19. I dismissed the Doughertys' claims seeking to recover tuition, predicting that New Jersey courts would apply a deferential standard, under which the Doughertys had not stated a claim. (DE 17, 18.)[1] *See also Dougherty v. Drew Univ.*, Civ. No. 21-249, 2021 WL 1422935 (D.N.J. Apr. 14, 2021). I do not repeat the reasoning of that Opinion, which is incorporated by reference. The Doughertys move for reconsideration. (DE 21.) For the following reasons, the motion is **DENIED**.

The plaintiff's disappointment is completely understandable. Still, though the matter is not free from doubt, my prior decision remains my best prediction of what the New Jersey Supreme Court would do if confronted by the issues here.

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1-2)

Mot. = Doughertys' Brief in Support of Motion for Reconsideration (DE 21-1)

I. **BACKGROUND**

Angel[2] was an undergraduate student in Spring 2020 at Drew University, a private institution. (Compl. ¶¶ 13–14.) Her course of study, art, relies on in-person instruction. (*Id.* ¶ 13.) Crista financed Angel's semester, including tuition and certain fees. (*Id.* ¶¶ 14, 21.)

In response to the COVID-19 pandemic, and in March 2020, the University transitioned courses to a virtual-instruction format. (*Id.* ¶¶ 33–34.) This instruction allegedly was not "equivalent" to in-person instruction. (*Id.* ¶¶ 37–38.) Further, the Academic Catalog stated that many courses would encompass in-person activities, which virtual instruction has not provided. (*Id.* ¶¶ 25–32, 34.) The Catalog contains a "reservation of rights" that allows the University to make changes to academic programs.

The Doughertys sued the University in New Jersey Superior Court, seeking to represent a class of similarly situated plaintiffs. (*Id.* ¶ 40.) The Complaint asserts claims for (1) breach of contract, (2) unjust enrichment, (3) conversion, and (4) money had and received. (*Id.* ¶¶ 53–88.) The University removed the case to this Court and moved to dismiss. (DE 1, 6.)

As relevant here, I dismissed the breach of contract claim seeking tuition.[3] *Dougherty*, 2021 WL 1422935, at *3–8. For that ruling I gave two reasons.

First, after surveying New Jersey case law, I predicted that the appropriate standard for the claim would be that outlined in *Beukas v. Board of Trustees of Fairleigh Dickinson University* (*Beukas I*), 605 A.2d 776 (N.J. Super. Ct. L. Div. 1991). *Id.* at *4–5. Under that standard, "I review 'the bona fides of the [University's] decisionmaking and the fairness of its implementation.' In doing so, I pay close attention to whether that decision was

---

[2]    Because the plaintiffs share the same last name, I refer to them by their first names, intending no disrespect.

[3]    The Doughertys do not move for reconsideration of the any other aspect of the Court's decision. (Mot. at 2 n.1.)

arbitrary, made in bad faith, or lacking in fair notice." *Id.* at *6 (quoting *Beukas I,* 605 A.2d at 785). I concluded that the Complaint failed to allege facts that could plausibly overcome this standard because (1) the campus closure was due to a pandemic and governmental mandates, and (2) the Complaint failed to identify reasonable alternatives. *Id.* at *6–7.

Second, and in the alternative, I ruled that "even if the Doughertys could pursue a contract claim based on the Academic Catalog, it would fail because the Catalog contained a reservation of rights that authorized the University's response to the pandemic." *Id.* at *7. Here, I relied on the Appellate Division's affirmance of *Beukas I,* which relied on a nearly identical provision. *Id.* (citing *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.* (*Beukas II*), 605 A.2d 708, 708–09 (N.J. Super. Ct. App. Div. 1992) (per curiam)).

The Doughertys now move for reconsideration. (Mot.)

## II.  STANDARD OF REVIEW

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy" granted "sparingly." *NL Indus. Inc. v. Com. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

## III.  DISCUSSION

The Doughertys advance two reasons for reconsideration: (1) *Beukas* is inapposite, and (2) a subsequent New Jersey trial court opinion supports their claims. Neither reason is persuasive. I also discuss two relevant decisions from

3

judges in this District, both issued after I filed my Opinion. Neither, I find, is sufficient to require reconsideration.

### A. *Beukas*

The Doughertys argue that my reliance on *Beukas* was misplaced because that case is distinguishable. But "arguments that were available at the time of the original decision will not support a motion for reconsideration." *Santiago v. Cavalry Portfolio Servs., LLC*, Civ. No. 15-8332, 2018 WL 6831112, at *1 (D.N.J. Dec. 21, 2018). *Beukas* was decided nearly three decades ago, so any arguments regarding its applicability belonged in their opposition to the University's motion to dismiss. I nevertheless address the Doughertys' arguments.

*Beukas* and its progeny, "though far from a perfect fit, represent the most analogous New Jersey case law." *Dougherty*, 2021 WL 1422935, at *5. My task was to identify how the New Jersey Supreme Court would rule, and *Beukas* provided the best data point for that prediction. *Id.* at *5 n.4. They cite certain factual differences between that case and this, but they do not undermine the holding of *Beukas*. *See Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) ("[T]his Court is bound by holdings, not language.").

First, the Doughertys acknowledge that *Beukas* held that a course catalog could not be construed as a traditional contract, but they argue that it did so because the documents construed in that case spoke in broad language. By contrast, they say, the Academic Catalog here contained specific promises, so *Beukas*'s reluctance to apply traditional contract principles should not apply. (Mot. at 3–4.) The holding of *Beukas*, however, did not rest on the level of specificity of the university's written representations. *Beukas,* relying on principles of justice and public policy, held that the contract between student and university was not a traditional written contract, but one of general application, implied in law: "The true university-student contract is one of mutual obligations implied, not in fact, but by law . . . without regard to expressions of assent by either *words* or acts." *Beukas I*, 605 A.2d at 783–84

(emphasis added) (quotation marks and citation omitted). Further, that court specifically eschewed traditional contract law and gave its reasons, which did not have to do with specificity: its approach, said *Beukas,* "will produce a more legally cohesive body of law than will application of classic contract doctrine." *Id.* at 784. Thus, the court's rejection of traditional contract principles was well considered as a matter of legal doctrine and is entitled to deference as a statement of New Jersey law.[4]

Next, the Doughertys argue that I overlooked their allegations of bad faith. (Mot. at 5–8.) To start, they say that keeping tuition for "services [the University] failed to provide" is bad faith. (Mot. at 5 (quoting Compl. ¶ 11).) This is little more than a restatement of the claim itself, and I addressed it in my earlier opinion: "[I]t is not as if the University simply defaulted on its educational obligations. Rather, the University tried its best to provide students with an education, albeit in a different format. The Doughertys may contend that such a format was not worth the same tuition money, but *Beukas* affords the University some leeway." *Dougherty*, 2021 WL 1422935, at *7.

As another example of bad faith, the Doughertys cite the University's failure to provide advance notice of the transition to virtual education, which, they say, distinguishes this case from *Beukas.* (Mot. at 6–7.) They fault the University for failing to notify them ahead of time of how it would respond to a once-in-a-century global pandemic. Suffice it to say that businesses, educational institutions, and government offices, worldwide, shut down in-person operations on an emergent basis. Few prophesied such a situation, and the University's failure to do so does not evince bad faith.

---

[4] And, of course, if the Catalog were treated as a traditional contract, then it would be construed as a whole, including the reservation of rights.

Regardless, the Doughertys' argument from *Beukas* is questionable. The plaintiffs there wanted to enforce a contract "as reflected in the annual bulletins issued by the University . . . , as well as other publications of the university which they assert are 'the controlling documents in their contractual relationship.'" *Beukas I*, 605 A.2d at 779. It is hard to say that the "contract" the Doughertys point to, which is based on similar materials, is significantly more specific.

As a final example of bad faith, the Doughertys argue that, unlike the institutions in *Beukas* or its progeny, Drew University did not provide alternatives to a virtual education, such as a transfer to another university. But the Complaint never alleges that such alternatives were reasonably available. *See Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint."). Even indulging the Doughertys now, their proposed alternatives are not plausible. They have not identified, nor am I aware of, any nearby or comparable university to which a student could have transferred that was not likewise closed for in-person operations.

A second such alternative, plaintiffs argue, would be a grant of a tuition rebate. As to the reasonableness of rebates, the *Beukas* standard allows only the most deferential inquiry. Placing a dollar amount on the difference in value between an in-person and virtual education is precisely the type of probing inquiry New Jersey courts are admonished to avoid. *Dougherty*, 2021 WL 1422935, at *6–7; *see also Gourdine v. Felician Coll.*, No. A-5248-04T3, 2006 WL 2346278, at *5 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (per curiam) (rejecting claims for a tuition rebate). I cannot say that these allegations establish a case, overlooked in my prior Opinion, that the University's course of action was pursued arbitrarily or in bad faith.

Finally, the Doughertys argue that the Academic Catalog's reservation of rights is unenforceable because it does not specifically notify students that in-person classes might move online halfway into the semester. (Mot. at 8–9.) As discussed in my earlier opinion, this reservation of rights is nearly identical to the one in *Beukas*, which the New Jersey courts held was enforceable. *Beukas II*, 605 A.2d at 708–09. Here, the Doughertys would graft a specificity requirement onto the reservation of rights, one which *Beukas* itself never

imposed.[5] Any reasonable reading of the reservation of rights covers the events here. *Dougherty*, 2021 WL 1422935, at *7.

\* \* \*

In sum, the Doughertys provide no persuasive argument that this Court misapplied *Beukas*, and certainly no reason that is newly available to them.

### B. *Quiroz v. Rider University*

As a second basis for reconsideration, the Doughertys argue that a subsequent state trial court decision in *Quiroz v. Rider University*, No. 1982-20 (N.J. Sup. Ct. L. Div.), supports them. (Mot. at 10.) There, the New Jersey Superior Court, Law Division, denied a motion to dismiss similar claims, explaining in an oral decision that (1) *Beukas* supplied the correct standard, and (2) factual development was needed. (DE 30-1.)

*Quiroz* does not help the Doughertys, for two reasons. First, as a state trial-court opinion, *Quiroz* is not controlling. *Ryu v. Bank of Hope*, Civ. No. 19-18998, 2021 WL 50255, at *5 n.7 (D.N.J. Jan. 6, 2021) (citations omitted). Second, *Quiroz*'s reasoning is inapplicable. *Quiroz,* while starting from the same *Beukas*-based legal premises, applied the liberal New Jersey motion-to-dismiss standard. The standard I must apply is different and more demanding. *Ocean City Exp. Co. v. Atlas Van Lines, Inc.*, Civ. No. 13-1467, 2013 WL 3873235, at

---

[5]   As support for their specificity requirement, the Doughertys cite a footnote in *Behne v. Union County College*, Civ. No. 14-6929, 2018 WL 566207, at *1 n.2 (D.N.J. Jan. 26, 2018). There, however, the defendant college was claiming that that a handbook's provision that it was "subject to change" constituted a broad "disclaimer" that rendered the handbook nonbinding. That language, Judge Vazquez wrote, did not "constitute a sufficient disclaimer as to the *applicability* of the handbooks," "instead it merely indicates that [the college] may change the *contents* of the handbooks in the future." *Id.* (emphases added).

The language from Drew's Catalog is different. As noted in my earlier Opinion, it grants the University not merely the right to amend a handbook in the future, but the right to adapt its courses of instruction to circumstances: It reserves "the right in its sole judgment to make changes of any nature in the University's academic program," including the "elimination" of "programs" and "the modification of [course] content." Moreover, "the University may require or afford alternatives for scheduled classes . . . as is reasonably practical under the circumstances."

7

*4 n.3 (D.N.J. July 25, 2013); *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 500 (D.N.J. 2012). In New Jersey court, the complaint "must be searched thoroughly 'and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." *Baskin v. P.C. Richard & Son, LLC*, --- A.3d ----, ----, No. 084257, 2021 WL 1773704, at *7 (N.J. May 5, 2021) (quoting *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 34 (N.J. 1989)). Courts only dismiss claims in "the rarest of instances" when no allegations would support relief. *Printing Mart*, 563 A.2d at 48. In federal court, however, a pleading must set forth allegations that make a right to relief plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). New Jersey courts continue apply a standard which resembles the "any set of circumstances" standard overruled by *Twombly* and *Iqbal.*

As a result, *Quiroz*'s conclusion that the plaintiffs were entitled to go forward on the issue of bad faith is not applicable here. In federal court, a pleading cannot "unlock the doors of discovery" without plausible, factual allegations of bad faith. *Iqbal*, 556 U.S. at 678. This Complaint does not provide any. Accordingly, *Quiroz* does not require reconsideration of my Opinion.

### C. Subsequent Opinions

I round out the discussion with recent cases in this District Court that have addressed similar claims. Although not binding, decisions from federal courts interpreting state law are appropriate for a court sitting in diversity to consider. *See Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018). I will therefore assume that such decisions could represent an intervening change in law sufficient to require reconsideration if a persuasive consensus had emerged that ran counter to my own view.

In the first opinion, *Mitelburg v. Stevens Institute of Technology*, Judge Wigenton agreed with my Opinion in full, rejected similar arguments for the same reasons I gave, and dismissed tuition claims while keeping fee claims, as

I did. Civ. No. 21-1043, 2021 WL 2103265, at *3–5 (D.N.J. May 25, 2021). *Mitelburg* thus provides no basis for reconsideration.

In the second opinion, *Fittipaldi v. Monmouth University*, Judge Shipp agreed that *Beukas* provided the right standard: essentially, whether the facts as alleged rose to the level of bad faith or unfair dealing by Monmouth University. Civ. No. 20-5526, 2021 WL 2210740, at *9 (D.N.J. June 1, 2021). Judge Shipp held, however, that those plaintiffs had alleged enough facts to state such a claim of bad faith and arbitrariness. There, the plaintiffs alleged that, to reflect the transition to remote instruction, the university reduced the cost per credit for summer courses by 15%. *Id.* That fact raised an inference that the university "itself recognizes that remote learning options are not the equivalent to an in-person experience" yet declined to provide an equivalent refund for the spring semester. *Id.* (quoting complaint). In other words, and in the words of *Beukas*, the university acted arbitrarily by reducing costs for remote courses for one semester but not for another. The Doughertys allege no such facts here, so *Fittipaldi* does not help them.

As for this Court's alternative basis for decision—*i.e.,* the Catalog's reservation of rights—Judge Shipp noted potential distinctions between the Monmouth and Drew provisions, but declined to reach the issue:

> The Court notes that Monmouth's reservation of rights provision differs from Drew's. Monmouth's provision states, "Monmouth University has provided the following information to the public. The information provided herein does not provide an irrevocable contract between Monmouth University and the student. The University reserves the right to alter any policy, procedure., curricular information, facts, and/or fees without any prior notice or liability." (ECF No. 24-3 at *8.) Drew's provision states:
>
>> The University reserves the right in its sole judgment to make changes of any nature in the University's academic program, courses, schedule, or calendar whenever in its sole judgment it is deemed desirable to do so. The foregoing changes may include, without limitation, the elimination of colleges, schools, institutes, programs, departments, or courses, the modification of the content of any of the

9

foregoing, the rescheduling of classes, with or without extending the enhanced academic term, the cancellation of scheduled classes, or other academic activities. If such changes are deemed desirable, the University may require or afford alternatives for scheduled classes or other academic activities. If such changes are deemed desirable, the University may require or afford alternatives for scheduled classes or other academic notification of any such change as is reasonably practical under the circumstances.

(21-249 (KM), ECF No. 6, Ex. H.) Drew's provision is substantially more comprehensive than Monmouth's provision. Here, the Court is not inclined to analyze Monmouth's provision on a motion to dismiss.

*Fittipaldi,* 2021 WL 2210740, at *9.

In the end, then, neither *Mitelburg* nor *Fittipaldi* persuasively supports reconsideration of this Court's prior decision.

### IV.   CONCLUSION

For the reasons set forth above, the motion for reconsideration is denied.

A separate order will issue.

Dated: June 7, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**